**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:25–CV–60771–ROSENBERG–AUGUSTIN-BIRCH**

S.W.,

     Plaintiff,

     v.

TROPICAL PARADISE RESORTS,
LLC, *et al.,*

     Defendants.

**CHOICE HOTELS INTERNATIONAL, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff alleges that between 2019 and 2020, she was trafficked at a hotel located in Fort Lauderdale, Florida (the "Hotel"), that was owned by co-Defendant Tropical Paradise Resorts, LLC ("Tropical Paradise") and managed by co-Defendant EZ Hospitality, LLC ("EZ"). *See* Doc. No. 1 ("Compl.") ¶¶ 24–26. As Plaintiff acknowledges, Choice Hotels International Inc.'s ("Choice") sole involvement with the property was as a franchisor. *See id.* ¶ 27. Plaintiff nonetheless seeks damages against Choice under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a), and the common law. *See id.* ¶¶ 143–201.

Her claims should be dismissed consistent with binding precedent. Plaintiff's Complaint is a "shotgun" pleading. Despite being 50 pages long, Plaintiff's pleading makes no distinction among the three Defendants in its substantive allegations as to what they did and what they knew. Rather, it impermissibly (and implausibly) treats Defendants as an undifferentiated mass, contrary to the Eleventh Circuit's directives regarding pleading.

The Complaint fares no better on the merits. Plaintiff's first claim—that Choice is a "perpetrator" under the TVPRA, *see* 18 U.S.C. § 1595(a)—requires allegations that Choice directly violated the criminal trafficking statute. Such claims are almost always rejected as to franchisors because they require proof that a defendant engaged in trafficking had actual knowledge of Plaintiff's trafficking. Neither element is present here. Plaintiff's second claim—that Choice "participated" in

1

a "venture" that trafficked her, *see id.*—is likewise deficient. That claim rests on arguments that a mere contractual franchise agreement is a sanctionable venture and that the rental of rooms alone is participation in trafficking. Both notions have been rejected by the Court of Appeals and District Courts of this Circuit.[1] Plaintiff's third claim—based on common law premises liability is both

---

[1] The vast majority of federal courts to address TVPRA claims against franchisors, similar to those found in Complaint, dismissed them. *See, e.g.*, *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) (affirming the dismissal of four separate lawsuits against franchisors); *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. 2024) (affirming the dismissal of claims against an operator of a hotel, a party far closer to alleged trafficking than a franchisor); *N.G. v. G6 Hospitality Property LLC*, No. 6:24-cv-2379-JA-DCI, 2025 WL 1332210 (M.D. Fla. May 7, 2025); *A.L. v. G6 Hospitality Property LLC*, No. 25-80056-CV-MIDDLEBROOKS, 2025 WL 1151750 (S.D. Fla. Apr. 18, 2025); *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624 (E.D. Mich. 2024); *Doe (A.S.) v. Wyndham Hotels & Resorts*, No. 6:23-cv-00033-C, ECF No. 67 (N.D. Tex. May 31, 2023); *Doe v. Wyndham Hotels & Resorts*, No. 8:23-cv-01554-JVS (JDEX), 2024 WL 2104596 (C.D. Cal. Feb. 28, 2024); *B.J. v. G6 Hosp., LLC, et al.*, No. 22-cv-03765, 2023 WL 6120682 (N.D. Cal. Sept. 18, 2023); *A.B. v. Extended Stay Am. Inc.*, No. 3:22-CV-05939-DGE, 2023 WL 5951390 (W.D. Wash. Sept. 13, 2023); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-cv-108-TWT, 2023 WL 5621913 (N.D. Ga. Aug. 30, 2023); *K.M. v. CPA Hotels of Atlanta, LLC*, No. 1:23-cv-190-TWT, 2023 WL 5747490 (N.D. Ga. Ag. 30, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, No. 2:22-cv- 646, 2023 WL 5510090 (M.D. Fla. Aug. 25, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, No. 2:22-cv-647, 2023 WL 5510266 (M.D. Fla. Aug. 25, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, No. 2:22-cv-648, 2023 WL 5510267 (M.D. Fla. Aug. 25, 2023); *A.D. v. Marriott Int'l, Inc.*, No. 2:22-cv-644, 2023 WL 5510270 (M.D. Fla. Aug. 25, 2023); *A.D. v. Marriott Int'l, Inc.*, No. 2:22-cv-645, 2023 WL 5510268 (M.D. Fla. Aug. 25, 2023); *Lundstrom v. Holiday Hosp. Franchising, LLC*, No. 1:22-cv-056, 2023 WL 4424725 (D.N.D. May 22, 2023); *L.H. v. Marriott Int'l Inc.*, 604 F. Supp. 3d 1346 (S.D. Fla. 2022); *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018 (D. Or. 2021); *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021); *J.L. v. Best Western Int'l Inc.*, 521 F. Supp. 3d 1048 (D. Colo. 2021); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697 (E.D. Mich. 2020); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020); *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020); *C.K. v. Wyndham Hotels & Resorts, Inc.*, No. 3:19-cv-1412-J-34MCR, 2020 WL 5523849 (M.D. Fla. July 7, 2020); *J.C. v. Choice Int'l*, No. 20-cv-00155-WHO, 2020 WL 3035794 (N.D. Cal. June 5, 2020); *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-CV-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020), *aff'd sub nom. Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021).

