**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:25-CV-60771**

S.W.,

      Plaintiff,

vs.

TROPICAL PARADISE RESORTS, LLC, a
Florida limited liability company, d/b/a
RODEWAY INN & SUITES; EZ
HOSPITALITY, LLC, a Florida limited
liability company; and CHOICE HOTELS
INTERNATIONAL, INC., a Delaware
corporation,

      Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff, S.W., (hereinafter "S.W." or "Plaintiff"), by and through her undersigned

attorneys, hereby files this Complaint against TROPICAL PARADISE RESORTS, LLC d/b/a

RODEWAY INN & SUITES (hereinafter referred to as "Tropical Paradise"), EZ HOSPITALITY,

LLC (hereinafter referred to as "EZ"), and CHOICE HOTELS INTERNATIONAL, INC.

(hereinafter referred to as "Choice Hotels"), and alleges as follows:

### INTRODUCTION

1. This action for damages is brought by the Plaintiff, S.W., a survivor of sex

trafficking, under the federal Trafficking Victims Protection Reauthorization Act of 2008, 18

U.S.C. §1595 (hereinafter "TVPRA"), as well as other Florida state laws as identified herein.

2. At all times material to this action, Tropical Paradise, EZ and Choice Hotels, by

and through their owners, operators, managers, employees, agents, and servants, enabled the sex

trafficking and victimization of S.W. starting in 2019, in violation of both common law and

statutory law, including the TVPRA.

3.      Human sex trafficking is prevalent at hotels and motels throughout the United States and globally due to many factors, including but not limited to, ease of access for buyers, the ability to pay in cash (non-traceability), and the ability to maintain anonymity, privacy and discretion.

4.      At all material times, Tropical Paradise, EZ and Choice Hotels had knowledge of the prevalence of sexual trafficking at hotels and motels throughout the United States and globally, including the factors identified in the preceding paragraphs, yet Defendants failed to prevent and/or take steps to prevent this horrific criminal conduct from occurring at their hotel, so that it could continue earning a profit at the expense of human life, human rights, and human dignity.

5.      As part of its knowledge of sex trafficking, Tropical Paradise, EZ and Choice Hotels knew or should have known that sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, forced drug use and other forms of coercion to compel adults and children to engage in commercial sex acts against their will at these hotels and motels.

6.      Plaintiff, S.W.'s, sex traffickers, or 'pimps', chose the subject Rodeway Inn & Suites as a venue to conduct their sex trafficking activities.

7.      The passage of the TVPRA in 2008, as well as countless other legislative initiatives, including §509.096, *Fla. Stat.*, put Tropical Paradise, EZ and Choice Hotels on notice of the high likelihood of these illegal acts occurring on their hotel premises, which, at a minimum, warranted Defendants and their owners, operators, managers, employees, agents and servants, to be all the more vigilant and proactive in preventing this conduct.

8.      Tropical Paradise, EZ and Choice Hotels and their owners, operators, managers, employees, agents and servants knew or should have known, based on a combination of well-

documented indicators, that sex trafficking and other criminal activity were occurring, and would continue to occur, at its premises as a result of its misfeasance and nonfeasance.

9.      At all material times, Tropical Paradise, EZ and Choice Hotels, individually and/or by their owners, operators, actual or apparent agents, servants and/or employees, aided, concealed, confined, benefitted and profited from sex trafficking and the criminal activity that was occurring at the subject Rodeway Inn & Suites, including as to Plaintiff, S.W.

10.     At all material times, Tropical Paradise, EZ and Choice Hotels, individually and/or by their owners, operators, actual or apparent agents, servants and/or employees, harbored human traffickers on its premises and/or failed to rectify the foreseeable risks of sex trafficking and other criminal activities that were occurring and continued to occur at the subject Rodeway Inn & Suites.

11.     At all material times, Tropical Paradise, EZ and Choice Hotels, individually and/or by their owners, operators, actual or apparent agents, servants and/or employees, failed to take steps to prevent dangerous conditions from existing at their premises, failed to ensure their premises were safe and secure from criminal conduct and failed to report suspicious conduct, such as human sex trafficking, occurring on their premises.

12.     As a result of each and every one of the Defendants' failures to act and their negligent operations as outlined in the Complaint, the subject Rodeway Inn & Suites became a vehicle for carrying out human trafficking, sex crimes and/or other unlawful conduct.

13.     Tropical Paradise, EZ and Choice Hotels profited from the room occupancy at their premises, which included rental fees, increased property value, food and beverage sales on site and/or ATM fees, Plaintiff, S.W., was being exposed to continuous and repeated dangerous conditions at the subject Rodeway Inn & Suites as a sex slave that resulted in her confinement, bodily injuries, emotional distress, mental harm and anguish from approximately 2019 to 2020.

14.     Before and during this period from 2019 to 2020, Tropical Paradise, EZ and Choice Hotels were on notice of the prevalence of sex trafficking on its premises, as well as at similarly situated hotels within Broward County, Florida, and Defendants failed to take adequate steps that would have prevented its occurrence.

15.     Before and during this period from 2019 to 2020, Tropical Paradise, EZ and Choice Hotels failed to implement sufficient educational and training programs on sex trafficking within their respective corporate chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject Rodeway Inn & Suites.

16.     Before and during this period from 2019 to 2020, Tropical Paradise, EZ and Choice Hotels knew or should have known that Plaintiff, S.W., was being trafficked at the subject Rodeway Inn & Suites and yet failed to act upon the obvious signs alerting them to the crimes taking place on their premises.

17.     Plaintiff, S.W., brings this action for damages against Tropical Paradise, EZ and Choice Hotels. Defendants, in violation of the TVPRA, knowingly benefited from a venture that they knew, or should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a) and (b), and which enabled, harbored, facilitated or financially benefited, or any combination of the foregoing, from a sex trafficking venture in which Plaintiff, S.W., was trafficked for sex, sexually exploited, and victimized in violation of the TVPRA.

18.     As a direct and proximate result of Tropical Paradise, EZ and Choice Hotels' willful blindness, negligence, facilitation, misfeasance, nonfeasance and/or consistent refusals to prevent human trafficking on their premises, the Plaintiff, S.W., was drugged, starved, sex trafficked, sexually exploited, physically abused, mentally abused, and victimized repeatedly at the subject

4

Rodeway Inn & Suites and other hotels, in violation of the aforementioned statutes as well as Florida state law.

19.     This action is also for common law premises liability.

## JURISDICTION AND VENUE

20.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States and this Court has supplemental jurisdiction over Plaintiff's claims that do not arise under federal law because each claim is "so related to claims in the action within [this Court's] original jurisdiction that they form part of the same controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a).

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action was brought.

## PARTIES

22.     At all times material to this complaint, Plaintiff, S.W., was a resident of Miami-Dade County, Florida.

23.     Plaintiff, S.W., is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

24.     Plaintiff, S.W., was sex trafficked at the Rodeway Inn & Suites located at 2440 West State Road 84, Fort Lauderdale, FL 33312 between 2019 and 2020.

25.     At all times material to this complaint, Defendant, TROPICAL PARADISE RESORTS, LLC is a Florida limited liability company doing business as Rodeway Inn & Suites with a principal address located at 2440 West State Road 84, Dania, FL 33312, and upon

information and belief was authorized to do, licensed to do, and doing business in the State of Florida as owner of the local Florida Rodeway Inn & Suites hotel at issue in this lawsuit, offering the subject Rodeway Inn & Suites hotel as a place of public lodging.

26.     At all times material to this complaint, Defendant, EZ HOSPITALITY, LLC is a Florida limited liability company with a principal address located at 2440 West State Road 84, Fort Lauderdale, FL 33312, and upon information and belief was authorized to do, licensed to do, and doing business in the State of Florida as manager and operator of the local Florida Rodeway Inn & Suites hotel at issue in this lawsuit, offering,  managing, and maintaining the subject Rodeway Inn & Suites hotel as a place of public lodging.

27.     At all times material to this complaint, Defendant, CHOICE HOTELS INTERNATIONAL, INC. is a Delaware limited liability company with a principal address located at 915 Meeting Street, Suite 600, North Bethesda, MD. Upon information and belief, it was authorized to do, licensed to do, and doing business in the State of Florida as the franchisor and branding/licensing entity for the Rodeway Inn & Suites brand. Choice Hotels licensed its brand, imposed operational standards, and exercised control over key aspects of the subject Rodeway Inn & Suites' operations, including but not limited to online reservations, employee training, and quality assurance protocols, and therefore held out the subject hotel as a branded public lodging under its national franchise system.

28.     As set forth above, at all times material to this complaint, Defendants Tropical Paradise, EZ and Choice Hotels collectively exercised ownership, management, operational, and/or branding control over the Rodeway Inn & Suites located at 2440 West State Road 84, Fort Lauderdale, FL 33312, by and through their respective agents, servants, and/or employees. Each Defendant played a distinct but coordinated role in operating and holding out the hotel as a public

lodging under the Rodeway Inn brand, a national hotel brand owned, operated, and franchised by Choice Hotels International, Inc.

## SEX TRAFFICKING UNDER FEDERAL LAW

29.     Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age." This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

30.     Sex trafficking ventures are prohibited by federal criminal law. Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590. The crime of slavery can be divided into two elements: the act and the means. The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

31.     Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long recognized and familiar atrocity.

32.     Pursuant to 18 U.S.C. §1591(a) and (b), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion *or* from a person under the age of 18 years old are guilty of sex trafficking. This includes, at a minimum, *both* the 'trafficker' who recruit, harbor, transport, and provide individuals for forced commercial sex work *and* the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

**STATEMENT OF FACTS**

### I.   S.W. and Her Sex Trafficker, Steven Charles Joseph

33.   In approximately 2004, S.W., then 12 years old, was introduced to the person who would eventually become her sexual trafficker – Steven Charles Joseph (hereinafter "Mr. Joseph"). Initially, S.W. knew Mr. Joseph as a school friend. S.W. later reconnected with Mr. Joseph in approximately 2014. At that time, they worked together on Mr. Joseph's music, music videos and YouTube videos. S.W. was not aware that Mr. Joseph was trafficking or "pimping" at the time although he did make jokes about it and mention it in his music.

34.   S.W. and Mr. Joseph lost touch again as S.W. moved to Naples. They got into contact again in approximately 2019, via Instagram after S.W. relocated back to Miami from Naples.  Mr. Joseph reached out to S.W. to work on music together again.

35.   During this time, S.W. was already "in the life" and had previously worked as an escort. Mr. Joseph mentioned wanting to work with her in that capacity and list her on websites, such as Independent Girls, Eros, and Adult Search. When S.W. agreed, Mr. Joseph began listing S.W. on those websites for Johns under the names Lili 2 Cups, Gabriela Diaz, and Hazel. Initially, S.W. agreed to Mr. Joseph being her "pimp," and Mr. Joseph paid S.W. for the sex work she performed.

36.   However, S.W.'s relationship with Mr. Joseph quickly changed. From this point forward until the end of 2020, Mr. Joseph held S.W. captive through beatings, threats of violence, isolation, withholding of food, and other cruel acts that broke S.W.'s will, as he used her for his sex trafficking operation at the subject Rodeway Inn & Suites, as well as other hotels in Broward County, Florida, for upwards of one year.

37. Mr. Joseph stopped paying S.W. and began to beat her and threaten her family when she did not comply. Mr. Joseph would often say that S.W.'s young niece was "not safe" and that her brothers "knew not to mess with him" because of his connections to and involvement with the local Haitian gang, Zoe Pound.

38. Mr. Joseph also threatened S.W. with her own life. On multiple occasions, Mr. Joseph physically beat S.W., held S.W. at gunpoint, and pistol-whipped S.W.

39. Mr. Joseph also physically assaulted S.W. in front of many of his Zoe Pound gang members, who would never intervene. The only time Mr. Joseph's Zoe Pound gang members intervened was on one occasion when Mr. Joseph did not pay Zoe Pound their share of S.W.'s sex work.

40. Additionally, Mr. Joseph had complete control and ownership of S.W.'s life. She was not allowed to go anywhere without Mr. Joseph or without Mr. Joseph's express permission. Mr. Joseph had access to S.W.'s real-time location through smartphone location sharing and monitored her movements, often appearing at destinations she visited without his approval.

41. S.W. was not allowed to visit her family often due to the bruises on her body from Mr. Joseph's beatings. The few times she was allowed to visit her family, S.W. was never allowed to go without Mr. Joseph being present.

42. During this period of time, Mr. Joseph forced S.W. to perform sexual acts on countless individuals who sought sexual encounters in exchange for a fee at the subject Rodeway Inn & Suites.

43. S.W. was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and false imprisonment at the subject Rodeway Inn & Suites.

44. Not only did Mr. Joseph forcibly prostitute S.W. at the subject Rodeway Inn & Suites, Mr. Joseph recorded a video of him raping S.W. at the subject Rodeway Inn & Suites without her knowledge and consent and posted it on the Internet.

45. Mr. Joseph controlled everything—the money, food, clothes, who S.W. interacted with, sanitary supplies, toiletries, and when she bathed. He made S.W. beg for food, clothes, and toiletries, basic human needs.

46. When S.W. was hungry, Mr. Joseph often ordered food for himself and others, but would withhold food from S.W. claiming she was too fat and too big to eat.

47. Mr. Joseph charged the "Johns" – the individuals obtaining, soliciting, or patronizing forced commercial sex work – $500.00 per hour for sexual activity with S.W. at the subject Rodeway Inn & Suites. Johns paid Mr. Joseph or S.W. in cash or via CashApp or PayPal directly to their accounts. After S.W. collected the money and forcibly performed the sex acts for the John, Mr. Joseph would take all of the money that S.W. earned for him and not pay S.W. a single penny for the multiple forced sexual encounters.

48. Mr. Joseph paid in cash or via card for the hotel rooms that were used to forcibly prostitute S.W. and other victims of sex trafficking. Mr. Joseph would arrive to the subject Rodeway Inn & Suites with S.W. and sometimes upwards of twenty (20) other sex trafficking victims, who were scantily dressed.

49. Additionally, Mr. Joseph partnered with other local "pimps" to host sex parties at the lobby of the subject Rodeway Inn & Suites and its adjoining restaurant Marina 84 Sports Bar & Grill, where Johns were then taken into the hotel rooms by S.W. and other victims of sex trafficking. Multiple staff members of the subject Rodeway Inn & Suites were present at these

parties and all were aware of the purpose of these parties – to make as much money as possible from the "Johns."

50. At the sex parties, S.W. and the other sex trafficking victims were dressed very nicely. Mr. Joseph and the other local "pimps" would rent out the subject Rodeway Inn & Suites' adjoining restaurant Marina 84 Sports Bar & Grill for food and drinks. The parties were advertised on multiple websites, so the Johns knew where to go for the sex parties. S.W. and the other sex trafficking victims would take the Johns from the restaurant into the lobby of the subject Rodeway Inn & Suites, and then rented rooms to forcibly perform sex acts for the "Johns."

51. S.W. and Mr. Joseph's other sex trafficking victims would also frequent Marina 84 Sports Bar & Grill to pick up and/or wait for Johns regularly, even when they were not hosting a sex party.

52. S.W. was forced into sexual encounters with upwards of five (5) to six (6) Johns per night, and these Johns would enter and leave the subject Rodeway Inn & Suites in revolving door fashion with no luggage or personal items to suggest that they were guests of the hotel.

53. Mr. Joseph operated the sex trafficking venture out of the same hotel rooms at the subject Rodeway Inn & Suites for multiple days or weeks in succession. Oftentimes, Mr. Joseph also booked "day rooms" for multiple hours.

54. Mr. Joseph controlled S.W. through physical and psychological manipulations, and by punishing her with physical violence when she did not conform to his demands. Mr. Joseph shot S.W. with a taser gun on multiple occasions when she refused to comply with his orders.

55. Mr. Joseph transported S.W. to and from various hotels and motels, including the subject Rodeway Inn & Suites, while the employees of those hotels, including Rodeway Inn & Suites, essentially ignored what was going on or looked the other way.

11

56.     On numerous occasions at the subject Rodeway Inn & Suites, Mr. Joseph routinely escorted S.W., who was visibly drunk and scantily clothed, in plain view of the front desk after Mr. Joseph paid in cash for the rooms at Rodeway Inn & Suites out of which the sex trafficking venture was housed.

57.     Mr. Joseph befriended the staff and security personnel that worked at the subject Rodeway Inn & Suites, and the hotel staff knew that Mr. Joseph was forcibly prostituting S.W. on the premises.

58.     On one occasion, Israel "Izzy" Fintz, the hotel manager and Title Manager of Defendant EZ, abruptly entered the room out of which a sex trafficking venture was being conducted by S.W. to complain of marijuana smell and demand additional payment for the room due to the smell.

59.     S.W. observed some of the same hotel staff over the course of time she was trafficked for sex at the subject Rodeway Inn & Suites, and the hotel staff did nothing to stop or prevent the ongoing and obvious torture S.W. was enduring while being regularly trafficked for sex at Rodeway Inn & Suites.

## II.     Defendants' Duty of Care to Patrons

60.     Chapter 509 of the Florida Statutes imposes legal responsibilities upon hotels, such as the subject Rodeway Inn & Suites, which was owned by Tropical Paradise, managed and operated by EZ, and branded and franchised under the control of Choice Hotels International, Inc. to take action to protect people. In Florida, hotels are "innkeepers" and owe patrons a special duty of care.

12

61.     The subject Rodeway Inn & Suites, owned by Tropical Paradise, managed and operated by EZ, and franchised and branded under the control of Choice Hotels International, Inc., is a public lodging establishment pursuant to Chapter 509 of the Florida Statutes.

62.     Tropical Paradise owns, EZ manages and operates, and Choice Hotels International, Inc. franchises and exercises branding and operational control over the subject public lodging establishment for the purpose of making a profit and are each, in their respective capacities, responsible for maintaining the premises.

63.     The premises of the subject Rodeway Inn & Suites includes a common space and private rooms, as well as a parking lot that abuts to a sidewalk and/or land. At all material times, Tropical Paradise, as owner, EZ, as manager and operator, and Choice Hotels, as franchisor exercising branding and operational control, had possession, custody, or control of these common spaces, private rooms, parking lots and any sidewalk and/or land abutting thereto, as it applies to their business of providing public lodging at the subject Rodeway Inn & Suites.

64.     The subject Rodeway Inn & Suites abuts to pathways, parking lots and/or driveways, and Defendants were or should have been aware that these neighboring parking lots, pathways and/or other driveways were being used by their patrons to traverse to and from Rodeway Inn & Suites, thereby expanding the zone where Tropical Paradise, EZ and Choice Hotels were to have prevented foreseeable risks of injury to the Plaintiff, S.W.[1]

65.     Aside from its special duty to patrons and guests at the subject Rodeway Inn & Suites, such as Plaintiff, S.W., at all material times, Defendants had one of the highest obligations

---

[1] If customers or clients are invited to use a convenient parking lot then the business owner may be liable for injuries they sustain on that lot even if it is not technically within the business' property line. *See Gutierrez v. Dade County School Bd.*, 604 So. 2d 852, (Fla. 3d DCA 1992).

to protect their guests from known or anticipated dangers, which includes sex trafficking and illegal enterprises.

66.     At all relevant times, Tropical Paradise, EZ and Choice Hotels were aware of and/or should have been aware of their roles and responsibility in human sex trafficking.

**III.   Defendants' Knowledge of the Prevalence of Sex Trafficking at their Hotel and their Participation in the Sex Trafficking Industry**

67.     At all material times, Defendants, along with their respective agents, employees, and representatives responsible for providing public lodging at the subject Rodeway Inn & Suites, have long profited from the reputations of hotels, including Rodeway Inn & Suites, as havens of privacy and discretion for the offending, including the criminals that trafficked Plaintiff S.W.

68.     At all material times, Defendants, along with their respective agents, employees, and representatives responsible for providing public lodging on its premises, knew or should have known that their hotel, Rodeway Inn & Suites, offered anonymity and non-traceability, making it an ideal venue for crime, drugs and sex trafficking in particular.

69.     At all material times, Defendants, along with their respective agents, employees, and representatives responsible for providing public lodging on its premises, knew or should have known that hotels are the top-reported venue where sex trafficking acts occur and that traffickers were using their hotel, Rodeway Inn & Suites, as a hub for their sexual trafficking operations.

