## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:25–CV–60771–ROSENBERG–AUGUSTIN-BIRCH

S.W.,

      Plaintiff,

      v.

TROPICAL PARADISE RESORTS, LLC, *et al.,*

      Defendants.

### TROPICAL PARADISE RESORTS, LLC D/B/A RODEWAY INN & SUITES' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

According to the Amended Complaint, Plaintiff was allegedly trafficked between 2019 and 2020 at a hotel[1] located in Fort Lauderdale, Florida (the "Hotel"), which she claims was owned by Defendant Tropical Paradise Resorts, LLC d/b/a Rodeway Inn & Suites ("Tropical Paradise") and operated by Defendant EZ Hospitality, LLC ("EZ"). *See* Am. Compl. ¶¶ *24–26*. Plaintiff brings claims against Tropical Paradise under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), along with a state-law cause of action for premises liability. *See id.* ¶¶ 156–212.

Her claims should be dismissed in accordance with binding Eleventh Circuit precedent. The Amended Complaint is an example of impermissible "shotgun" pleading, despite spanning more 51 pages. Plaintiff fails to differentiate between the Defendants in her substantive allegations—

---

[1] Although Plaintiff refers to Defendants collectively throughout the Amended Complaint, she alleges that Tropical Paradise owned the hotel, while EZ Hospitality managed it. *See* Am. Compl. ¶¶ 24–26. The Amended Complaint contains no factual allegations plausibly establishing that these Defendants acted jointly or shared knowledge of any trafficking activity.

repeatedly referring to them collectively and attributing knowledge and conduct to them as a group. This approach violates the pleading standards established under Federal Rule of Civil Procedure 8 and contravenes the Eleventh Circuit's repeated admonitions that each defendant is entitled to fair notice of the specific claims and factual basis asserted against them individually.[2]

Although Plaintiff adds new allegations regarding alleged cries for help, staff awareness, and signs of prostitution—including references to marijuana smells, cash payments, security lapses, and a lack of intervention by hotel personnel—these remain entirely conclusory and are not tied to any specific conduct by Tropical Paradise. Plaintiff also relies heavily on generalized online hotel reviews and third-party news articles regarding the neighborhood and unrelated trafficking statistics. However, she fails to connect any of this material directly to Tropical Paradise, its staff, or any alleged policies.

Plaintiff also expands her allegations related to Israel Fintz, whom she claims engaged in inappropriate behavior and was aware of signs of trafficking. Yet, she still does not allege that Mr. Fintz was employed by or acting on behalf of Tropical Paradise. There are no facts suggesting he was authorized to act for the property owner, and thus his alleged conduct cannot be imputed to Tropical under any theory of agency or venture participation. As courts have consistently held, including in *A.L. v. Hilton Worldwide Holdings, Inc.*, 2023 WL 6120736 (M.D. Fla. Sept. 19, 2023), and *N.G. v. Marriott Int'l, Inc.*, 2023 WL 4686733 (S.D. Fla. July 21, 2023), allegations against individual hotel staff do not establish venture liability for ownership entities absent specific, plausible facts showing direct involvement or control.

---

[2] *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (identifying four types of impermissible "shotgun pleadings," including those that "fail to specify which of the defendants are responsible for which acts or omissions" and that "impermissibly lump together multiple defendants in one count"); *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (affirming dismissal where complaint failed to "connect specific factual allegations to specific defendants and claims," thereby depriving defendants of fair notice under Rule 8).

All of Plaintiff's claims against Tropical Paradise are legally deficient and should be dismissed. Her first cause of action attempts to impose direct liability under the TVPRA by labeling Tropical Paradise a "perpetrator" under 18 U.S.C. § 1595(a)—a theory that requires a plausible allegation that Tropical Paradise itself committed criminal trafficking conduct with actual knowledge of her alleged trafficking. No such allegations are present. Courts within this Circuit and across the country have consistently rejected similar claims where there is no evidence that the hotel owner directly participated in, or had actual knowledge of, trafficking activities.

Plaintiff's second cause of action—alleging that Tropical Paradise "participated in a venture" that trafficked her—is likewise deficient. This claim rests on a misapplication of the term "venture," treating the Hotel's routine operations, including room rentals, as equivalent to active participation in a trafficking enterprise. But as the Eleventh Circuit has made clear, even where a hotel financially benefits from room rentals, that alone does not transform it into a participant in a trafficking venture.[3] Plaintiff fails to allege any facts showing that Tropical Paradise knowingly assisted or facilitated trafficking, or that it had actual or constructive knowledge of criminal conduct occurring on its premises.[4] This remains true even with the Amended Complaint's additional citations to red flags or alleged opportunities to intervene—none of which are connected to Tropical Paradise specifically.

