# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 0:25-CV-60771**

S.W.,

      Plaintiff,

vs.

TROPICAL PARADISE RESORTS, LLC, a
Florida limited liability company, d/b/a
RODEWAY INN & SUITES; EZ
HOSPITALITY, LLC, a Florida limited
liability company; and CHOICE HOTELS
INTERNATIONAL, INC., a Delaware
corporation,

      Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO TROPICAL PARADISE RESORTS, LLC d/b/a RODEWAY INN & SUITES AND EZ HOSPITALITY, LLC'S MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff S.W., by and through her undersigned counsel, files her Response in Opposition to Defendant Tropical Paradise Resorts, LLC d/b/a Rodeway Inn & Suites and Defendant EZ Hospitality's Motions to Dismiss Plaintiff's Amended Complaint, and as grounds therefor, state as follows:

## ORAL ARGUMENT REQUESTED

Plaintiff S.W. submits this consolidated response in opposition to the Motions to Dismiss of Tropical Paradise Resorts, LLC d/b/a Rodeway Inn & Suites ("Tropical Paradise") and EZ Hospitality, LLC ("EZ"), which raise substantially overlapping arguments. Plaintiff S.W. requests oral argument to fully present her position in this matter.

## STATEMENT OF FACTS

Plaintiff S.W. is a survivor of sex trafficking *(Am. Compl. at ¶¶ 2, 18, 23)*. From 2019 through 2020, Plaintiff S.W. was held captive at Defendants' Rodeway Inn & Suites and repeatedly coerced into commercial sex acts at said hotel, as well as other hotel properties throughout the city of Fort Lauderdale, Florida. *(Id. at ¶¶ 6, 13, 14, 15, 16, 18, 24, 36)*. The Rodeway Inn & Suites is possessed, owned, and controlled by Tropical Paradise, and controlled, managed, and maintained through its management company, EZ. *(Id. at ¶¶ 25, 26)*. Together with their co-Defendant Choice

Hotels[1], Tropical Paradise and EZ collectively operated the Rodeway Inn & Suites, which was regularly used to traffic women, including Plaintiff. *(Id. at ¶¶ 12, 27, 28, 49, 50, 133, 136, 142, 171, 211, 218, 232)*. For purposes of this response, Tropical Paradise and EZ are referred to collectively as "Defendants."

Plaintiff alleges that Tropical Paradise and EZ ignored reports and glaring data reflecting suspected human trafficking at its property, creating a conveniently low-risk environment for traffickers who used Defendants' hotel as a safe location to coerce women into commercial sex. *(Id. at ¶¶ 18, 55, 90, 102-104, 159, 161, 176, 181-191, 203, 229)*. While this case seeks damages for one trafficking survivor, S.W., the Amended Complaint alleges numerous, repeat criminal sex trafficking acts in violation of Section 1595 regarding many traffickers and survivors *(Id. at ¶¶ 12, 49, 50, 133, 136, 142, 171, 211, 218, 232)*. S.W. was raped nearly five to six times per day over a two-year period and witnessed numerous other victims being similarly trafficked and exploited at the property which Defendants possessed, owned, controlled, maintained, and managed. *(Id. at ¶¶ 12, 49, 50, 133, 136, 142, 171, 211, 218, 232)*.

Central to Plaintiff's allegations and theory of liability however, is Defendants' vicarious liability for their hotel staff and appointed manager Israel "Izzy" Fintz ("Fintz"), who was a critical architect in the heinous operation in which Plaintiff and countless other young women were victims. *(Id. at ¶¶ 138-145, 217, 226)*. Fintz is alleged to be the sole titled manager and principal of EZ. *(Id. at ¶ 138)*. In that vein, Tropical Paradise is vicariously liable for the conduct of the hotel staff it employed, including Fintz. Similarly, EZ is vicariously liable for the hotel staff it managed on-site, as well as for the acts of its principal and parent agent, Fintz. For purposes of this response and given the information available at the pleading stage, Plaintiff refers to the hotel staff collectively as employees or agents of the Defendants, consistent with Plaintiff's allegations set forth in the Amended Complaint.

While it is true that "observing" something is not the same as "participating" in it, Defendants in this case did not just observe; they assisted, supported, and facilitated S.W.'s human trafficking, which in large part was led by Defendants' hotel manager and agent, Fintz. This contrasts sharply with the Eleventh Circuit's decision in *Doe #1* heavily relied upon by Defendants,

---

[1] Plaintiff addresses Choice Hotels International, Inc.'s Motion to Dismiss in a separate response.

where the only allegation of knowledge or participation was that defendants "sent inspectors to hotels" and "received reviews mentioning sex work."[2]

It is well established that a company is charged with the knowledge of its employees. See *PG&E, 20*15 U.S. Dist. LEXIS 171577, at *11 (citing Unit*ed States v. T.I.M.E.-D.C., Inc., 38*1 F. Supp. 730 (W.D. Va. 1974)). Tropical Paradise and EZ's staff knew what was happening, because they in pertinent part orchestrated, facilitated and participated in it. Likewise, a company is responsible for what its employees do within the scope of employment. Tropical Paradise and EZ's staff; namely, that of Fintz not only accommodated S.W.'s trafficker Steven Joseph, but was a stakeholder in the trafficking operation. Further to using the hotel as a stakeholder, Fintz and Defendants furthered the venture by placing Joseph in rooms near stairwells and exits; assisting the steady stream of men looking for S.W. and providing them expedited check-ins; ensuring that excess towels and linens were supplied; and that the hotel rooms were turned over after the numerous hours-long rapes that Plaintiff and other victims suffered at the hands of Johns. And Defendants' role in the venture extended beyond mere accommodation. Plaintiff alleges that hotel staff were also "clients" or "Johns," and while Fintz was not himself a client, he routinely solicited S.W. for sex acts under the guise of a "date," as defined in the Amended Complaint. *(Am. Compl. at ¶ 113).*

Tropical Paradise and EZ, together with Choice Hotels, jointly employed every staff member who regularly worked with S.W.'s trafficker. Plaintiff alleges that front desk staff reported sex abuse indicators to Choice Hotels per policy. Employees logged the excessive linen requests. The hotel had access to web browsing data showing the trafficker and Johns used websites such as Independent Girls, Eros, and Adult Search. Their reservation system tracked long-term stays under S.W. or her trafficker's names for weeks at a time over the course of two years. And throughout it all, Tropical Paradise and EZ driven by Fintz assisted S.W.'s trafficker to ensure that they and therefore Defendants profited from the trafficking.

**Check In.** At Rodeway Inn & Suites, S.W.'s interactions with hotel staff began at check-in: S.W. or her trafficker interacted directly with the front desk and at times Fintz to take out rooms. S.W. and her trafficker would arrive at the hotel with sometimes upwards of twenty other women to check in to hotel rooms. S.W. and her trafficker's other victims were scantily dressed, visibly under the influence of drugs and/or alcohol, and submissive, making it apparent to the desk staff

---

[2] *Doe #1 v. Red Roof Inns, Inc*., 21 F.4th 714, 726–28 (11th Cir. 2021).

they were under the trafficker's control. Defendants reserved the rooms for S.W. and her trafficker on their booking platforms, sometimes allowing them to pay in cash for the rooms. They set the price for the trafficker to pay, took his money, and took responsibility for retaining him as a valued customer. And every time they sold him a room, his human trafficking profits became their profits. *(Id. at ¶¶ 48, 56, 112, 117, 118, 176, 177, 183, 210, 213).*

**Accommodation of Room Preferences.** S.W.'s trafficker specifically requested rooms near exits or stairwells, facilitating easy access by "Johns." This was all part of a repeated and routine arrangement that the trafficker and Tropical Paradise led by Fintz would follow over the two-year period. *(Id. at ¶ 118).*

**Day-to-Day Interactions.** The same hotel staff saw S.W. throughout her stays *(Id. at ¶¶ 49, 57, 59),* during which *s*he would routinely appear impaired, drunk, tired and detached, avoiding eye contact when with her trafficker, and often displaying prominent bruising and other physical injuries. They saw her bruises, her submissiveness, and her impaired condition. *(Id. at ¶¶ 128, 129, 151, 176, 181, 184, 210, 213).* And Defendants knew her trafficker never left her side, who was often seen waiting outside her room while she was performing commercial sex acts. *(Id. at ¶¶ 56, 112 210, 213, 229).*

**Beatings.** S.W. was forced to comply through threats on her own life and that of her family's. She was repeatedly beat, held at gunpoint, and even assaulted with a pistol. Her screams during such assaults were ignored by hotel staff. *(Id. at ¶¶ 36-39, 41, 210, 229).*