By contrast, most of the decisions that did not dismiss the plaintiffs' claims at the motion-to-dismiss stage were issued by a single federal judge. *See, e.g.*, *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022 WL 17363234 (S.D. Ohio Dec. 1, 2022) (Marbley, C.J.). That court's approach represents the extreme minority position and is not even followed by courts in the same state. *See S.C. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771, (N.D. Ohio 2024); *R.C. v. Choice Hotels Int'l, Inc.*, No. 5:23-cv-00872, 2024 WL 1443412 (N.D. Ohio Apr. 2, 2024); *see also S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-cv-00871, 2024 WL 2186173 (N.D. Ohio May 15, 2024) (denying the plaintiff's motion to modify and rejecting the plaintiff's attempt to "blur[] the lines between [the] franchisee [and] franchisor").

untimely and unsound. Choice owed Plaintiff no duty; did not breach any duty; and did not proximately cause her injuries.

## I. Legal Standards

### a. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See American Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010). When reviewing a motion to dismiss for failure to state a claim, the court should "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (citation omitted). However, this tenet is "inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy the pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation and internal quotation marks omitted). That requires that a plaintiff "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### b. The TVPRA

Plaintiff's first two claims are brought under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). That statute creates two different causes of action. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021).

#### i. Perpetrator Claims

The first type of TVPRA claim is against "the perpetrator" of an act of trafficking. 18 U.S.C. § 1591(a). A "perpetrator" is defined as "someone who has violated the criminal statute," which is 18 U.S.C. § 1591(a), in this case. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719; *see* Compl. ¶¶ 31–32, 169.[2] Thus, to make out her perpetrator claim (Count I), Plaintiff must plausibly plead that Choice violated the criminal prohibition on trafficking found in § 1591(a).

Section 1591(a) lays out two distinct pathways for criminal liability.[3] The first is that Choice "harbor[ed]" Plaintiff "knowing, or . . . in reckless disregard of the fact, that means of

---

[2] Plaintiff makes reference to two other criminal statutes (18 U.S.C. §§ 1589, 1590), but apparently only for background purposes. *See* Compl. ¶ 30.

[3] Section 1591(a) contains different requirements if the victim was a minor, but Plaintiff has indicated that she was an adult during her trafficking period. *See* Compl. ¶¶ 33–34.

force, threats of force, fraud, coercion . . . , or any combination of such means w[ould] be used to cause [Plaintiff] to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1).[4] The second pathway is that Choice "benefit[ted], financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1) [i.e., harboring], knowing , or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means w[ould] be used to cause [Plaintiff] to engage in a commercial sex act." *Id.* § 1591(a)(2).[5]

The criminal statute also incorporates certain key definitions. The phrase "participation in a venture" "means knowingly assisting, supporting, or facilitating a violation of [§ 1591(a)(1)]." 18 U.S.C. § 1591(e)(4). The term "venture" "means any group of two or more individuals associated in fact, whether or not a legal entity." *Id.* § 1591(e)(6). Importantly, while these terms also appear in the second type of TVPRA action (described immediately below), they do not carry the same definitions in that latter context. *See Red Roof*, 21 F.4th at 724 ("disagree[ing] with transposing the statutory definition[s] from this criminal section to the civil cause of action" based, in part, on 18 U.S.C. § 1591(e)'s instruction that definitions apply "[i]n this section").

### ii.   Beneficiary/Participant Claims

The second type of TVPRA action is against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). Such claims are referred to as "beneficiary" or "participant" claims.

In construing the key phrase "participation in a venture," the Eleventh Circuit has relied on dictionary definitions (rather than the corresponding criminal definitions). *See Red Roof*, 21 F.4th

---

[4] Section 1591(a) contains other potential trafficking acts—"recruits, entices, . . . transports, provides, obtains, advertises, maintains, patronizes, or solicits"—but Plaintiff does not allege any of these as to Choice. Accordingly, in terms of elements, this pathway requires that "the government first must show that the defendant knowingly . . . harbored . . . a person by any means"; "that the defendant knew or was in reckless disregard of the fact that . . . means of force, threats of force, fraud, or coercion would be used to cause the person to engage in a commercial sex act"; and "[l]astly, the government must prove that the defendant's acts were in or affected interstate or foreign commerce." *United States v. Rivera*, 558 F. App'x 971, 974 (11th Cir. 2014).

[5] Put into elements, this pathway requires the following: "The defendant (1) must know or recklessly disregard that members of a venture either sex traffic an adult by means of force, threats, or coercion, or sex traffic a child; and (2) must knowingly benefit (3) from participation in that sex-trafficking venture." *United States v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016).

at 724–25. Thus, a "venture" "is an undertaking or enterprise involving risk and potential profit." *Id.* at 724 (citation omitted). And "participate or participation" mean "to take part in or share with others in common or in an association." *Id.* at 725 (citation omitted).

Putting these definitions into element form gives four components that Plaintiff must plausibly allege: "that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Id.* at 726.

## II.      Argument

### a.  Plaintiff's Complaint is an Impermissible "Shotgun" Pleading

The Federal Rules of Civil Procedure "require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (citation and internal quotation marks omitted). A "shotgun" pleading breaches these rules by "fail[ing] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Plaintiff's Complaint is a straightforward example of such a pleading tactic. The Complaint acknowledges that co-Defendants owned and managed the Hotel, while Choice only acted as franchisor. *See* Compl. ¶¶ 25–27. This difference between an owner/operator—responsible for day-to-day operations and management of the property—and a franchisor—which supplies intellectual property and marketing plans—is one that that both the Court of Appeals and District Courts in this Circuit have recognized numerous times, *specifically as to Choice*.[6] Put plainly, it is obvious that Choice is a different entity, located in a different state, and with different ownership, different legal structures, and different operations from its co-Defendants.