70.     At all material times, Defendants, along with their respective agents, employees, and representatives responsible for providing public lodging on its premises, knew or should have known that traffickers were harboring, raping and assaulting victims at their hotel, Rodeway Inn & Suites, and were forcing them to engage in "in call" services, wherein buyers ("Johns") would come to the hotel solely to purchase sex from these victims, as well as "out call" services, wherein

the buyer would rent a hotel room and the trafficker would deliver the victim to the buyer's room to complete the sordid transaction.

71.     At all material times, Defendants, by and through their respective actual or apparent agents, servants, and/or employees, witnessed manifestations of sex trafficking and commercial exploitation taking place on their public lodging premises, through various indicators that traffickers and their victims exhibit during their stay at their hotels, including Rodeway Inn & Suites.

72.     At all material times, Defendants, by and through their respective actual or apparent agents, servants, and/or employees, were on notice of repeated incidences of sex trafficking occurring on its hotel premises, yet they failed to take the necessary actions to prevent sex trafficking from taking place on their premises.

73.     At all material times, Defendants, by and through their respective actual or apparent agents, servants, and/or employees, knew or should have known that pimps and sex traffickers used their hotel to facilitate the trafficking of women for sex.

74.     At all material times, Defendants, by and through their respective actual or apparent agents, servants, and/or employees, had the ability and the greatest reach to prevent, identify and thwart sexual exploitation at its hotels.

75.      Multiple statutes and initiatives starting in 1997, have informed, mandated, called for, and suggested hotel owners, operators, managers, and franchisors to implement effective safeguards to mitigate the risk that human trafficking will occur at or involve their premises and personnel. This includes Tropical Paradise as owner, EZ as manager and operator, and Choice Hotels as franchisor and branding/licensing entity, all of whom, by and through their respective

actual or apparent agents, servants, and/or employees, were responsible for adopting and enforcing such anti-trafficking measures at the subject Rodeway Inn & Suites.

76.     Prior to the trafficking of Plaintiff S.W., voluminous data, step-by-step solutions and well-researched manuals published by anti-trafficking groups were available to Defendants and/or through their actual or apparent agents, servants, employees and/or staff in every position, to help them identify the signs of human sex trafficking and stop it.

77.     At all material times, Defendants, by and through their respective actual or apparent agents, servants, and/or employees, had a legally imposed duty to ensure that appropriate measures were in place at the Rodeway Inn & Suites to prevent sex trafficking. This duty included timely implementing and enforcing reasonable policies, training, education, and security protocols aimed at detecting and deterring trafficking activity on the premises.

78.     At all material times, the actual or apparent agents, employees, or servants of Defendants were uniquely situated to identify and report suspicious activity on their hotel property because, from check-in to check-out, there were numerous indicators exhibited by the traffickers and their sex trafficking victims, including S.W., during their stay at Rodeway Inn & Suites.

79.     Had Tropical Paradise, EZ, and Choice Hotels properly trained their actual/apparent agents, employees, and/or servants and/or implemented an anti-human trafficking protocol and/or provided other reasonable security measures, Defendants could have prevented the trafficking of persons on its public lodging premises.

80.     Signs of sex trafficking at a hotel, and signs which were occurring at the subject Rodeway Inn & Suites, include, but are not limited to, the following: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, renting two rooms next door to each other, declining housekeeping service for several consecutive days, significant foot traffic in and

out of rooms, men traveling with multiple unrelated women, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.

81.    Tropical Paradise, EZ, and Choice Hotels, by and through their actual or apparent agents, servants, employees and/or staff, were aware of and/or should have been aware of a number of warning signs occurring on their premises that indicated the presence of human trafficking, including but not limited to:

   a.    persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

   b.    persons lacking freedom of movement or being constantly monitored;

   c.    persons having no control over or possession of money or ID;

   d.    persons dressing inappropriately for their age or having lower quality clothing compared to others in their party;

   e.    persons requesting room or housekeeping services (additional towels, new linens, etc.), but denying hotel staff entry into the room;

   f.    the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

   g.    persons extending stay with few or no personal possessions in the room;

   h.    excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion);

   i.    the same person reserving multiple rooms;

   j.    a room being rented hourly, less than a day, or for an atypical extended stay;

   k.    attempts of persons to sell items to or beg from patrons or staff;

17

l.      cars in the parking lot regularly parked backward, so the license plates are not visible;

m.      loitering and solicitation of male patrons;

n.      individuals waiting at a table or bar and then being picked up by a male (trafficker or customer);

o.      persons asking staff or patrons for food or money; and

p.      persons taking cash or receipts left on tables.

82.      Had Tropical Paradise, EZ and Choice Hotels educated and/or trained their actual or apparent agents, servants, employees and/or staff regarding human trafficking and their warning signs, Defendants' actual or apparent agents, servants, employees and/or staff would have been more aware of human trafficking taking place at their hotel and could have, at best, prevented it from happening or, at worst, been more willing to report it when it happened.

83.      Tropical Paradise, EZ and Choice Hotels could have and should have adopted policies and procedures related to human trafficking and made anti-human trafficking resources readily available to their actual or apparent agents, servants, employees and/or staff, but Defendants did not.

84.      Tropical Paradise, EZ and Choice Hotels could have and would have mandated that all of their actual or apparent agents, servants, employees and/or staff complete anti-human trafficking training, but Defendants did not.

85.      Tropical Paradise, EZ and Choice Hotels could have and should have encouraged all of their actual or apparent agents, servants, employees and/or staff to report suspected incidents of human trafficking when observed on their hotel properties, but Defendants did not.

86.     Tropical Paradise, EZ and Choice Hotels could have and should have developed and maintained relationships with law enforcement regarding appropriate and timely responses to suspected incidents of human trafficking on its hotel property, but Defendants did not.

87.     Tropical Paradise, EZ and Choice Hotels could have and should have posted antihuman trafficking awareness and informational materials in common areas and guest rooms at their hotels to help eliminate human trafficking, but Defendants did not.

88.     Tropical Paradise, EZ and Choice Hotels could have and should have developed and maintained relationships with non-profit service providers in the field of appropriate human trafficking prevention training for hotel staff, but Defendants did not.

89.     Tropical Paradise, EZ and Choice Hotels failed to take effective preventative measure at its hotel in spite of the indicia of human trafficking and effective preventative measures being widely known and available to them; Defendants simply elected not to undertake in preventative policies and practices.

90.     The motivation behind Tropical Paradise, EZ and Choice Hotels' ongoing willful blindness and ongoing failure to act is plain and simple – limitless corporate greed. Defendants ignored all of the signs of and/or solutions to human trafficking out of an unfettered fealty to its profit margins and a corresponding complete disregard for the value of human life.

91.     By repeatedly failing to heed the call or repeatedly failing to execute its own policies, Tropical Paradise, EZ and Choice Hotels facilitated the sexual trafficking crimes at their hotel, content to direct their efforts solely to profit and the bottom line.

92.     Had Tropical Paradise, EZ and Choice Hotels implemented anti-human trafficking measures at their hotel, this undertaking would have been in conflict with Defendants' revenue objective, which sought constant and full hotel occupancy.

93.     Upon information and belief, Tropical Paradise, EZ and Choice Hotels and/or through their agents, lobbied against antihuman trafficking policies at the local, state and federal government levels.

94.      Due to its failure to act, Tropical Paradise, EZ and Choice Hotels facilitated and enabled sex traffickers to use their hotel for sex trafficking, and traffickers and Johns continued to capitalize on the hotel's failure to timely and effectively act.

95.     Tropical Paradise, EZ and Choice Hotels' failure to prevent and stop sex trafficking and sexual exploitation at their hotel effectively makes Defendants accountable to victims of sex trafficking, including Plaintiff, S.W.

## IV.     Sex Trafficking Has Long Been Prevalent at Choice Hotels' Branded Properties, and Choice Hotels Has Known It

96.     Defendant Choice Hotels' actual knowledge is not limited to general awareness of the problem of sex trafficking in the hotel industry. Choice Hotels has also known, since well before Plaintiff S.W. was trafficked at the subject Rodeway Inn & Suites, that sex trafficking is endemic in its branded hotels specifically.

97.     Upon information and belief, Choice Hotels monitored criminal activity occurring at its branded hotels and was aware of activity indicating commercial sex trafficking or related crimes occurring at those branded hotels, including the Rodeway Inn & Suites.

98.     Countless tales of tragedy, which upon information and belief Choice Hotels knows about, establish the entrenched and pervasive nature of Choice Hotels role in providing a venue where sex trafficking has continued, unabated, for years. For example:

- In 2004, A Los Angeles County woman faces charges of running a brothel in a budget motel across the street from Disneyland after three immigrants told police they were smuggled into the country and forced into prostitution. Guest at the Econo Lodge, where the makeshift brothel was operated, can see the Disneyland

Hotel and a giant set of Mickey Mouse ears silhouetted on a roller coaster at California Adventure, Disneyland's sister attraction.[2]

- In 2012, A nationwide sex trafficking ring run by a violent pimp and his associates used Backpage.com to solicit customers for prostitutes as young as age 17, advertising the women as "smokin' hot babes," according to a federal indictment recently unsealed in Iowa. The two are charged in Iowa because Des Moines was a site where the ring did business on at least four occasions, sometimes holing up in an Econo Lodge near Interstate 35, the indictment says.[3]

- In 2013, A man arrested for human trafficking in Dothan appears to be part of a human trafficking circuit. Police say Alonso Santiagito held a Mississippi teen against her will, beat her, forced her to do drugs, and sold her for sex. He was holding the girl and other victims at the Quality Inn on Ross Clark Cir.[4]

- An Orlando man faces several felony charges after authorities say he kept an underage girl as a prostitute against her will and beat her. The investigation into Tyquarius Jevonte Lebby, 24, began Dec. 8 after the Metropolitan Bureau of Investigation received a tip that an underage girl was being held against her will at an Orange Blossom Trail motel, according to court documents. Authorities found explicit pictures of the girl on the internet. Agents posed undercover as clients and went to a room at the Rodeway Inn on the 6100 block of South Orange Blossom Trail.[5]

- In 2013, Two Columbia residents arrested in connection with a nationwide child sex trafficking bust were denied bond Monday in federal court. The 16-year-old, whose picture appeared in an online ad on backpage.com, was allegedly used for prostitution on three days in hotels in Columbia and Hilton Head. The FBI has hotel receipts where Gibson paid cash for the room at Quality Inn at the time of the undercover operation, as well as a copy of his driver's license where he reserved the room.[6]

---

[2] Claire Luna and Mai Tran, Arrest in Sex Slave Case, Los Angeles Times (February 13, 2004), https://www.latimes.com/archives/la-xpm-2004-feb-13-me-sexslave13-story.html

[3] Ryan J. Foley, *Feds: Sex trafficking ring used Backpage.com ads*, Associated Press (May 24, 2012), https://apnews.com/article/archive-de22067580494953bc14f6e9cfcca4aa

[4] *Dothan man arrested for human trafficking a teenager,* WTVM news 9 (August 13, 2013), https://www.wtvm.com/story/23122332/dothan-man/

[5] Michael Williams, *Authorities: Man trafficked, beat underage girl*, Orlando Sentinel, https://digitaledition.orlandosentinel.com/tribune/article_popover.aspx?guid=15cb9583-a04b-4eba-a5e7-5e38eefb25f7

[6] *Two accused of sex trafficking children denied bond*, WIS News 10 (August 5, 2013), https://www.wistv.com/story/23048777/two-accused-of-sex-trafficking-children-denied-bond/

- In 2013, A runaway Mississippi teen has found herself caught in the middle of a South Alabama sex slavery ring. The girl, whom police say is over 15, was held against her will at the Quality Inn in Dothan.[7]

- In 2013, Milwaukee police are searching for a 34-year-old man believed to have kidnapped a homeless woman and forced her into prostitution. Reno took photos of her and posted them on an online site known to advertise prostitutes and forced her into prostitution at the Rodeway Inn in Milwaukee.[8]

- In 2013, Jerel Jackson, 28, allegedly operated a prostitution venture between May 2012 and July 2013 primarily out of motels in Philadelphia. In April 2013, Jackson drove her and three others to Dover, Del., where they worked out of a room at the Sleep Inn and Suites on N. Dupont Highway until their operation was shut down by local police, according to the affidavit.[9]

- In 2014, Charlotte-Mecklenburg Police have arrested three people on human trafficking charges. Officers were called out to the Quality Inn on Griffith Street a couple of days ago to investigate a complaint.[10]

- In 2014, A Houston County jury found a Tennessee man guilty on Thursday afternoon of human trafficking and giving drugs to a 17-year-old girl. Police were made aware of the case when the victim left the Quality Inn, where she said she was being held, and walked almost 8 miles to the Guest House Inn, where she was taken in by a patron there.[11]

- In 2014, Two people arrested and charged with the human trafficking of 16 and 17-year-old girls at North Monroe Street hotels last week caught the eyes of the community and human trafficking experts, who say the case may be part of a larger enterprise in Tallahassee. In addition to the teens, two other violent confrontations at the Econo Lodge on North Monroe Street involved women working as prostitutes with Backpage ads.[12]

---

[7] *Shock after man charged with human trafficking of girl in Dothan,* WSFA News 12 (August 13, 2013), https://www.wsfa.com/story/23118431/shock-after-man-charged-with-human-trafficking-of-girl-in-dothan/

[8] Ashley Luthern, *Milwaukee police search for man in kidnapping, prostituting of woman,* Milwaukee Journal Sentinel (August 2, 2013), https://archive.jsonline.com/news/crime/milwaukee-police-search-for-man-in-kidnappingprostituting-of-woman-b9967520z1-218117721.html/

[9] Sam Wood, *Philly man faces charges of sex-trafficking by force,* The Inquirer (November 14, 2013), https://www.inquirer.com/philly/hp/news_update/Philly_man_faces_charges_of_sextrafficking_by_force.html?outputType=amp

[10] *3 arrested on human trafficking charges in Charlotte,* WCNC News (May 30, 2014), https://www.wcnc.com/article/news/crime/3-arrested-on-human-trafficking-charges-in-charlotte/275-292839989

[11] *Man Guilty in Human Trafficking Case,* End Slavery Tennessee, (May 15, 2014), https://www.endslaverytn.org/news/man-guilty-in-human-trafficking-case-newsarticle

[12] Sean Rossman, *Arrests for sex trafficking 'tip of the iceberg' in Tallahassee,* Tallahassee Democrat (June 2, 2014), https://www.tallahassee.com/story/news/local/2014/06/02/sex-trafficking-arrests-tallahassee/9856065/

- In 2015, Three people are in custody following the discovery of drug and prostitution operations in Pooler, Georgia. Undercover Chatham-Savannah Counter Narcotics Team (CNT) agents conducted a search of two hotel rooms at the Econo Lodge hotel located at 500 East Highway 80 in Pooler, Georgia. The search resulted in the seizure of controlled substances, items commonly associated with drug use and distribution, items commonly associated with prostitution and various weapons.[13]

- In 2019, the Quality Inn & Suites located in Hollywood, Florida was cited for multiple violations of Florida's 2019 anti-sex trafficking law. Despite the repeated violations, no fines were issued. **The Quality Inn & Suites manager, Izzy Fintz, the same manager of the subject Rodeway Inn & Suites and Title Manager of Defendant EZ,** acknowledged the citations but stated that he had no control over the actions of guests once they were in their rooms. In response to allegations of illicit activity, Fintz stated, "Some idiot that puts an ad that **I have nothing to do with, and it's not in my control,** not my ad. It's not like we advertise, 'Hey, hookers, come home. We have a special. We have clean beds.'" Fintz also noted that **while the hotel requires identification at check-in, it does not inquire into guests' activities during their stay.**[14]

99.     Reviews of Choice Hotels branded properties, which upon information and belief Choice Hotels monitors regularly, also show the pervasiveness of sex trafficking at its branded properties and Choice Hotels knowledge of the same. For example:

- A TripAdvisor review from January 26, 2006, stated, "Hookers in the parking lot approaching members of our group. When I complained, especially about the hookers, I was told there wasn't much they could do and they would 'pass on the complaints to the management.'"[15]

- A TripAdvisor review from September 18, 2012, stated, "Worst hotel ever…The smell of weed was horrible. Smell came right in our room from all the other rooms. Hookers up and down the hallways…never again!"[16]

- A TripAdvisor review from January 21, 2012, stated, "During my stay here every time I would go outside I was approached by someone wanting to bum a cigarette

---

[13] *Multiple arrests in Pooler for drugs and prostitution,* WJCL News 22 (September 25, 2015), https://www.wjcl.com/article/multiple-arrests-in-pooler-for-drugs-and-prostitution/935100#

[14] Katie LaGrone, *Innocence Sold: Florida Hotels Have Stacked Up Thousands of Violations of a 2019 Sex Trafficking Law, But Not One Has Been Fined,* Sun Sentinel (Nov. 20, 2022), https://www.sun-sentinel.com/2022/11/20/innocence-sold-florida-hotels-have-stacked-up-thousands-of-violations-of-a-2019-sex-trafficking-law-but-not-one-has-been-fined/.