Her third claim, sounding in premises liability under Florida law, is both untimely and legally unsupported. Plaintiff filed suit in 2025 for conduct that allegedly ended in 2020, and she has not pled sufficient facts to support tolling of the statute of limitations.[5] Nor has she alleged any specific

---

[3] *K.H. v. Riti, Inc.*, No. 22-11717, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024).
[4] *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726–28 (11th Cir. 2021) (applying equally to franchisors and franchisees); *K.H.*, 2024 WL 505063, at *2–3.
[5] *Brady v. Walsh*, No. 2:21-cv-763-SPC-MRM, 2022 WL 2104292, at *3 (M.D. Fla. June 10, 2022).

prior incidents or conditions that would establish foreseeability under Florida's standard for third-party criminal acts. The Amended Complaint is devoid of allegations that Tropical Paradise knew, or reasonably should have known, that trafficking was occurring or would occur on the property. Thus, Plaintiff has failed to plead that Tropical Paradise owed her a duty, breached that duty, or caused her injuries.[6]

## I.      Legal Standard

### a.   Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the claims asserted in the complaint. *See American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). In evaluating such a motion, the court must accept all well-pleaded factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). However, legal conclusions are not entitled to the assumption of truth, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive dismissal, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* A claim is plausible when the facts alleged allow the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.*

### b.  The TVPRA

Plaintiff brings her first two causes of action under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), asserting that Tropical Paradise is liable as both a direct "perpetrator" and as a participant in a trafficking "venture." The statute provides for

---

[6] *Hall v. Billy Jack's, Inc.*, 458 So. 2d 760, 761 (Fla. 1984); *Banosmoreno v. Walgreen Co.*, 299 F. App'x 912, 913 (11th Cir. 2008).

two separate and distinct civil claims: (i) a direct claim against any entity that has itself violated the criminal trafficking statute (18 U.S.C. § 1591), and (ii) a beneficiary claim against any entity that knowingly benefits from participation in a venture it knew or should have known was engaged in trafficking. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021).

### i.   Perpetrator Claims

A claim for direct—or "perpetrator"—liability requires plausible allegations that the defendant personally violated the federal criminal trafficking statute, 18 U.S.C. § 1591(a). *See Red Roof*, 21 F.4th at 719. While Plaintiff also references other provisions (18 U.S.C. §§ 1589, 1590), she appears to do so only for background purposes. *See* Am. Compl. ¶ 30.

Section 1591(a) establishes two separate avenues for perpetrator liability. First, a defendant may be liable for knowingly harboring a trafficking victim while knowing—or recklessly disregarding—that force, threats of force, fraud, or coercion would be used to cause the victim to engage in a commercial sex act. *See* 18 U.S.C. § 1591(a)(1). Second, a defendant may be liable for knowingly benefiting from participation in a venture that engages in such trafficking conduct, with knowledge or reckless disregard of the same coercive circumstances. *See id.* § 1591(a)(2).

Although § 1591(a) provides for a different standard if the alleged victim is a minor, Plaintiff has affirmatively alleged that she was an adult during the relevant time period. *See* Compl. ¶¶ 33–34. Accordingly, the heightened minor-victim provisions do not apply here.

Additionally, while § 1591(a) lists other potential trafficking acts—including recruiting, enticing, transporting, advertising, or soliciting—Plaintiff does not allege that any such acts occurred in this case. Her theory rests on allegations of harboring and/or benefiting from a trafficking venture.

It is also important to note that the definitions contained in § 1591(e)—such as "venture" and "participation in a venture"—apply only to the criminal statute and do not govern civil claims under § 1595. *See Red Roof*, 21 F.4th at 724.

### i.        Beneficiary/Participant Claims

The second form of liability under the TVPRA arises under § 1595(a), which imposes civil liability on any person who "knowingly benefits, financially or by receiving anything of value, from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." These are commonly referred to as "beneficiary" or "participant" claims.

In assessing civil claims under this provision, The Eleventh Circuit applies the ordinary meanings of "venture" and "participation," not the criminal definitions found in § 1591(e). *See Red Roof*, 21 F.4th at 724–25. A "venture" is defined broadly as an undertaking or enterprise involving risk and potential profit, and to "participate" means to take part in that undertaking or associate with it. *Id.*

To survive dismissal under this theory, a plaintiff must plausibly allege four elements:

(1) that the defendant knowingly benefited;

(2) from participation in a common undertaking involving risk and profit;

(3) that the undertaking violated the TVPRA as to the plaintiff; and

(4) that the defendant had actual or constructive knowledge of the violation.

*Id.* at 726.

### II.        Argument

#### a.  Plaintiff's Amended Complaint is an Impermissible "Shotgun" Pleading

The Eleventh Circuit has repeatedly condemned "shotgun" pleadings—complaints that fail to clearly distinguish the factual basis for claims asserted against multiple defendants. As the court explained in *Weiland v. Palm Beach Cnty. Sheriff's Office*, the Federal Rules require that a plaintiff "present [her] claims discretely and succinctly" so that "the defendant can discern what [she] is claiming and frame a responsive pleading." 792 F.3d 1313, 1320 (11th Cir. 2015). A shotgun pleading is one that "fails to specify which of the defendants are responsible for which acts or omissions" and instead "impermissibly lump[s] together multiple defendants in one count." *Id.* at 1323.