**Providing the Tools of the Trade.** At the trafficker's request, Defendants' staff provided excess towels and linens to accommodate the trafficker's needs, sanctioned by Fintz *(Id. at ¶¶ 118, 176, 210).* She often refused housekeeping services per the instruction of the trafficker to allow for more visits with "Johns." *(Id. at ¶¶ 118, 128, 176, 201, 210).*

S.W's trafficker also used hotel Wi-Fi to post on Independent Girls, Eros, and Adult Search, among other websites, advertising S.W.'s availability for commercial sex. And he used the Wi-Fi to message back and forth with the Johns who showed interest. The sex parties further discussed below were also advertised on similar websites, directing Johns to either the hotel lobby or the adjoining restaurant Marina 84 Sports Bar & Grill. Make no mistake, Tropical Paradise and EZ could see this. Defendants used a specific Wi-Fi service provider that helped co-Defendant Choice Hotels harvest guest web-browsing data. Although it would have been easy for them to

block Independent Girls, Eros, Adult Search, and similar websites, they did not. *(Id. at ¶¶ 35, 50, 112, 159, 160, 163).*

**Helping the Johns at the Front Desk.** Defendants helped large numbers of male visitors asking for S.W. (and her trafficker) at the front desk. If S.W.'s trafficker was not available to meet the Johns in the hotel lobby, the front desk staff would direct them to S.W.'s room. Defendants controlled how this was handled—their policies set how front desk staff interacted with incoming guests—and they directed these non-guests directly to S.W.'s room who was then repeatedly raped. *(Id. at ¶¶ 50, 56, 112, 113, 118, 128, 201).*

**Cleaning Up the Evidence.** Cleaning up after the Johns was another common task for hotel staff. They would dispose of a large number of used condoms and lubricant, as well as consistently retrieve large volumes of towels from the rooms where S.W. and other young women were living- several times during a shift. *(Id. at ¶¶ 183, 210, 229).* In addition to the above, Plaintiff's room would frequently show further and obvious signs of human sex trafficking at the time of checkout, including drug and sex paraphernalia. *(Id. at ¶¶ 115, 183, 210, 229).* And they gathered data on the trafficker's room cleaning requests, which they transmitted back to co-Defendant Choice Hotels. *(Id. at ¶¶ 159, 160).*

**Sex Parties in the Hotel Lobby.** In partnership with other traffickers, S.W.'s trafficker hosted sex parties in the lobby of the Rodeway Inn & Suites, as well as in the hotel's adjoining restaurant, during which S.W. and other victims were forced to solicit Johns, who would then walk with them from the lobby into their rooms to make their traffickers and Fintz as much money as possible. Many of Defendants' staff attended these sex parties, all of whom were aware of the trafficking involved. *(Id. at ¶¶ 49, 50, 118).*

**Solicitation by Hotel Personnel.** Several Johns were hotel employees or their associates. The hotel on-site manager repeatedly solicited S.W. for sex and later convened a staff meeting to deny involvement. *(Id. at ¶¶ 114, 118, 142, 146-151).*

**Online Reviews.** Multiple public reviews of the Rodeway Inn & Suites—posted on both the hotel's website and third-party platforms—referenced prostitution, violence, drug use, loitering, and loud disturbances. Many were publicly responded to by Defendants. Examples include:

> "…random cars (all expensive cars with tinted windows) pull up with various people either staying in the car or coming out and leaving within a short time span…"

"…people just hanging out in the side parking lot…"

"…(my room faced a rear parking lot with lots of strange activity) with lots of people 'hanging' out in the corridors."

"….It was pretty much a resort for prostitutes and drug addicts…"

"…Men seem to be hooking up with prostitutes in the lobby as well…"

"…People screaming during the night… People drinking and smoking on the hallways."

"Horrible. Between the murder prostitutes and drug dealers worst place."

"…multiple groups of women through the complex who had their doors wide open, getting dressed in lingerie…"

"…All the people hanging out around the hotel like they was selling drugs from the property."

"There seemed to be drug deals going on in the far back parking lot. And a few ladies of the evening lingering there as well…"

"…Men standing outside of rooms smoking and giving us catcalls…"

"…It did not feel safe with people fighting at all hours of the night…"

"Hourly rate type of hotel. People were in the halls all night long…"

"…groups of men hanging out in parking lot."

"…A woman kept screaming…we didn't think anyone at the front desk would do anything about it…"

*(Id. at ¶ 112).*

This action follows.

## **LEGAL STANDARD**

To overcome a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead enough to "raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id.* A court must take a plaintiff's well-pled allegations as true and draw all reasonable inferences for the plaintiff. *Id.* Allegations that contain details beyond a formulaic recitation of elements are factual allegations that the Court should credit when reviewing a 12(b)(6) motion. *J.G. v. Northbrook Indus.*, 619 F. Supp. 3d 1228, 1237 (N.D. Ga. 2022). This federal pleading standard is not demanding, asking that a plaintiff allege "only enough facts" to "nudge" a claim "across the line from conceivable to plausible." *G.G.*, 76 F.4th at 551.

## MEMORANDUM OF LAW

### I.   Plaintiff's Amended Complaint Is Not a "Shotgun Pleading"

Defendants' argument that Plaintiff's Amended Complaint constitutes an impermissible "shotgun pleading" is without merit. Under Rule 8, a pleading is deficient only where it fails to give defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Courts disfavor shotgun pleadings because they obscure claims, broaden discovery, and waste judicial resources. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 981–83 (11th Cir. 2008). None of these concerns is present here.

To the contrary, "[n]otice is the touchstone of the Eleventh Circuit's shotgun pleading framework." *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1138 (M.D. Fla. 2018). Plaintiff's Amended Complaint clearly identifies the roles and conduct of each Defendant: Tropical Paradise is alleged to be the owner of the Rodeway Inn & Suites *(Am. Compl. at ¶ 25)*, EZ is the operator and manager *(Id. at ¶ 26)*, and Choice Hotels is the franchisor exercising branding and significant operational control *(Id. at ¶ 27)*. These distinct roles are emphasized throughout the pleading and are explicitly described as part of a "distinct but coordinated" relationship in operating and holding out the hotel as a public lodging. *(Id. at ¶ 28)*.

The Amended Complaint further alleges that Fintz was the sole titled manager and principal of EZ and acted as EZ's agent, as well as the actual or implied agent of Tropical Paradise. *(Id. at ¶¶ 138–145, 166–170)*. While EZ's Motion is silent on Fintz, Tropical Paradise's claim that no connection is drawn between it and Fintz is starkly contradicted by the allegations in the Amended Complaint, extensively cited herein this Response.

Defendants' claim that Plaintiff relies on "group liability" is also misguided, which argument, notably, Defendants attempt to bolster by relying on language from the original Complaint which has since been excised from Plaintiff's Amended Complaint. To the extent Defendants acted jointly—such as profiting from the continued rental of rooms despite obvious trafficking—the Amended Complaint properly alleges joint conduct. This is not a "shotgun pleading," but an efficient and accurate way of presenting overlapping facts without obscuring the distinct theories of liability against each Defendant.

Defendants' reliance on *A.L. v. Hilton* is inapposite. There, the complaint failed to link staff conduct to the specific franchisor or owner. Here, in contrast, the Amended Complaint alleges that

hotel employees and manager—who, as pled, were employed by or under the control of Tropical Paradise and EZ— actively orchestrated and participated in the trafficking enterprise. Defendants' staff are alleged to have witnessed red flags, facilitated room access to Johns, responded to Plaintiff's deteriorating condition, and, in some cases, personally solicited her and participated in sex with victims. *(Am. Comp. at ¶¶ 112, 114, 118-119, 122, 142, 146–153).* These allegations directly support liability as to both the owner and the manager.

The key inquiry is whether the "failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324. That is not the case here. Plaintiff asserts a unified course of conduct giving rise to three causes of action—two under the TVPRA (§§ 1591 and 1595) and one for premises liability. Because many facts overlap across these claims, duplicating them for each Defendant would undermine the very clarity Rule 8 is meant to promote.

Indeed, the Eleventh Circuit and district courts routinely reject shotgun pleading challenges where the complaint provides fair notice and factual support. In *Doe K.R. v. Choice Hotels Int'l, Inc.*, the court rejected a similar argument, noting: "Defendants have not moved for a more definite statement and 'did not have any trouble understanding the claim[s] against them.'" No. 6:23-cv-1012, slip op. at 32 (M.D. Fla. June 12, 2024) (quoting *Halbig v. Lake Cnty., Fla.*, 2024 WL 470420, at *2 (11th Cir. Feb. 7, 2024)).