---

[6] *See Red Roof*, 21 F.4th at 719–20, 726–27; *A.D. v. Choice Hotels Int'l, Inc.*, No: 2:22-cv-647-JES-NPM, 2023 WL 2991041, at *5 (M.D. Fla. Apr. 18, 2023); *Doe 4 v. Red Roof Inns, Inc.*, No. 1:19-cv-03845-WMR, 2020 WL 1872336, at *3 (N.D. Ga. Apr. 13, 2020); *Employers Ins. Co. of Wassau v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 8:07-cv-1099-T-30EAJ, 2008 WL 1777807, at *2 (M.D. Fla. Apr. 18, 2008); *see also Allen v. Choice Hotels Int'l, Inc.*, 276 F. App'x 339, 342–43 (4th Cir. 2008).

That makes the Complaint's failure to make any distinction among the Defendants as to any factual averments or legal assertions inexcusable. Each time Choice is mentioned in the substantive sections, it is alongside Tropical Paradise and EZ Hospitality, even when the result is a sentence that makes no logical or grammatical sense.[7] The Complaint thus "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323.[8]

This is a "quintessential 'shotgun' pleading of the kind [the Eleventh Circuit] ha[s] condemned repeatedly." *Magluta*, 256 F.3d at 1284. And it is uniquely prejudicial in this context. Claims under the TVPRA turn on what a defendant did and knew. *See Red Roof*, 21 F.4th at 719. Yet, by treating the Defendants as an undifferentiated group, Plaintiff renders it impossible for Choice or the Court to determine what knowledge and what acts Plaintiff actually ascribes to Choice, as opposed to co-Defendants. *See Kabbaj v. Obama,* 568 F. App'x 875, 880 (11th Cir. 2014) (finding improper shotgun pleading where "the complaint refers to the defendants collectively, making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct").

Preventing this gamesmanship is precisely what the bar on "shotgun" pleading aims to prevent. *See Weiland*, 792 F.3d at 1320. For that reason, Choice respectfully requests that the Court dismiss the Complaint as a "shotgun" pleading.

**b.  Count I: Plaintiff Fails to Allege that Choice Acted as a "Perpetrator"**

Plaintiff's first count is a "perpetrator" claim brought against all Defendants. *See* Compl. ¶¶ 170–81. To make out such a claim, Plaintiff must plausibly allege that Choice violated the criminal prohibition on trafficking found at 18 U.S.C. § 1591. *See Red Roof*, 21 F.4th at 724 (a "perpetrator" claim is against "someone who has violated the criminal statute").

---

[7] *See, e.g.*, Compl. ¶ 187 ("As *owner* of the real property in which the hotel was located, Defendants, RODEWAY INN, EZ HOSPITALITY and CHOICE HOTELS, individually and by and through *its* agents, servants and/or employees . . . .") (emphasis added); *id.* ¶ 192 ("Defendants, RODEWAY INN, EZ HOSPITALITY and CHOICE HOTELS, had actual or constructive knowledge of prior similar sex trafficking incidents being carried out on *its* premises . . . .") (emphasis added).

[8] *See also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.").

6

### i.   Plaintiff Fails to Plead Choice's Actual Knowledge

As noted above, a perpetrator claim can proceed by establishing a defendant's violation under either of the two paths found in § 1591(a) (either (a)(1) or (a)(2)). *Supra* at 3–4. Though Plaintiff declines to specify which path her claim falls under, it fails under either.

As a preliminary matter, both paths have the same exacting knowledge requirement. "[A] claim of 'perpetrator' liability . . . requires actual knowledge"—or at least reckless disregard—"of the sex trafficking activity," including the means of force, fraud, or coercion. *G.N.C. v. Uniquest Hospitality, LLC*, No. 23-cv-7980 (PKC), 2024 WL 4149251, at *3 (S.D.N.Y. Sept. 11, 2024) (citing *Acevedo v. eXp Realty, LLC*, No. 23-cv-01304(AB)(AGR), 2024 WL 650189, at *9 (C.D. Cal. Jan. 29, 2024)); *M.H. on behalf of C.H. v. Omegle.com, LLC*, 122 F.4th 1266, 1273 (11th Cir. 2024); *United States v. Townsend*, 521 F. App'x 904, 907 (11th Cir. June 10, 2013); *Doe v. Fenix Int'l Ltd.*, No. 22-CV-62176-ALTMAN/STRAUSS,  2025 WL 336741, at *3 (S.D. Fla. Jan. 30, 2025). That is, Plaintiff must allege both that Choice knew of her trafficking *and* that it was done with means of force, fraud, or coercion. *See United States v. Todd*, 627 F.3d 329, 333–34 (9th Cir. 2010) ("The knowledge required of the defendant [for § 1591(a)(1)] is such that if things go as he has planned, force, fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction.").

Plaintiff pleads nothing to show any such knowledge on Choice's part. Plaintiff does allege that her trafficker used acts of violence and coercion against her. *See, e.g.*, Compl. ¶¶ 36–39, 44. But none of those alleged acts were ever witnessed by Hotel staff, much less Choice, a remote franchisor located in Maryland. *See id.* ¶ 27; *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 469 (E.D.N.C. 2024) (plausible pleading under the TVPRA requires "the presence of non-conclusory allegations of some form of violence or fraud" witnessed by hotel employees).[9]

Similarly, when Plaintiff describes the acts that indicate that Choice "knew or should have known" about her forcible trafficking—an improper dilution of the relevant legal standard, *see G.N.C.*, 2024 WL 4149251, at *1—none of them involve acts of violence or coercion and none of

---

[9] *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 941 (D. Or. 2020) ("Plaintiff does not contend that hotel staff observed her trafficker forcefully bring her to a hotel, attack her, restrain her, or argue with her.").

them were witnessed by Choice. *See* Compl. ¶ 161.[10] Rather, they were witnessed by Hotel employees, and there is no allegation that these employees ever communicated this information to Choice. *See B.M. v. Wyndham Hotels & Resorts, Inc., et al.*, No. 20-cv-00656, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020) ("The Complaint fails to allege facts as to **how** Wyndham (the ultimate parent company of the franchisor) and Choice (the franchisor) knew or should have known Plaintiff was being trafficked. To support her direct liability theory, Plaintiff must allege facts showing these Defendants knew or should have known of her trafficking – and she fails to do so in her Complaint.").[11] As this Court has explained, when it comes to § 1591, "speculation does not cut it." *Doe v. Fenix Int'l Ltd.*, No. 22-CV-62176-ALTMAN/STRAUSS, 2024 WL 5375136, at *12 (S.D. Fla. Jan. 30, 2025), *recommendation accepted in* 2025 WL 336741 (S.D. Fla. Jan. 30, 2025).