[15] https://www.tripadvisor.com/Hotel_Review-g34515-d17803954-Reviews-Quality_Inn_Suites_Downtown-Orlando_Florida.html

[16] https://www.tripadvisor.ca/Hotel_Review-g34515-d85472-Reviews-Quality_Inn_Orlando_Near_Universal_Blvd-Orlando_Florida.html

or wanting to sell me or buy drugs. The staff here are extremely rude to say the least. When I questioned why all the drug dealers and prostitutes, I was told by a member of the hotel staff because business is slow…If you are a normal everyday person, and not a drug addict or a John looking to get laid you don't want to come here!!!"[17]

- A Yelp review from October 2, 2012, stated, "Great hotel, if you enjoy being propositioned by prostitutes. Skid row's finest. A real DUMP."[18]

- A TripAdvisor review from October 22, 2013, stated, "Don't go unless you are looking for 1 hour hotel! Cock roaches and used condoms were found in our room. Hotel staff is obviously used to these complaints. They simply asked, 'how many of them did you exactly find?' there were few drug addicts in the hotel!!!"[19]

- A TripAdvisor review from August 20, 2013, stated, "Two types of Hookers were offered by a pimp standing at the stairway (regular and tranny, whatever that means). Also, there is a lot of weed being smoked in the area, so no need to buy any from the dealer who stood in the parking lot all night, just inhale in your room and you'll be high enough. We did not feel safe since the pimp that hung around carried a gun visibly and told us, 'not to worry about anything, he had the area covered.'"[20]

- A TripAdvisor review from October 25, 2012, stated, "This hotel is awful. Between hookers running around, car alarms going off, people fighting and fussing, and the train that runs through here every night. I PROMISE YOU WON'T GET ANY SLEEP. It's pretty old and nasty. I have no idea how their in business. I'm assuming it's just for local hookers and drugs. Stay far away from here!!!" *The Guest Relations Manager replied, "Please know that we have security on site to ensure the safety of our guests. We do not promote illegal activities at our hotel. If you or any other travelers are suspicious of guest behavior, we ask that you contact a member of our team immediately so that hotel security can investigate the situation."[21]*

- A TripAdvisor review from January 5, 2013, stated, "Upon arriving back [at the hotel] our second night we were greeted by a woman of "dubious morals" (hooker" sitting outside waiting for her "date" to arrive, we assumed."[22]

---

[17] https://www.tripadvisor.ca/Hotel_Review-g34141-d84259-Reviews-Rodeway_Inn_Clearwater_Largo-Clearwater_Florida.html

[18] https://www.yelp.com/biz/days-inn-by-wyndham-sarasota-bay-sarasota

[19] https://www.tripadvisor.ca/Hotel_Review-g34515-d85472-Reviews-Quality_Inn_Orlando_Near_Universal_Blvd-Orlando_Florida.html

[20] https://www.tripadvisor.ca/Hotel_Review-g34515-d85472-Reviews-Quality_Inn_Orlando_Near_Universal_Blvd-Orlando_Florida.html

[21] https://www.tripadvisor.com/Hotel_Review-g54229-d275440-Reviews-Suburban_Extended_Stay_Hotel-Florence_South_Carolina.html

[22] https://www.tripadvisor.co/Hotel_Review-g34657-d231960-Reviews-Suburban_Extended_Stay_Hotel_Stuart-Stuart_Florida.html

- A TripAdvisor review from April 24, 2013, stated, "This was the most disgusting hotel I have ever had the misfortune of checking into. I had come to Orlando to meet with my sister who was flying in from the UK…Checked in, and 30 minutes later checked out. This hotel had cockroaches, the room we were given was filthy, a visiting prostitute went to the room next door whilst we stood and watched."[23]

- An Expedia review form November 9, 2013, stated, "I would not recommend this hotel to my worst enemy. The room next to me was being used to turn "tricks." Drunk or drugged out guests were yelling during the night. They were also running up and down the corridor beating on the doors at 4:00 in the morning. Did not feel one bit safe at this hotel. Actually checked out early and stayed somewhere else. Never stay here."[24]

- An Expedia review from February 11, 2014, stated, "The price is nice for what we got the room for ($42/night) but honestly it wasn't worth it. I would of rather paid little more for a nicer place. First night we heard some prostitute arguing with some cheapskate guy and kicked him out her room and was crying. We were hardly at the room tho, which helped. It's a pretty sketchy hotel in my opinion."[25]

- An Expedia review from July 17, 2016, stated, "The only nice part was the pool, which was not clean…The hotel seemed to be a front of a drug cartel. The staff smiled at you but did not care about the quality of your stay. Someone tried to break into our room at 1 am. Scared the out of me and my family. Will never stay again…instead I will choose to sleep on the side of the road. DO NOT STAY HERE!"[26]

- A Google review from 2016, stated, "The place sucks. We had spiders under the sheets when pulled them off the bed. Would not recommend the place to anyone. Plus all the prostitution outside makes it even worse."[27]

- A Google review from 2016, stated, "AWFUL!!! Was extremely filthy. Smelled of mold and body odor. Early evening before dark when we checked in it seemed

[23] https://www.tripadvisor.ca/Hotel_Review-g34515-d85472-Reviews-Quality_Inn_Orlando_Near_Universal_Blvd-Orlando_Florida.html

[24] https://www.expedia.com/Florence-Hotels-Suburban-Extended-Stay-Hotel.h911306.Hotel-Reviews

[25] https://www.expedia.com/Tampa-And-Vicinity-Hotels-Suburban-Studios-Airport.h885992.Hotel-Reviews

[26] https://www.expedia.com/Augusta-Hotels-Suburban-Extended-Stay-Hotel.h168338.Hotel-Reviews

[27]https://www.google.com/travel/hotels/Suburban%206902%20W%20Hillsborough%20Ave,%20Tampa,%20FL%2033634%20google/entity/CgsIxqG0bLw1cqSARAB/prices?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4892707,4893075,4902277,4905351,4905599,4926165,4926489,4931360,4935494,4936396,4937897,47061553&hl=en-US&gl=us&ssta=1&q=Suburban+6902+W+Hillsborough+Ave,+Tampa,+FL+33634+google&grf=EmQKLAgOEigSJnIkKiIKBwjnDxAEGBISBwjnDxAEGBMgADAeQMoCSgcI5w8QARgfCjQIDBIwEi6yASsSKQonCiUweDg4YzJjMjA2N2Q0M2FlZTE6MHg5Mjk1NTc4MzJhMjFiNTQ3&rp=EMfqhtGy8NXKkgEQxqG0bLw1cqSATgCQABIAcABABAg&ictx=1

pretty quiet. As it got dark and later into night, the whole place seemed to fill up with prostitutes. Very loud."[28]

- A TripAdvisor review from September 15, 2016, stated, "I've stayed in some BAD places before, but this hotel wins the prize for most nasty…Every night was a drunken Las Vegas type party outside our room, and the prostitutes basically ran the show…There is basically no maid service. You have to ask them to clean your room…there are people fighting drunk outside every night, prostitutes running around in their underwear, you could smell marijuana coming out of every room, and drug dealers were running around asking folks what they wanted."[29]

- A Yelp review from April 2, 2016, stated, "By far this has been the worst hotel experience I've ever encountered. Between the extremely loud drunks all night, the mass amounts of prostitution (I was asked by 3 if I wanted their services), the drug dealers everywhere (I was asked by 2 if I wanted to buy drugs). All of these people were staying at your hotel. I was originally going to stay for 16 days but do to all the above I was forced to change hotels. This was supposed to be my vacation while visiting my kids before I go back out on deployment. And the way they corrected this wrong doing is by emailing me a 'I'm sorry letter.' This place need to be closed down."[30]

- A Google review from 2017, stated, "Hotel filled with hookers, drug dealers, drunks and awful rooms."[31]

- A Google review from 2018, stated, "The worst, I left room after I found the 5th cock roach. Hotel full of semi-permanent residents, prostitutes, and drug

[28]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201900%20SE%20Federal%20Hwy,%20Stuart,%20FL%2034994/entity/CgsIv4-a4ce0vJefARAB/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4718358,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4879519,4886082,4886480,4893075,4902277,4905351,4905600,4906023,4906050,4920622,4926165,4926489,4930751,4930753,4931265,4934307,4936396,4937954,47061553&hl=en-US&gl=us&ssta=1&q=Suburban+Extended+Stay+1900+SE+Federal+Hwy,+Stuart,+FL+34994&grf=EmQKLAgOEigSJnIkKiIKBwjnDxACGBMSBwjnDxACGBQgADAeQMoCSgcI5w8QARgZCjQIDBIwEi6yASsSKQonCiUweDg4ZGVkZDBjNGM5ZGJhYTc6MHg5ZjJlZjFhNDdjMjY4N2Jm&rp=EL-PmuHHtLyXnwEQv4-a4ce0vJefATgCQABIAcABAg&ictx=1&sa=X&ved=2ahUKEwjLl_OO--P8AhXQkWoFHejJC8MQ4gl6BAh5EAU
[29]     https://www.tripadvisor.com/Hotel_Review-g54229-d275440-Reviews-Suburban_Extended_Stay_Hotel-Florence_South_Carolina.html
[30] https://www.yelp.com/biz/suburban-extended-stay-hotel-florence
[31]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201914%20W%20Lucas%20St,%20Florence,%20SC%2029501%20google/entity/CgoIs5OZ1oTbiY1aEAE/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4893075,4902277,4905351,4906023,4926165,4926489,4930751,4930752,4931360,4934343,4936396,4937897,47061553&hl=en-US&gl=us&ssta=1&q=Suburban+Extended+Stay+1914+W+Lucas+St,+Florence,+SC+29501+google&grf=EmQKLAgOEigSJnIkKiIKBwjnDxACGAESBwjnDxACGAIgADAeQMoCSgcI5w8QARgeCjQIDBIwEi6yASsSKQonCiUweDg4NTU2NjQ0YzU1MGE1OWY6MHg1YTFhMjZkODRhYzY0OWIz&rp=ELOTmdaE24mNWhCzk5nWhNuJjVo4AkAASAHAAQI&ictx=1&sa=X&ved=2ahUKEwil7YSNwfD8AhXFyLsIHZ08ClMQ4gl6BAhmEAU

addicts…Can't believe this is a name brand hotel, do not stay here if you're driving by hit the gas and keep on going."[32]

- A Google review from 2018, stated, "Well what can I say about here…if your looking for drugs and prostitution delivered to your door, then look no further…So if you are looking for an overpriced pay by the night trap house, the Suburban is for you. Good luck!"[33]

- A Google review from 2018, stated, "This place is absolutely disgusting! They have prostitutes and drug dealers renting rooms and running in and out all night long and they are very well aware of it, but do nothing about it except continue to rent them rooms day after day."[34]

- A Google review form 2018, stated, "Awful experience…Checked out half hour after we checked in and still got charged for the night. Drug dealing and sex trading going on out in the open."[35]

---

[32]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201900%20SE%20Federal%20Hwy,%20Stuart,%20FL%2034994/entity/CgsIv4-a4ce0vJefARAB/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4718358,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4879519,4886082,4886480,4893075,4902277,4905351,4905600,4906023,4906050,4920622,4926165,4926489,4930751,4930753,4931265,4934307,4936396,4937954,47061553&hl=en-US&gl=us&ssta=1&q=Suburban+Extended+Stay+1900+SE+Federal+Hwy,+Stuart,+FL+34994&grf=EmQKLAgOEigSJnIkKiIKBwjnDxACGBMSBwjnDxACGBQgADAeQMoCSgcI5w8QARgZCjQIDBIwEi6yASsSKQonCiUweDg4ZGVkZDBjNGM5ZGJhYTc6MHg5ZjJlZjFhNDdjMjY4N2Jm&rp=EL-PmuHHtLyXnwEQv4-a4ce0vJefATgCQABIAcABAg&ictx=1&sa=X&ved=2ahUKEwjLl_OO--P8AhXQkWoFHejJC8MQ4gl6BAh5EAU
[33]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201900%20SE%20Federal%20Hwy,%20Stuart,%20FL%2034994/entity/CgsIv4-a4ce0vJefARAB/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4718358,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4879519,4886082,4886480,4893075,4902277,4905351,4905600,4906023,4906050,4920622,4926165,4926489,4930751,4930753,4931265,4934307,4936396,4937954,47061553&hl=en-US&gl=us&ssta=1&q=Suburban+Extended+Stay+1900+SE+Federal+Hwy,+Stuart,+FL+34994&grf=EmQKLAgOEigSJnIkKiIKBwjnDxACGBMSBwjnDxACGBQgADAeQMoCSgcI5w8QARgZCjQIDBIwEi6yASsSKQonCiUweDg4ZGVkZDBjNGM5ZGJhYTc6MHg5ZjJlZjFhNDdjMjY4N2Jm&rp=EL-PmuHHtLyXnwEQv4-a4ce0vJefATgCQABIAcABAg&ictx=1&sa=X&ved=2ahUKEwjLl_OO--P8AhXQkWoFHejJC8MQ4gl6BAh5EAU
[34]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201914%20W%20Lucas%20St,%20Florence,%20SC%2029501%20google/entity/CgoIs5OZ1oTbiY1aEAE/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4893075,4902277,4905351,4906023,4926165,4926489,4930751,4930752,4931360,4934343,4936396,4937897,47061553&hl=en-US&gl=us&ssta=1&q=Suburban+Extended+Stay+1914+W+Lucas+St,+Florence,+SC+29501+google&grf=EmQKLAgOEigSJnIkKiIKBwjnDxACGAESBwjnDxACGAIgADAeQMoCSgcI5w8QARgeCjQIDBIwEi6yASsSKQonCiUweDg4NTU2NjQ0YzU1MGE1OWY6MHg1YTFhMjZkODRhYzY0OWIz&rp=ELOTmdaE24mNWhCzk5nWhNuJjVo4AkAASAHAAQI&ictx=1&sa=X&ved=2ahUKEwil7YSNwfD8AhXFyLsIHZ08ClMQ4gl6BAhmEAU
[35]https://www.google.com/travel/hotels/Suburban%20Extended%20Stay%201900%20SE%20Federal%20Hwy,%20Stuart,%20FL%2034994/entity/CgsIv4-a4ce0vJefARAB/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4718358,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4879519,4886082,4886480,4893075,4902277,4905351,4905600,4906023,4906050,4920622,4926165,4926489,4930751,4930753,4931265,4934307,4936396,4937954,47061553&hl=en-

100.    The sampling of news stories and reviews from before the trafficking period establishes that, at the time Plaintiff S.W. was trafficked at the subject Rodeway Inn & Suites, Choice Hotels knew, at least the following:

a.    The use of its branded properties for sex trafficking was not limited to one location or geographic region but was a widespread problem;

b.    Commercial sex work occurring at its branded properties involved trafficking and compelled prostitution; Its franchisees and hotel staff were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at its hotel properties;

c.    Its efforts, if any, to stop facilitating sex trafficking in its branded properties were not effective; and

d.    It was, by its acts and omissions, facilitating sex trafficking at its branded properties by providing venues where that trafficking was occurring widely and without sufficient detection or deterrence.

101.    The news articles and reviews after Plaintiff S.W.'s trafficking period show that, despite the continually mounting evidence that sex trafficking at its properties was ongoing and growing, Choice Hotels did not change its course. Choice Hotels chose to continue earning revenue and profits from renting out space in their hotels as a venue for trafficking.

---

US&gl=us&ssta=1&q=Suburban+Extended+Stay+1900+SE+Federal+Hwy,+Stuart,+FL+34994&grf=EmQKLAgO EigSJnIkKiIKBwjnDxACGBMSBwjnDxACGBQgADAeQMoCSgcI5w8QARgZCjQIDBIwEi6yASsSKQonCiUwe Dg4ZGVkZDBjNGM5ZGJhYTc6MHg5ZjJlZjFhNDdjMjY4N2Jm&rp=EL-PmuHHtLyXnwEQv4-a4ce0vJefATgCQABIAcABAg&ictx=1&sa=X&ved=2ahUKEwjLl_OO--P8AhXQkWoFHejJC8MQ4gl6BAh5EAU

## V.    Sex Trafficking Was Prevalent and Obvious at Rodeway Inn & Suites

102.    Defendants Tropical Paradise, EZ and Choice Hotels were also specifically aware that sex trafficking was prevalent at Rodeway Inn & Suites.

103.    Defendants knew that Rodeway Inn & Suites was in a high-crime area with a known history of reports of sex trafficking.

104.    Online reviews of Rodeway Inn & Suites, which upon information and belief were monitored by all Defendants, including Choice Hotels, establish the nature of Rodeway Inn & Suites' role as a venue for sex trafficking:

- A TripAdvisor review from February 2015, stated, "Seven couples spent the night in this hotel and took the shuttle to Port Everglades the next day. The consensus of the 14 people in the van was the hotel was old and dreary - some said sleazy. The restaurant jn the hotel was awful. Go to a fast food outlet for better food, a clean environment and better service. The rooms (we had bugs in our room) were not as nice as you can get in a La Quinta at two thirds the price. The shuttle service was good the day we left to go on the cruise, except you had to leave at 10:30 AM; but upon returning to Port Everglades after the cruise we had to wait 45 minutes for the shuttle after getting off the ship. The worst experience was the check in at Rodeway. There was more yelling in the check-in area than I've ever seen in 60 years of traveling in the US and abroad. Room clerks yelling to each other, a huge guy patrolling the check-in area, barking orders to remove your car from the front of the hotel. All he needed was a baseball bat to complete the Hollywood image of a hotel on skidrow catering to drunks and homeless people…"[36]

- A TripAdvisor review from March 2016, stated, "Would not stay overnight. We were debating booking this hotel pre-cruise (overnight) and post cruise (day room only) because it was cheap and had the free shuttle. But the reviews scared me so we booked another hotel overnight (for even cheaper thanks to Priceline!) and only stayed at the Rodeway Inn for a dayroom. VERY THANKFUL we made that decision. This place was very much a sketchy motel. The rooms were old and very basic. The tub was worn. Toilet was hard to flush. The beds were horrible. Our room had random cars (all expensive cars with tinted windows) pull up with various people either staying in the car or coming out and leaving within a short time span. The customer service was horrible. I left behind an item by accident and when we called back to retrieve it (within an hour of leaving), we were told to go on their website and make a claim so they can mail it back to us. This hotel doesn't even have a website! I'm still waiting to hear back but I'm assuming my item will never

[36]https://www.tripadvisor.com/Hotel_Review-g34227-d601614-Reviews-Rodeway_Inn_Suites_Fort_Lauderdale_Airport_Port_Everglades_Cruise_Port_Hotel-Fort_Lauder.html#REVIEWS

be returned. The restaurant was also closed when we went (middle of the day) and there is nowhere else to eat around there as the hotel is a major road with no sidewalks. We asked if they could shuttle us offsite to eat and they agreed – but only for a fee. That's a great way to treat guests. The only positive to this hotel is the shuttle. They have nice vehicles, they are efficient and the drivers are friendly."[37]

- A Yelp review from March 22, 2016, stated, "I know you get what you pay for, but this place was a real dump. Bathroom was just nasty, behind the door was dirty with curly black hairs and what appeared to be a toe nail. Walls were paper thin and the closing or doors shook the entire room. Stains on the carpet as well. I have stayed in some dives before and this is right up there with the best of the worst. I can honestly say I did not feel safe, even walked a fiend who brought us to dinner back to her car as there were people just hanging out in the side parking lot. The employees didn't seem happy and really didn't want to be there. The recycling plant offers a great scent while laying by the pool."[38]

- A TripAdvisor review from January 2017, stated, "The place is a dump. It feels very sketchy (my room faced a rear parking lot with lots of strange activity) with lots of people 'hanging' out in the corridors." *Note: Hotel response from Izzy F. stated, "FRUSTRATION WITH MR. Designer> Thank you very much for this review taken totally out of context. We apologize and understand you wrote this out of frustration due to a simple miss understanding with your booking Hotel Discounted. Unfortunately, we confirm that you book your HOTEL stay through a biding discount site which means you pick a price and not a Specific HOTEL Room. We only sell last minute available rooms through on those sites. We are completing our remodeled rooms project. The room you were in was scheduled to be painted that is why it was sold only at a discount site! Our rooms are very clean and one of our managers Sleep in that room the week before. What is Funny you stayed for 3 nights without any notice of a problem. We are in Florida and if you leave the door open things can fly in. We are sorry that you are using this site to degrade our HOTEL and rooms as a form of some type of RELIF. We look for only honest reviews from guest who stayed at our HOTEL and BOKED DIRECT you did not. We have won the best cruise port hotel by Port Everglades. We can see that most of your reviews are negative. Unfortunately, it is human nature for people to go out of their way to write a negative review trying to seek additional compensation. At our Breakfast Café, we offer more than most guest eat at home both hot and cold items on our complementary continental breakfast buffet (FREE). Daily selections include made to order waffles (plain, strawberry & whip cream, toppings, white and wheat toast, bagels, English muffins, cold cereals (Gluten Free), oatmeal, Fresh Danish pastries, doughnut. We offer only premium fruit juices and drinks, regular and decaf coffees, teas, and milk. We pride ourselves in trying to make our guests happy and keep coming back year after year. What make us great is for the*

---

[37] https://www.tripadvisor.com/Hotel_Review-g34227-d601614-Reviews-Rodeway_Inn_Suites_Fort_Lauderdale_Airport_Port_Everglades_Cruise_Port_Hotel-Fort_Lauder.html#REVIEWS
[38] https://www.yelp.com/biz/rodeway-inn-and-suites-fort-lauderdale-4

*value of a quality room you get super Location next to the port, great service, onsite restaurants, bar & grill and transportation with many great amenities. We encourage our guests to contact any member of our staff, OR HOTEL MANAGEMENT DURING YOUR STAY SHOULD YOU NEED ADDITIONAL SERVICES, AMENITIES OR IF WE OVERLOOKED ANYTHING TO CORRECT IT ASAP. >>> Please Call hotel-GM We want To Here from You!"*[39]

- A TripAdvisor review from April 2017, stated, "…The room was right next to the parking area. Lots of activity and noisy, with huge semi-trucks. There were half naked junkies yelling at each other outside the room, and it just didn't feel safe…" *Note: Hotel response from Izzy F. stated, "Thank you for your retaliatory extortion review. We can see you hardly ever write a review. I hope this exhaustingly review bring you the much deserved relief. If what you say is true please call and ask for the gm We pride ourselves in excellent service as we are a budget friendly full service hotel."*[40]