Plaintiff's Amended Complaint is a textbook example. While it spans over 50 pages and contains more than 200 paragraphs, it fails to differentiate among the three named Defendants—Tropical Paradise, EZ, and Choice Hotels—in any meaningful way. Although the Amended Complaint alleges that Tropical Paradise owned the hotel, EZ managed it, and Choice acted solely as franchisor, Plaintiff nonetheless asserts allegations against them collectively as if they functioned as a single entity.

For example, Plaintiff claims:

"As owner and/or operator of the real property in which the hotel was located, Defendants, RODEWAY INN, EZ HOSPITALITY and CHOICE HOTELS, individually and by and through its agents, servants and/or employees…" Am. Compl. ¶ 204 (emphasis added); "Defendants, RODEWAY INN, EZ HOSPITALITY and CHOICE HOTELS, had actual or constructive knowledge of prior similar sex trafficking incidents being carried out on its premises…" *Id.* ¶ 209 (emphasis added).

 These allegations treat the three Defendants—each with distinct legal roles, ownership, and responsibilities—as an interchangeable group, without offering any facts identifying which

Defendant allegedly knew what or committed which acts. This violates the most basic notice-pleading principles under Rule 8.

Plaintiff's amendments only reinforce the shotgun nature of her pleading. The Amended Complaint introduces screenshots of Google reviews, press articles about sex trafficking, and broad statistical claims—but fails to attribute any of this content to Tropical Paradise specifically. The addition of allegations concerning Israel Fintz also does not resolve this issue, as Plaintiff fails to allege that he was employed by or acting on behalf of Tropical Paradise. *See A.L. v. Hilton*, 2023 WL 6120736, at *3–4 (rejecting group liability based on vague references to hotel staff when no connection to owner/franchisor was pled).

Such group pleading is especially inappropriate under the TVPRA, which requires specific factual allegations concerning what a particular defendant knew or did. *See Red Roof*, 21 F.4th at 719. The Eleventh Circuit has been clear: "When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *see also Kabbaj v. Obama*, 568 F. App'x 875, 880 (11th Cir. 2014) (finding complaint deficient where "the complaint refers to the defendants collectively, making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct").

Because Plaintiff repeatedly attributes all conduct and knowledge to "Defendants" as a collective—despite acknowledging distinct roles among them—the Amended Complaint fails to provide Tropical Paradise with fair notice of the claims and factual basis asserted against it individually. It is a classic shotgun pleading and should be dismissed.

### b. Count I: Plaintiff Fails to Allege That Tropical Paradise Acted as a "Perpetrator"

Plaintiff's first claim is brought under the perpetrator provision of the TVPRA, which imposes liability on any entity that either directly engaged in sex trafficking conduct under 18 U.S.C.

§ 1591(a)(1), or knowingly benefited from participation in a trafficking venture under § 1591(a)(2). *See United States v. Todd*, 627 F.3d 329, 333–34 (9th Cir. 2010). To satisfy either path, Plaintiff must allege with particularity that Tropical Paradise had actual knowledge—or at least reckless disregard—of the use of force, threats, fraud, or coercion. *See G.N.C. v. Uniquest Hospitality, LLC*, 2024 WL 4149251, at *3 (S.D.N.Y. Sept. 11, 2024). This high standard is not met through speculation, generalized indicators, or claims of inaction. *See Doe v. Fenix Int'l Ltd.*, 2024 WL 5375136, at *12 (S.D. Fla. Jan. 30, 2025).

### 1. Plaintiff Fails to Plead Tropical Paradise's Actual Knowledge

To state a claim for perpetrator liability under 18 U.S.C. § 1591, Plaintiff must allege that Tropical Paradise had actual knowledge, or at least reckless disregard, that she was subjected to trafficking through means of force, fraud, or coercion. *See Todd*, 627 F.3d at 333–34; *G.N.C.*, 2024 WL 4149251, at *3. That standard is not satisfied through generalized suspicions, red flags, or post hoc speculation. *See Doe v. Fenix Int'l Ltd.*, 2024 WL 5375136, at *12. As courts have consistently made clear, the statute requires allegations of specific awareness of the trafficking of the plaintiff—not trafficking in general or prostitution broadly. *See Doe #9 v. Wyndham Hotels & Resorts*, 2021 WL 1186333, at *2 (S.D. Tex. Mar. 20, 2021); A.*B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 940 (D. Or. 2020).