Similarly, in *Pinson v. JPMorgan Chase Bank, N.A.*, the Eleventh Circuit upheld a lengthy complaint where each count incorporated prior allegations, finding that it still gave "adequate notice of the claims against [each defendant] and the grounds upon which each claim rests." 942 F.3d 1200, 1208 (11th Cir. 2019) (quoting *Weiland*, 792 F.3d at 1323).

The same is true here. Defendants plainly understand the claims asserted against them, as demonstrated by the substance of their Motions to Dismiss. The Amended Complaint gives fair notice, attributes conduct to each Defendant and satisfies Rule 8.

## II.   Trafficking Victims Protection Reauthorization Act (TVPRA)

The Trafficking Victims Protection Reauthorization Act ("TVPRA") imposes civil liability on individuals and entities that knowingly (or with reason to know) participate in or benefit from sex trafficking. Two statutory provisions are relevant here.

First, 18 U.S.C. § 1591 imposes criminal liability on those who knowingly engage in trafficking conduct or benefit from participation in a trafficking venture. In relevant part, it provides:

(a) Whoever knowingly—

    (1) in or affecting interstate or foreign commerce, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

    (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

    knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Thus, criminal liability attaches to any party that either (1) directly traffics a victim while knowing or recklessly disregarding that coercion will be used, or (2) knowingly benefits from participation in a sex trafficking venture that engages in such conduct.

Second, 18 U.S.C. § 1595(a) provides a civil remedy to victims of trafficking. It creates two distinct forms of liability: one for perpetrators who violate § 1591, and another for beneficiaries who "knew or should have known" that they were participating in a trafficking venture. As courts have explained, § 1595(a) "evidences Congress's intent to broaden the behavior that can form the basis of civil liability to participation in ventures where the defendant knew or should have known that the venture was involved in sex trafficking." *M.A. v. Choice Hotels Int'l, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019). This expanded civil cause of action allows survivors "to seek justice against those who have profited from their exploitation." *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020) (cleaned up).

Here, Plaintiff alleges that Defendants are liable both as perpetrators under § 1591(a)(1) and as beneficiaries under § 1595(a).

### A.  Plaintiff Sufficiently States a Perpetrator Claim Under § 1591

Plaintiff S.W. adequately states a perpetrator liability claim under 18 U.S.C. § 1591(a)(1). She alleges that Defendants knowingly facilitated her sex trafficking, or at minimum acted in

reckless disregard of it. Tropical Paradise owned and controlled and EZ maintained and managed the premises where the trafficking occurred. Together with their co-Defendant, they permitted traffickers to operate openly, and delegated operational authority to a manager who in pertientn part orchestrated, directly engaged with and profited from the trafficking. These facts amount to "harboring" under § 1591(a)(1) and reflect affirmative facilitation of a sex trafficking venture consistent with criminal liability. See, e.g., *United States v. Bhimani*, No. 3:17-324, 2021 U.S. Dist. LEXIS 215789, at *25 (M.D. Pa. 2021); *J.M. v. Choice Hotels Int'l*, 2023 U.S. Dist. LEXIS 84861, at *6–7 (N.D. Cal. May 15, 2023).

### i. Plaintiff Alleges Actual Knowledge

Defendants mischaracterize both the pleading standard and Plaintiff's allegations. Under Federal Rule of Civil Procedure 9(b), "[k]nowledge . . . may be alleged generally." See *Doe #1 v. MG Freesites, Ltd.*, 676 F. Supp. 3d 1136, 1155 (N.D. Ala. 2022); *Doe #1 v. Crowley Mar. Corp.*, No. 3:23-cv-383-MMH-JBT, 2024 WL 1346947, at *7 (M.D. Fla. Mar. 29, 2024) (quoting *United States v. Bixler*, No. 21-5194, 2022 WL 247740, at *7 (6th Cir. Jan. 27, 2022)). The Amended Complaint alleges with specificity numerous facts that, taken together, support considerably more than plausible inference that Defendants had actual knowledge or, at a very minimum in the case of Defendant Choice, acted in reckless disregard of S.W.'s trafficking on its premises.

A defendant's knowledge may be inferred from circumstantial evidence. See *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1258 (M.D. Fla. 2020). Here, S.W. alleges numerous, repeated signs of trafficking that Defendants' employees observed and ignored (not to mention orchestrated and profited from as in the case of Defendants' agent and manager Fintz): S.W.'s trafficker arriving with up to twenty scantily dressed women, made cash payments for rooms and requests for rooms near exits/stairwells, on many occasions fielded multiple men who were not hotel guests entering and exiting rooms daily (5–6 per night) without luggage or personal items, drug activity, bookings for extended periods of time on a day-to-day basis, bookings of "day rooms" for multiple hours under the same circumstances, extensive requests for fresh linens and towels associated with used condoms and sex paraphernalia, and S.W.'s impaired nature, deteriorated appearance and visible distress. *(Am. Comp. ¶¶ 48, 56, 81, 112, 118, 119).* Courts have found that such allegations support an inference of actual knowledge, if not reckless disregard. See, e.g., *A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-647-JES-NPM, 2023 WL 5510266, at *5 (M.D. Fla. Aug. 25, 2023) (knowledge

pled where hotel staff encountered condoms, bodily fluids, excessive linen requests, and signs of physical abuse).

Additionally, Plaintiff alleges that her trafficker used hotel Wi-Fi to post advertisements on Independent Girls, Eros, and Adult Search, and communicated with Johns via these websites. Per their co-Defendant Choice Hotels' policies, Defendants logged this web browsing activity and were aware of S.W.'s trafficker posting sex ads. *(Id. at ¶¶ 35, 50, 112, 159, 160, 163).*

Moreover, the totality of staff awareness supports actual knowledge under a collective knowledge theory. Plaintiff alleges that Defendants' employees possessed actual knowledge of S.W.'s trafficking, and that this knowledge is imputable to Defendants—to say of nothing of Defendants' agent and manager Fintz who orchestrated and profited from the human trafficking enterprise. *(Id. at ¶ 145, 217).* Under federal common law, a corporation "knows" the sum of what its employees know. See *United States v. PG&E*, No. 14-cr-00175-TEH, 2015 U.S. Dist. LEXIS 171577, at *8–14 (N.D. Cal. Dec. 23, 2015); *United States v. Shortt Accounting Corp.*, 785 F.2d 1448, 1454 (9th Cir. 1986). Save for those of Defendants' staff that orchestrated and participated in the trafficking abuse, even if no one individual employee had complete awareness of all of the above, the staff collectively observed the red flags already detailed above: excessive male visitors, visible abuse, cash payments, drug activity, and signs of distress. Some interacted with S.W. directly, others rented rooms to her trafficker, and others cleaned up after assaults. Taken together, in addition to those staff that orchestrated and participated in the trafficking abuse, this unequivocally supports an inference that Defendants knew about the trafficking. See also *United States v. Bhimani*, 2021 U.S. Dist. LEXIS 215789, at *28 (M.D. Pa. Nov. 8, 2021) (upholding TVPRA conviction based on manager renting rooms to traffickers and accepting payment from commercial sex). As the court explained, "[t]here is no requirement that the person with knowledge be a 'central figure' in the company; the person whose knowledge is to be imputed must have only some relationship with the company." *Id.* at 1110 (citing *United States v. Josleyn*, 206 F.3d 144, 159 (1st Cir. 2000)).

But Defendants' actual knowledge far surpasses observing signs of trafficking and data monitoring; as described, some of their own employees were clients of S.W. at the hotel. *(Am. Comp. at ¶ 114).* Fintz also solicited S.W. for sex acts on numerous occasions. *(Am. Comp. at ¶¶ 114, 118, 142, 146-152).* And after an incident in which one of S.W.'s Johns made a scene in the hotel lobby, Fintz felt compelled to assure Defendants' staff, who were aware of S.W.'s ongoing

commercial sex activity at the hotel, that he was not engaged in a sexual relationship with her and had not solicited her for sex. *(Id. at ¶¶ 146-153)*. Courts have routinely found similar or less robust allegations sufficient to satisfy the *mens rea* element at the 12(b)(6) stage.[3]

Plaintiff further alleges that traffickers paid the hotel manager Fintz extra money for each room rented for trafficking purposes and additional compensation tied to the number of victims. *(Id. at ¶ 142)*. These illicit financial incentives, paid directly by traffickers to a management-level employee, are particularly strong evidence that Defendants, through their agent, not only had actual knowledge of the trafficking but also profited from and facilitated it. Such conduct reflects knowing harboring and participation under § 1591(a)(1) and is attributable to both Defendants under common law agency principles.