At best, Plaintiff has alleged that Hotel staff (though not Choice) may have suspected that prostitution was occurring at the Hotel. But as numerous courts have held, there is a "crucial distinction" between "prostitution and sex trafficking by force or fraud," and the two activities "are not coterminous" for purposes of the TVPRA. *L.M.*, 717 F. Supp. 3d at 469 (collecting cases making this distinction); *cf. Fenix Int'l*, 2025 WL 336741, at *8 (explaining that it insufficient to show knowledge that individuals' "engages in lewd, tasteless, creepy, and potentially misogynistic behavior") (citation and internal quotation marks omitted). Put simply, "[t]he statute 'does not

---

[10] Plaintiff does plead that she and other alleged victims cried out from the rooms, *see* Compl. ¶ 161(h), but she does not allege that any hotel staff (or anyone else) heard these noises, *see A.B. v. Shilo Inn, Salem, LLC*, No. 3:23-cv-00388-IM, 2023 WL 5237714, at *5 (D. Or. Aug. 15, 2023) (observing that while plaintiff pleaded that the hotel had "numerous surveillance cameras throughout the hotel," she "fail[ed] to allege facts to establish that any particular [hotel] employee *witnessed* these signs or was otherwise aware of [her] trafficking"); *J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) (holding that similar "allegations were insufficient to establish actual knowledge because the plaintiff did not allege that any member of the hotel staff heard and ignored her pleas or that she alerted any staff member to her need for help").

[11] To the degree that Plaintiff seeks to impute co-Defendants' knowledge to Choice, that flies against the rule that the franchise agreements generally do not create agency relationships. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995) (describing standard under Florida law). Nor has Plaintiff plausibly alleged that Choice maintained sufficient control over co-Defendants to create such a relationship. *See id.*; *see also Red Roof*, 21 F.4th at 729 (formulaic allegations of control are insufficient to establish an agency relationship).

address commercial sex generally.'" *A.B.*, 484 F. Supp. 3d at 940 (quoting *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-cv-03840-WMR, 2020 WL 1872335, at *3 (N.D Ga. Apr. 13, 2020)).[12]

Plaintiff has therefore failed to allege that Choice had any actual knowledge (or reckless disregard) of her predicament. That is fatal to her claim.

### ii.   Plaintiff Does Not Plead Any *Actus Reus* For Choice

Plaintiff's claim also fails for a lack of plausible allegations regarding Choice's acts. As noted above, this requires allegations that (for a violation of § 1591(a)(1)) Choice "harbored" Plaintiff, or (for a violation of § 1591(a)(2)) that Choice benefitted from participating in a criminal trafficking venture—that is, "knowingly assisting, supporting, or facilitating a violation of [§ 1591(a)(1)]." 18 U.S.C. §§ 1591(a), (e)(4).

Neither set of acts is plausibly pled. As to the § 1591(a)(1) path, Plaintiff claims that "[b]y failing to act, [Defendants] . . . allowed [Plaintiff] to be harbored." Compl. ¶ 153. This is doubly wrong. First, it seeks to hold Choice liable for "taking ineffective steps to curtail the traffickers," a theory of liability that has been widely rejected. *A.D. v. Marriott Int'l, Inc.*, No. 22-cv-645, 2023 WL 2991042, at *4 (M.D. Fla. Apr. 18, 2023).[13] The criminal section of the TVPRA "target[s] those who *participate* in sex trafficking; it does not target [those] who turn a blind eye to the source of their financial sponsorship." *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (emphasis added). Here, Plaintiff seeks to hold Choice liable for alleged *inaction*; that falls outside of the TVPRA.

Second, while Plaintiff does not explain what she means by "harbor," her focus is on the rental of rooms to her trafficker (though, as with the rest of her pleading, it is unclear which Defendant she alleges actually rented out the rooms). *See* Compl. ¶ 106. While the TVPRA does not define the term "harbor," numerous courts have indicated that it requires some more than the rental of rooms. *See, e.g.*, *L.M. v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, 2024 WL 4204906, at *5 (E.D.N.C. Sept. 16, 2024) ("[T]he Fourth Circuit has made clear that this verb, in the criminal context, does not mean simply 'to house.'").

---

[12] This reasoning applies to her allegations regarding her encounters with the manager of the Hotel. *See* Compl. ¶¶ 96–102.

[13] *See also C.C. v. H.K. Grp. of Co., Inc.*, No. 1:21-CV-1345, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 2022); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *7 (N.D. Cal. July 30, 2020); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020).