- A TripAdvisor review from May 2017, stated, "I picked this hotel because they offered free shuttle from cruise ship to hotel, and from hotel to airport. Worse mistake I ever made. It was pretty much a resort for prostitutes and drug addicts. The pool looked like dirty bath water. The customer service was horrible. They never picked us up from the cruise ship because we didn't officially check in yet. When they took us to the airport we were told to be 10 minutes early for our noon departure, even though the driver didn't get it together until 12:18 to leave. Waiting for almost 1/2 hr in the hot Florida sun, in a waiting area that smelled like an ashtray was frustrating. Than to have driver act like I'm wrong when I told him I have to leave or I might miss my flight. The rooms were reminded by putting paint over the trashed walls before they properly prepared the walls, adding a granite overlay, and reminding the shower with tile and glass door. It was ridiculous looking to have nice glass doors and tile in the shower and than see an air vent that was rusted and looked like it was from the 80's. The mattress was lumpy but brand new pillows. It was really like the twilight zone. At the breakfast someone was actually doing interviews with homeless people inside the resort. Not that there is a problem with homeless people but that's not where I want to take my 4 year old twins to eat breakfast. I will never stay there again." *Note: Hotel response from Izzy F. stated, "Dear TWILIGHT ZONE GUEST FROM NEVER NEVER LAND> I would normally thank you for staying with us and letting you know how smart you were in staying at our award winning cruise port hotel. BUT I WONT! Our hotel is a very busy pre and post cruise hotel. We care about our guest and we make guest services a priority! The Day prior to your arrival there were multiple families and individuals that got evicted from their place of living due to the department of health shutting it down in the city of Fort Lauderdale. The ownership believes in giving back and that's what the Bible say to do! We work with the Red Cross and*

---

[39] https://www.tripadvisor.com/Hotel_Review-g34227-d601614-Reviews-Rodeway_Inn_Suites_Fort_Lauderdale_Airport_Port_Everglades_Cruise_Port_Hotel-Fort_Lauder.html#REVIEWS
[40] https://www.tripadvisor.com/Hotel_Review-g34227-d601614-Reviews-Rodeway_Inn_Suites_Fort_Lauderdale_Airport_Port_Everglades_Cruise_Port_Hotel-Fort_Lauder.html#REVIEWS

*the local government to assist these people who are no difference than you or you your family. They lost everything. Yet you judge these people as prostitutes and homeless. The Local Tv was there and we were seen grateful to help them they left after the government relocated them. Yes I know that traveling and waiting for a FREE COMPLENTARY shuttles can be frustrating. The average wait is about 25-35 minutes. We pride ourselves in trying to make our guests happy and keep coming back year after year. Please accept my sincere apology for any misunderstandings that may have occurred during your stay. Most HOTELs charge for breakfast, shuttle service to/from cruise port about $10 per person each way! We are still free. Yes 92% of our guest are here for pre-& post cruise. We have the best organize courtesy shuttle service to and from the airport cruise port and our HOTEL. The only HOTEL to get its entire guest to the cruise ship to eat the lunch buffet on board. Unfortunately, it is human nature for people to go out of their way to write a negative review. APPERATLY 67% of all of your reviews are negative including Disney WOW! MAYBE You are the Discontent! We encourage our guests to contact any member of our staff, or HOTEL management during your stay should you need additional services, amenities or if we overlooked anything to correct it ASAP Good luck with you! Book Direct! Thank You! God Bless! It is unfortunate that this site allow this type of review from those who judge other people! UNAMERICAN! UN CONPASSIONATE!*
*?*
*?*
*MR> NEVER EVER EVER AGAIN You're traveling through another dimension, a dimension not only of sight and sound but of mind; a journey into a wondrous land whose boundaries are that of imagination. Next stop . . . the Twilight Zone! Welcome Home! We do Prey That You will never be homeless and it can happen to anyone."*[41]

- A Priceline review from October 2017, stated, "The place was horrible. Nowhere near 3 stars. Parking lot and room dirty. Police came to look for someone while I was checking in! Not safe for families. Very shady location. I called to try to cancel room and was told it was completely nonrefundable."[42]

- A TripAdvisor review from March 2018, stated, "This is not a hotel for families with children. Alcohol is vended in the lobby. Men seem to be hooking up with prostitutes in the lobby as well. The hotel does not feel safe. The exercise room is not useable, and doesn't feel safe. On a positive note: The rooms are updated. Rooms were clean. Staff was very nice." *Note: Hotel response from Izzy F. stated, "You must be the most isolated parent in the world. yes we do sell liquor the is displayed professionally behind the counter and must be 21 to purchase. i feel bad that you must never go to the grocery store or to a shopping center with you child. by that means you must never ever cruise or go on a airplane. wait don't go to any*

---

[41] https://www.tripadvisor.com/Hotel_Review-g34227-d601614-Reviews-Rodeway_Inn_Suites_Fort_Lauderdale_Airport_Port_Everglades_Cruise_Port_Hotel-Fort_Lauder.html#REVIEWS
[42] https://www.priceline.com/hotel-deals/en-us/P3000003192/H7485105/rodeway-inn-suites-fort-lauderdale-airport-cruise-port.ssp

*restaurant either the serve alcohol. i don't know about you comment about men. were you at the right hotel. did you not notice that our hotel caters and service pre and post cruise airport guest. i have never seen a mad or a woman hooking up maybe they do that where you live. Out exercise room has the latest modern work out machines less than 1 year old. the room is bright lights and secured with cameras. we are and award winning budget friendly hotel near port everglade with free shuttles."*[43]

- A TripAdvisor review from April 2018, stated, "Worst night of my life, unsafe! My friend and I stayed here one night before heading on a cruise. We headed to bed at 9:30pm and went to secure the door with a night latch deadbolt but it wouldn't work. 30 minutes later there was loud banging on our door and someone attempted entering. My companion jumped out of bed and was able to shut the door and told the intruder to go away and we'd be phoning the office. The only thing the office did was say "we apologize" but they didn't do anything or even send someone up. My companion was so scared she got dressed and sat up all night watching the door. I pulled a table and suitcases against the door for a little extra security. At midnight, there was banging and rustling and the door opened 10 inches with a person trying to get in, I hollered to get away and that I was phoning the office and the intruder left. When I phoned the office, I heard the same thing "I apologize." I said "should I call 911?" and the hotel attendant replied go right ahead. The next morning we sought out the manager. His very first comment was "I am not giving you your money back" and he didn't even comment about our safety concerns and belittled us for apparently not knowing how to use a deadbolt. He did offer a cheap bottle of wine after breakfast but we refused. We insisted he go to the room to see that the deadbolt was indeed broken which he agreed it was. My review is for the purpose of warning any traveller who is concerned about their personal safety. Do not stay here."[44]

- A Priceline review from August 2018, stated, "Too much noisy people, breakfast was horrible, floors wasn't clean, No mattress padding (only plastic under sheet). Too many people walking around smoking weed. No security. Ongoing construction. Noisy families and children in the pool at 3am."[45]

- A Choice Hotels review from September 2019, stated, "Not very good. People screaming during the night and there is not security available. Outside looks OK. Room numbers missing. Garbage accumulated outside. People drinking and smoking on the hallways."[46]

---

[43] https://www.tripadvisor.com/Hotel_Review-g34227-d601614-Reviews-Rodeway_Inn_Suites_Fort_Lauderdale_Airport_Port_Everglades_Cruise_Port_Hotel-Fort_Lauder.html#REVIEWS
[44] https://www.tripadvisor.com/Hotel_Review-g34227-d601614-Reviews-Rodeway_Inn_Suites_Fort_Lauderdale_Airport_Port_Everglades_Cruise_Port_Hotel-Fort_Lauder.html#REVIEWS
[45] https://www.priceline.com/hotel-deals/en-us/P3000003192/H7485105/rodeway-inn-suites-fort-lauderdale-airport-cruise-port.ssp
[46] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-

- A Priceline review from October 2019, stated, "Maid service is lacking. Blood stained towels and sheets. Looked like needle marks. Should be thrown away. Shorted me towels and wash cloths but I survived. They are doing work on the roof so parking is limited right now. Mostly an inconvenience because"[47]

- A Priceline review from June 2020, stated, "People were just hanging around smoking pot right outside my room. Trying to look in my room. Felt very unsafe. Will never stay again. Will not recommend."[48]

- A Choice Hotels review from August 2020, stated, "Horrible. Between the murder prostitutes and drug dealers worst place."[49]

- A Choice Hotels review from August 2020, stated, "It was not bad for the money we paid. Some of the staff was good, some of them need to find other employment. Location was great but the drug activity I could of done without. Not too sure about what kind of security they had or if they had any."[50]

- A Choice Hotels review from January 2021, stated, "vending/fridges machine always out of order. room service came TWICE and i paid for EVERYDAY SEPARATELY took forever to request uber. called me a cab instead and NEVER PAID FOR IT do not disturb sign kept DISAPPEARING on my door nob there were always people smoking, talking, hanging outside my room the safe didn't even work because it was out of battery" *Note: Response from the hotel, "Thank you for your feedback. We are disappointed to learn that you encountered some issues during your stay, which we are sure would have been addressed by our staff/management if we had known about them during your stay. We encourage our guests to always share their experience with us before they check out, so we can properly address any concerns to their satisfaction. We sincerely apologize for your inconvenience and we thank you for staying with us."*[51]

---

4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[47] https://www.priceline.com/hotel-deals/en-us/P3000003192/H7485105/rodeway-inn-suites-fort-lauderdale-airport-cruise-port.ssp

[48] https://www.priceline.com/hotel-deals/en-us/P3000003192/H7485105/rodeway-inn-suites-fort-lauderdale-airport-cruise-port.ssp

[49] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[50] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[51] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

- A TripAdvisor review from February 2021, stated, "Only stayed here because we had an early flight. Came from Key West vacation and just needed a place to sleep before leaving.Shuttle was late( the only reason i picked this place was the free shuttle- BIG mistake. Uber is less hassle and quicker ). Airport security guard was concerned my daughter and I were out there for so long and he stood with us, thank goodness. Arrived to hotel, drunk guy cussing loudly in lobby . Check in guy not very helpful. The two of us lugged our giant suitcases up the wrong side of our building then had to go around back to get up the to the right side. Guys out back smoking weed. People drinking in parking lot. My daughter was scared. Exterior doors easily accessible to whoever is hanging out in the parking lot. Plastic sheet covers between sheets was a weird touch. When we checked out, there were three sheriffs at the lobby for some domestic disturbance of guests. Did not feel safe here."[52]

- A Priceline review from February 2021, stated "We weren't expecting a Marriott but we definitely didn't expect this. Check-in took 45 minutes with 3 parties in front of us. When we finally got up to the front desk… we noticed the woman "in charge" wasn't wearing a mask. We paid a resort fee through booking.com for $14, however we were told THEIR resort fee was $12, so we were forced to pay an additional $12 instead of being reimbursed 2 bucks. We got to the room, which seemed fair… until we sat on the bed. It was so hard and the pillows were the same. We started winding down and that's when we saw the FIRST roach. By the end of our visit we were up to killing 5 of the nasty beasts per day. Headed down to the restaurant bar to find half the staff didn't believe in wearing masks. The food was good but overpriced. $11 for mac and cheese with no protein. Everyone was very nice and accommodating though, this gave us hope until… We headed to the pool around 7:45 PM… a man who obviously loved his job yelled at us to get out and the pool was closed. We searched for any sort of sign describing the pool time. None to be found. Went back to the room to try the jacuzzi tub. Didn't work. We decided to call it a night but the night wasn't over for the rest of the guests. Adults yelling and slamming doors past 2 AM… then at 3 AM we got a knock on our door. Repeated knocking despite us asking who they were and what they wanted through the door. Finally got this young woman's attention through the window and she waved, said sorry, and dashed down the hall. I started wondering if she belonged to the multiple groups of women through the complex who had their doors wide open, getting dressed in lingerie? Hmmm… Nothing was going to surprise us anymore! Received a non-requested wake-up call at 5 AM. So much for a restful getaway. We stayed in the room for the next day and maintenance came by to fix the tub, he was very nice and fixed it diligently."[53]

---

[52] https://www.tripadvisor.com/Hotel_Review-g34227-d601614-Reviews-Rodeway_Inn_Suites_Fort_Lauderdale_Airport_Port_Everglades_Cruise_Port_Hotel-Fort_Lauder.html#REVIEWS
[53] https://www.priceline.com/hotel-deals/en-us/P3000003192/H7485105/rodeway-inn-suites-fort-lauderdale-airport-cruise-port.ssp

- A Choice Hotels review from March 2021, stated, "Did not enjoy Used condom in bed Stolen tv, staff didn't even know it was stolen $200 a night for a roach motel???"[54]

- A Priceline review from March 2021, stated, "It was a scary location, dirty and had people pounding on my door all night. Would never stay again."[55]

- A Choice Hotels review from April 2021, stated, "Low budget with interesting characters hanging in the hallways at all hours of the day and night. TV never worked."[56]

- A Priceline review from May 2021, stated, "All the people hanging out around the hotel like they was selling drugs from the property."[57]

- A Google review from 2022, stated, "The first room I was given smelled like urine and cigarettes. The second room I requested for room service no one ever showed, the lamp in my room did not work. I reported the issue to front desk, I was told there is nothing they can do. I was afraid to get out my car several times because there are drug dealers a homeless people hanging all around the stair and hallway. I will never stay there ever again and they need to hire a security gard."[58]

- A Priceline review from February 2022, stated, "Rowdy crowd, hotel more felt like a brothel. The shuttle service to the hotel... waiting time was too long, I was impressed of the jacuzzi in the room but the bed was worn and loud and the walls are paper thin so you can literally hear the "activities" of the guest next door."[59]

---

[54] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[55] https://www.priceline.com/hotel-deals/en-us/P3000003192/H7485105/rodeway-inn-suites-fort-lauderdale-airport-cruise-port.ssp

[56] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[57] https://www.priceline.com/hotel-deals/en-us/P3000003192/H7485105/rodeway-inn-suites-fort-lauderdale-airport-cruise-port.ssp

[58] https://www.google.com/travel/search?q=rodeway%20inn%20fort%20lauderdale&g2lb=4965990%2C4969803%2C72277293%2C72302247%2C72317059%2C72414906%2C72471280%2C72472051%2C72481459%2C72485658%2C72560029%2C72573224%2C72616120%2C72647020%2C72648289%2C72686036%2C72760082%2C72803964%2C72832976%2C72882230%2C72885032%2C72941410%2C72946003%2C72958594%2C72958624%2C72959982%2C72963671%2C72978495&hl=en-US&gl=us&ssta=1&ts=CAEaSQopEicyJTB4ODhkOTAwYTdhODJjNzkxZjoweGU2ZmVjjNDEwODMwNmExZDYSHBIUCgcI6Q8QBxgIEgcI6Q8QBxgJGAEyBAgAEAAqBwoFOgNVU0Q&qs=CAEyFENnc0kxc09hbUlpQ3NNmX21BUkFCOAJCCQnWoQaDEMT-5kIJCdahBoMQxP7m&ap=MAC6AQdyZXZpZXdz&ictx=111&ved=0CAAQ5JsGahcKEwjYtZCH-v2NAxUAAAAAHQAAAAAQag

[59] https://www.priceline.com/hotel-deals/en-us/P3000003192/H7485105/rodeway-inn-suites-fort-lauderdale-airport-cruise-port.ssp

- A Choice Hotels review from May 2022, stated, "Skechy place. Exterior door hotel should have security, people outside their rooms with doors open hanging out very very scary."[60]

- A Choice Hotels review from June 2022, stated, "Read earlier comments. Person passed out on hotel walkway about sums it up." *Note: Response from hotel, "We would like to thank you for taking the time to share your feedback with us. We are disappointed in ourselves for failing to earn a higher rating from you, our valued guest. We will share your feedback with our management team, so we may find ways to improve. We sincerely apologize for failing to exceed your expectations, and we thank you for staying with us."[61]*

- A TripAdvisor review from December 2022, stated, "Stayed here three separate nights while visiting FL. It's a busy place and some of the clients seem a tad...shady. There seemed to be drug deals going on in the far back parking lot. And a few ladies of the evening lingering there as well…"[62]

- A Yelp review from December 23, 2022, stated, "…Only thing that made us uncomfortable was the action going on in the parking lots. We noticed what seemed to be a drug deal taking place in the far back lot and there were what seemed to be ladies of the evening at work in some of the rooms. That was all a little disturbing and made us feel somewhat unsafe. But I would stay here again as it's convenient and staff was friendly and helpful."[63]

- A Google review from 2023, stated, "Well first of all, they are essentially attached to a nightclub, the shuttle service never picked me up, the guests there are less than favorable. I didn't even last more than 5 minutes. I checked out right away. Hopefully I will get my money back. Edit: Guest relations is refusing to give my money back and is claiming I didn't check out. Do NOT go here and waste your time. Please. This place looks like there are drug users in every room."[64]

---

[60] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[61] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[62] https://www.tripadvisor.com/Hotel_Review-g34227-d601614-Reviews-Rodeway_Inn_Suites_Fort_Lauderdale_Airport_Port_Everglades_Cruise_Port_Hotel-Fort_Lauder.html#REVIEWS

[63] https://www.yelp.com/biz/rodeway-inn-and-suites-fort-lauderdale-4

[64] https://www.google.com/travel/search?q=rodeway%20inn%20fort%20lauderdale&g2lb=4965990%2C4969803%2C72277293%2C72302247%2C72317059%2C72414906%2C72471280%2C72472051%2C72481459%2C72485658%2C72560029%2C72573224%2C72616120%2C72647020%2C72648289%2C72686036%2C72760082%2C72803964%2C72832976%2C72882230%2C72885032%2C72941410%2C72946003%2C72958594%2C72958624%2C72959982%2C72963671%2C72978495&hl=en-US&gl=us&ssta=1&ts=CAEaSQopEicyJTB4ODhkOTAwYTdhODJjNzkxZjoweGU2ZmVjNDEwODMwNmExZDYSHBIUCgcI6Q8QBxgIEgcI6Q8QBxgJGAEyBAgAEAAqBwoFOgNVU0Q&qs=CAEyFENnc0kxc09hbUlppQ3

- A Choice Hotels review from April 2023, stated, "The WORST HOTEL we've stayed at !!! For starters, the outside of Rodeway inn looked sketchy. Wouldn't have even recognized it as a hotel when passing by. There was very foul odors as soon as we walked into the lobby. Foul odors of urine, feces, decay, & furthermore throughout hotel. This hotel felt unsafe, & unhealthy. There were homeless people sleeping on stairs. Men standing outside of rooms smoking and giving us catcalls. They followed us to our room. As soon as we walked into our room a cockroach greeted us at the door. We did not stay the full duration because those experiences were already enough! This was literally the worst place we have been for a stay & the most unsafe we have ever felt traveling. The only reason this hotel was booked for us, was due to JETBLUE airline accommodations for flight disruptions. I made a complaint with JetBlue as well. This should not be a given accommodation for ANYONE especially women. There was another group of travelers checking in the same time as us, who rejected this hotel as well with a very similar experience! This was our short experience of Rodeway inn as Young Ladies! Please do your research to make sure this hotel is the best accommodation that will suit you!" *Note: Hotel's response stated, "Thank you very much for taking the time to share your feedback. We are sincerely sorry for the experience you had at our hotel. Please, be assured that our goal is always to not only meet the expectations of our guests but to exceed them and we are aware that in this case we fell short of that goal. Thank you for staying at our hotel."*[65]

- A Choice Hotels review from May 2023, stated, "The elevator smelled so bad from mold that we would actually hold our breath when we had to ride in it with our luggage. Our room smelled of mold and you could see the mold around the window and in the corner of the room. It did not feel safe with people fighting at all hours of the night. They appeared to live there or be a long-term tenant. Kids were outside screaming until well after midnight. The restaurant was expensive for the cold, super greasy food that we waited over an hour for. Half of my family got sick after eating there. Anyone who ate calamari or a burger ended up throwing up or with diarrhea within 24 hours. Not the way you want to start a vacation." *Note: Hotel's response stated, "Thank you for sharing your feedback with us. We are concerned about your comments, as they do not seem to reflect the level of quality that we so diligently strive to achieve. We encourage you to always bring up any concerns you may have to our manager during your stay, so that we may address any issues in a timely and satisfactory manner. We sincerely apologize for failing to exceed your expectations, and we thank you for staying with us."*[66]

NmX21BUkFCOAJCCQnWoQaDEMT-5kIJCdahBoMQxP7m&ap=MAC6AQdyZXZpZXdz&ictx=111&ved=0CAAQ5JsGahcKEwjYtZCH-v2NAxUAAAAAHQAAAAQag

[65] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[66] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-