Here, Plaintiff references a series of "red flags" supposedly visible to Tropical Paradise staff—including frequent room rentals, cash payments, extended stays without luggage, and the presence of multiple young women on the premises. *See* Am. Compl. ¶¶ 61–66. These are precisely the types of conditions that courts have repeatedly held are insufficient to support an inference of actual knowledge under the TVPRA. *See Doe. v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 469 (E.D.N.C. 2024) (noting that such factors may suggest prostitution, but do not amount to knowledge

of sex trafficking by force or coercion). Plaintiff also alleges that a hotel employee entered the room to collect payment and mentioned a marijuana odor. *See* Am. Compl. ¶¶ 68–69. But she does not allege that the employee witnessed any signs of physical abuse, restraint, or coercion, nor that the employee reported any concerns to management or authorities.

Although Plaintiff claims that she and other victims "cried out" from inside the hotel rooms, she fails to allege that any employee of Tropical Paradise heard these cries or was aware of them. *See* Am. Compl. ¶ 175(h). Courts have explicitly rejected this type of pleading as insufficient to show actual knowledge. In *A.B. v. Shilo Inn, Salem, LLC*, the court dismissed a claim where the plaintiff alleged she cried out for help and cameras were present, but failed to identify any hotel employee who actually observed or became aware of the abuse. 2023 WL 5237714, at *5 (D. Or. Aug. 15, 2023). Likewise, in *J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021), the court found that even allegations of visible distress and audible cries were insufficient where the complaint did not plausibly allege that any staff member actually heard or ignored the victim's pleas for help.

Plaintiff also makes no claim that she ever informed any Tropical Paradise employee of her situation, sought help, or that any staff member intervened in a way that would show awareness of coercion. Nor does she plead that Tropical Paradise received any complaints or internal reports relating to her or her trafficker, Steven Joseph. The Amended Complaint includes new allegations—such as comments allegedly made by a hotel staff member, references to online reviews, and statistical data about trafficking in the hotel industry—but none of these facts are tied to Tropical Paradise in any way that plausibly establishes actual knowledge of Plaintiff's specific trafficking circumstances. *See Doe v. Rickey Patel, LLC*, 2022 WL 1641926, at 6 (S.D. Fla. May 24, 2022) ("Plaintiff's inclusion of various reports and statistics concerning the prevalence of sex trafficking

in general is insufficient to impute knowledge to these Defendants about Plaintiff's particular circumstances.").

As the Eleventh Circuit and other courts have held, group pleading and generalized red flags are not a substitute for concrete, defendant-specific allegations. Like the court in *Fenix*, Courts uniformly reject TVPRA claims based on the notion that defendants "should have known" something was wrong—without pleading the necessary facts to show that they actually did. *See Doe v. Fenix Int'l Ltd.*, 2024 WL 5375136, at *12 ("Speculation does not cut it.").

At bottom, Plaintiff's allegations amount to post hoc assumptions about what Tropical Paradise might have known or should have realized based on generalized patterns of activity. That does not satisfy the demanding standard for pleading actual or reckless knowledge of sex trafficking under § 1591.

### 2.   Plaintiff Does Not Plead Any Actus Reus for Tropical Paradise

Liability under § 1591(a)(1) requires not only knowledge, but action. The statute demands that a defendant have undertaken conduct that furthers the trafficking itself—such as recruiting, enticing, transporting, providing, obtaining, or harboring a victim—while knowing or recklessly disregarding that force, fraud, or coercion would be used. *See* 18 U.S.C. § 1591(a)(1). Mere inaction or negligent failure to intervene does not qualify. *See A.D. v. Marriott Int'l, Inc.*, 2023 WL 2991042, at *4 (M.D. Fla. Apr. 18, 2023) ("The criminal section of the TVPRA targets those who participate in sex trafficking; it does not target those who turn a blind eye to the source of their financial sponsorship."); *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016).

Although Plaintiff uses the term "harboring," she appears to equate that with Tropical Paradise allegedly failing to remove Mr. Joseph or prevent the use of rooms for trafficking. *See Am. Compl.* ¶ 169. But courts have clarified that "harboring," particularly in criminal statutes like § 1591,

requires some affirmative act to conceal or protect the trafficker or victim—not simply renting a room. *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 278–79 (4th Cir. 2024); *United States v. Zheng*, 87 F.4th 336, 343 (6th Cir. 2023). Plaintiff alleges no such affirmative conduct here.

The Amended Complaint asserts that Mr. Joseph frequently rented rooms, sometimes paid in cash, and hosted sex parties at the adjacent restaurant. *See* Am. Compl. ¶¶ 61–66. It also references one incident where a hotel staff member entered Plaintiff's room to collect payment. *See id.* ¶¶ 68–69. But none of this conduct constitutes "harboring" as that term is used in § 1591. Plaintiff does not allege that Tropical Paradise shielded Mr. Joseph from law enforcement, actively concealed his activities, or otherwise participated in hiding Plaintiff.