This is not a case of generalized red flags or vague suspicions. Plaintiff alleges specific misconduct by hotel employees and the on-site manager designated by Defendants, including acts of orchestration, participation, facilitation and furtherance of otherwise visible trafficking indicators. See *B.J. v. G6 Hosp., LLC*, 2023 WL 6120682, at *11–12 (N.D. Cal. Sept. 19, 2023) (finding actual knowledge where a hotel manager directly observed and failed to act on trafficking indicators, imputable to the owner). These facts support a plausible inference of actual knowledge or reckless disregard under § 1591(a)(1). See also *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1236 (M.D. Fla. 2023).

Defendants are also liable under a perpetrator theory based on common law agency principles, including *respondeat superior*, because the staff's participation and Fintz's trafficking-facilitating conduct was carried out within the scope of his managerial duties and for the benefit of Defendants. See *Am. Compl. at ¶¶ 138–145, 217*; *Treminio*, 649 F. Supp. 3d at 1232. This is consistent with the longstanding presumption that Congress, in creating tort remedies, incorporates "ordinary tort-related vicarious liability rules." *Meyer v. Holley*, 537 U.S. 280, 285–86 (2003).

Should the Court find the above does not constitute actual knowledge, Defendants' failure to act in the face of clear warning signs constitutes, at minimum, reckless disregard, a fact question not appropriate for resolution on a motion to dismiss. See *J.M. v. Choice Hotels Int'l*, 2023 U.S. Dist. LEXIS 84861, at *6–7 (N.D. Cal. May 15, 2023) (plaintiff plausibly alleged knowledge where franchisor had access to trafficking indicators through internal channels but failed to act).

---

[3] *See, e.g.*, L.H., 2023 U.S. Dist. LEXIS 156293, at *34; *C.T. v. Red Roof Inns, Inc.*, No. 2:22-cv-834-JES-KCD, 2023 U.S. Dist. LEXIS 87727, at *13 (M.D. Fla. Mar. 11, 2023) (collecting cases).

Similarly, in *Treminio v. Crowley Mar. Corp.*, the court found the plaintiff had plausibly alleged that the employer "knew or acted in reckless disregard" based on the conduct of its employees. 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023).

To that end, here, Defendants Tropical Paradise and EZ failed to implement anti-trafficking policies, train staff, or respond to repeated signs of trafficking, including disturbances, online complaints, police presence, and direct observations by management, despite operating and controlling the very property where S.W. was repeatedly trafficked. *(Am. Comp. ¶¶ 41, 48-50, 56-57, 59, 81, 104, 112, 114, 118-120, 122, 138-153, 174-176)*. These allegations, taken as true, support a reasonable inference that Defendants either knew or recklessly disregarded that it was facilitating sex trafficking.

Online reviews and guest complaints further corroborate the plausibility of knowledge. Plaintiff alleges that numerous reviews referencing prostitution and unsafe conditions were posted publicly, including on the hotel's website, and that Fintz responded to some of these complaints in his role as manager. *(Am. Comp. ¶ 104)*. These are not general statements about "prevalent trafficking;" they are direct references to illicit conduct at the Rodeway Inn & Suites. To the extent that Defendants disclaim any connection to or knowledge of this activity; particularly and ironically, by that of Fintz only reinforces Plaintiff's allegations of willful blindness. *(Am. Comp. ¶¶ 18, 90, 181-191)*.

These allegations satisfy § 1591's actual knowledge standard, which does not require "certainty as to a future act," but rather "a state of mind in which the knower is familiar with a pattern of conduct." *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010). Courts have explained that a defendant must only be "aware of an established modus operandi that will in the future cause a person to engage in prostitution." *J.M. v. Choice Hotels Int'l, Inc.*, 2023 WL 3456619, at *2 (N.D. Cal. May 15, 2023) (quoting *Noble v. Weinstein*, 335 F. Supp. 3d 504, 517–18 (S.D.N.Y. 2018)). Plaintiff pleads precisely that: Defendants were familiar with how trafficking operated on their premises and observed a consistent, repeated pattern of abuse, commercial sex activity, and red flags that make out a plausible inference of actual knowledge under § 1591(a)(1).

Taken together, the allegations in the Amended Complaint more than satisfy the pleading standard under § 1591(a)(1). Defendants were not mere bystanders; they exercised control over the premises, ignored persistent trafficking indicators, and permitted their manager and staff to engage in and benefit from the venture. At minimum, they acted in reckless disregard, and

dismissal is inappropriate at this stage. This standard is met as to both Tropical Paradise and EZ, who together owned, operated, and managed the premises, supervised staff, delegated authority to Fintz, and benefited from the venture.

### ii.  Plaintiff Alleges Specific Acts of Harboring and Facilitation

Defendants argue that Plaintiff fails to plead any actus reus under § 1591(a)(1), mischaracterizing the Amended Complaint as alleging nothing more than passive room rentals or failures to intervene. But as demonstrated above, Plaintiff identifies repeated conduct by Defendants and their employees some of which intentional with specificity, that affirmatively facilitated S.W.'s trafficking and thus constitutes "harboring" under the statute.

As alleged, Defendants knowingly permitted and furthered S.W.'s trafficker, Joseph, to use the Rodeway Inn & Suites as a base for confinement, abuse, and commercial exploitation. In fact, they provided him with all the tools of the trade—from the Wi-Fi he required to post advertisements of S.W. and communicate with Johns, to the frequent requests for new linens between clients. Rooms were rented to him in cash almost daily for weeks or months at a time, often near stairwells or exits at his request, with staff further accommodating requests for linens and privacy while allowing non-guests to enter freely. Joseph's "guests," who were not registered hotel patrons, entered and exited Plaintiff's room at all hours. These repeated acts created the conditions necessary for trafficking to persist undisturbed. *(Am. Compl. at ¶¶ 35, 36, 41, 50, 57, 59, 112, 114, 118, 159, 160, 163, 174–176).*

Plaintiff also alleges Defendants failed to respond to obvious indicators of trafficking: S.W.'s impaired condition and visible distress, open drug activity, loud disturbances, online guest reviews referencing prostitution and unsafe conditions, and the absence of any meaningful policies or training to detect or disrupt sex trafficking. *(Id. ¶¶ 36, 41, 104, 106, 118, 119, 120).* These failures, despite clear signs, amount to active facilitation in the form of deliberate indifference and concealment, not mere inaction.

Courts have consistently found that allegations like those raised here support a harboring theory under § 1591(a)(1). "[P]roviding lodging to someone for the purposes of obtaining her labor or services against her will constitutes 'harboring.'" *Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017) (citing *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017)). In *Ricchio*, the First Circuit sustained a claim where hotel owners continued renting rooms to known traffickers while ignoring visible abuse. Similarly, in *J.M. v. Choice Hotels Int'l, Inc.*, 2023 WL 3456619, at *2

(E.D. Cal. May 15, 2023), and *S.A.S. v. ESA P Portfolio LLC*, 2024 WL 3276417, courts denied dismissal where hotel staff enabled trafficking by facilitating secluded room placement, cash rentals, refusal of housekeeping, and visible signs of coercion, abuse, and distress. More recently, the Middle District of Florida denied a motion to dismiss where the plaintiff alleged that a hotel owner "knowingly harbored" her trafficker by allowing continued access to rooms and ignoring signs of abuse and criminal conduct. *Doe K.R. v. Choice Hotels Int'l, Inc.*, No. 6:23-cv-1012, slip op. at 32 (M.D. Fla. June 12, 2024).

Here, Plaintiff's allegations go further. She alleges that the hotel manager also routinely solicited S.W. and even convened a staff meeting to address internal concerns about his conduct following a public altercation between S.W. and a John in the lobby. *(Id. at ¶¶ 118, 142, 146-151).* Plaintiff also alleges that some of the sex buyers frequenting S.W.'s room were Defendants' hotel staff or their associates, and that staff were aware of and attended sex parties hosted in the hotel lobby and adjoining restaurant. *(Id. at ¶¶ 49, 50, 114, 118).* Moreover, traffickers paid the hotel manager Fintz extra money for each room rented as well as additional compensation based on the number of victims. *(Id. at ¶ 142).* These allegations demonstrate that Defendants were not merely indifferent; they were complicit actors whose employees and manager directly participated in and furthered the trafficking scheme. Such conduct supports a finding that Defendants knowingly harbored S.W. and her trafficker for the purpose of commercial sexual exploitation.