In the similar context of immigration statutes,[14] the bulk of authority holds that "harboring" requires an affirmative act beyond the mere provision of housing, such as the active concealment of an individual and/or the act of preventing authorities from detecting the individual. *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 278–79 (4th Cir. 2024); *United States v. Zheng*, 87 F.4th 336, 343 (6th Cir. 2023); *United States v. McClellan*, 794 F.3d 743, 750-51 (7th Cir. 2015); *United States v. Vargas-Cordon*, 733 F.3d 366, 382 (2d Cir. 2013); *DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 247 (3d Cir. 2012); *United States v. Tipton*, 518 F.3d 591, 595 (8th Cir. 2008); *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007); *United States v. You*, 382 F.3d 958, 965-66 (9th Cir. 2004); *cf. Edwards v. Prime, Inc.*, 602 F.3d 1276, 1299 (11th Cir. 2010) (observing that the defendants committed "harboring" by "provid[ing] [the aliens] social security numbers and names, and paid them in cash in order to conceal, harbor, and shield the aliens from detection").[15] Thus, even assuming that Choice did rent rooms to Plaintiff's trafficker—something that is not clearly spelled out in the Complaint—Plaintiff has alleged no other acts that would constitute harboring.[16]

Plaintiff also fails to allege Choice's participation in a criminal trafficking venture that trafficked her, under the pathway laid out in § 1591(a)(2). In the first instance, Plaintiff never indicates who the participants of the venture might be. Certainly, it could not be a venture between Choice—located in Maryland—and her trafficker, as a criminal trafficking venture requires its members to be "associated in fact," 18 U.S.C. § 1591(e)(6), and there are no allegations that Choice ever interacted with that individual. To the degree that the alleged venture is the franchise relationship between Choice and co-Defendants, that also fails, as none of the Defendants engaged

---

[14] Similar to § 1591(a)(1), the relevant statute contains both the term "harbor" and actual knowledge or reckless disregard *mens rea* requirements. *Compare* 8 U.S.C. § 1324(a)(1)(A)(iii), *with* 18 U.S.C. § 1591(a)(1).

[15] *Cf. United States v. Zheng*, 306 F.3d 1080, 1086 (11th Cir. 2002) ("The housing and employment prevented government authorities from detecting the illegal aliens' unlawful presence.").

[16] To the degree that there are questions about whether the definition of "harbor" could reach Choice's conduct, the rule of lenity demands that those questions be resolved in favor of Choice. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n. 8 (2004) ("Although here we deal with § 16 in the deportation context, § 16 is a criminal statute, and it has both criminal and noncriminal applications. Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *see also Romero v. Sec'y, Dep't of Homeland Sec.*, 20 F.4th 1374, 1383 (11th Cir. 2021).

in an act of "harboring." *See* 18 U.S.C. § 1591(a)(2) (requiring "participation in a venture which has engaged in an act described in violation of paragraph (1)").

Moreover, even if Plaintiff could somehow link Choice to her trafficker—and she does not and cannot—she never alleges any instances of Choice "knowingly assisting, supporting, or facilitating" his acts of trafficking. *See id.* § 1591(e)(4) (defining "participation in a venture"). As just discussed, there are no allegations that Choice ever *knew* that Plaintiff was being trafficked, so Choice could not have *knowingly* participated in her trafficking. What's more, Plaintiff has alleged nothing to show that Choice "actively participated in [her trafficker's] alleged sex trafficking activities." *Fenix Int'l*, 2025 WL 336741, at *9.[17] Instead, Plaintiff has largely couched her allegations in terms of Hotel staff "essentially ignor[ing] what was going on or look[ing] the other way." Compl. ¶ 55. That has no relation to Choice, which, as franchisor, did not operate the Hotel or employ any of the staff. And "a failure to affirmatively prevent or inhibit sex trafficking does not constitute participation." *A.D. v. Wyndham Hotel & Resorts, Inc.*, No. 4:19cv120, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020). As a result, Plaintiff has failed to establish that Choice undertook any activity of which could constitute either direct trafficking or participation in a criminal trafficking venture.

### iii. Plaintiff Fails to Plead a Causal Link Between Any Choice Acts and the Purported Financial Benefit

To the degree Plaintiff seeks to rely on § 1591(a)(2)'s pathway for liability, she faces another problem. That provision requires that Choice "knowingly . . . benefit[ted]" from its alleged participation in a venture. 18 U.S.C. § 1591(a)(2). Courts have construed this to require "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). That is, any of the benefits provided must be "*because of* [the alleged] facilitation." *Id.* (emphasis in original).

Here, Plaintiff fails to make any such causal link. Choice's sole involvement with respect to the Hotel was as the franchisor, *see* Compl. ¶ 27, and the benefits it received—a percentage of

---

[17] *See Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) ("[T]o hold a defendant criminally liable as a beneficiary of sex trafficking, the defendant must have actually engaged in some aspect of the sex trafficking.") (citation and internal quotation marks omitted).

room rentals—were in that capacity. Those are generic benefits that accrue during any room rental transaction; they carry no causal link to her alleged trafficking.[18]

      **c.   Count II: Plaintiff Fails to Allege that Choice "Participated" in a "Venture"**

Plaintiff's second claim is brought under the TVPRA's other civil remedy provision, which authorizes a suit "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act [of trafficking]." 18 U.S.C. § 1595(a); *see* Compl. ¶¶ 170–81. To make out this "beneficiary" (or "participant") claim, Plaintiff must show that Choice: "(1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA as to [her]; and (4) [Choice] knew or should have known that the venture violated the TVPRA as to [Plaintiff]." *Red Roof*, 21 F.4th at 723.

The Eleventh Circuit, this Court, and the Middle District of Florida have all dismissed claims virtually identical to Plaintiff's. *See Red Roof*, 21 F.4th at 727; *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *3–*4 (11th Cir. Feb. 9, 2024); *N.G. v. G6 Hospitality Prop. LLC*, No. 6:24-cv-2379-JA-DCI, 2025 WL 1332210, at *2 (M.D. Fla. May 7, 2025); *A.L. v. G6 Hospitality Prop. LLC*, No. 25-80056-CV-MIDDLEBROOKS, 2025 WL 1151750, at *3–*4 (S.D. Fla. Apr. 18, 2025). As Choice explains below, those cases' holdings control here.