- A Choice Hotels review from August 2023, stated, "Hotel sponsored by Snoop Dogg?? Hotel is extremely outdated. The beds are completely worn out and severely sagging. Every staff member we encountered was extremely rude and unhelpful. Our room had flooded due to faulty AC unit and we had informed the desk and was told they wasn't a repair man so what do you want me to do. No offer to change rooms or anything. The sheets and blankets on the bed stunk of mildew and probably haven't been professionally cleaned ever. We were traveling with several younger kids and there was people smoking weed everywhere in the outside common areas. We found cigarette butts floating in the pool and the staff just laughed like it was normal. I understand price point is a huge motivation for most people looking for lodging but if you have a family and are looking for a comfortable place to lay your head prior to a cruise please look elsewhere. Also there isn't any food options other than the attached restaurant within a mile of the hotel unless you want to cross a busy 8 lane highway. All in all it was an extremely disappointing experience, 0 stars and would not recommend."[67]

- A Choice Hotels review from December 2023, stated, "Did not feel safe as domestic dispute occurred at 2am in next room. No help received. No police assistance arrived." *Hotel's response, "Thank you for sharing your concerns about your recent stay at our hotel. We sincerely apologize for the distressing experience you encountered, and we want to assure you that the safety and well-being of our guests are our top priorities. We deeply regret that you had to witness a domestic dispute, and we understand the impact it had on your sense of safety. We apologize for any inconvenience and stress this situation may have caused you. Our team should have been more proactive in assisting you and ensuring your comfort. Your feedback regarding cleanliness, safety, and concerns about preference are alarming and do not reflect the standards we uphold. We take your comments seriously, and they will be thoroughly investigated with our team to address any lapses in our service. We understand the gravity of your feedback and genuinely apologize for any inconvenience. Your safety and comfort are of utmost importance to us, and we will take immediate steps to address the issues raised. Thank you for staying at our hotel."[68]*

- A Choice Hotels review from January 2024, stated, "Waiting to get in traveling to a room, shouldn't take that long. System of the hotel is poor. The people that work there are incompetent of judgment. They were looking for a dead body with police

---

4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[67] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[68] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

and kicked me out of my room with 5 minutes to leave. No one was in my room and I was naked waking up from the bed. I highly recommend new manager."[69]

- A Choice Hotels review from February 2024, stated, "My nightmare experience at rodeway Inn American. Drug infested place."[70]

- A Choice Hotels review from February 2024, stated, "The whole vibe of the entrance is "this is a cheap hotel." The snack coolers are chained and padlocked. The Guest Services counter is blocked off with plexiglass. They are selling condoms and cigarettes at the front desk, for heaven's sake. I felt like I had walked into a no-tell motel. If there is an elevator, it is well hidden. The pool music was obnoxiously loud. And the air conditioner in my room made a horrible squealing noise every time it shut off.....I had to put the fan on constantly to avoid the noise. There is no bedside lamp. The towels are thin and chintzy. The whole place felt cheap....but it was still over $200 per night. The only nice thing I can say was that the room appeared clean and thank goodness did not have carpeting."[71]

- A TripAdvisor review from April 2024, stated, "bad experience. if you want to be uncomfortable and unhygienic this place is perfect for you. it calls itself a hotel but it is more like a motel. at least i was pleased that there was a pool but it is crusty and disgusting. i ordered my food at the same time as the people who i was travelling with but mine came 20 minutes later and at this time the place was empty. the chips were burnt on the outside yet not cooked through to the middle. and then seemed to be seasoned with cinnamon not salt. i don't understand; it isn't that hard. rooms should be cleaned in between guests but i found pubic hair all over the bathroom floor upon my arrival. and the smell of weed lingered on my sheets and in my room. the floor is dangerously slippery and someone could get seriously injured. i could not sleep well due to some young boys running around at night keeping me up. my daughter was also woken up then went to the toilet and where she found a bug which made her scream and cry. thanks for that. i understand that it isn't all in your control but all the doors should be able to shut properly to keep out the wildlife. when it came to breakfast i was disgusted. the male staff kept making sexual remarks at the younger girls who were staying there saying that they 'are the best looking babes'. i felt so bad for them. they just wanted waffles. as a

---

[69] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[70] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[71] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

woman i felt uncomfortable and as a mother i was scared. scared for me and any others who were on the receiving side of this."[72]

- A Choice Hotels review from November 2024, stated, "We felt extremely unsafe at this motel. It looked like people were living in the motel as they were hanging laundry out on the railings. There were also a lot of people standing outside of rooms, blocking pathways, and drinking. My mother and I felt really on edge with people hanging out outside. The door also didn't seem to properly lock. The room also felt really dirty and the floor was sticky." *Note: Guest Relations Manager response stated, "Thank you for sharing your concerns. We sincerely apologize for the discomfort and unease you experienced during your stay. Your feedback regarding safety, cleanliness, and the overall environment is deeply concerning and does not reflect our commitment to guest satisfaction. We will address these issues immediately with our team to ensure a more secure and welcoming atmosphere for all guests. Your feedback about the room cleanliness and door lock will also be investigated and resolved. We regret that your stay fell short of expectations and appreciate you bringing this to our attention so we can make necessary improvements."[73]*

- A Choice Hotels review from December 2024, stated, "Hourly rate type of hotel. People were in the halls all night long. You can hear them in the room loud and clear. The front desk check in lady took a long time to check us in. I don't think she knew what she was doing. She also never told us to register for the shuttle to the cruise port." *Note: Guest Relations Team response stated, "Thank you for your feedback. We apologize for the noise disturbance and the delay during check-in. We will address these issues with our team to improve the experience for future guests, including ensuring clear communication about shuttle registration. Your input is valuable to us."[74]*

- A Choice Hotels review from December 2024, stated, "Hotel could use some upgrades/renovations but overall it was a great stay for a 2nd time in my life. I'd also not put guests near folks who live there. We were subjected to cigarette smoke, a cat, people in the hallway/pathway that we had to go down to get to our room and the small bowls of cat food by each door walking to our room. Not very welcoming… oh and add non-pork meats to the breakfast menu." *Note: Guest Relations Team (ES) response stated, "Thank you for taking your time to complete our online survey regarding your recent stay at Rodeway Inn & Suites Fort*

---

[72] https://www.tripadvisor.com/Hotel_Review-g34227-d601614-Reviews-Rodeway_Inn_Suites_Fort_Lauderdale_Airport_Port_Everglades_Cruise_Port_Hotel-Fort_Lauder.html#REVIEWS
[73] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1
[74] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

*Lauderdale Airport & Cruise Port. I'm glad you enjoyed your overall stay and appreciated the helpful shuttle driver. I apologize for the issues you encountered with cigarette smoke, pets, and the pathway leading to your room. We'll address these concerns to ensure a more welcoming environment for all guests. We'll also take your suggestion about non-pork breakfast options into consideration. Your input helps us improve, and we appreciate it!"*[75]

- A Priceline review from December 2024, stated, "Was a little scared to be there alone. Had people outside their rooms smoking despite signs saying no smoking. They seemed like they lived there as were feeding a case[76] outside as well. Also groups of men hanging out in parking lot."

- A Choice Hotels review from January 2025, stated, "Avoid this motel!! I did not feel safe at this hotel. The lobby was very sketchy and the clientele that was in the lobby were obnoxious. We actually put a chair in front of our door as additional protection in case someone tried to break in. I would not stay here again if I was cruising out of Port Everglades. This is really a no frills motel and will advise others on my cruise forum to steer clear of Rodeway Inn." *Note: Response from Guest Relations Team (ES) stated, "Thank you for taking your time to complete our online survey regarding your recent stay at Rodeway Inn & Suites Fort Lauderdale Airport & Cruise Port. We deeply regret that your experience left you feeling unsafe and uncomfortable. The safety and well-being of our guests are our top priorities, and we take your feedback seriously. We will be reviewing our security measures and lobby environment to ensure all guests feel secure during their stay. Your input is invaluable, and we apologize for not meeting your expectations. We hope for an opportunity to properly host you in the future."*[77]

- A Choice Hotels review from January 2025, stated, "We stayed there twice in the last two weeks. We stayed there bfore a cruise and after the cruise. We were waited on by the same person on both check ins. The person has no personality and is border line rude. The transport to the port was perfect. The return trip was a nightmare. It took a dozen calls to finally speak with someone who informed us that it would be at least 45 minutes for a pickup. We ended up getting a taxi. During the second stay we went out to get ice from your machine. We found a person asleep on a bench next to your ince machine. We have a future cruise and we will not be returning to your hotel." *Note: Response from Guest Relations Team (ES) stated, "Thank you for taking your time to complete our online survey regarding your*

---

[75] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[76] https://www.priceline.com/hotel-deals/en-us/P3000003192/H7485105/rodeway-inn-suites-fort-lauderdale-airport-cruise-port.ssp

[77] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

*recent stay at Rodeway Inn & Suites Fort Lauderdale Airport & Cruise Port. We sincerely apologize for the issues your encountered, including the service at check-in, the delay with the return shuttle, and your discomfort with the situation hear the ice machine. While we strive to provide a welcoming and secure environment, we clearly fell short during your stay. Your feedback is vital, and we will address these concerns to ensure a better experience for our guests in the future. We hope for an opportunity to properly host you in the future."*[78]

- A Choice Hotels review from January 2025, stated, "Basic of basic. It serves it purpose. A place to stay, albeit, not great, or even good, by any stretch. We were in a handicapped room, by the parking lot, on the ground floor, which should have been 'pretty good,' except for the tailgating in the parking lot and the domestic going on the floor above. Checkin is awful and bewilderingly long. Rooms are motel six at best. Chow hall is that, not organized and very very very basic. If you're cool with all that, this is the place. Trip to the pot, which is why we're here, for the fourth time, thumbs up, as long as you're ok to stand (which I am). Mort organized tings of the whole thing, is the shuttle bus to the port. " *Note: Response from Guest Relations Team stated, "Thank you for taking the time to share your detailed feedback. We're glad to hear that the shuttle service to the port met your expectations and that the location suited your travel needs. However, we sincerely apologize for the aspects of your stay that fell short of expectations. We regret the disturbances you experienced and will address the noise and parking lot issues to ensure a more comfortable environment for all gests. Your comments about the check-in process, room quality, and breakfast organization have been noted and will be reviewed with our team to identify areas for improvement. We appreciate your honesty and hope to make future stays more enjoyable should you choose to return. Safe travels!"*[79]

- A Choice Hotels review from April 2025, stated, "Worst hotel ever. To begin, the shuttle instructions are incorrect so it was 2 hours to get to the hotel after I landed. At midnight we received an unsolicited phone call, awakened through the night with noise from rooms around us, 6am sharp awakened to banging, literally on our door as it we were in danger. Definitely would never stay here again" *Note: Response from Customer Care stated, "We are sorry to learn that the shuttle instructions were incorrect and that your night was disrupted by noise and early morning door banging. Please know that this does not reflect our usual level of service, and we regret any inconvenience caused. Your feedback matters and will*

---

[78] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[79] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

*be shared with the hotel team in hopes of making improvements. We hope to have the opportunity to welcome you back in the future."*[80]

- A Choice Hotels review from April 2025, stated, "Poor Service and Unsettling Atmosphere. The shuttle service to and from the hotel was very poor. When we returned from our cruise, I had pre-paid for a shuttle, but the driver arrived an hour late and tried to add additional passengers, even though there was no room and we had paid for the shuttle exclusively. It was a frustrating and disappointing experience. Additionally, some of the hotel guests seemed questionable, and the overall environment made us feel uncomfortable during our stay." *Note: Response from Guest Relations Team (ES) stated, "Thank you for taking the time to complete our online survey regarding your recent stay at Rodeway Inn & Suites Fort Lauderdale Airport & Cruise Port. I'm truly sorry to hear about your experience with the shuttle service and the concerns you had during your stay. It's unacceptable for the shuttle to arrive late, especially after you had prepaid, and we apologize for any additional stress caused by the driver's handling of the situation. Your feelings regarding the overall environment of the hotel are equally important, as we take these matters seriously. We strive to create a comfortable and safe atmosphere for all our guests, and your feedback will help us address these issues with our team. Thank you for sharing your experience, and we appreciate your insights. We hope you might consider staying with us again in the future to experience the improvements we aim to make."*[81]

- A Choice Hotels review from April 2025, stated, "…I was the first to arrive at check-in and all three windows were empty with no one to check people in. There was a woman with her back turned opening boxes and talking to someone in the office. I waited for her to turn around and when she didn't I said, 'excuse me is this where you check in?' She whipped around saying 'yes' but then glared at me for an uncomfortable amount of time before she walked all the way back to the other end where the first check-in window is located. She never told me to follow her but I eventually did. During check-in she was incredible rude and kept giving off 'why are you making me work' 'I don't want to do this job' vibes. She said she would meet me with beach towels (because you have to check them out at the front desk) and mumbled and pointed where to meet her. I accidently walked past and quickly realized it, as I was turning back towards her I caught her rolling her eyes at me. The people in the room next to us were smoking weed all night and we could smell it in our room. A woman kept screaming and at times I was worried for our safety. This especially sucked because we have two little kids. I realize the hotel can't do anything if they don't know about it, but after the check-in experience we had, we

---

[80] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[81] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

didn't think anyone at the front desk would do anything about it. This speaks to the type of clientele the hotel attracts. You get what you pay for. The free cruise shuttle worked out well. No complaints there. The restaurant, both variety and quality of food, were the highlight. The pool was cold and had bird poop in it, but was otherwise satisfactory. Everyone else we met who worked at the hotel was friendly." *Note: Response from Guest Relations Team (ES) stated, "Thank you for taking the time to complete our online survey regarding your recent stay at Rodeway Inn & Suites Fort Lauderdale Airport & Cruise Port. I'm really sorry to hear about your experience during your stay. It's clear that you encountered several frustrating situations, from the confusing airport pickup to the challenging check-in process and the disturbances from neighboring guests. Your feedback highlights some significant areas where we can improve, and I appreciate you taking the time to share such detailed insights. It's unacceptable for you to feel uncomfortable or unsafe, especially with children in tow. While I understand that sometimes issues arise with other guests, we strive to create a safe and pleasant environment for all. The behavior you described from staff during your check-in was also disappointing to hear. Every guest deserves to be treated with respect and care, and I apologize that this was not your experience. On a positive note, it's great to hear that you enjoyed the free shuttle service and the restaurant offerings. I'll make sure to share your feedback with the management team so that they can address the issues you've raised and work on improving the overall experience for future guests. Thank you again for your candid feedback, and I hope that your future travels are much more enjoyable and stress-free."[82]*

- A Choice Hotels review from May 2025, stated, "People loitering, lotion in the room was out. Paid for a suite but the room looked nothing like the pictures." *Note: Response from Guest Relations Team (ES) stated, "Thank you for taking the time to complete our online survey regarding your recent stay at Rodeway Inn & Suites Fort Lauderdale Airport & Cruise Port. On behalf of our entire team, I sincerely apologize that your recent stay did not meet your expectations. I am very concerned to hear about the issues you encountered, including people loitering on the property, the lotion being out in your room, and the discrepancy between the suite you booked and the room you received. Please be assured that we take these matters very seriously. We are addressing the issue of loitering to ensure the comfort and safety of all our guests, and we will be following up with our housekeeping team to ensure all amenities are properly stocked in the future. Regarding the suite, I understand your frustration and would like to investigate this further to understand what happened and prevent it from occurring again. Your feedback is invaluable in helping us improve, and we hope to have the opportunity to restore your confidence in our hotel."[83]*

---

[82] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

[83] https://www.choicehotels.com/florida/fort-lauderdale/rodeway-inn-hotels/fl775?gal=undefined&gmp=MetaOrganic&gpa=GPADSAPR1&hmGUID=683b82bd-444b-4356-1c78-

## VI.    The Sex Trafficking of Plaintiff S.W. at Rodeway Inn & Suites

105.    From approximately 2019 through the end of 2020, Plaintiff, S.W., was recruited to, enticed to, solicited to, held at, harbored as captive at and/or transported to various hotels in Broward County, Florida, by her sex trafficker, Stephen Joseph, to engage in commercial sex acts at these hotels on a regular, consistent and/or repeated basis, including at Rodeway Inn & Suites.

106.    During the relevant time period, sex trafficking activities and drug use were conducted in the open on the premises of Rodeway Inn & Suites.

107.    In addition to sex trafficking activities taking place at Rodeway Inn & Suites, the hotel was also used as a staging area by sex traffickers, including Mr. Joseph.

108.     At all times material to this Complaint, Defendants, by and through their actual or apparent agents, servants and/or employees, regularly rented or otherwise provided, for their own pecuniary benefit, rooms and services at Rodeway Inn & Suites to Mr. Joseph, Plaintiff, S.W.'s, sex trafficker.

109.    At all times material to this Complaint, Defendants received monetary payment for the rental of rooms at Rodeway Inn & Suites, including the rooms where Plaintiff, S.W., was being trafficked.

110.    The Plaintiff, S.W., was forced to engage in sexual activities within and on the premises of Rodeway Inn & Suites, which, at all relevant times, was owned by Tropical Paradise, managed by EZ, and operated under the brand, supervision, and control of Choice Hotels.

111.    Upon information and belief, Defendants' agents, employees, and servants made promises to Mr. Joseph, Plaintiff, S.W.'s, sex trafficker, to not interfere with S.W., who was a victim of human sex trafficking and slavery.

---

4d343c5dfc2b&mc=HAGOHPUS&meta=PMFGPADUSSAPR1_FL775_localuniversal_US_1_desktop_2025-06-16_default___organic&pmf=hpagoogle&product=localuniversal&adults=2&ratePlanCode=SAPR1

46

112.    The human sex trafficking enterprise, specifically as to how it was applied to Plaintiff, S.W., was run out of Rodeway Inn & Suites as follows:

a.    Plaintiff's sex trafficker, Mr. Joseph, placed internet advertisements for the purpose of prostituting Plaintiff, S.W., on websites like Independent Girls, Eros, and Adult Search. These advertisements would include a phone number, which Johns would call or text. During the telephone call or text messaging, sex for cash was negotiated and the caller/texter John would be informed that Plaintiff, S.W., who was listed as "Lili 2 Cups," "Gabriela Diaz," or "Hazel" on the websites, was at one of the hotels utilized by Mr. Joseph for the sex trafficking enterprise, including Rodeway Inn & Suites.

b.    The caller/texter John, who negotiated for the Plaintiff's sex services, would then receive a call or text message directing the John to go to the hotel lobby, where the John would speak to Mr. Joseph in the lobby to inquire about the Plaintiff's room number or would otherwise be directed to Plaintiff's room.

c.    Mr. Joseph gave Plaintiff, S.W., the stage name of "Lili," "Gabriela," or "Hazel" to use when she interacted with the John, both on the phone when they called to find out which room she was in and when performing sex acts in her hotel room;

d.    When Plaintiff, S.W., performed sex acts with the John in the room, Plaintiff's sex trafficker, Mr. Joseph, would linger in the halls of the hotel;

e.    The John paid Plaintiff in cash or via CashApp or PayPal in exchange for the commercial sex acts that the John received in the hotel room. Plaintiff gave the cash received for the commercial sex acts to her trafficker, Mr. Joseph.

f.    Mr. Joseph did not compensate Plaintiff for the sexual acts she performed in furtherance of the sex trafficking venture being run at Rodeway Inn & Suites. Mr. Joseph simply

allowed Plaintiff to live, eat, and have shelter at the hotels where the sex trafficking venture was being run, including Rodeway Inn & Suites.

g.      Mr. Joseph used said cash as payment for the hotel rooms where commercial sex acts continued to take place, thereby financially benefitting Defendants through increased occupancy rates at Rodeway Inn & Suites.

h.      Plaintiff's sex trafficker, Mr. Joseph, also engaged in the commercial sale of illegal drugs on the premises of Rodeway Inn & Suites with drug sales taking place either in the hotel rooms or in public areas of the hotel. The drugs were provided by the Haitian gang "Zoe Pound," of which Mr. Joseph was a member.

113.    Plaintiff, S.W., performed numerous commercial sex acts ("dates") per day while at Rodeway Inn & Suites between 2019 and through 2020. As such, the routine identified in the preceding paragraph occurred on the hotel premises numerous times within a 24-hour window.