To the contrary, the only factual allegations pertain to routine business activity—room rentals, cash payments, and failure to intervene. Courts have consistently held that such passive conduct, even if suggestive of prostitution, does not satisfy the "harboring" element under the TVPRA. *See Reyes*, 91 F.4th at 278–79 (harboring requires affirmative efforts to help a trafficker avoid detection); *Doe*, 2023 WL 3007416, at *4 ("Harboring requires something more than renting a room and not investigating."). While Plaintiff references sex parties at a restaurant adjacent to the hotel, she does not allege that Tropical Paradise owned, operated, or benefitted from that venue.

Moreover, Plaintiff does not identify any participants in a "criminal trafficking venture" with whom Tropical Paradise allegedly collaborated. To constitute a "venture" under § 1591(a)(2), there must be an "association in fact"—a coordinated effort among parties toward a shared objective. *See* 18 U.S.C. § 1591(e)(6). Here, Plaintiff pleads no facts suggesting that Tropical Paradise acted in concert with Mr. Joseph or with anyone else to further a trafficking enterprise. Rather, she criticizes Tropical Paradise for not doing more to stop what she claims should have been apparent. That may

be a claim for negligence in theory, but it does not rise to the level of criminal conduct required under § 1591. *See Fenix Int'l Ltd.*, 2025 WL 336741, at *9 (S.D. Fla. Jan. 30, 2025) ("Failure to affirmatively prevent or inhibit sex trafficking does not constitute participation.").

### 3. Plaintiff Fails to Plead a Causal Link Between Any Tropical Paradise Acts and the Purported Financial Benefit

To state a perpetrator claim under § 1591(a)(2), Plaintiff must allege more than that Tropical Paradise earned money while trafficking occurred. Courts require a clear causal connection between a defendant's knowing participation in a trafficking venture and the benefit received. That is, the financial gain must result from the defendant's deliberate facilitation of trafficking—not from passive business operations. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (requiring "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit"); *Red Roof*, 21 F.4th at *726 (benefit must be linked to knowing participation in the TVPRA violation).

Here, Plaintiff alleges that Tropical Paradise earned revenue from Mr. Joseph's room rentals and possibly from use of the adjacent restaurant. *See Am. Compl.* ¶¶ 25, 61–66. However, she does not allege that Tropical Paradise owned, operated, or received profits from the restaurant in any way. This undermines any inference that such income could plausibly be linked to knowing facilitation of trafficking. Plaintiff further fails to allege that Tropical Paradise's income was contingent upon—or incentivized by—her trafficking. Nor does she allege that the hotel took any affirmative steps to promote, enable, or protect trafficking activity in order to secure financial gain. The Amended Complaint does not assert that any portion of this income was tied to Plaintiff's trafficking, or that Tropical Paradise performed any act to ensure or encourage that activity. Such generic economic benefit is common to all hotels and does not establish the requisite causal link.

*See Red Roof*, 21 F.4th at *726–27 (rejecting claims where the benefit was "indistinguishable from any other hotel guest transaction").

Instead, Plaintiff relies on the conclusory assumption that the receipt of revenue—without more—constitutes a knowing benefit. Courts have repeatedly rejected such logic. *See Riti*, 2024 WL 505063, at *4 ("Allegations of financial benefit are not sufficient to establish that the defendant participated in a sex trafficking venture."). Where, as here, the revenue stems from routine transactions and is unconnected to any knowingly unlawful conduct, the TVPRA's financial benefit element is not met.

In short, Plaintiff offers no plausible allegations that Tropical Paradise reaped financial rewards because of any knowing involvement in her alleged trafficking. The Amended Complaint fails to plead the necessary causal link, and this deficiency is independently fatal to her claim under § 1591(a)(2).

**c. Count II: Plaintiff Fails to Allege that Tropical Paradise "Participated" in a "Venture"**

Plaintiff's second claim is brought under the civil remedy provision of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). This provision permits a claim against a party who: (1) knowingly benefited; (2) from participating in a venture; (3) that committed sex trafficking violations; and (4) the defendant knew or should have known the venture engaged in trafficking as to the plaintiff. *See Red Roof*, 21 F.4th at *723.

Federal courts—including the Eleventh Circuit—have repeatedly dismissed similarly-pleaded claims brought under this theory, especially when the allegations fail to plausibly connect hotel entities to the alleged trafficking venture through active conduct, shared purpose, or direct

awareness. *See Red Roof*, 21 F.4th at 727; *K.H.*, 2024 WL 505063, at *3–4; *N.G. v. G6 Hosp. Prop. LLC*, 2025 WL 1332210, at *2 (M.D. Fla. May 7, 2025).

### i. Plaintiff Does Not Plausibly Allege That Tropical Paradise Participated in a Trafficking Venture

To state a claim under § 1595(a), Plaintiff must do more than assert that a hotel failed to prevent her trafficking. She must plausibly allege that Tropical Paradise participated in a venture with her trafficker—meaning that it took part in a common enterprise involving shared risk and profit tied to the trafficking conduct. *See Red Roof*, 21 F.4th at *725. The Eleventh Circuit has clarified that mere allegations of renting rooms or failing to intervene are legally insufficient. *See K.H.*, 2024 WL 505063, at *4 ("Participation in a venture requires more than passive failure to act.").