As in *Doe A v. Seatac Hotels*, 2025 WL 474233, at *4–5 (W.D. Wash. Feb. 12, 2025), these facts plausibly support a finding of perpetrator liability. There, the court upheld harboring claims where hotel staff tolerated disturbances, sex paraphernalia, and visible signs of distress and abuse, and where the franchisor had access to reservation and operational data reflecting trafficking. Similarly, in *United States v. Bhimani*, 2021 U.S. Dist. LEXIS 215789, at *25 (M.D. Pa. Nov. 5, 2021), the court upheld a criminal TVPRA conviction based on repeated room rentals to traffickers and failure to intervene.

The same indicia of harboring—repeated rentals, failure to act, specific accommodations for trafficking, and direct staff involvement—are pled here. Defendants were not bystanders. Like the corporation in *Commonwealth v. Martins Maint., Inc.*, 190 N.E.3d 1099, 1110–11 (Mass. App. Ct. 2022), they knowingly enabled trafficking through the overt acts as well as omissions of employees furthering company objectives. There is no requirement that knowledge be held by a "central figure;" it is enough that someone with operational ties to the company knew and failed

to act. *Id.* Taken together, these allegations more than suffice to state a perpetrator liability claim under § 1591(a)(1).

### iii.   Financial Benefit Is Not Required Under § 1591(a)(1)

Defendants misstate the applicable standard. A financial benefit is not an element of perpetrator liability under § 1591(a)(1); that requirement applies only to beneficiary liability under § 1591(a)(2). See *Doe #1 v. Deutsche Bank Aktiengesellschaft,* 671 F. Supp. 3d 387, 405 (S.D.N.Y. 2023) (noting that § 1591(a)(2) liability requires participation in a venture, knowledge or reckless disregard of coercion, and a resulting benefit); *United States v. Afyare,* 632 F. App'x 272, 285 (6th Cir. 2016) (distinguishing § 1591(a)(1), which applies to direct traffickers, from § 1591(a)(2), which imposes liability on those who benefit from participation in a venture). Plaintiff alleges that Defendants harbored S.W. with knowledge or reckless disregard of her coercion, conduct falling squarely under subsection (a)(1). Accordingly, arguments about profits, revenue, or ownership of the adjoining restaurant are irrelevant to Count I.

To the extent Defendants raise arguments concerning the financial benefit element under § 1591(a)(2), those challenges are misplaced here and are addressed in the following sections concerning Count II.

### B.   Plaintiff Sufficiently States a Beneficiary Claim Under § 1591

S.W. also adequately states a beneficiary liability claim under 18 U.S.C. § 1591(a)(2), as authorized by the civil remedy provision in § 1595(a). To sufficiently allege such a claim, a plaintiff must plead that: (1) she was a victim of sex trafficking; (2) the defendant knowingly benefited, financially or by receiving something of value; (3) from participation in a venture; and (4) that the defendant knew or should have known the venture was engaged in sex trafficking. See 18 U.S.C. § 1595(a); *M.A. v. Choice Hotels Int'l, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020). Plaintiff meets this standard. She alleges that Defendants profited from repeated room rentals and on-site sex trafficking activity while participating in a venture it knew or should have known involved trafficking. These allegations are sufficient to state a plausible claim under the TVPRA's civil beneficiary theory.

### i.   Plaintiff Alleges That Tropical Paradise and EZ Received a Financial Benefit

Plaintiff adequately alleges that Defendants knowingly received a financial benefit from its participation in a venture that engaged in sex trafficking. Under § 1595(a), this element is

satisfied where a defendant knowingly receives a benefit—financial or otherwise—from its relationship with a trafficking venture, even if the funds come through routine transactions. See *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020) ("The rental of a room … constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element."); *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1234 (N.D. Ga. 2022) (same).

In the hotel context, courts routinely recognize that room rental revenue alone is sufficient to establish a knowing financial benefit. See *A.D. v. Holistic Health Healing Inc.*, No. 2:22-cv-641-JES-NPM, 2023 WL 3004546, at *3 (M.D. Fla. Apr. 19, 2023) ("Repeatedly renting rooms that defendant knew or should have known were being used for sex trafficking" satisfies the benefit element); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020) ("[T]he rental of a room constitutes a financial benefit from a relationship with the trafficker."); see also *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017) ("Payment for the motel room" constituted a knowing benefit under the statute).

Here, Plaintiff alleges that Defendants repeatedly rented rooms to S.W.'s trafficker Joseph, on a near-daily basis for upwards of two years, including accommodating requests for rooms near stairwells and exits, denying housekeeping for privacy, supplying ongoing excess towels and linens associated with commercial sex, as well as consecutive cleaning up a room over a shift to include used condoms, drug and sex paraphernalia. Unregistered male guests visited S.W.'s room at all hours- 5-6 in a night typically, all while the hotel earned revenue from these transactions. *(Am. Compl. ¶¶ 48, 56, 112, 118, 128)*. These are not neutral acts; they reflect knowing participation in a trafficking venture from which Defendants directly profited. See *A.D. v. Choice Hotels Int'l, Inc.*, 2023 WL 5510090, at *3 (M.D. Fla. Aug. 25, 2023); *Doe K.R. v. Choice Hotels Int'l, Inc.*, No. 6:23-cv-1012, slip op. at 32 (M.D. Fla. June 12, 2024) (denying dismissal where hotel allegedly profited from a trafficker's repeated room rentals).

But the benefit Defendants received was not limited to room rental revenue. The Amended Complaint further alleges that Defendants profited from a stream of ancillary income, including ATM transaction fees incurred by sex buyers and traffickers onsite; food and beverage sales associated with the sex parties and loitering at the adjoining in the hotel lobby and adjoining Marina 84 restaurant; and incentives and bonuses for Fintz, the hotel manager, based on room

occupancy and allegedly on the number of women and "dates" trafficked through the property. *(Am. Compl. ¶¶ 13, 49, 142, 164, 173, 180, 217, 225, 226).*

Further, Defendants benefited from their reputation for discretion and tolerance of illicit activity. As courts have noted, a hotel's intentional failure to implement anti-trafficking protocols in order to retain trafficker clientele constitutes an indirect financial benefit. See *S.W. v. Lorain-Elyria Motel*, 2020 U.S. Dist. LEXIS 44961, at *14–15 (S.D. Ohio Mar. 16, 2020); *A.B.*, 2020 U.S. Dist. LEXIS 70644, at *38. Plaintiff pleads that Defendants intentionally ignored trafficking and drug activity and fostered a culture of secrecy to ensure continued profitability. *(Am. Compl. ¶¶ 57, 59, 90, 91, 106, 144, 159, 172, 176, 182, 188, 227, 231, 232).*

Additionally, Defendants' staff and management did not merely observe S.W.'s trafficking; they allegedly participated in it. Some acted as buyers, solicited S.W. for sex, and attended sex parties hosted at the hotel. *(Id. ¶¶ 49, 50, 57, 59, 114, 118, 128)*. These allegations support the conclusion that Tropical Paradise derived value from its direct relationship with the trafficker and his exploitation of S.W.

Critically, Plaintiff is not required to show that Defendant *knew* the benefit was tied to trafficking. That standard applies only to criminal prosecutions under § 1591. Civil liability under § 1595(a) merely requires that the defendant received a benefit from participating in a venture it *knew or should have known* was engaged in trafficking. See *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 565 n.20 (7th Cir. 2023); *Doe #1 v. Red Roof Inns,* 21 F.4th 714, 726–28 (11th Cir. 2021); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1259 (M.D. Fla. 2020). Plaintiff easily meets this standard.

Accordingly, Plaintiff plausibly pleads that Defendants knowingly benefited—financially and otherwise—from its relationship with her trafficker and from facilitating the use of its property as a base for trafficking. This satisfies the first element of Plaintiff's TVPRA beneficiary claim. See *M.A. v. Choice Hotels Int'l, Inc.*, 425 F. Supp. 3d 959, 964–65 (S.D. Ohio 2019); *H.H. v. G6 Hosp., LLC*, 2019 U.S. Dist. LEXIS 211090, at *6–7 (S.D. Ohio Dec. 6, 2019).