      **i.   Plaintiff Does Not Plead Choice's "Participation in a Venture"**

Central to a beneficiary claim is the defendant's alleged "participation in a venture." 18 U.S.C. § 1595(a). In the context of a near identical suit against hotel franchisors, the Eleventh Circuit construed this language to require allegations that a "franchisor[] took part [*i.e.*, participated] in a common undertaking or enterprise involving risk and potential profit [*i.e.*, a venture]." *Red Roof*, 21 F.4th at 725; *see Riti*, 2024 WL 505063, at *3 (applying same definition to hotel owner/operator).[19]

The Court of Appeals then applied this definition to allegations that the franchisor defendants had rented rooms to traffickers, investigated individual hotels, monitored online reviews, and

---

[18] A further problem with Plaintiff's claim is that she does not plead any impact on interstate commerce, as is required under § 1591. *See Rivera*, 558 F. App'x 974–75.

[19] In adopting this construction, the Eleventh Circuit distinguished the definition of "participation in a venture" applicable to beneficiary claim from the definition applicable to a perpetrator claim, which draws on the criminal definition laid out in § 1591(e)(4). *See Red Roof*, 21 F.4th at 724 (observing that criminal definition applies only "[i]n this section") (citation and internal quotation marks omitted).

controlled the training of hotel staff. *See Red Roof*, 21 F.4th at 726–27. The Court concluded that while "[t]hese allegations may suggest that the franchisors financially benefitted from renting hotel rooms to the . . . traffickers," "they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures." *Id.* At core, the Eleventh Circuit concluded, the franchisors may have observed signs of trafficking, "[b]ut observing something is not the same as participating in it." *Id.* at 727; *see Riti*, 2024 WL 505063, at *4 (same); *see also Doe #1 v. Apple, Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) ("[A]lthough a formal business relationship is not necessary to be a participant in a venture, something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture.").

The holds in *Red Roof* and *Riti* require dismissal here. By her own words, Plaintiff's basic theory is that employees of the Hotel—who, again, were not employed by Choice—"essentially ignored what was going on or looked the other way." Compl. ¶ 55; *see also id.* at ¶ 174. This is precisely the kind of claim that both *Red Roof* and *Riti* rejected. Indeed, this Court recently applied that same reasoning to dismiss a case with much stronger allegations (involving forced intercourse with hotel staff). *See A.L.*, 2025 WL 1151750, at *1.[20] As the Court properly explained, "Plaintiff's alleged abuse at the hands of hotel staff may suggest that her trafficker was in cahoots with some unknown staff, it does not suggest a venture existed between Plaintiff's trafficker and the *hotel*—the named party." *Id.* at *3 (emphasis in original); *see N.G.*, 2025 WL 1332210, at *2. That has particular force here because Choice is a franchisor, and neither employed nor controlled the Hotel's employees. *See R.C. v. Choice Hotels Int'l, Inc.*, No. 23-cv-00872, 2024 WL 1443412, at *3 (N.D. Ohio Apr. 2, 2024) (observing the franchisors are "several steps removed from daily hotel operations").

Plaintiff's claim thus rests entirely on the view that Choice can be held liable for failing to halt her trafficking. But, as discussed above, that position is widely (and correctly) rejected as inconsistent with the text of the statute.[21] Nor has Plaintiff even defined the membership of the

---

[20] This can be contrasted with Plaintiff's allegations regarding her relationship with the Hotel's manage. *See* Compl. ¶¶ 96–102.

[21] *See A.D.*, 2023 WL 2991042, at *4 ("The Complaint . . . fault[s] Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture.");
*(footnote continued on following page ...)*

relevant "venture," instead just referencing "the sex trafficking venture" operated by her trafficker. *E.g.*, Compl. ¶¶ 53, 56, 58, 110. Notably, Plaintiff only identifies Hotel staff—and not Choice—as having interacted with her trafficker and his associates. "Without direct contact, there can be no direct liability." *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-cv-00871, 2024 WL 1429114, at *4 (N.D. Ohio Apr. 2, 2024).[22]

Plaintiff has failed to establish that Choice participated in any venture that trafficked her. That calls for dismissal of her beneficiary claim.

### ii.   Plaintiff Fails to Plead Choice's Knowledge

A beneficiary claims requires allegations that "the defendant had constructive or actual knowledge that the [venture] violated the TVPRA *as to the plaintiff*." *Red Roof*, 21 F.4th at 726 (emphasis added). Accordingly, Plaintiff's references to Choice's general, industry-level knowledge of trafficking are insufficient. *See, e.g.*, Compl. ¶¶ 75–76; *see S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (franchisors' "general[] aware[ness] that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess'"); *E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. Jan. 4, 2021) ("General knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff.") (citation and internal quotation marks omitted).

---

*C.C.*, 2022 WL 467813, at *4 (dismissing TVPRA claims and noting that a hotel's failure to identify and prevent trafficking is not tantamount to "participation in a venture" under the TVPRA); *B.M.*, 2020 WL 4368214, at *7 ("To be clear, the Court does not read section 1595 of TVPRA requiring hotels or their franchisors to affirmatively stop sex trafficking"); *A.B.*, 455 F. Supp. 3d at 182 ("We disagree with [plaintiff] to the extent she seeks us to find Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties as businesses who financially benefit from trafficking through room rentals. We do not read the Act as requiring hotels . . . to affirmatively stop the trafficking.").