114.    Upon information and belief, some of the Johns visiting Plaintiff, S.W., while on the premises of Rodeway Inn & Suites were staff, agents and/or employees of Defendants and/or their friends, acquaintances or associates.

115.    While being trafficked at Rodeway Inn & Suites, Plaintiff, S.W.'s, room was frequented by many men on a daily basis and was always littered with drugs and drug paraphernalia.

116.    Mr. Joseph, Plaintiff S.W.'s sex trafficker, in his individual capacity and through Plaintiff and other agents, conducted multiple illegal drug sales throughout the day at Rodeway Inn & Suites in adjoining rooms.

117.    Upon information and belief, while at Rodeway Inn & Suites, Plaintiff, S.W., was frequently drunk or used illegal hard drugs, and would exhibit behavior consistent with someone who was under the influence, or near overdose, of a chemical substance, including crack.

118.    The following was also routine conduct taking place at Rodeway Inn & Suites as a result of the human sex trafficking enterprise:

a.    Plaintiff's sex trafficker, Mr. Joseph, frequently rented multiple rooms at Rodeway Inn & Suites in close proximity to each other and in proximity to the stairwells and exits;

b.    Plaintiff's sex trafficker, Mr. Joseph, paid cash for the rooms at Rodeway Inn & Suites where Plaintiff engaged in commercial sex acts;

c.    Plaintiff's sex trafficker, Mr. Joseph, booked extended stays at Rodeway Inn & Suites for himself, for Plaintiff and other women he sex trafficked on a routine basis and on a rotating basis frequently throughout the year;

d.    Plaintiff and her sex trafficker, Mr. Joseph, would have few or no luggage or personal possessions for these extended stays at Rodeway Inn & Suites;

e.    Plaintiff was confined in the rooms at Rodeway Inn & Suites for long periods of time;

f.    Plaintiff's rooms and her sex trafficker's rooms consistently displayed "Do Not Disturb" signs on the doors to the room where Plaintiff was engaged in commercial sex acts;

g.    Men ("Johns") frequently entered and left the rooms at Rodeway Inn & Suites where Plaintiff was engaged in illegal commercial sex acts at all times of day and night;

h.    Plaintiff's sex trafficker, Mr. Joseph, consistently refused housekeeping services and otherwise would prohibit staff from entering their rooms and Plaintiff's rooms;

i.    Plaintiff would frequently request clean towels and linens;

j.      Plaintiff dressed in a sexually explicit manner, wearing tight, short and revealing clothing with bright colors, and she would walk the hallways of Rodeway Inn & Suites wearing same at night;

k.      Excessively loud noises would consistently come from Plaintiff's rooms;

l.      During nighttime hours, Plaintiff and her Johns and drug clients would create noise in the public area of Rodeway Inn & Suites and, upon information and belief, would cause a disturbance to other guests using the hotel for their intended purposes;

m.      Mr. Joseph hosted sex parties in the lobby of Rodeway Inn & Suites with Plaintiff and other women he sex trafficked, where the victims, including Plaintiff, would take several Johns into their rooms throughout the course of the party;

n.      Rodeway Inn & Suites' hotel manager, Israel "Izzy" Fintz, would frequently request Plaintiff, S.W., to go on "dates" with him in exchange for payment;

o.      Plaintiff was often under the influence of alcohol and drugs, including crack, provided by Mr. Joseph's Zoe Pound gang members, and the staff members of Rodeway Inn & Suites would consistently see Plaintiff in either an impaired or ill state, wearing skimpy lounge or sleep type clothing during the day; and

p.      While at the hotel, Plaintiff displayed clear signs of physical abuse, diminished personal hygiene, submissiveness, inappropriate attire, intoxication, impairment, and drug withdrawal.

119.    In addition, Defendants, by and through their actual and apparent agents, employees, or servants knew or should have known that:

a.      Women, including Plaintiff, were walking around Rodeway Inn & Suites with cuts, lacerations, abrasions, bruises, injuries and bandages, including all over their faces;

b.        Women, including Plaintiff, were walking around Rodeway Inn & Suites strung out on drugs for days at a time;

c.        Women, including Plaintiff, at Rodeway Inn & Suites looked tired and haggard due to forced sex work at all hours of the day or night for many days at a time;

d.        Women, including Plaintiff, at Rodeway Inn & Suites were dressing inappropriately for the location and weather; and

e.        The same women, including Plaintiff, were walking in the lobby of Rodeway Inn & Suites several times a day with different men (would meet Johns at front door).

120.      Defendants, by and through their actual and apparent agents, employees, or servants, knew or should have known of the dangerous conditions at Rodeway Inn & Suites that were likely to cause harm to the Plaintiff, in the following ways:

a.        Rodeway Inn & Suites was not properly designed for guest safety and proper monitoring by staff and surveillance systems;

b.        The presence of suspicious people;

c.        Random people coming in and out of certain room each night to have sex and buy drugs;

d.        Rooms at Rodeway Inn & Suites were routinely filled with numerous people who engaged in sex and drugs;

e.        Loud, boisterous sounds and music in the rooms and public areas throughout the night and day disturbed the quiet enjoyment of other guests;

f.        Women and clients would go into hotel parking lot and loiter;

g.        Upon alert by other hotel customers and/or staff of Rodeway Inn & Suites, the Dania Beach Police Department ("DBPD") and/or Broward Sheriff's Office ("BSO") received

emergency calls that prostitution was occurring at Rodeway Inn & Suites in the rented rooms of the Plaintiff's sex trafficker, Mr. Joseph, and/or Plaintiff;[84]

      h.     Emergency medical technicians from BSO Fire Rescue were frequently called to Rodeway Inn & Suites for drug overdoses and/or injuries occurring in its hotel rooms that were rented to the Plaintiff's sex trafficker and/or Plaintiff; and

      i.     Defendants knew or should have known there was a foreseeable increased risk that illegal sex trafficking was occurring at Rodeway Inn & Suites, and that Plaintiff might be harmed. Further, the scope of the anticipated risk to which Defendants allowed Plaintiff to be exposed and her corresponding injuries and abuse were reasonably foreseeable by Defendants.

121.    The foregoing routine and conduct occurred while Plaintiff, S.W., was being sex trafficked at Rodeway Inn & Suites from 2019 through 2020 and, upon information and belief, the foregoing routine and conduct, as it applies to sex trafficking not specific to Plaintiff, also occurred at Rodeway Inn & Suites many years prior to 2019, and has continued through the present.

122.    DBPD and BSO were cognizant of the foregoing routine and conduct from afar, making it impossible for Defendants to be ignorant of what was occurring right in front of their agents, employees, and servants.

123.    Defendants, individually and/ or by their actual or apparent agents, servants and/or employees, knew or had constructive knowledge, that they were renting or otherwise providing rooms and services to individuals, such as human sex traffickers, who were engaged in the commercial sex trade.

---

[84] Upon information and belief, DBPD and BSO were present at Rodeway Inn & Suites on multiple occasions during the relevant time period.

124.    Defendants, individually and/or by their actual or apparent agents, servants and/or employees, knew or had constructive knowledge, that the women with Plaintiff's sex trafficker, including Plaintiff, S.W., were used to carry out the commercial sex trade and sale of illegal drugs.

125.    Defendants, individually and/or by their actual or apparent agents, servants and/or employees, knew or should have known of suspicious activity occurring at their premises and that by failing to inspect and make their hotel premises safe from criminal activity, it was foreseeable that illegal activity was, and would continue to be, carried out at Rodeway Inn & Suites.

126.    It follows then that Defendants could reasonably foresee that sex crimes, human trafficking or other foreseeable acts were occurring on their premises and/or were being committed against hotel guests, such as the Plaintiff S.W.

127.    Additionally, Defendants, individually and/or by their actual or apparent agents, servants and/or employees, knew or had constructive knowledge that illegal drugs were being sold and used on the premises.

128.    Moreover, Defendants' housekeeping, front desk, maintenance, food preparation staff, managers, pool staff, and security had conversations with the Plaintiff, S.W., and had knowledge, or should have had knowledge, that the Plaintiff was staying at the hotel for an extended period of time to carry out various sex trafficking ventures.

129.    Defendants' hotel staff also knew that the Plaintiff would routinely sleep during the day and walk the premises at night in provocative attire.

130.    At all material times, Defendants, individually and/or by and through their actual or apparent agents, servants and/or employees, were uniquely positioned to observe the manifestations or indications of human sex trafficking and human sex trafficking victims within Rodeway Inn & Suites.

131. Had Rodeway Inn & Suites' staff been properly trained by Defendants' principals and/or anyone acting on their behalf regarding the obvious signs of sex trafficking, they would have observed the obvious signs of sex trafficking at Rodeway Inn & Suites, including as they applied to Plaintiff S.W., and these signs would have been recognized and, therefore, reported.

132. Defendants failed to implement and enforce any of their own policies and protect Plaintiff S.W. from being sex trafficked.

133. Defendants knew or should have known that their premises where Plaintiff S.W. was being trafficked was an area known for high incidence of crime and prone to sex trafficking activity.

134. Despite having clear evidence of the extensive prostitution and sex trafficking that was occurring on their premises, Defendants repeatedly failed to stop or deter these actions.

135. Defendants could have prevented sex trafficking, by: (i) distributing information to assist its agents, employees, operators, and brand managers in identifying human trafficking and indications of an illegal enterprise or suspicious activity; (ii) posting notices as to what is human trafficking and a national hotline; (iii) providing a process for reporting and escalating human trafficking concerns within the organization, and to appropriate outside agencies; (iv) requiring all employees to attend training related to handling a situation involving human trafficking; (v) providing new hire orientation on human rights, corporate responsibility and whistleblowing of enablers; (vi) providing training and education to its hotel agents, employees, servants and staff through webinars, seminars, conferences, and online portals as to how to respond to suspected human traffickers, victims and suspicious activity; (vii) developing and holding ongoing training sessions on human trafficking; or providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human

trafficking prevention; (viii) providing steps they could undertake to deter traffickers and decline forms of bribery; and (ix) ensuring strict security protocols, credit cards only, and no loitering.

136. For years, Defendants have failed to take adequate steps to prevent the rampant culture of sex trafficking which tragically occurs on their premises at which Plaintiff S.W. was trafficked.

137. The acts and omissions of Defendants served to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of the Plaintiff S.W., and others, for commercial sexual exploitation by repeatedly renting rooms to people that it knew or should have known were engaged in sex trafficking.

VII. **Israel "Izzy" Fintz Was an Agent of All Defendants and Had Knowledge of, Participated in, and Profited from Plaintiff S.W.'s Exploitation and Other Illicit Activity at Rodeway Inn & Suites**

138. Upon information and belief, Israel "Izzy" Fintz acted as the actual agent of Defendant EZ, including as its sole titled manager and principal. As the only formal officer or manager listed for EZ, his acts and omissions are legally attributable to EZ under agency and corporate veil-piercing principles.

139. Mr. Fintz also served as the on-site hotel manager of the Rodeway Inn & Suites, where he exercised operational authority over hotel staff, guest services, access control, security, and other daily operations. In this capacity, Mr. Fintz acted as the actual and/or implied agent of Defendant Tropical Paradise, which owned the hotel property and delegated management responsibilities to him.

140. Additionally, Mr. Fintz operated with the apparent authority of Defendant Choice Hotels, by enforcing brand policies, wearing branded uniforms, implementing reservation and property systems dictated by Choice, and responding to complaints or inspections within the

Choice Hotels network. In doing so, he acted on behalf of and within the scope of Choice's retained operational control.

141.    Mr. Fintz's conduct described below occurred within the course and scope of his employment and/or agency with each Defendant. His actions were foreseeable, consistent with his position, and carried out (at least in part) for the benefit of each entity.

142.    Former employees of the hotel have confirmed that Mr. Fintz was not only aware of the trafficking occurring on the premises but actively participated in and profited from it. Upon information and belief, Mr. Fintz received monetary kickbacks or "cuts" from traffickers, including Mr. Joseph, in exchange for permitting continued trafficking operations at the hotel. These incentives included payments per room rented and, in some cases, per trafficking victim.

143.    These same witnesses reported that Mr. Fintz also attempted to traffic hotel employees by targeting vulnerable staff members, grooming them for exploitation, and facilitating commercial sex acts involving those employees while they were under his supervision. Some employees reported being approached or coerced by Mr. Fintz for this purpose.

144.    Additionally, Mr. Fintz was directly involved in the distribution and sale of illegal drugs throughout the hotel. According to witness accounts, he supplied or facilitated the movement of drugs on the premises and allowed known drug activity to flourish as part of the broader trafficking enterprise. These illicit activities were carried out openly and without fear of discipline, inspection, or intervention by any Defendant.

145.    Mr. Fintz's direct financial involvement in trafficking and drug activity, combined with his role as a principal of EZ Hospitality, the manager of the property for Tropical Paradise, and an actual or apparent agent of Choice Hotels, Mr. Fintz acted with the authority, autonomy, and discretion afforded to him by each entity. His actions, including facilitating and profiting from

trafficking-related activities and drug distribution, were reasonably foreseeable and within the scope of his assigned responsibilities, making each Defendant vicariously liable for his conduct under established principles of Florida agency law.

146.    Mr. Fintz, the on-site manager of Rodeway Inn & Suites, the title manager and principal of Defendant EZ Hospitality, and the actual and/or apparent agent of all Defendants, including Choice Hotels, frequently invited S.W. into his office, where he would flirt with her and give her complimentary drink cards for the hotel's adjoining restaurant, Marina 84 Sports Bar & Grill. Mr. Fintz repeatedly asked S.W. to go on "dates" with him.

147.    S.W.'s first interaction with Mr. Fintz occurred while she was in a hotel room at Rodeway Inn & Suites with a John. Mr. Fintz knocked on the door, yelled at the John to leave, and then charged S.W. $300.00 for smoking marijuana in the room.

148.    Several months later, Mr. Fintz approached S.W. and told her that he felt badly about the incident and his decision to fine her. He then began asking S.W. when he would see her again and when they were going to go on a date. S.W. deflected his advances by telling him, "one day."

149.    From that point forward, Mr. Fintz regularly invited S.W. into his office and continued giving her free drink cards for Marina 84 Sports Bar & Grill.

150.    On one occasion, a John who regularly paid for sex acts with S.W. entered the lobby of Rodeway Inn & Suites in a jealous rage and loudly accused Mr. Fintz of sleeping with S.W., expressing anger over their perceived relationship.

151.    The next time S.W. saw Mr. Fintz, he confided that he had been forced to hold a staff meeting about the incident to address the scene caused by the John and to assure his employees that he did not have a sexual relationship with S.W.

152. After that incident, Mr. Fintz stopped asking S.W. to go on dates. However, he continued to invite her into his office and regularly provided her with free drink cards for Marina 84 Sports Bar & Grill.

153. Mr. Fintz also appears to be the author of several public responses to negative online reviews of the hotel, previously detailed in the section above, which are posted under the name "Izzy F." Several of these responses contain inappropriate, erratic, or combative language, including personal attacks on guests, dismissive remarks about safety concerns, and unprofessional commentary regarding allegations of prostitution, drug use, and unsafe conditions at the property. These online statements further reflect Mr. Fintz's troubling attitude toward guest welfare and corroborate his awareness of illicit activity at the subject Rodeway Inn & Suites.

## VIII. Choice Hotels Retained Control Over Relevant Aspects of Operations at Rodeway Inn & Suites and Thus Had Both the Opportunity and Duty to Prevent Sex Trafficking at Rodeway Inn & Suites, including Plaintiff S.W.'s Trafficking

154. Choice Hotels retained control over the details and methods of aspects of the operation of the Rodeway Inn & Suites that are directly relevant to the proliferation of sex trafficking at that property. As a result of this retained control and its direct involvement, Choice Hotels knowingly harbored and maintained Plaintiff S.W. for purposes of commercial sex acts in violation of 18 U.S.C. § 1591(a)(1). In doing so, Choice Hotels also participated in a venture with sex traffickers who were using Rodeway Inn & Suites as a venue for their trafficking. Moreover, as a result of this retained control, Choice Hotels had both the opportunity and the duty to prevent Plaintiff S.W.'s trafficking and failed to do so.

155. Choice Hotels retained control over the training of the staff of the Rodeway Inn & Suites regarding human trafficking and ways to detect and respond to signs of human trafficking. Effective training and education are the most important tools to prevent use of hotel facilities for

sexual exploitation and human trafficking. If Choice Hotels had exercised reasonable diligence in providing training, Choice Hotels would have prevented the Rodeway Inn & Suites from being used to facilitate obvious and apparent sex trafficking, including the trafficking of Plaintiff S.W. By failing to take reasonable steps to provide appropriate training, despite the overwhelming evidence it had of an ongoing problem with use of its branded properties for sex trafficking, Choice Hotels was negligently facilitating sex trafficking.

156.    Beyond training, Choice Hotels also retained control over the response of its hotels to human trafficking, including development of policies and procedure regarding detection of and response to human trafficking. By retaining control in this area, Choice Hotels assumed a legal duty to the patrons and guests of its hotels. By failing to exercise reasonable diligence in discharge of this duty, Choice Hotels facilitated sex trafficking, including the sex trafficking of Plaintiff S.W., in its hotels.

157.    At the heart of Defendants' venture with traffickers (including Plaintiff S.W.'s trafficker) is the reservation of hotel rooms. Upon information and belief, Choice Hotels retained control over the details of reservations at the Rodeway Inn & Suites, including controlling the online reservation system that Tropical Paradise and EZ were required to use, providing software systems Tropical Paradise and EZ had to use to check guests in and charge for rooms, controlling the prices of rooms, setting all details of the customer loyalty program that Tropical Paradise and EZ were required to implement, and setting detailed policies for things such as payment methods and requirements to show identification. Because reservations and payments were processed through its systems, Choice Hotels had access to guest and payment information. Choice Hotels thus directly participated, through its acts and omissions, in reserving rooms to traffickers, including Plaintiff S.W.'s traffickers. If Choice Hotels had used reasonable diligence in setting,

implementing, and enforcing appropriate policies, it would have detected Plaintiff S.W.'s trafficking and/or prevented Plaintiff S.W.'s trafficker from using a room to sexually exploit Plaintiff S.W. By failing to exercise reasonable diligence in discharge of this duty, Choice Hotels facilitated sex trafficking, including the sex trafficking of Plaintiff S.W., in its hotels.

158.    Choice Hotels also retained control over issues related to reporting security and criminal activity, including human trafficking activity. On information and belief, Choice Hotels adopted a policy that required staff at the Rodeway Inn & Suites to report indicators or potential criminal activity on premises to Choice Hotels. Based on Choice Hotels' retained control over this area, it knew or—with reasonable diligence in implementing and enforcing this policy—should have known that Plaintiff S.W. was being trafficked. By failing to exercise reasonable diligence in discharge of this duty, Choice Hotels facilitated sex trafficking, including the sex trafficking of Plaintiff S.W., in its hotels.

159.    On information and belief, Choice Hotels also retained control over property specific data and customer data from the Rodeway Inn & Suites—which it obtained by controlling the means and methods by which Tropical Paradise and EZ recorded, stored, and reported that data—such that it had actual or constructive knowledge about the ongoing trafficking that was occurring at the Rodeway Inn & Suites during the time Plaintiff was trafficked there. However, on information and belief, Choice Hotels was willfully blind to this data and knowingly continued to harbor and maintain Plaintiff S.W. for the purpose of commercial sex acts by providing a venue and associated services where traffickers could profit from sexual exploitation with minimal risk of disruption.

160.    Choice Hotels also retained control over the security of the Rodeway Inn & Suites through various means including, upon information and belief, placing and monitoring security

cameras, accepting and reviewing customer complaints, and inspecting the Rodeway Inn & Suites. It also collected data regarding hotel operations and customers, including names, payment information, reservation history, browsing data, and other details associated with their stay. Because Choice Hotels retained this control, it had a duty to the patrons and visitors to the Rodeway Inn & Suites. If Choice Hotels had exercised reasonable care in the discharge of this duty, it would have detected and known about Plaintiff S.W.'s trafficking- and avoided facilitating it. By failing to exercise reasonable diligence in discharge of this duty, Choice Hotels knowingly maintained Plaintiff S.W. on the premises for the purpose of commercial sex acts and thereby violated 18 U.S.C. § 1591(a)(1).