Here, Plaintiff does not allege that Tropical Paradise collaborated with her trafficker, coordinated with him to carry out trafficking, or shared in any of his profits. Instead, she asserts that hotel employees may have observed indicators of suspicious conduct—such as Mr. Joseph renting rooms, cash payments, or the presence of multiple women. *See Am. Compl.* ¶¶ 61–66, 130–135. These allegations, even if true, amount at most to passive observation or inaction—not active engagement in trafficking. But as the Eleventh Circuit emphasized, "observing something is not the same as participating in it." *Red Roof*, 21 F.4th at 727.

Moreover, courts interpreting § 1595 have stressed that "participation" requires more than incidental or routine business conduct; it must involve knowing engagement in an enterprise that furthers trafficking. *See Doe #1 v. Apple, Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) (rejecting "buyer-seller" relationships as insufficient for venture liability); *A.L. v. G6 Hosp. Prop. LLC*, 2025 WL 1151750, at *3 (S.D. Fla. Apr. 18, 2025) (rejecting venture allegations despite forced intercourse by hotel staff, finding no shared purpose with the trafficker).

Crucially, Plaintiff never identifies who else allegedly participated in this venture with Tropical Paradise. She repeatedly refers to "the sex trafficking venture," but never defines its membership or articulates any facts supporting an association between Tropical Paradise and Mr. Joseph. *See Am. Compl.* ¶¶ 66, 130–135. Courts routinely reject claims that rest on such generalities.

Indeed, courts have rejected TVPRA claims even where the facts were more compelling than those alleged here. In *B.J. v. G6 Hospitality, LLC*, the plaintiff claimed hotel staff observed beatings, provided supplies to the trafficker, and ignored visible signs of abuse. 2023 WL 3569979, at *9–10. Yet the court still found no participation, reasoning that such conduct—though disturbing—did not plausibly allege that the hotel entered into a common enterprise with the trafficker or knowingly furthered the trafficking. *Id.* Here, Plaintiff does not claim that Tropical Paradise staff witnessed abuse, engaged with her trafficker, or provided any assistance beyond renting rooms. Her allegations amount to far less than those found insufficient in *B.J.*, reinforcing that her claim of participation fails as a matter of law.

In short, Plaintiff pleads no facts suggesting that Tropical Paradise shared a common objective with her trafficker or knowingly took part in a venture that facilitated her abuse. Her claim fails at the threshold element of participation under *§ 1595(a)*.

### ii. Plaintiff Fails to Allege Tropical Paradise's Knowledge

To satisfy the knowledge prong of § 1595(a), Plaintiff must plausibly allege that Tropical Paradise either knew or should have known that the alleged venture was engaged in sex trafficking with respect to her. General awareness that sex trafficking sometimes occurs in the hospitality industry is not enough. *See Red Roof*, 21 F.4th at 726 ("Allegations of generalized knowledge that sex trafficking occurs at hotels are insufficient."). Courts interpreting the TVPRA routinely require

specific facts showing that the defendant had actual or constructive notice that the plaintiff was being trafficked—not just that suspicious activity might have occurred on the premises.

Plaintiff alleges that staff at Tropical Paradise may have observed certain "red flags," such as cash payments, extended stays, foot traffic, and young women on the property. *See Am. Compl.* ¶¶ 61–66. However, courts have repeatedly held that these types of allegations, even if taken as true, are insufficient to establish constructive or actual knowledge of sex trafficking. *See Doe v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 469 (E.D.N.C. 2024) (allegations of cash payments, foot traffic, and frequent visits insufficient to show constructive knowledge); *See Doe #9*, 2021 WL 1186333, at *2 (requiring trafficking-specific knowledge as to the plaintiff); *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *5–6 (N.D. Cal. May 19, 2023) (rejecting even evidence of visible injuries as insufficient to allege constructive knowledge without indication of trafficking-specific awareness).

Plaintiff does not allege that any Tropical Paradise employee observed physical abuse, signs of coercion, or directly interacted with her in a way suggesting awareness of trafficking. The Amended Complaint states that a staff member entered her room to collect payment and mentioned a marijuana odor. *See Am. Compl.* ¶¶ 68–69. But nothing in that account suggests that the employee perceived signs of trafficking, violence, or coercion. Courts have deemed far more alarming allegations insufficient where staff did not directly observe trafficking or were not alerted to the victim's condition. *Doe #9*, 2021 WL 1186333, at *2 (no liability where hotel staff were unaware of any specific signs related to plaintiff's trafficking).