### ii. Plaintiff Alleges Tropical Paradise and EZ's Participation in a Venture That Violated the TVPRA

Defendants argue that Plaintiff fails to plausibly allege they participated in a trafficking venture, but this mischaracterizes both the TVPRA's requirements and the factual allegations in the Amended Complaint. Under § 1595(a), a defendant "participates in a venture" when it

maintains a continuous business relationship with a trafficker, and that relationship furthers or facilitates trafficking activity. See *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 968–970 (S.D. Ohio 2019). That venture need not be criminal in nature, and participation need not involve overt acts in furtherance of trafficking, as they did here in the case of Fintz. *Id.*; *Gilbert v. U.S. Olympic Comm.,* 2019 U.S. Dist. LEXIS 166957, at *46–51 (D. Colo. Sept. 27, 2019). Courts in the Eleventh Circuit have concluded that a venture is formed between traffickers and hotel defendants who actively participate in renting rooms to them <u>after</u> having the required *mens rea*.[4] Courts around the country agree.[5]

Here, Plaintiff alleges more than incidental business conduct. The Amended Complaint describes a commercial venture in which Tropical Paradise and EZ knowingly rented rooms on a near-daily basis to S.W.'s trafficker over a prolonged period of time, while accommodating trafficking-specific requests such as location near stairwells, denial of housekeeping unless upon request, and excessive linens. *(Am. Compl. ¶¶ 48, 56, 112, 128).* This relationship endured for weeks and months at a time over the course of nearly two years—well beyond a one-off transaction—and generated consistent profits. *(Id.).* See *L.H. v. Red Roof Inn, Inc.,* 2023 U.S. Dist. LEXIS 156293, at *31 (W.D. Ky. Sept. 5, 2023) (continuous business relationship over time sufficient to allege participation).

Plaintiff also pleads facts suggesting that Tropical Paradise and EZ created and maintained a favorable environment for trafficking by intentionally ignoring red flags, such as S.W.'s trafficker Joseph appearing with S.W. and upwards of twenty other women, open drug use, disturbances, online reviews referencing prostitution, and S.W.'s impaired and visibly distressed condition. *(Am. Compl. ¶¶ 48, 56, 104, 106, 112, 118, 119, 128).* These acts go beyond passive

---

[4] See*, e.g., J.G.*, 619 F. Supp. 3d at 1235; *J.C.*, 624 F. Supp. 3d at 1318 n.3; *N.G.*, 2023 U.S. Dist. LEXIS 178891, at *2.

[5] When a trafficking victim is kept at a hotel property for an extended period of time, this is enough for a continuous business relationship. *See L.H. v. Red Roof Inn, Inc.*, Civil Action No. 3:22-CV-625-CHB, 2023 U.S. Dist. LEXIS 156293, at *31 (W.D. Ky. Sep. 5, 2023). The nearly two years alleged here is undoubtedly enough to state a claim for a continuous business relationship. The case law from the Middle District of Florida that Plaintiff cites is distinguishable because the venture alleged by the plaintiffs in those cases were different than and narrower than the ventures S.W. alleges. For example, in *A.D. v. Holistic Health Healing Inc.*, No. 2:22-cv-641-JES-NPM, 2023 U.S. Dist. LEXIS 32258, at *6 (M.D. Fla. Feb. 27, 2023), the plaintiff alleged only that the defendant "actively participated in this illegal endeavor" but failed to provide supporting allegations. Here, S.W. alleges that Defendants participated in an ongoing commercial relationship even though it knew or should have known that this commercial relationship (rental of hotel rooms) was facilitating trafficking. *See C.T. v. Red Roof Inns, Inc.,* No. 2:22-cv-834-JES-KCD, 2023 U.S. Dist. LEXIS 87727, at *9 (M.D. Fla. Mar. 11, 2023) (recognizing this distinction).

observation and amount to affirmative facilitation. See *Ricchio v. McLean,* 853 F.3d 553, 556–57 (1st Cir. 2017); *J.G. v. Northbrook Indus., Inc.,* 619 F. Supp. 3d 1228, 1235 (N.D. Ga. 2022). Moreover, some of the sex buyers frequenting S.W.'s room were allegedly Defendants' employees or agents, further evidencing active collaboration. *(Am. Compl. ¶¶ 49, 50, 114, 118).*

The *Ricchio* Court reversed the district court's dismissal of TVPRA claims against the owner-operator of a hotel who had rented rooms to traffickers. See *Ricchio v. McLean,* 853 F.3d 553, 556–57 (1st Cir. 2017). It reasoned that the hotel defendants created a venture with the traffickers through an implicit agreement to continue renting rooms to the traffickers despite obvious signs of their unlawful activity. *Id.* Following *Ricchio*, courts have applied beneficiary liability to hotel defendants.[6]

Defendants' reliance on *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) is misplaced. The *Doe* Court recognized that the plaintiffs could have pled that the franchisors participated in "commercial ventures" that violated the TVPRA but had not and had declined a chance to amend. *Id.* at 727; *G.G.*, 76 F.4th at 561. By contrast, Plaintiff here alleges extensievely and with specificity that Defendants Tropical Paradise and EZ engaged in commercial ventures violating the TVPRA, making *Doe* inapplicable.[7]

Further, as other courts have noted, *Doe* involved conclusory allegations against franchisors and did not foreclose venture liability claims based on commercial relationships with traffickers. Here, Plaintiff alleges that Tropical Paradise was the owner and EZ was the manager, and together with Choice Hotels, directly operated the hotel. *Doe* supports imposition of liability against a defendant directly involved in hotel operations:

> Far from standing for the proposition that a franchisee cannot be liable for knowingly participating in a sex trafficking operation, Doe unequivocally and expressly stands for the proposition that a franchisee can be held liable under the TVPRA.[8]

---

[6] See*, e.g.*, J.*G. v. Northbrook Indus.*, 619 F. Supp. 3d at 1237; *J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1318 (N.D. Ga. 2022); *M.A*, 425 F. Supp. 3d at 964; *A.B.*, 455 F. Supp. 3d at 186; *J.M. v. Choice Hotels Int'l, Inc.,* No. 2:22-cv-00672-KJM-JDP, 2023 U.S. Dist. LEXIS 84861 at *6-7 (E.D. Cal. 2023); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 U.S. Dist. LEXIS 201073, at *1 (N.D. Cal. 2020; *Doe v. Rickey Patel, LLC*, No. 0:20-60683, 2020 U.S. Dist. LEXIS 195811, at *32 (S.D. Fla. 2020); *M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, at *17 (W.D. Wash. 2020); *H.H v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 U.S. Dist. LEXIS 211090 (S.D. Ohio 2019); *S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 U.S. Dist. LEXIS 44961, at *2 (S.D. Ohio 2020); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 250759, at *2 (E.D. Va. 2020); *K.B. v. Inter-Continental Hotels Corp.,* No. 19-cv-1213-AJ, 2020 U.S. Dist. LEXIS 250721, *13 (D.N.H. 2020) .

[7] See *A.W. v. Red Roof Inns, Inc.*, No. 2:21-cv-04934, 2022 U.S. Dist. LEXIS 227437 at *25 (S.D. Ohio 2022).

[8] See *N.G. v. BW RRI III LLC,* No. 23-CV-80884-ROSENBERG, 2023 U.S. Dist. LEXIS 178891, at *2 (S.D. Fla. Oct. 4, 2023).

*Doe*'s reasoning thus supports Plaintiff's claim against Tropical Paradise. See *A.W. v. Red Roof Inns, Inc.,* No. 2:21-cv-04934, 2022 U.S. Dist. LEXIS 227437 at *25 (S.D. Ohio 2022). Here, Plaintiff alleges direct operational control, repeated room rentals, and coordination and orchestration with her trafficker—allegations far more substantial than those found insufficient in *Doe*.

Participation may also be inferred from Defendants' deliberate decision to sustain a venue where trafficking could occur openly, over time, for profit. See *J.B. v. G6 Hosp., LLC,* 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (tacit agreement may be shown through pattern of conduct); *Jean Charles v. Perlitz,* 937 F. Supp. 2d 276, 289 (D. Conn. 2013). This includes not only renting rooms but also providing staff and infrastructure that supported and concealed the exploitation and profiting from the commercial sex acts occurring on-site, which Fintz did on behalf of Defendants.

Taken together, these allegations support that Tropical Paradise and EZ engaged in a commercial venture with Plaintiff's trafficker, and that they knowingly participated in that venture by repeatedly renting rooms and enabling a trafficking-friendly environment. That alone is sufficient to satisfy the participation element under § 1595(a). See *M.A.*, 425 F. Supp. 3d at 970; *A.B. v. Marriott Int'l, Inc.,* 455 F. Supp. 3d 171, 186 (E.D. Pa. 2020); *Doe K.R. v. Choice Hotels Int'l, Inc.,* No. 6:23-cv-1012, slip op. at 32 (M.D. Fla. June 12, 2024).