[22] *See S.C. v. Wyndham Hotels and Resorts, Inc.*, No. 1:23-cv-00871, 2024 WL 2186173, at *3 (N.D. Ohio May 15, 2024) ("[T]here can be no participation in a venture unless there is some 'interaction with that venture.' [Plaintiff] did not present evidence that Defendants interacted with [her] traffickers. Nor has [plaintiff] explained how Defendants could have been part of a venture with S.C.'s traffickers without interaction with the traffickers.").

[23] Rather, Plaintiff must show that Choice "'knew or should have known' about *her* trafficking." *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-CV-00871, 2024 WL 277117, at *1 (N.D. Ohio Jan. 25, 2024) (emphasis added).[24]

Plaintiff fails to do this. Instead, she offers a list of indicators of trafficking that she claims should have alerted Choice to her trafficking. *See* Compl. ¶ 174. Of course, those indicators were not observed by Choice, but by Hotel staff, and there is no allegation that Hotel staff ever communicated these observations to Choice. *See supra* at 8. In any event, numerous courts have rejected that still starker indicia are probative of knowledge, explaining that such indicators are equally consistent with prostitution, rather than trafficking. *See, e.g.*, *B.J.*, 2023 WL 3569979, at *5–*6 (finding no "actual or constructive knowledge of . . . participation in a TVPRA-violating venture" when "housekeeping staff observed [plaintiff's] buyers violently attack her" and "witnessed a buyer swiftly depart [plaintiff's] room in a state of complete undress" because "[s]uch allegations . . . are equally consistent with criminal conduct other than sex trafficking, e.g., prostitution"); *E.S.*, 510 F. Supp. 3d at 428 (holding plaintiff failed to allege defendants' knowledge despite claiming, *inter alia*, that plaintiff used fake IDs to check in, plaintiff's room would leave trash cans full of items associated with sexual activity, there was significant foot traffic, and plaintiff's room would call for extra towels); *42 Hotel Raleigh*, 2024 WL 631482, at *466 (finding allegations that there was "heavy foot traffic," plaintiff's "rooms were paid for in cash," and hotel staff knew trafficker by his "pimp name" and saw him in the hallway and parking lot as insufficient to allege knowledge); *Doe #9*, 2021 WL 1186333, at *2 (finding insufficient allegations that trafficker used plaintiff's identification for booking rooms and trafficker stood next

---

[23] *See A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1026 (D. Or. 2021) (noting that "general knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff"); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 706 (E.D. Mich. 2020) ("[T]hese allegations that Defendants were generally aware of sex trafficking in the hotel industry and at some properties operating under their brand names fall short of establishing that Defendants knew or should have known of sex trafficking by the ventures in which they purportedly participated.").

[24] *See Doe #9 v. Wyndham Hotels & Resorts*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 20, 2021) (complaint "must" allege facts "sufficient to establish that the defendant knew or should have known about the trafficking of the plaintiff in particular—not about trafficking occurring on the premises in general"); *H.G.*, 489 F. Supp. 3d at 704 ("a plaintiff must plead facts showing that the defendant knew or should have known of sex trafficking *by the particular venture in which the defendant allegedly participated*").

to plaintiff in the lobby); *S.J.*, 473 F. Supp. 3d at 150–51 (finding insufficient, *inter alia*, allegations that preteen plaintiff had "numerous signs of physical abuse" seen by hotel staff, wore "inappropriate attire for her age," "was commonly ferried to and from the hotels with a paper bag over her head," and was "forced . . . to perform sexual acts on certain hotel staff").[25]

Plaintiff has not plausibly alleged that Choice knew or could be construed as having knowledge of her alleged trafficking based on these alleged facts.

### iii.   Plaintiff Fails to Plead that Choice "Knowingly Benefitted"

Finally, the TVPRA also requires Plaintiff to allege that Choice "knowingly benefitted" from its participation in the pleaded venture. *See Red Roof*, 21 F.4th at 726; 18 U.S.C. § 1595(a) ("whoever knowingly benefits . . . from participation in a venture"). As the Eleventh Circuit has explained, "allegations of financial benefit are not sufficient to establish that the defendant participated in a sex trafficking venture." *Riti*, 2024 WL 505063, at *4. Plaintiff's conclusory allegation that Choice, in a manner indistinguishable from co-Defendants, benefitted from the rental of rooms is insufficient to meet this element. *See* Compl. ¶ 172.

### d.   Count III: Plaintiff Has Failed to Timely and Plausibly Plead Premises Liability

Plaintiff's third claim is for common law premises liability, presumably under Florida common law (though she does not specify). *See* Compl. ¶¶ 182–200. That claim fails both as to its timeliness and substance.

### i.   Plaintiff's Claim is Time Barred

Under Florida Statute § 95.11(3)(o), causes of action not otherwise specified within that statute are subject to a four-year statute of limitations.[26] Plaintiff alleges that her trafficking ended on Dec. 31, 2020, *see* Compl. ¶ 184, and her Complaint was filed on April 21, 2025, several months after the close of the limitations period. Her claim is, therefore, untimely. *See Brady v. Walsh*, No. 2:21-cv-763-SPC-MRM, 2022 WL 2104292, at *3 (M.D. Fla. June 10, 2022).

---

[25] Even if Plaintiff could plead Choice's knowledge of prostitution (which she does not and cannot), that is "not necessarily knowledge of sex trafficking by force or fraud as defined in 18 U.S.C. § 1591." *42 Hotel Raleigh*, 2024 WL 631482, at *472.

[26] It bears noting that while Plaintiff styles her action as one for premises liability, it sounds more in negligence and should be subject to the two-year statute of limitations applicable to such claims. *See* Fla. Stat. § 95.11(5)(a).