161.   On information and belief, Choice Hotels retained authority to audit, inspect, and monitor hotel managers, including Mr. Fintz, through its franchise relationship, quality assurance inspections, and brand enforcement mechanisms. Despite having the ability and obligation to identify misconduct by hotel management, Choice Hotels failed to intervene, discipline, or remove Mr. Fintz even as criminal activity under his supervision, including sex trafficking, drug distribution, and exploitation of vulnerable individuals, continued on the premises. Choice Hotels' failure to act, despite its oversight role, further facilitated Plaintiff S.W.'s trafficking and reflects deliberate indifference or willful blindness to unlawful conduct occurring within its branded property.

162.   Choice Hotels also retained control over the safety and security of the experience at its branded properties by setting up systems for customers to report issues to Choice Hotels rather than Tropical Paradise and EZ. Despite doing this, Choice Hotels failed to act reasonably in response to complaints about criminal activity and sex trafficking at its properties, including the Rodeway Inn & Suites. If Choice Hotels had acted reasonably and prudently in monitoring and

responding to customer complaints, it would have reduced the rampant sex trafficking in its branded properties and would not have facilitated Plaintiff S.W.'s sex trafficking.

163.    Choice Hotels required Tropical Paradise and EZ to offer internet service to guests at the Rodeway Inn & Suites and retained control over the details of that internet service and policies regarding its use. Upon information and belief, Choice Hotels required Tropical Paradise and EZ to use a particular platform, set policies, and retained access to data regarding guests' use of Wi-Fi. Choice Hotels was aware that sex traffickers used the internet to facilitate trafficking by advertising victims' commercial sex services. Because Choice Hotels retained control over internet service, Choice Hotels could have but did not enact policies to prevent Plaintiff S.W.'s trafficker from advertising commercial sex activity online and could have, with reasonable diligence, used tools to determine when its hotel and Wi-Fi were being used to facilitate unlawful sexual exploitation.

164.    Based on public reporting, investigations, criminal incidents, hotel reviews and comments, and direct reporting from Tropical Paradise and EZ, as set out throughout this Complaint, Choice Hotels had actual knowledge of pervasive sex trafficking throughout its owned hotel properties generally and specifically at the Rodeway Inn & Suites. Choice Hotels through its acts and omissions, knowingly received financial benefit from activity at its branded hotels, including Rodeway Inn & Suites, that Choice Hotels knew or should have known was unlawful sex trafficking.

165.    If Choice Hotels had acted reasonably, in compliance with industry standard, in compliance with its own promises, and/or in compliance with its own policies and procedures, Plaintiff S.W.'s trafficking would have been prevented.

IX.    **Choice Hotels Participated in a Commercial Venture with Tropical Paradise and EZ Hospitality Through Pervasive Operational Control**

166.     In addition to Choice Hotels' direct involvement in the venture through the means outlined above, Choice Hotels also participated in a commercial venture with Tropical Paradise and EZ through its direct operational control, brand enforcement mechanisms, and profit-sharing structure relating to the Rodeway Inn & Suites.

167.     Upon information and belief, Choice Hotels exercised systemic and pervasive control over the operation of the Rodeway Inn & Suites in coordination with Tropical Paradise (the franchisee/property owner) and EZ (the on-site management company), including the methods and details of their work. This control included, but was not limited to, the following:

a.     Requiring the use of Choice Hotels' centralized reservation and marketing systems;

b.     Mandating the use of Choice Hotels' credit processing systems;

c.     Dictating policies regarding acceptable forms of payment;

d.     Setting room pricing and imposing required discounts;

e.     Requiring participation in Choice Hotels' franchisee association;

f.     Setting wage guidelines or minimum compensation standards;

g.     Making or influencing hiring and other employment decisions at the property level;

h.     Requiring standardized training for hotel staff;

i.     Installing a data transport system to allow Choice Hotels to access and monitor all hotel transactions;

j.     Requiring the collection of guest data through Choice Hotels' proprietary systems, mandating regular reporting, and reserving the right to access such data;

k.      Controlling procurement by limiting the vendors used for goods and services to those designated or approved by Choice Hotels;

l.      Serving as a liaison between the hotel and qualified vendors;

m.      Requiring compliance with standards, policies, and rules adopted by Choice Hotels on human trafficking, cybersecurity, guest preferences, reward programs, internet access, hotel furniture, amenities, food and beverage, cleanliness, or other hotel brand related policies published and communicated via property management systems, Wi-Fi qualifications and/or Wi-Fi qualified service providers, language and policy used on internet landing pages, thresholds for cybersecurity, filtering and/or other guest internet protections, systems used to monitor customer reviews and responses, and other systems related to the daily operations at the Rodeway Inn & Suites.

168.    This pervasive operational control extended to the conduct and oversight of hotel managers, including Mr. Fintz, who served as the on-site manager of the Rodeway Inn & Suites and the title manager of Defendant EZ Hospitality. On information and belief, Choice Hotels had authority to audit, supervise, and discipline Mr. Fintz through brand standards enforcement, field inspections, and quality assurance mechanisms. Despite this authority—and widespread red flags about Mr. Fintz's misconduct, including his involvement in trafficking, drug activity, and exploitation of hotel employees—Choice Hotels failed to take any corrective action. This omission reflects Choice's continued participation in the venture and its decision to prioritize revenue and brand occupancy over intervention.

169.    Choice Hotels did not merely identify quality or outcome standards. Instead, it specifically directed the means and methods that Tropical Paradise, EZ, and hotel staff were required to use for day-to-day operations and dictated many of the core tools that Tropical Paradise

and EZ were required to use to conduct those operations, including the means and methods of operations that directly caused Plaintiff S.W.'s damages.

170. Upon information and belief, Choice Hotels had the right, and in fact did, enforce its control over Tropical Paradise (the property owner and franchisee) and EZ (the on-site management company) through various methods, including but not limited to:

a. Employing "Field Agents" or similar representatives to directly supervise, oversee, and report on hotel operations, including staff and procedures implemented by both Tropical Paradise and EZ;

b. Conducting inspections of the Rodeway Inn & Suites to ensure adherence to Choice Hotels' operational standards, brand expectations, and quality assurance protocols;

c. Monitoring and auditing the performance of Tropical Paradise and EZ for compliance with Choice Hotels' policies, brand standards, and performance metrics;

d. Directing Tropical Paradise and EZ to take specific corrective or operational steps to meet detailed and exacting standards mandated by Choice Hotels;

e. Mandating participation by hotel staff and management in training and education programs required or developed by Choice Hotels, including those addressing guest safety, operational consistency, and trafficking awareness;

f. Imposing monetary penalties or other consequences based on poor performance indicators, such as negative guest reviews or failed inspections;

g. Retaining the right to terminate or threaten termination of the franchise agreement as a mechanism of control and enforcement, thereby exerting pervasive operational control over the property's ownership and day-to-day management.

**X.      Defendants Knowingly Benefitted from Plaintiff S.W.'s Sex Trafficking**

171.    Sex traffickers, including Plaintiff S.W.'s trafficker, Mr. Joseph, routinely used the Rodeway Inn & Suites for commercial sex trafficking because they knew hotel staff would not intervene. This occurred because Defendants Tropical Paradise Resorts, LLC (property owner and franchisee), EZ Hospitality, LLC (management company), and Choice Hotels International, Inc. (franchisor):

a.      Failed to adopt and enforce policies to detect and prevent sex trafficking and allowed their premises to be used repeatedly to facilitate such trafficking;

b.      Failed to exercise reasonable care in hiring, training, supervising, and retaining staff who routinely observed indicators of trafficking;

c.      Enforced brand, operational, and revenue-based policies that prioritized profit over guest safety, enabling traffickers like Mr. Joseph to repeatedly exploit Plaintiff on site.

172.    Defendants operated the Rodeway Inn & Suites as part of a coordinated business venture, with Tropical Paradise acting as the property owner and franchisee, EZ Hospitality serving as the on-site manager, and Choice Hotels exercising brand authority, policy enforcement, and operational control. Together, Defendants shared a common interest in maximizing profits from the hotel's operation, including the continued rental of rooms that facilitated Plaintiff's sex trafficking.

173.    Through this venture, Choice Hotels knowingly received a financial benefit in the form of franchise fees, royalty fees, and other payments from Tropical Paradise and/or EZ Hospitality. In turn, Tropical Paradise and EZ Hospitality knowingly profited from the continued rental of rooms to Mr. Joseph, even as they knew or should have known that Plaintiff was being trafficked and sexually exploited on the premises.

174. Defendants knowingly harbored Mr. Joseph by allowing him repeated and continued access to hotel rooms, services, and privacy at the Rodeway Inn & Suites, despite clear and persistent indicators that he was using the property to traffic Plaintiff S.W. Defendants also knowingly harbored Plaintiff S.W. by allowing her to remain confined, abused, and commercially exploited on the premises, without taking any steps to intervene, aid, or protect her.

175. Tropical Paradise and EZ knowingly harbored and maintained Plaintiff S.W. for the purpose of commercial sex acts by allowing her trafficker to repeatedly rent rooms, bring sex buyers on-site, and use hotel services to further the trafficking venture. These Defendants permitted this conduct despite obvious red flags and clear indicators of coercion and abuse, and thus directly violated 18 U.S.C. § 1591(a)(1).

176. Mr. Joseph did not conceal his conduct. He openly brought men to Plaintiff's room at all hours, paid in cash, requested additional towels, linens, and room cleanings associated with trafficking, and sold illegal drugs to sex buyers ("Johns") on the premises. He operated openly and without concern, demonstrating no fear of detection or disruption. These activities, including both the commercial sex acts and drug distribution, were facilitated, tolerated, and ignored by hotel staff acting under the authority or oversight of all Defendants, and by Defendants individually as they were repeatedly reflected in online guest reviews describing drug use, prostitution, and dangerous conditions at the Rodeway Inn & Suites. Law enforcement had also responded to prior incidents involving drug activity and criminal conduct at the property. Despite these on-site observations, public reviews, and police reports, all Defendants failed to investigate, intervene, or take any meaningful steps to stop the trafficking and criminal activity occurring at the hotel.

177. These facts, among others, demonstrate Defendants' active participation in the trafficking venture. Defendants' facilitation of Mr. Joseph's conduct is further evidenced by:

a.     Allowing cash payments and permitting room rentals without verifying the identity of the actual guest;

b.     Ignoring visible signs of trafficking, including Plaintiff's physical injuries, fearful behavior, and lack of freedom;

c.     Failing to monitor or investigate guest complaints, surveillance footage, or abnormal activity that occurred repeatedly in connection with Mr. Joseph's room rentals;

d.     Continuing to provide services to Mr. Joseph and other traffickers, and declining to alert law enforcement or remove him from the premises, even after Plaintiff S.W. was repeatedly seen in distress or visibly harmed.

178.    Defendants provided more than just a physical location; they provided the cover of a legitimate hotel business, allowing traffickers to operate in a commercial setting with little risk of law enforcement scrutiny. This implicit agreement between Defendants and the trafficker is evidenced by their failure to intervene, inquire, report, or disrupt obvious trafficking activity over an extended period of time.

179.    Defendants also participated in the venture by providing services to traffickers, including Mr. Joseph, including room cleaning, towel service, internet access, and ongoing accommodation, even as Plaintiff S.W. remained confined, abused, and exploited. These services further enabled the trafficker to continue operating.

180.    Defendants' venture with traffickers, including Mr. Joseph, directly resulted in revenue from room rentals, other incidental purchases by traffickers, and ancillary services tied to the trafficking activity, all of which financially benefited Tropical Paradise, EZ, and Choice Hotels. Each room Mr. Joseph rented at Rodeway Inn & Suites to exploit Plaintiff increased

income for all three Defendants. Despite knowing of this activity, Defendants continued to facilitate and profit from it.

## XI.   Defendants' Willful Blindness to Sex Trafficking at its Hotel

181.   Plaintiff S.W. was trafficked for commercial sex acts at the Rodeway Inn & Suites in plain sight of hotel staff and management. Defendants Tropical Paradise, EZ, and Choice Hotels were aware or deliberately avoided confirming that sex trafficking was occurring on their property.

182.   Defendants acted with willful blindness by consciously avoiding knowledge of the trafficking, despite clear and repeated red flags. Rather than investigate or intervene, Defendants chose to continue profiting from the venture while denying responsibility for Plaintiff's victimization.

183.   The following observable and well-known indicators of sex trafficking were present during Plaintiff S.W.'s trafficking:

a.      Repeated male visitors to the same room at all hours of the day and night, often staying only briefly;

b.      Guest payments in cash or with prepaid cards to avoid traceability;

c.      Extended stays without luggage, personal belongings, or accompanying identification;

d.      Visible physical injuries on Plaintiff and signs of fear, distress, or disorientation;

e.      Plaintiff's limited mobility, lack of freedom, and apparent subservience to her trafficker;

f.      Requests for additional towels, sheets, condoms, and frequent room cleaning services inconsistent with ordinary guest use;

g.  Noise complaints and concerns raised by other guests that were disregarded by staff;

h.  Prior law enforcement activity and known criminal conduct on the premises.

184.  Hotel staff under the direction of Tropical Paradise and EZ either witnessed or should have witnessed these signs during their daily duties. Choice Hotels had access to this conduct through its oversight mechanisms, including reservation records, surveillance systems, brand inspections, franchise audits, and its power to enforce corporate policy at the property level.

185.  In addition to actual knowledge and direct observations, Defendants were on constructive notice of the sex trafficking occurring at Rodeway Inn & Suites. Based on persistent criminal activity at the property, online reviews describing prostitution and drug use, law enforcement responses, guest complaints, and industry-standard indicators, Defendants either knew or, with reasonable diligence, should have known that Plaintiff S.W. was being trafficked. This constructive notice gave rise to a duty to investigate, report, and intervene — duties Defendants knowingly disregarded.

186.  Rather than act on these indicators, Defendants failed to:

a.  Conduct internal investigations;

b.  Report suspicious conduct to local law enforcement or federal authorities;

c.  Instruct staff to document or escalate observed trafficking behavior;

d.  Train employees to recognize and respond to trafficking signs;

e.  Remove the trafficker from the property or refuse him service;

f.  Offer any protection, aid, or escape opportunities to Plaintiff S.W.

187. Defendants knowingly harbored Mr. Joseph by permitting him to use the hotel to facilitate sex trafficking over a sustained period, including by renting rooms with no questions asked, failing to monitor guest activity, and ignoring visible red flags. Defendants also harbored Plaintiff by allowing her to remain in involuntary servitude on the premises, in dangerous and exploitative conditions, without taking any protective action or providing assistance.

188. Defendants' failure to act was not accidental. It was a deliberate choice made in the interest of preserving profits. Had Defendants taken action, they risked disrupting the flow of revenue generated by Mr. Joseph's ongoing rental of rooms and purchases of goods and services.

189. Defendants operated the Rodeway Inn & Suites as a joint venture, with Tropical Paradise owning the property, EZ Hospitality managing daily operations, and Choice Hotels exercising corporate control and profiting through franchise and royalty fees. Each Defendant had the power and opportunity to stop the trafficking but instead chose inaction and concealment.

190. As a result of Defendants' willful blindness and consistent failure to intervene, Plaintiff S.W. was repeatedly subjected to:

    a. Forced labor and commercial sexual exploitation;

    b. Forced confinement without safe means of escape;

    c. Assault and fear;

    d. Sickness, dizziness and headaches;

    e. Cuts, lacerations, abrasions and other physical harm;

    f. Mental anguish, humiliation, exploitation, degradation and mental distress;

    g. Suffocation, battery and rape;

    h. Shock, fright and post-traumatic stress;

       i.      Alcohol and drug-induced dangers (the Plaintiff suffered alcohol and drug-induced actions which caused harm to herself); and

       j.      Invasion of privacy and wrongful entry of "Johns."

191.    Defendants owed Plaintiff a duty to maintain safe premises, prevent foreseeable criminal activity, and protect vulnerable guests. Instead, they knowingly harbored her trafficker and allowed her continued abuse in order to profit from the venture.

## CAUSES OF ACTION

192.    The injuries and harms that Plaintiff, S.W., suffered as a result of Defendants' negligent operation of their hotel premises and failure to make the hotel premises safe, are of a permanent and/or continuing nature.

193.    Defendants and their respective owners, operators, supervisors and controllers, had a continuing legal duty to protect their hotel guests and other invitees, like the Plaintiff S.W., to use ordinary care to keep their hotel premises in a reasonably safe condition, and to protect their guests, such as the Plaintiff S.W., from harm due to reasonably foreseeable risks of injury, regardless if the guests were utilizing the hotels' common rooms, facilities, exterior passageways, or were within the confines of the rented rooms.[85]

194.    Defendants failed in their duties to the Plaintiff, S.W., to provide security and other precautions to prevent the criminal acts perpetrated against her person on the premises by third parties on a regular basis.

195.    The attacks upon the Plaintiff, S.W. by her trafficker, Mr. Joseph, by the "Johns" and staff persons were foreseeable and thus Defendants had a duty to protect Plaintiff.

---

[85] 17 Fla. Jur., Hotels, Restaurants, and Motels, § 24; 40 Am.Jur.2d, Hotels, Motels, and Restaurants, § 111.

196. Defendants observed, knew or should have known there was a foreseeable increased risk that illegal sex and drug trafficking was occurring at its premises and that the Plaintiff, S.W. might be harmed during the rental of the rooms at Rodeway Inn & Suites as a result.

197. For Defendants and their owners, operators, supervisors and controllers, the crime of human sex trafficking was a foreseeable risk because the long history, prevalence and extent of this sex slavery was commonly known to them.

198. At all relevant times, Defendants and their hotel owners, operators, supervisors and controllers, were vehicles with which the crime of human sex trafficking was readily carried out, furthered, harbored and made financially viable.

199. Significantly, Defendants knew or should have known there was a foreseeable increased risk that illegal sex trafficking was occurring at their hotel, that tragic incidents were occurring as a result, and that the Plaintiff S.W., as a hotel guest, might be harmed due to prior similar incidents that had previously occurred there. Accordingly, Defendants should have taken steps to prevent sex and drug trafficking on its premises in accordance with applicable Federal, State and local laws and guidelines.

200. Accordingly, because human sex trafficking and other illegal activity associated therewith was foreseeable, Defendants had a duty to undertake adequate security or remedial measures to protect its guests, including Plaintiff, S.W., from criminal activity on the premises.

201. Plaintiff, S.W.'s injuries and consequential damages were the direct and proximate result of Defendants' acts and omissions, namely:

   a. Failure to provide training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, security, or who work at the front desk;

b.      Failure to provide guidance on how to identify individuals who may be traffickers or their victims of the sex trafficking;

c.      Failure to establish, implement or enforce a protocol on reporting suspected human trafficking;

d.      Failure to establish, implement or enforce a protocol to respond to situations involving human trafficking;

e.      Failure to enforce provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks;

f.      Failure to require its agents, servants and/or employees to participate, complete and continue education regarding sex trafficking in hotels;

g.      Failure to remove and/or refuse subsequent accommodations to the Plaintiff's sex trafficker, Mr. Joseph, when conduct displayed on the premises included a combination of intoxication, profanity, lewdness, or brawling; disturbing the peace or comfort of other guests; illegal activity; disorderly conduct; and drug dealing;

h.      Allowing rental of hotel rooms without conferring with senior management, notwithstanding the suspicions;

i.      Failure to correct or remedy protocols that were defective or ineffective in preventing or addressing prior sex and drug trafficking incidents at Defendant's hotel property;

j.      Failure to provide adequate security personnel at Rodeway Inn & Suites to protect its guests;

k.      Failure to establish, implement and enforce appropriate security policies and procedures for certain times of day, room locations, and suspicious activity;

74

l.      Permitting unknown persons to loiter, to gain entry to guest hallways, to know room numbers, and have access to room keys;

m.      Failure to check the background of the hotel employees for sex crimes and other unlawful acts; and

n.      Otherwise failing to use reasonable care for the safety of its guests.

202.    By failing to act, Defendants, by and through their actual or apparent agents, servants and/or employees, allowed the Plaintiff, S.W. to be harbored and confined for sexual acts while collecting rental fees thereon.