Moreover, Plaintiff does not allege she sought help, attempted to flee, or disclosed her situation to anyone on site. This absence of interaction or communication is routinely fatal under the TVPRA. *See A.B.*, 2023 WL 5237714, at *5 (no constructive knowledge where plaintiff failed to

plead that hotel employees witnessed red flags or were aware of her trafficking despite video surveillance).

The court's ruling in *M.A. v. Wyndham Hotels & Resorts, Inc.*, further highlights this contrast. 425 F. Supp. 3d 959 (S.D. Ohio 2019). In *M.A.*, the plaintiff stayed at the same hotel over an extended period, was visibly bruised and distressed, and was seen frequently by staff in the presence of her trafficker. *Id.* Her appearance and behavior were noted repeatedly by hotel employees, some of whom allegedly reported concerns to supervisors. *Id.* The court found those facts sufficient to survive dismissal under a constructive knowledge theory. *Id.*

This case presents a materially different scenario. Plaintiff alleges no prolonged presence at Tropical Paradise, no visible signs of abuse, and no repeated interactions with staff. She fails to identify any employee who suspected trafficking, made a report, or engaged in conduct beyond routine housekeeping or front-desk duties. Nor does the Amended Complaint suggest that Tropical Paradise had any prior dealings with her trafficker, Mr. Joseph, or that it had received any warnings or complaints about similar activity. *See Am. Compl.* ¶¶ 130–135.

In sum, while *M.A.* involved multiple, recurring indicators of abuse made apparent to hotel staff and managers, Plaintiff here offers only conclusory and generalized allegations of suspicious behavior, without any direct tie to Tropical Paradise's knowledge of her specific trafficking. That is not enough to plead constructive knowledge under § 1595(a).

### iii. Plaintiff Does Not Allege That Tropical Paradise "Knowingly Benefited" From the Alleged Venture

To meet the "knowingly benefitted" element under § 1595(a), Plaintiff must do more than allege that Tropical Paradise received payment for rooms. She must plausibly allege that Tropical Paradise received a financial benefit *because of* its knowing participation in a trafficking venture.

*See Red Roof*, 21 F.4th at 726; *Riti*, 2024 WL 505063, at *4. Generic commercial transactions—like room rentals or restaurant income—do not satisfy this standard unless tied to conduct that furthers trafficking in a knowing—whether direct or constructive—and affirmative way. *See Geiss*, 383 F. Supp. 3d at 169 ("The benefit must derive from participation in the sex-trafficking venture itself.").

Here, Plaintiff alleges that Tropical Paradise derived income from Mr. Joseph's use of the hotel and possibly its restaurant. *See Am. Compl.* ¶ 25. But she does not allege that the hotel's financial gain was dependent on, or driven by, trafficking activity. Nor does she allege that Tropical Paradise undertook any action to promote, facilitate, or encourage trafficking in order to realize financial gain. The Amended Complaint does not assert that any portion of this income was contingent on or tied to Plaintiff's trafficking, nor that Tropical Paradise performed any affirmative act to ensure or encourage that activity. Such generic economic benefit is common to all hotels and does not establish the requisite link. *See Red Roof*, 21 F.4th at 726–27 (rejecting claims where benefit was "indistinguishable from any other hotel guest transaction").

Lastly, Plaintiff does not allege that any benefit Tropical Paradise received was tied to its alleged participation in a sex trafficking venture. The same reasoning applies here. In *Geiss v. Weinstein Co. Holdings LLC*, the court dismissed claims where plaintiffs alleged that various entities and individuals received financial benefit through continued association with Harvey Weinstein while he engaged in sex trafficking. 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). The court held that such claims failed because they did not plausibly allege a "causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Id.* In short, a benefit received merely through ongoing business dealings, without an act furthering trafficking, is insufficient under § 1595(a).

The same conclusion is warranted here. Plaintiff asserts that Tropical Paradise profited from room rentals and amenities provided during her alleged trafficking. *See Am. Compl.* ¶ 25. But she does not allege that any of those profits were contingent upon or connected to Tropical Paradise affirmatively supporting, facilitating, or encouraging the trafficking activity. There are no facts to suggest the hotel undertook any conduct beyond passively accepting payment for lodging. Courts consistently require more. *See Riti*, 2024 WL 505063, at *4. Plaintiff's conclusory allegation falls far short of that standard, defeating the "knowingly benefitted" prong of § 1595(a).

In short, the Amended Complaint fails to allege that Tropical Paradise received any financial benefit because of a trafficking venture—and certainly not one it knowingly joined. This missing link is fatal to her claim under *§ 1595(a)*.

### d. Count III: Plaintiff Has Failed to Timely and Plausibly Plead Premises Liability

Plaintiff's third cause of action, styled as a claim for premises liability under Florida law, should be dismissed both as untimely and for failure to state a plausible claim. *See* Am. Compl. ¶¶ 186–204.