### iii. Plaintiff Alleges Tropical Paradise and EZ Knew or Should Have Known

Defendants attempt to impose an actual knowledge requirement under § 1595(a), but this misstates the applicable standard. The TVPRA's civil remedy provision expressly permits recovery against those who "knew or should have known" that they were participating in a venture that engaged in sex trafficking. 18 U.S.C. § 1595(a). This negligence-based standard does not require actual knowledge, willful blindness, or overt coordination with a trafficker. While Defendants seek to downplay these facts as "red flags," courts have consistently found such indicators —far less overt than the indicators both intentional and reckless here-- sufficient to allege constructive knowledge and support beneficiary liability under § 1595(a). See *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965–66 (S.D. Ohio 2019); *S.Y. v. Naples Hotel Co.*, 2020 U.S. Dist. LEXIS 139013, at *12–14 (M.D. Fla. Aug. 6, 2020); *Gilbert v. United*

*States Olympic Comm.*, 2019 U.S. Dist. LEXIS 166957, at *36–39 (D. Colo. Sept. 27, 2019); *H.H. v. G6 Hosp., LLC*, 2019 U.S. Dist. LEXIS 211090, at *9–10 (S.D. Ohio Dec. 6, 2019).

Plaintiff's allegations easily meet this threshold. First, Plaintiff alleges that Defendants had actual knowledge that their ventures at the Rodeway Inn & Suites were facilitating sex trafficking. Defendants had actual knowledge of sex trafficking in the hotel industry, and their awareness of how hotels can detect trafficking and stop facilitating it. *(Am. Comp. at ¶¶ 67-95)*. That general industry knowledge, combined with the persistent trafficking indicators at the property as well orchestration by and in furtherance thereof by Fintz, supports at a bare minimum constructive knowledge.

Second, Plaintiff alleges that Defendants Tropical Paradise and EZ were on repeated notice of sex trafficking indicators, including daily cash rentals, refusal of maid service unless requested for extensive turnover, rooms located near exits, multiple male visitors at all hours, visible signs of verbal and physical abuse, and S.W.'s deteriorated physical condition and distress. *(Am. Compl. ¶¶ 36, 41, 48, 56-57, 59, 81, 104, 106, 112, 118, 120)*. These facts, taken together, would have alerted any reasonable hotel owner and operator to the likelihood of trafficking, particularly where, as here, the trafficking was long-term, open, and accompanied by loud disturbances, online guest complaints, and visible drug activity. Unless such a hotel operator were actually complicit in and acted in furtherance of the trafficking.

Moreover, Plaintiff alleges that Defendants not only ignored these signs but also failed to implement basic anti-trafficking policies, despite repeated police presence and known prior incidents of trafficking at the property. (*Id.* ¶¶ *86, 122, 176, 201, 243*). This failure to adopt safeguards in the face of repeated red flags supports an inference of willful blindness. See *M.A.*, 425 F. Supp. 3d at 968 (finding willful blindness where hotel failed to enact policies despite knowledge of persistent misconduct); see also *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. 2009) (willful blindness standard satisfied where defendant failed to remedy or prevent sexual abuse despite known risks).

Finally, Defendants' argument that Plaintiff must plead victim-specific knowledge under § 1595(a) conflicts with the statute's text and purpose. The object of the *mens rea* element is not a victim but a "venture which that person knew or should have known has engaged in an act in violation" of the TVPRA. 18 U.S.C. § 1595(a). The victim-specific-knowledge requirement that Defendants advocate has untenable policy implications. Under Defendants' view, even companies

that knowingly benefited from facilitating widespread trafficking could immunize themselves by ensuring they did not learn details about individual victims. Courts have recognized this, distinguishing between victim and venture knowledge, and holding that § 1595(a) requires only the latter. See *Doe v. Deutsche Bank Aktiengesellschaft*, No. 22-cv-10018 (JSR), 2023 U.S. Dist. LEXIS 75503, at *30 (S.D.N.Y. 2023); *G.G.*, 76 F.4th at 558; *Burrell v. Staff*, 60 F.4th 25, 39 (3d Cir. 2023).

Defendants' victim-specific knowledge argument further rests on a selective and misleading reading of the Amended Complaint, one that ignores numerous specific allegations. Contrary to the Defendants' assertions, S.W. pleads facts specific to her own trafficking that would have alerted any trained employee to her victimization. Hotel staff, including the manager, interacted with S.W., personally solicited her for sex, and attended sex parties in the lobby and restaurant, and participate in her and other victim's trafficking. *(Am. Compl. ¶¶ 49, 50, 114, 118, 128, 146–153)*. These facts emphasize not only what Defendants "should have known," but also what their own personnel *did* know and chose to ignore, as well as did illicitly.

Because § 1595(a) requires only that a defendant "should have known" it was participating in a trafficking venture, Plaintiff's allegations are more than sufficient. See *A.B. v. Marriott Int'l, Inc.*, 2020 U.S. Dist. LEXIS 70644, at *32–34 (E.D. Pa. Apr. 20, 2020) (denying motion to dismiss where plaintiffs pled repeated trafficking indicators and hotel's failure to act); *M.A.*, 425 F. Supp. 3d at 966–67 (same).

## III.   Plaintiff's Premises Liability Claim Is Both Timely and Well-Pled

Plaintiff has sufficiently alleged a timely and plausible claim for premises liability under Florida law. The Amended Complaint specifically alleges that Plaintiff repressed the memory of her trafficking due to psychological trauma, which trauma is detailed throughout the entirety of the Amended Complaint, thereby delaying accrual of the claim under the discovery rule and supporting equitable tolling. *(Am. Comp. ¶¶ 36-59, 236)*.

### A.   Plaintiff's Premises Liability Claim Is Timely Under Florida Law Based on Delayed Accrual and Equitable Tolling

Defendants wrongly assert that Plaintiff's claims are untimely, relying on inapposite authority and mischaracterizing the allegations. In fact, Plaintiff has specifically alleged facts sufficient to invoke both (1) delayed accrual due to trauma-induced memory suppression, and (2)

equitable tolling based on excusable delay in discovering her legal rights, both of which are recognized under Florida law and not foreclosed at the pleading stage.

Defendants rely on *C.C. v. Rashid*, 2024 WL 5200543 (D. Nev. Dec. 20, 2024), and *Catelyn H. v. G6 Hospitality*, 2025 WL 929032 (D. Nev. Mar. 26, 2025), but both decisions are distinguishable. In *Rashid*, the plaintiff failed to allege that trauma or memory repression prevented her from filing suit and offered no basis (psychological or factual) for tolling or delayed accrual. Similarly, the plaintiff in *Catelyn H.* did not allege memory suppression at all, relying instead on vague trauma and delayed awareness of legal options, which the court found insufficient to justify tolling. Here, by contrast, Plaintiff has explicitly pled trauma-induced memory repression that prevented her from recognizing the abuse she suffered until after the limitations period would otherwise have expired, precisely the type of circumstance courts have held may delay accrual or warrant tolling.

In *Hearndon v. Graham*, 767 So. 2d 1179 (Fla. 2000), the Florida Supreme Court held that repressed memory due to trauma may delay the accrual of a cause of action. The Court explicitly acknowledged that delayed discovery of harm due to memory suppression can postpone the running of the statute of limitations. Significantly, the *Hearndon* Court held that allegations of memory repression due to trauma were sufficient to withstand dismissal at the pleading stage, even in the absence of a formal psychological diagnosis. The Court emphasized that factual questions concerning the validity of memory repression or the circumstances of recollection are appropriately resolved during discovery, not on a Rule 12 motion. See *Id.* So. 2d at 1186–87.

Plaintiff's allegations are sufficient to preclude dismissal at this stage because Plaintiff could not have, and cannot be expected to have, satisfied "the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action.'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007); see also *Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1319–20 (11th Cir. 2021). Due to her memory repression, Plaintiff lacked the awareness necessary to recognize her injury and assert her rights, making it legally and equitably impossible for her to have "filed suit and obtained relief" any earlier. See *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 609 (W.D. Tex. 2017); *Wishnatzki v. Coffman Constr., Inc.*, 884 So. 2d 282, 287 (Fla. 2d DCA 2004); *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). These cases confirm that when a plaintiff's trauma conceals the very fact of her harm, the statute of limitations does not begin to run—and dismissal at the pleading stage is inappropriate.