Plaintiff does not claim that any exceptions apply to the statute of limitations, instead only alleging that she "had repressed her memory of her sex trafficking at [the Hotel]." Compl. ¶ 185. But such vague allegations of trauma are insufficient to extend the statute of limitations. *See, e.g.*, *Catelyn H. v. G6 Hospitality, LLC*, No. 2:24-CV-939, 2025 WL 929032, at *3 (D. Nev. Mar. 26, 2025) ("Plaintiff has not shown that she is entitled to equitable tolling on her claim. She alleges trauma prevented her from timely filing, but she fails to illustrate extraordinary circumstances."); *C.C. v. Rashid*, No. 2:23-CV-02056-GMN-BNW, 2024 WL 5200543, at *8 (D. Nev. Dec. 20, 2024).

### ii.   Plaintiff's Claim Fails on the Merits

Plaintiff's premises liability claim also fails on the merits. The components of a claim for premises liability are all the standard elements of negligence—"duty, breach, harm, and proximate cause"—and the "additional elements" of the "defendant's possession or control of the premises and notice of the dangerous condition." *Lisanti v. City of Port Richey*, 787 So.2d 36, 37 (Fla. 2d DCA 2001). There are manifold problems with Plaintiff's allegations.

### 1.   Choice Did Not Control the Premises

At the outset, Choice did not have either possession or control over the premises of the Hotel as the franchisor. *See* Compl. ¶ 27. Though Plaintiff has sought to treat all Defendants as an undifferentiated group, *see supra* at 5–6, she pleads no facts to show that *Choice*—which she recognizes as the franchisor, Compl. ¶ 27—had any control or possession of the Hotel or its premises. *See Madison v. Hollywood Subs, Inc.*, 997 So. 2d 1270, 1270 (Fla. 4th DCA 2009) (no premises liability where "day to day operations were within the sole control of the franchisee" and the "only control provided by the [franchise] agreement was to insure uniformity in the standardization of products and services offered by the restaurant"). That is fatal to her claim. *See Conner v. Marriott Hotel Servs., Inc.*, 559 F. Supp. 3d 1305, 1309 (M.D. Fla. 2021) ("The Complaint fails to allege any facts plausibly supporting an inference that Premier had possession or control over the premises.").

### 2.   Choice Did Not Breach Any Duty as to Plaintiff

Even assuming that Choice did have control over the Hotel's premises, Plaintiff has not shown that Choice breached any duty as to her. Under Florida law, "[i]t is the general rule, a crystallization of common sense, that an owner of premises has no duty to protect . . . a person from criminal attack and will not be held responsible for the willful criminal act of a third person which could not be foreseen or anticipated." *Doe v. U.S.*, 718 F.2d 1039, 1042 (11th Cir. 1983). Under that doctrine, a "hotel is not the insurer of the safety" of others. *Hardy v. Pier 99 Motor Inn*, 664 So. 2d

1095, 1097 (Fla. 1st DCA 1995). Thus, even assuming Plaintiff was a public invitee to the Hotel,[27] the landowner would only owe her a "'duty to maintain the premises in a reasonably safe condition, and to warn of any concealed peril' that the owner or occupier 'should have known through the exercise of reasonable care.'" *Norris v. Rodriguez*, 378 So. 3d 661, 664–65 (Fla. 2d DCA 2023) (quoting *Freeman v. BellSouth Telecomm., Inc.*, 954 So. 2d 45, 46 (Fla. 1st DCA 2007)); *see Banosmoreno v. Walgreen Co.*, 299 F. App'x 912, 913 (11th Cir. 2008) (duty only arises for criminal attacks that are "reasonably foreseeable").

Whether a criminal act was "reasonably foreseeable" can be shown in two ways: the "'proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron,'" or the "'proprietor knew or should have known of the dangerous propensities of a particular patron.'" *Banosmoreno*, 299 F. App'x at 913 (quoting *Stevens v. Jefferson*, 436 So. 2d 33, 34 (Fla. 1983)). As to the first, Plaintiff speaks generally of "dangerous conditions" on the premises of the Hotel, *see, e.g.*, Compl. ¶¶ 194, 196, but does not explain what those were. Tellingly, Plaintiff does not identify any prior criminal acts at the Hotel which would have put Choice on notice of any such risks.

As to the second means of showing foreseeability, Plaintiff has not identified how Choice could possibly have known of the risks associated with her trafficker. However, those risks would have been apparent to Plaintiff herself. Plaintiff admits that prior to her arrival at the Hotel she had been working as an escort with her trafficker acting as her pimp. *See* Compl. ¶ 35. In addition, while Plaintiff's allegations regarding timing are unclear, it appears that her trafficking began prior to her arrival at the Hotel. *See id.* ¶ 36. In such circumstances, Plaintiff was already aware of the peril she faced from her trafficker, regardless of what Choice could have done.

\* \* \* \* \*

As Choice did not own or control the Hotel's premises and Plaintiff's injury was not foreseeable, the third claim should be dismissed.

### III.     Conclusion

For all the reasons given above, Choice respectfully requests that the Court dismiss Plaintiff's Complaint.

---

[27] Though Plaintiff claims she was present as an "invitee," Compl. ¶ 186, she does not allege that she was invited onto the premises, as is required for that status. *See Fisher v. United States*, 995 F.3d 1266, 1270 (11th Cir. 2021).

Respectfully submitted this 3rd day of June, 2025.

/s/ Marisa R. Dorough
Sara M. Turner
(*Pro hac vice* application forthcoming)
smturner@bakerdonelson.com
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**
420 20th Street North, Suite 1400
Birmingham, Alabama 35203
Phone: (205) 328-0480

Marisa Rosen Dorough, Esq.
Florida Bar No. 73152
mdorough@bakerdonelson.com
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**
200 South Orange Avenue, Suite 2050
Orlando, Florida 32801
Phone: (407) 422-6600

*Attorneys for Defendant Choice Hotels International, Inc.*