203.    Defendants' willful blindness, negligence, or indifference for the health and welfare of the Plaintiff, S.W., spanned over many months and exceeded all bounds of decency.

204.    Pursuant to §501.204, *Fla. Stat*., Defendants have engaged in unconscionable and unfair acts or practices in the conduct of the hospitality industry.

205.    As a further direct and proximate result of Defendants' conduct and lack of due and reasonable care, Plaintiff, S.W., has incurred expenses, fees, and costs of medical care and attention to her injuries, including: (1) physicians' fees; (2) medications and medical supplies; (3) hospitalizations; and (4) transportation costs to and from various physicians' offices and hospitals.

206.    As a further direct and proximate result of Defendants' conduct and lack of due and reasonable care, Plaintiff, S.W., has suffered great physical and mental pain, and will continue to suffer such pain for the indefinite future, for which Plaintiff should also be compensated by Defendants.

**COUNT I**
**VIOLATION OF 18 U.S.C. § 1595 ("TVPRA"):**
**PERPETRATOR LIABILITY**
(Against All Defendants)

207. In support of her action against Defendants TROPICAL PARADISE RESORTS, LLC d/b/a RODEWAY INN & SUITES, EZ HOSPITALITY, LLC and CHOICE HOTELS INTERNATIONAL, INC., Plaintiff, S.W., adopts and incorporates by reference paragraphs 1-196 contained in this Complaint as if fully set forth herein.

208. Plaintiff, S.W., is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and is therefore entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity who knowingly benefits from participation in a venture which that entity or person knew or should have known has engaged in violations of the TVPRA.

209. Defendants knowingly harbored, maintained, and facilitated the trafficking of Plaintiff, S.W., and knowingly received financial benefits from this trafficking through room rentals, fees, and associated services.

210. Defendants knew or should have known about the nature of the sex trafficking venture at its premises, including as it related to Plaintiff S.W., for the reasons stated above which include, but are not limited to:

      a.      Cash payments for the rooms by the sex trafficker, Mr. Joseph;

      b.      Refusal of housekeeping services by those persons engaged in sex trafficking;

      c.      Excessive used condoms located in the rooms used for sex trafficking;

      d.      Excessive requests for towels and linens in the rooms used for sex trafficking;

e.      Hotel staff observing Plaintiff S.W. and her trafficker, Mr. Joseph, in the hotel;

f.      Hotel staff observing Plaintiff S.W., scantily clothed, and in a visibly impaired condition on the premises;

g.      Plaintiff, S.W., being escorted by her trafficker, Mr. Joseph, in and around the hotel;

h.      Pleas and screams for help coming from the rooms of Plaintiff, S.W., and/or those of other women being trafficked by Mr. Joseph;

i.      Operation of sex trafficking ventures out of the same hotel room for multiple days or weeks in succession; and

j.      Multiple men per day coming and going from the same rooms without luggage or personal possessions.

k.      Knowledge of police and EMS activity at Rodeway Inn & Suites that was related to commercial sex work.

211.    Defendants knowingly allowed traffickers, including Mr. Joseph, to rent rooms at Rodeway Inn & Suites where S.W. was repeatedly trafficked.

212.    Defendants actively facilitated the trafficking operation by failing to intervene despite clear signs of coercion and abuse.

213.    Defendants' hotel staff observed signs of trafficking, including S.W. being escorted by her trafficker while visibly bruised, scantily dressed, and appearing intoxicated.

214.    Defendants failed to take any steps to prevent trafficking, despite knowledge of ongoing criminal activity at Rodeway Inn & Suites.

215. Defendants acted in reckless disregard of the fact that Plaintiff S.W. was being trafficked, as evidenced by the persistent and obvious red flags observed by hotel staff, repeated criminal activity on the premises, and Defendants' deliberate failure to intervene despite their power and obligation to do so.

216. Defendants' hotel manager, Israel "Izzy" Fintz, was aware of and engaged with S.W. during her trafficking, including by providing her free drink cards and attempting to solicit her.

217. As detailed above, Israel "Izzy" Fintz was the on-site hotel manager of Rodeway Inn & Suites, the sole title manager and principal of Defendant EZ Hospitality, and acted as the actual, implied, and/or apparent agent of each Defendant. With respect to EZ Hospitality, Mr. Fintz also served as its parent agent by virtue of being its only listed manager and corporate principal, with full control over its operations. While in this position of authority, Mr. Fintz actively facilitated, profited from, and failed to intervene in Plaintiff's trafficking. He received monetary incentives from traffickers, including per-room and per-victim cuts, and attempted to traffic hotel employees himself. These actions were undertaken in the scope of his duties and with the actual or apparent authority granted to him by each Defendant. Accordingly, each Defendant is vicariously liable for Mr. Fintz's perpetrator conduct under 18 U.S.C. § 1591(a)(1) and § 1595.

218. Defendants provided an environment that allowed trafficking to flourish, including permitting traffickers to book rooms in bulk and refusing to enforce security measures.

219. For the reasons set forth herein, Defendants were participating in a venture under 18 U.S.C. § 1595(a) by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of Plaintiff, S.W.,

for commercial sexual exploitation by repeatedly renting hotel rooms at Rodeway Inn & Suites to people it knew or should have known were engaged in sex trafficking, including Mr. Joseph.

220.    Each Defendant also violated 18 U.S.C. § 1591(a)(1) by knowingly harboring, maintaining, and facilitating Plaintiff S.W. for purposes of commercial sex acts on the hotel premises, despite having actual knowledge of or acting in reckless disregard of her trafficking and exploitation.

221.    For the reasons set forth herein, Plaintiff, S.W., suffered and will continue to suffer substantial economic, physical, and psychological injuries as the result of being trafficked and sexually exploited at Rodeway Inn & Suites in violation of 18 U.S.C. §1591.

WHEREFORE, Plaintiff, S.W., demands judgment against Defendants, TROPICAL PARADISE RESORTS, LLC d/b/a RODEWAY INN & SUITES, EZ HOSPITALITY, LLC and CHOICE HOTELS INTERNATIONAL, INC., for compensatory damages, statutory attorney's fees, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## COUNT II
## VIOLATION OF 18 U.S.C. § 1595 ("TVPRA"):
## BENEFICIARY LIABILITY
### (Against All Defendants)

222.    In support of her action against Defendants TROPICAL PARADISE RESORTS, LLC d/b/a RODEWAY INN & SUITES, EZ HOSPITALITY, LLC and CHOICE HOTELS INTERNATIONAL, INC., Plaintiff, S.W., adopts and incorporates by reference paragraphs 1-196 contained in this Complaint as if fully set forth herein.

223.    Plaintiff, S.W., is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and is therefore entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity that knowingly benefited, financially or by receiving anything of value, from participation

in a venture which that entity or person knew or should have known engaged in violations of the TVPRA.

224.   Defendants knowingly benefited from their respective participation in a venture that subjected Plaintiff to repeated sex trafficking in violation of 18 U.S.C. § 1591.

225.   These financial benefits included:

a.   Rental income and increased room occupancy from trafficking-related bookings;

b.   Sales of food, beverages, and ATM fees (as to Tropical Paradise and EZ);

c.   Franchise and royalty fees paid to Choice Hotels by Tropical Paradise and/or EZ; and

d.   Additional revenue derived from services and amenities used by sex buyers and traffickers.

226.   Defendants also received financial benefits derived from the conduct of their agent, Israel "Izzy" Fintz, who facilitated trafficking on site, received cuts from room rentals associated with trafficking victims, and enabled sex and drug activity to flourish at the hotel. Mr. Fintz's conduct was consistent with the responsibilities of his position and within the scope of his agency on behalf of each Defendant. With respect to EZ, Mr. Fintz also acted as its parent agent and principal, with full operational and managerial authority. His role in maintaining the trafficking venture contributed directly to the profits received by Defendants, including rental income, franchise fees, and ancillary revenue.

227.   Defendants knowingly participated in a venture with Plaintiff's trafficker, Mr. Joseph, by repeatedly renting rooms to him and providing services used to carry out the trafficking, while continuing to financially benefit.

228. In addition, Choice Hotels knowingly benefited from participation in a venture with Tropical Paradise and EZ to operate the Rodeway Inn & Suites, despite knowing or having reason to know that Tropical Paradise and EZ, through their acts and omissions, were engaged in violations of 18 U.S.C. § 1591(a)(1) and (a)(2) in connection with the trafficking of Plaintiff S.W.

229. Each Defendant knew or should have known about the nature of the trafficking venture at the Rodeway Inn & Suites based on clear and persistent signs, including:

a. Cash payments for rooms over multiple nights;

b. Refusal of housekeeping services by those persons engaged in sex trafficking;

c. Excessive used condoms located in the rooms used for sex trafficking;

d. Excessive requests for towels and linens in the rooms used for sex trafficking;

e. S.W. being visibly injured, impaired, or fearful while escorted by Mr. Joseph;

f. Pleas and screams for help coming from the rooms of Plaintiff, S.W., and/or those of other women being trafficked by Mr. Joseph;

g. Operation of sex trafficking ventures out of the same hotel room for multiple days or weeks in succession; and

h. Multiple men per day coming and going from the same rooms without luggage or personal possessions.

i. Guest complaints, noise disturbances, and other trafficking indicators ignored by staff;

j. Prior police and EMS responses for criminal activity and drug use;

k.    Online guest reviews referencing prostitution, drug use, and unsafe conditions.

230.    Despite these indicators, Defendants failed to intervene, report the activity, or take any steps to prevent the ongoing trafficking.

231.    Defendants' failure to act was not accidental. It was the result of a deliberate choice to prioritize financial gain over guest safety. Their omissions reflect a conscious disregard for human trafficking indicators known within the hospitality industry.

232.    Defendants were participating in a venture within the meaning of 18 U.S.C. § 1595(a) by engaging in a pattern of acts and omissions that supported, facilitated, harbored, and otherwise furthered the sex trafficking of Plaintiff S.W. by knowingly and repeatedly renting rooms, providing services, and allowing hotel premises to be used by traffickers, including Mr. Joseph, for the purpose of commercial sexual exploitation. Defendants continued to do so despite actual or constructive knowledge of the trafficking, and knowingly benefited from that venture through revenue and other financial gain.

233.    As a direct and proximate result of Defendants' knowing benefit from this trafficking venture, Plaintiff, S.W., suffered and continues to suffer economic loss, emotional trauma, and physical injuries stemming from her exploitation at the Rodeway Inn & Suites.

234.    For the reasons set forth herein, Plaintiff, S.W., suffered and will continue to suffer substantial economic, physical, and psychological injuries as the result of being trafficked and sexually exploited at Rodeway Inn & Suites in violation of 18 U.S.C. §1591.

WHEREFORE, Plaintiff, S.W., demands judgment against Defendants, TROPICAL PARADISE RESORTS, LLC d/b/a RODEWAY INN & SUITES, EZ HOSPITALITY, LLC and CHOICE HOTELS INTERNATIONAL, INC., for compensatory damages, statutory attorney's

fees, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## COUNT III
## PREMISES LIABILITY
**(Against Defendants Tropical Paradise Resorts, LLC d/b/a Rodeway Inn & Suites and EZ Hospitality, LLC)**

235. Plaintiff, S.W., brings this common law premises liability claim against Defendants Tropical Paradise Resorts, LLC d/b/a Rodeway Inn & Suites ("Tropical Paradise") and EZ Hospitality, LLC ("EZ"), and incorporates by reference paragraphs 1–196 as if fully set forth herein.

236. The sex trafficking of Plaintiff, S.W., at the Rodeway Inn & Suites began in 2019 and continued through at least December 31, 2020. During that time, Plaintiff, S.W., repressed the memory of her trafficking, and accordingly, the statute of limitations is tolled.

237. At all times material to this complaint, Plaintiff, S.W., while an invitee or otherwise lawfully present at Rodeway Inn & Suites, did sustain injuries as a result of the actions and inactions of Defendants Tropical Paradise and EZ, their staff, their patrons and the criminal activity knowingly permitted on the premises.

238. As the owners, operators, and managers of the Rodeway Inn & Suites, Defendants Tropical Paradise and EZ, individually and by and through their agents, servants and/or employees, owed a nondelegable duty to maintain their hotel premises that they owned, operated, controlled, supervised and/or for which they were otherwise responsible, in a reasonably safe condition and free from conditions that would render it dangerous and unsafe for Plaintiff, S.W.

239. As the owners, operators, and managers of the Rodeway Inn & Suites, Defendants Tropical Paradise and EZ, individually and/or by and through their agents, servants and/or employees, owed a nondelegable duty to exercise reasonable care to protect Plaintiff, S.W., by

inspection or other affirmative acts, from the danger of any reasonably foreseeable harm occurring from the reasonably foreseeable use of the premises of the hotel that Defendants Tropical Paradise and EZ owned, operated, controlled, supervised and/or for which they was otherwise responsible.

240.    As the owners, operators, and managers of the Rodeway Inn & Suites, Defendants Tropical Paradise and EZ, individually and/or by and through their agents, servants and/or employees, owed a nondelegable duty to exercise reasonable care to keep their hotel guests, including Plaintiff, S.W., safe by assessing, implementing and enforcing security measures and proper protocols.

241.    As the owners, operators, and managers of the Rodeway Inn & Suites, Defendants Tropical Paradise and EZ, individually and/or by and through their agents, servants and/or employees, owed a nondelegable duty to safeguard Plaintiff, S.W., against criminal conduct that they reasonably foresee happening on their hotel premises.

242.    As the owners, operators, and managers of the Rodeway Inn & Suites, Defendants Tropical Paradise and EZ, individually and/or by and through their agents, servants and/or employees, owed a nondelegable duty to maintain their hotel premises in a hospitable, safe and reasonable manner, as well those areas beyond the hotel's property lines for which Defendants Tropical Paradise and EZ had possession, custody or control.

243.    Defendants Tropical Paradise and EZ had actual or constructive knowledge of prior similar sex trafficking incidents being carried out on their premises, as well as gateway and other crimes indicative of sex trafficking.

244.    Defendants Tropical Paradise and EZ knew or should have known, in light of all the attendant circumstances stated herein, that the risk of such criminal conduct taking place on their premises would be unreasonably high without Defendants Tropical Paradise and EZ taking

appropriate security precautions against such conduct, as well as protocols for reporting and refusing such conduct.

245.   Defendants Tropical Paradise and EZ, individually and/or by and through their agents, servants and/or employees, had actual knowledge of the dangerous condition to which Plaintiff, S.W., was exposed at the hotel, or in the alternative, the dangerous condition existed for a sufficient length of time at the hotel premises or occurred with regularity such that Defendants Tropical Paradise and EZ in the exercise of ordinary care, should have known of the conditions, thereby giving Defendants Tropical Paradise and EZ constructive knowledge of the Plaintiff, S.W.'s peril; and/or Defendants Tropical Paradise and EZ should have known of the dangerous condition or peril by conducting proper and reasonable inspection and monitoring of the hotel premises and/or guests' conduct.

246.   Because human sex trafficking and associated conduct was foreseeable, Defendants Tropical Paradise and EZ had a duty to take adequate measures on their premises to protect their guests, including the Plaintiff, S.W., from being victims of continued sex trafficking.

247.   At all times material, Defendants Tropical Paradise and EZ, by and through their agents, servants and/or employees, created and/or allowed the dangerous condition to exist on their premises and/or failed to keep Plaintiff, S.W., safe while she was on the hotel premises.

248.   At all times material, Defendants Tropical Paradise and EZ, by and through their actual and/or apparent agents, including Israel "Izzy" Fintz, created, permitted, and failed to remedy dangerous conditions on the premises that exposed Plaintiff, S.W., to ongoing harm. Mr. Fintz exercised broad authority and operational control delegated to him by Tropical Paradise and, as the top-ranking officer of EZ, directed its day-to-day activities. He used this authority to engage in and facilitate illicit conduct, including profiting from and enabling sex trafficking and drug

distribution. These actions occurred within the scope of his operational role and were undertaken, at least in part, to benefit Defendants' business interests. Accordingly, Mr. Fintz's knowledge and conduct are imputed to Tropical Paradise and EZ under principles of actual, apparent, and managerial agency. Each Defendant is thus responsible for the creation and perpetuation of unsafe conditions that caused Plaintiff's injuries.

249.    Defendants Tropical Paradise and EZ could have taken any number of corrective measures to make the dangerous conditions on their premises cease, including but not limited to, not accepting payments, not allowing Johns to enter the hotel, not allowing sex traffickers to enter the hotel, providing training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, security, or who work at the front desk; providing guidance on how to identify individuals who may be traffickers or their victims of the sex trafficking; establishing, implementing or enforcing protocols on reporting suspected human trafficking and responding to situations involving human trafficking; and enforcing provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks.

250.    In failing to take any measures to report and remove the dangerous condition from its premises, Defendants Tropical Paradise and EZ failed to take reasonable care to protect Plaintiff, S.W., their hotel guest.

251.    Furthermore, by leaving the hotel premises open and unattended, Defendants Tropical Paradise and EZ encouraged the use of their hotel premises by loiterers, pimps, criminals, rapists and drug dealers to run criminal ventures and prostitute, batter, falsely imprison, enslave, and gravely injure women, such as Plaintiff, S.W., who – because of their fear, mental state, financial restraints and physical injuries from the forced sex occurring in Defendants Tropical Paradise and EZ's hotel rooms – were unable to rescue themselves. Accordingly, Tropical Paradise

and EZ's failure to act effectively enabled and transformed their hotel room(s) into confinement cells, confining and/or imprisoning Plaintiff, S.W., without any safe means of escape from the "Johns" and/or her "pimp," Mr. Joseph.

252. Defendants Tropical Paradise and EZ, by and through its agents, servants and/or employees, breached their respective nondelegable duties owed to Plaintiff, S.W., and were negligent with respect to her by:

a. Creating a dangerous condition;

b. Failing to correct the aforementioned dangerous condition;

c. Failing to report and refuse lodging to the traffickers;

d. Failing to properly and adequately maintain the premises in a reasonably safe condition;

e. Failing to monitor and prevent its staff, agents, and employees from conducting, engaging in, and facilitating illegal sex and drug trafficking;

f. Failing to have security measures to protect Plaintiff, S.W.;

g. Failing to provide training regarding human trafficking awareness to employees, agents and servants who perform housekeeping duties, maintenance, security, or who work at the front desk;

h. Failing to provide guidance to employees on how to identify individuals who may be traffickers or victims of the sex trafficking;

i. Failing to establish, implement or enforce protocols on reporting suspected human trafficking and responding to situations involving human trafficking;

j. Failing to enforce provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks; and

k.      Failing to take affirmative steps to investigate suspicious conduct and forbid criminal conduct.

253.    As a direct and proximate result of the acts and omissions of Defendants Tropical Paradise and EZ, by and through their agents, servants and/or employees – which led to the continuous dangerous condition on its premises during the time period within which Plaintiff, S.W., was trafficked there (approximately 2019 to 2020) – Plaintiff, S.W., has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All of the losses are either permanent or continuing in their nature, and Plaintiff, S.W., will suffer from such losses in the future.

WHEREFORE, Plaintiff, S.W., demands judgment against Defendants, TROPICAL PARADISE RESORTS, LLC d/b/a RODEWAY INN & SUITES and EZ HOSPITALITY, LLC, for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

| | |
|---|---|
| /s/ *Spencer T. Kuvin* | /s/ *Aaron A. Karger* |
| Spencer T. Kuvin, Esq. | Aaron A. Karger, Esq. |
| FL Bar Number: 89737 | FL Bar Number: 93226 |
| Law Offices of Craig Goldenfarb, PA | Law Office of Aaron A. Karger, P.A. |
| 1641 Worthington Road, Suite 300 | 16211 NE 18th Avenue |
| West Palm Beach, Florida 33409 | Suite 200 |
| Telephone: 561-697-4440 | North Miami Beach, FL 33162 |
| skuvin@800goldlaw.com | Telephone: (305) 577-7772 |
| | aaron@aak-law.com |
| | service@aak-law.com |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and sent by electronic mail to all parties of record.

<u>/s/ *Aaron A. Karger*</u>
Aaron A. Karger, Esq.