### i. Plaintiff's Claim Is Time-Barred

Under Florida Statutes § 95.11(3)(o), a four-year statute of limitations applies to negligence actions not otherwise specified. Plaintiff alleges that her trafficking at the Rodeway Inn ended in December 2020. *See* Am. Compl. ¶ 188. However, the Amended Complaint was not filed until April 21, 2025—well outside the limitations period.

Although Plaintiff asserts that she "repressed her memory" of the abuse, *see* Am. Compl. ¶ 189, courts have routinely held that such generalized allegations of trauma are insufficient to justify equitable tolling. *See Catelyn H. v. G6 Hospitality, LLC*, No. 2:24-CV-939, 2025 WL 929032, at *3 (D. Nev. Mar. 26, 2025) (rejecting tolling where plaintiff failed to allege "extraordinary

circumstances"); *C.C. v. Rashid*, No. 2:23-CV-02056-GMN-BNW, 2024 WL 5200543, at *8 (D. Nev. Dec. 20, 2024) (rejecting tolling based on vague trauma claims).

Plaintiff does not identify any specific psychological diagnosis, event, or factual basis that would justify suspending the limitations period. The Eleventh Circuit and Florida courts require more than conclusory assertions to invoke equitable tolling. Because the Complaint on its face shows the claim is untimely and lacks any plausible tolling theory, dismissal is warranted.

### ii.        Plaintiff's Premises Liability Claim Fails on the Merits

Even if timely, Plaintiff's premises liability claim fails as a matter of law. Under Florida law, a premises liability claim requires proof of traditional negligence elements—duty, breach, harm, and causation—plus the added elements of (1) control or possession of the premises and (2) notice of a dangerous condition. *Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001).

### 1.    Plaintiff Fails to Allege Control or Possession by Tropical Paradise

Plaintiff lumps all Defendants together, but her factual allegations confirm that Tropical Paradise allegedly owned and operated the Rodeway Inn. *See Am. Compl.* ¶¶ 23–25. While this is distinct from a franchisor's role, her allegations still do not establish that Tropical Paradise had actual or constructive notice of the specific criminal conduct at issue. Ownership alone does not trigger liability absent a showing of notice and opportunity to cure.

### 2.    Plaintiff Does Not Establish Foreseeability or Breach of Duty

Florida law does not impose liability for criminal acts of third parties unless the risk of harm was reasonably foreseeable. *See Doe v. U.S.*, 718 F.2d 1039, 1042 (11th Cir. 1983) ("An owner is not the insurer of a guest's safety."); *Hardy v. Pier 99 Motor Inn*, 664 So. 2d 1095, 1097 (Fla. 1st DCA 1995). Even assuming that Tropical Paradise exercised control over the property, Plaintiff fails to show that her injuries were the foreseeable result of any specific failure by Tropical Paradise.

Foreseeability may be established if the proprietor knew or should have known of (1) a dangerous condition on the premises or (2) the dangerous propensities of a particular individual. *See Banosmoreno v. Walgreen Co.*, 299 F. App'x 912, 913 (11th Cir. 2008). Plaintiff does neither. She references "dangerous conditions," but fails to identify prior criminal incidents at the property that could have put Tropical Paradise on notice. *See Am. Compl.* ¶¶ 198, 200. Likewise, there are no allegations that Tropical Paradise knew or should have known about the violent tendencies of Steven Joseph—who, by Plaintiff's own admission, had been her trafficker long before arriving at the hotel. *See Am. Compl.* ¶¶ 35–36.

Even if Plaintiff was a lawful invitee on the property, the duty owed to her was limited: to keep the premises in a reasonably safe condition and to warn of concealed perils the occupier should have known about. *See Norris v. Rodriguez*, 378 So. 3d 661, 664–65 (Fla. 2d DCA 2023). Here, Plaintiff's injuries were not the result of a concealed hazard on the property, but of abuse inflicted by a third party over a period of time, much of which predates her stay at the Rodeway Inn. *See Am. Compl.* ¶ 36.

Plaintiff's sweeping list of negligent omissions—failure to train staff, refusal to report suspicious guests, and lack of protocols—amounts to a list of generalized grievances about industry practices, not actionable breaches of a specific duty owed to her. *See Am. Compl.* ¶¶ 200(a)–(k). These conclusory allegations are insufficient to state a viable negligence claim under Florida law.

## III.    CONCLUSION

For all the reasons given above, Tropical Paradise Resorts, LLC respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety. To the extent amendment is not legally viable, dismissal should be with prejudice.

Respectfully submitted this 14th day of July, 2025.

S.W v. EZ Hospitality
Case No.: 0:25-cv-60771-RLR

**RESNICK & LOUIS, P.C.**
4040 NE 2nd Ave 6D
Miami, Florida 33137
Telephone: 305-676-6453
E-Mail: acina@rlattorneys.com
E-Mail: ahechtman@rlattorneys.com
E-Mail: vhuff@rlattorneys.com

By: _____
Alyssa Cina, Esq.
Florida Bar No.: 121491

*Attorneys for Defendant*