Although Defendants do not address Florida's tolling statute, § 95.051, Plaintiff raises it here preemptively. While § 95.051 sets forth specific statutory grounds for tolling, Florida courts have long recognized that equitable tolling is a distinct and judicially created doctrine that operates independently of those statutory provisions. In *Machules v. Dep't of Admin.*, 523 So. 2d 1132, 1134–35 (Fla. 1988), the Florida Supreme Court held that equitable tolling applies where a plaintiff has been misled, lulled into inaction, or otherwise prevented from asserting their rights by extraordinary circumstances, such as trauma or excusable ignorance. This principle has been reaffirmed by both state and federal courts applying Florida law. See *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1078 n.12 (Fla. 2001) (recognizing that equitable tolling may arise independently of statutory tolling provisions). Thus, even if § 95.051 does not expressly list memory suppression, Florida law permits equitable tolling in precisely the kind of extraordinary circumstance that Plaintiff has alleged.

Other courts have also recognized that trauma can delay discovery. For instance, *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1215 (10th Cir. 2014), upheld delayed accrual based on trauma, institutional barriers, and lack of access to facts necessary to assert claims. Similarly, in *Doe v. Board of Educ. of Hononegah Cmty. High Sch. Dist. No. 207*, 833 F. Supp. 1366 (N.D. Ill. 1993), the court denied a motion to dismiss where the plaintiff alleged repressed memory of childhood sexual abuse and filed suit upon regaining those memories.

Because memory suppression is a recognized factual basis for delayed accrual, and Plaintiff's allegations plausibly support tolling under Florida law, the timeliness of her claims presents a factual dispute inappropriate for resolution at the motion to dismiss stage. See also *Hardin v. Straub*, 490 U.S. 536, 538–39 (1989) (tolling questions are governed by equitable principles and fact-intensive inquiries); *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (accrual governed by federal law but subject to equitable tolling doctrines drawn from state law); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 609 (W.D. Tex. 2017) (timeliness is not resolvable on the pleadings unless "conclusively established").

### B. Plaintiff's Premises Liability Claim Is Plausible and Supported by Florida Law

Plaintiff's premises liability claim is properly pled and supported by detailed factual allegations that meet the governing federal standard. Contrary to Defendants' assertion, the

Complaint sets forth sufficient facts establishing possession, control, notice, and foreseeability, making dismissal at this stage improper.

### i.   Plaintiff Has Sufficiently Plead Control and Possession

Plaintiff alleges that Tropical Paradise owned, operated, and exercised control and supervision over the Rodeway Inn & Suites, both directly and through its actual and apparent agent, Fintz. EZ is alleged to have been the on-site management company responsible for operating and maintaining the hotel as extensively alleged and detailed herein, with Fintz serving as its sole principal and as both its actual and parent agent. *(Am. Compl. at ¶¶ 25, 26, 28, 138–145)*. These allegations plausibly establish both "possession" and "control" of the premises and go far beyond a formulaic recitation of elements. See *J.G. v. Northbrook Indus.*, 619 F. Supp. 3d 1228, 1237 (N.D. Ga. 2022). Under *Twombly*, Plaintiff need only allege enough facts to "nudge" the claim from conceivable to plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 551 (5th Cir. 2023).

Defendants rely on *Lisanti v. City of Port Richey*, 787 So. 2d 36 (Fla. 2d DCA 2001), but their reliance is misplaced. That case reversed summary judgment—not a motion to dismiss—based on factual disputes regarding the existence of a dangerous condition, constructive notice, and control. If anything, *Lisanti* emphasizes that "control" and "notice" are fact-intensive inquiries, not suitable for resolution at the pleading stage. Courts applying Florida law have long recognized that premises liability extends beyond mere ownership to those who exercise operational control, supervisory authority, or maintenance responsibilities over the property. Plaintiff's detailed allegations meet that threshold and preclude dismissal.

### ii.   Plaintiff Has Plausibly Alleged Foreseeability and Breach of Duty Under Florida Law

Defendants incorrectly argue that Plaintiff fails to establish foreseeability or breach of duty, ignoring both the factual detail in the Amended Complaint and the applicable legal standard. Plaintiff has clearly alleged that Defendants had actual knowledge or reckless disregard of ongoing criminal activity, including sex trafficking, on the premises. These allegations are supported by facts showing: (1) actual and constructive knowledge of trafficking through repeated police presence; (2) the knowledge and intentional and illicit actions of their on-site manager and agent Fintz; (3) employee participation in trafficking activity; (4) repeated public online reviews raising safety and prostitution concerns; and (5) the steady flow of sex buyers / "Johns" to the premises.

These are not mere generalities; they are detailed and plausible allegations that go well beyond a formulaic recitation of elements and must be accepted as true at this stage. See *Twombly*, 550 U.S. at 570.

Contrary to Defendants' assertion, Plaintiff has alleged that she was a lawful invitee: Defendants rented rooms to her trafficker and profited in numerous ways from the commercial sex acts performed on-site. *(Am Comp. at ¶¶ 56, 112, 118).* The injuries Plaintiff sustained were not solely the acts of a third party; they were the foreseeable result of Defendants' conduct in facilitating, harboring, and profiting from the trafficking enterprise on its property, led by in pertinent part their agent and manager. These include injuries caused not only by the trafficker, but also by sex buyers (who were not hotel guests) being admitted onto the premises, Defendants' own employees who were also sex buyers, and the hotel's own manager acting within the scope of his authority to orchestrate, participate in and further the trafficking enterprise. *(Id. at ¶¶ 50, 56, 112-114, 118, 128, 138-153, 174-177, 201).*

Defendants' reliance on *Lisanti*, *Doe v. U.S.*, and *Hardy v. Pier 99* is unavailing. Those cases do not involve factual scenarios where the defendants had actual knowledge or financial incentive to allow foreseeable criminal conduct to flourish on their property, like alleged by Plaintiff in her case. In contrast, Plaintiff has alleged that Defendants knowingly created and maintained conditions that enabled repeated trafficking, including providing a secure location, actively participating and furthering in, and therefore failing to intervene. *(Id. at ¶¶ 4, 9, 13, 90-91, 101, 142, 144, 159, 164, 166, 171, 172-173, 176-177, 180, 182, 188, 191).*

Nor does the law limit duty to concealed perils alone. Plaintiff alleges that Defendants not only failed to maintain reasonably safe premises but knowingly allowed human trafficking and drug distribution to operate in plain view for their own benefit. These factual allegations, ranging from repeated solicitation by hotel personnel to incentivizing trafficking activity through financial rewards, easily satisfy the breach element of premises liability under Florida law. Whether these breaches caused Plaintiff's injuries is a question of fact that cannot be resolved at the motion to dismiss stage. *(Id. at ¶¶ 4, 9, 13, 90-91, 101, 142, 144, 159, 164, 166, 171, 172-173, 176-177, 180, 182, 188, 191).*

Florida law recognizes that a property owner and/or operator's duty includes preventing harm that is reasonably foreseeable due to known or recurring dangerous conditions, including criminal conduct, especially when the entity has actual or constructive notice. See *Banosmoreno*

*v. Walgreens Co.*, 299 F. App'x 912, 913 (11th Cir. 2008). In *Meyers v. Ramada Hotel Operating Co.*, 833 F.2d 1521 (11th Cir. 1987), the Eleventh Circuit reversed summary judgment where a hotel's late-night operations and lack of guestroom access control made an assault foreseeable, even absent prior similar attacks. Courts applying Florida law recognize that repeated disturbances, police presence, and observed criminal patterns preclude dismissal or summary judgment on foreseeability. See also *Fuentes v. Classica Cruise Operator Ltd.*, No. 20-cv-22914, 2020 WL 5700798, at *5 (S.D. Fla. Sept. 24, 2020) (distinguishing *Meyers* but affirming its core holding on foreseeability in property-based negligence claims).

## CONCLUSION

For all the reasons explained herein, Plaintiff adequately and plausibly pleaded a claim under the TVPRA and premises liability against Tropical Paradise and EZ. Tropical Paradise and EZ's Motions to Dismiss should be denied in full. Should the Court determine Plaintiff's allegations, or any subpart thereof, fall below the plausibility pleading standard, Plaintiff respectfully requests leave to amend.

/s/ *Spencer T. Kuvin*
Spencer T. Kuvin, Esq.
FL Bar Number: 89737
Law Offices of Craig Goldenfarb, PA
1641 Worthington Road, Suite 300
West Palm Beach, Florida 33409
Telephone: 561-697-4440
skuvin@800goldlaw.com
aattick@800goldlaw.com

/s/ *Aaron A. Karger*
Aaron A. Karger, Esq.
FL Bar Number: 93226
Law Office of Aaron A. Karger, P.A.
16211 NE 18th Avenue, Suite 200
North Miami Beach, FL 33162
Telephone: (305) 577-7772
aaron@aak-law.com
service@aak-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and sent by electronic mail to all parties of record.

/s/ *Aaron A. Karger*
Aaron A. Karger, Esq.