UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 0:25-CV-60771**

S.W.,

    Plaintiff,

vs.

TROPICAL PARADISE RESORTS, LLC, a Florida limited liability company, d/b/a RODEWAY INN & SUITES; EZ HOSPITALITY, LLC, a Florida limited liability company; and CHOICE HOTELS INTERNATIONAL, INC., a Delaware corporation,

    Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
CHOICE HOTELS INTERNATIONAL, INC'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

    Plaintiff S.W., by an through her undersigned counsel, files her Response in Opposition to Defendant Choice Hotels International Inc.'s Motion to Dismiss Plaintiff's Amended Complaint, and as grounds therefore, state as follows:

**ORAL ARGUMENT REQUESTED**

    Plaintiff S.W. files this response in opposition to Choice Hotels International Inc.'s (hereafter "Choice") Motion to Dismiss and requests oral argument to fully articulate the response to this Court.

    **SUMMARY OF PLAINTIFF'S RESPONSE TO CHOICE'S MOTION TO DISMISS**

    Plaintiff files her response to Choice's Motion to Dismiss arguing that the central issue before the Court is whether a Plaintiff may plausibly state a claim for perpetrator or beneficiary liability of a franchisor under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595 where the franchisor acted as more than a simple franchisor furthering its own brand, instead carrying out operational functions on the subject hotel on which the alleged trafficking occurred. The facts alleged in Plaintiff's First Amended Complaint make clear that Choice engaged in a commercial venture with its Co-Defendants at the subject Rodeway Inn &

Suites ("Rodeway") and therein knowingly, or with reckless disregard of the obvious fact that Plaintiff was being trafficked, trafficked Plaintiff to their benefit. This occurred through Choice's co-traffickers on the ground: Choice's franchisee and direct agent Tropical Paradise, employee Izzy Fintz ("Fintz") – the sole manager of the subject Rodeway which Choice operated – and Steven Charles Joseph ("Joseph") – a former acquaintance of Plaintiff turned culprit.

Furthermore, or in the alternative, Choice benefited from the sexual trafficking of Plaintiff alleged in the First Amended Complaint through its venture with its Co-Defendants as well as Fintz, and Joseph. The trafficking of S.W., crucially, was not an isolated incident but rather a harrowing, torturous series of events which occurred over the course of nearly two (2) years and which would not have been possible without the direct actions of Choice in its retained operational control of the Rodeway as Choice continued to direct and manage the Rodeway's everyday operations at all relevant times.

Of first impression before this Court is the question of whether a franchisor may be held liable for perpetrating and/or venturing to benefit from sex trafficking on a property over which it is alleged to have retained operational control and in which its own management level employee was actively a participant and beneficiary. While this Court has been confronted with claims under the TVPRA before, Plaintiff here alleges that Choice was not acting merely as a franchisor for the purposes of brand management, franchising agreements, and standardization of services who happened also to be an unknowing partner to its co-traffickers - instead, Plaintiff alleges far more deplorable conduct by Choice. Plaintiff alleges that Choice continued to directly control the everyday operations at the Rodeway such as reservations, software, security, auditing and hiring of staff and management, usage of wireless internet by both staff and customers, etc., all of which was knowingly utilized to traffic Plaintiff during the entirety of the two-year ordeal Plaintiff endured at the hands of Choice and its co-traffickers.

Choice's Motion to Dismiss largely omits recent case law from sister courts on this specific issue which it knows to be contrary to its positions. In the attempt to choose a battleground on which it believes it may prevail at the pleading stage, Choice opens its Motion to Dismiss by citing rulings of this Court (and many others) which do not address the central issues of agency and managerial level involvement in trafficking. For these and the reasons to follow, this Court should deny Choice's Motion to Dismiss in full or allow Plaintiff a final opportunity to amend her

Complaint either with a stand-alone vicarious liability cause of action or additional facts which may cure any remaining defects in Plaintiff's First Amended Complaint.

**STATEMENT OF MATERIAL FACTS FROM FIRST AMENDED COMPLAINT**

Plaintiff is a survivor of a lengthy period of sex trafficking lasting nearly two years from 2019 through 2020, during which time she was drugged, abused, and trafficked at a property owned and operated by Defendants. *(Am. Compl. at ¶¶ 2, 18, 23)*. The Rodeway Inn & Suites was and is possessed, owned, and controlled by Tropical Paradise, and controlled, managed, and maintained through its management company, EZ. *(Id. at ¶¶ 25, 26)*. Together with its Co-Defendants, Choice operated the Rodeway Inn & Suites, which was regularly used to traffic women, including Plaintiff. *(Id. at ¶¶ 5, 8, 10, 13, 16-17, 27-28)*. Plaintiff alleges that Choice operated as a franchisor of the subject Rodeway over which it retained and exercised operational control during the time period Plaintiff was sexually trafficked, crossing the line into entering an agency relationship with its franchisees. *(Id. at ¶¶ 27-28, 166-170)*. Additionally, Plaintiff alleges Israel "Izzy" Fintz was an agent of Choice during the relevant time period and himself was a co-trafficker as an agent of Choice in his capacity as the sole manager of the Rodeway. *(Id. at ¶¶ 140-152, 217, 226)*.

During the trafficking of S.W. at the Choice's property, S.W. was subjected to intense physical harm and threats to both her and her family – often at the wrong end of a firearm, often by being pistol whipped into submission. Despite her S.W.'s screams and pleas for help and those of the other trafficking victims at the Rodeway throughout the years 2019 and 2020, no help would come. *(Id. at ¶¶ 36-39, 41, 210, 229)*. Throughout this period, the staff working for Choice, and at the behest of the Choice's co-traffickers Joseph and Fintz, saw S.W. in her darkest hours. *(Id. at ¶¶ 49, 57, 59)*. Fintz's employees repeatedly witnessed S.W. in what can only be described as a despondent, wretched condition. *Id*. As days and nights turned to weeks, months, and years, Choice's employees and sole manager on the property routinely saw S.W. strung out on drugs, beaten and battered, exhausted, discouraged, and hopeless as she was raped by hundreds of men during the continuous business relationship which Choice and its co-traffickers engaged in to their mutual benefit and profit. *(Id. at ¶¶ 52, 128, 129, 151, 176, 181, 184, 210, 213)*.

Plaintiff alleges in her First Amended Complaint that Choice did not simply act only within a franchisor-franchisee relationship it shared with Tropical Paradise, instead Choice retained control over the operation of the Rodeway and in doing so was responsible for the training of the staff and of Choice's co-trafficker, Fintz, as a general matter and in reference to human trafficking.

*Id. at ¶¶ 155-156.* However, Choice's retention of operational control was not as simple as a matter of training, Choice retained control over the reservation of hotel rooms, the online reservation system, software, setting of prices, guest and payment information, and had access to payment information. *Id. at ¶¶ 157.* Furthermore, Choice also had in place a policy by which its staff and managers were required to report indicators of trafficking to Choice – unfortunately here those staff and managers were Choice's co-traffickers. *Id. at ¶¶* 158. Choice retained control over property and customer data from the Rodeway and retained control over the security of the Rodeway during S.W.'s trafficking at the premises in addition to the auditing, monitoring, and discipline of Fintz whose part in S.W.'s trafficking was integral and whose conduct was concealed by Choice or, at bare minimum, was disregarded recklessly to Choice's benefit. *Id. at ¶¶ 159-161, 167.*

Plaintiff's First Amended Complaint alleges that, as Choice's agent as the sole manager of the subject Rodeway, Fintz acted on behalf and within the scope of Choice's retained operational control while Fintz personally engaged in the trafficking of victims of co-trafficker Joseph at the subject Rodeway to the financial benefit of both and that of all named Defendants. (*Id. At ¶¶ 140-152).* Fintz even entered a room in which S.W. herself was actively being trafficked at and demanded additional payment due to his claim that the room smelled of marijuana, directly and knowingly receiving payment related to the trafficking of S.W. (*Id. at ¶¶ 58*). Plaintiff alleges that while Fintz was not himself a client, he routinely solicited S.W. for sex acts under the guise of a "date," as defined in the Amended Complaint. *(Id.. at ¶ 113).*

However, Fintz's staff were themselves "clients" or "Johns." (*Id. at ¶¶ 114, 118, 142, 146-151).* Furthermore, Fintz's staff at the Rodeway who answered to co-trafficker Fintz were tasked with cleaning up the evidence resulting from the continuous business relationship of sex trafficking in which all the traffickers were engaged – used condoms, sex and drug paraphernalia, etc. *(Id. at ¶¶ 159, 160).* This should be no surprise, the staff themselves were active participants in having sex with the trafficked women whose victimization they were perpetrators of. In fact, from check-in to parties to rape to active concealment, Fintz's staff assisted him and reaped the twisted bounty of the terrifying ordeal of S.W. and countless others. Fintz's staff directed "customers" to S.W.'s room. *(Id. at ¶¶ 50, 56, 112, 113, 118, 128, 201).* Fintz's staff participated in sex parties at Rodeway and its adjoining restaurant. *(Id. at ¶¶ 49, 50, 118).*

Not only did Choice and its many co-traffickers benefit from the foregoing trafficking of an unknown number of victims, Fintz himself *publicly, vehemently* covered up any and all possible signs of trafficking and other criminal activity on the premises in his capacity as Choice's agent in the years prior to S.W. being trafficked. In lengthy responses to online reviews from customers who voiced concerns an "Izzy F." angrily and erratically responded (*Am. Complaint. P. 30-32*). These reviews to which Fintz himself is alleged to have responded, stated:

1. In January 2017 – "The place is a dump. It feels very sketchy (my room faced a rear parking lot with lots of strange activity) with lots of people "hanging out in the corridors";

2. In April 2017 – "The room was right next to the parking area. Lots of activity and noisy, with huge semi-trucks. There were half naked junkies yelling at each other outside the room, and it just didn't feel safe…"

3. In May 2017 - "I picked this hotel because they offered free shuttle from cruise ship to hotel, and from hotel to airport. Worse mistake I ever made. **It was pretty much a resort for prostitutes and drug addicts**. The pool looked like dirty bath water. The customer service was horrible. They never picked us up from the cruise ship because we didn't officially check in yet. When they took us to the airport we were told to be 10 minutes early for our noon departure, even though the driver didn't get it together until 12:18 to leave. Waiting for almost 1/2 hr in the hot Florida sun, in a waiting area that smelled like an ashtray was frustrating. Than to have driver act like I'm wrong when I told him I have to leave or I might miss my flight. The rooms were reminded by putting paint over the trashed walls before they properly prepared the walls, adding a granite overlay, and reminding the shower with tile and glass door. It was ridiculous looking to have nice glass doors and tile in the shower and than see an air vent that was rusted and looked like it was from the 80's. The mattress was lumpy but brand new pillows. It was really like the twilight zone. At the breakfast someone was actually doing interviews with homeless people inside the resort. Not that there is a problem with homeless people but that's not where I want to take my 4 year old twins to eat breakfast. I will never stay there again." (Emphasis Added)

4. In March 2018 – "A TripAdvisor review from March 2018, stated, "**This is not a hotel for families with children. Alcohol is vended in the lobby. Men seem to be hooking**

**up with prostitutes in the lobby as well**. The hotel does not feel safe. The exercise room is not useable, and doesn't feel safe. On a positive note: The rooms are updated. Rooms were clean. Staff was very nice." (Emphases Added)

Plaintiff alleges these reviews were not just unreasonably dissatisfied customers, they were the means through which Choice and its employees and business associates aggressively pushed back on the dissemination of any information which could reveal its yearslong, continuous business relationship wherein S.W. and many others were trafficked at the Rodeway. Fintz, as Choice's agent, saw to it that anyone who sought to warn others of the dangerous trafficking venture at the Rodeway, through which Choice, Fintz, and many others benefited, were as silenced as the victims whose screams within its walls were repeatedly ignored as the profits continued to accumulate.

## LEGAL STANDARD

To overcome a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead enough to "raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id.* A court must take a plaintiff's well-pled allegations as true and draw all reasonable inferences for the plaintiff. *Id.* Allegations that contain details beyond a formulaic recitation of elements are factual allegations that the Court should credit when reviewing a 12(b)(6) motion. *J.G. v. Northbrook Indus.*, 619 F. Supp. 3d 1228, 1237 (N.D. Ga. 2022). This federal pleading standard is not demanding, asking that a plaintiff allege "only enough facts" to "nudge" a claim "across the line from conceivable to plausible." *G.G.*, 76 F.4th at 551.

## MEMORANDUM OF LAW

### I. The Trafficking Victims Protection Reauthorization Act (TVPRA)

The Trafficking Victims Protection Reauthorization Act imposes civil liability on individuals and entities that knowingly (or with reason to know) participate in or benefit from sex trafficking. S.W. alleges that Choice is liable both as perpetrators under § 1591(a)(1) and as beneficiaries under § 1595(a). The relevant portions of the TVPRA are as follows:

First, 18 U.S.C. § 1591 imposes criminal liability on those who knowingly engage in trafficking conduct or benefit from participation in a trafficking venture. In relevant part, it provides:

(a) Whoever knowingly—

> (1) in or affecting interstate or foreign commerce, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Thus, criminal liability attaches to any party that either (1) directly traffics a victim while knowing or recklessly disregarding that coercion will be used, or (2) knowingly benefits from participation in a sex trafficking venture that engages in such conduct.

Second, 18 U.S.C. § 1595(a) provides a civil remedy to victims of trafficking. It creates two distinct forms of liability: one for perpetrators who violate § 1591, and another for beneficiaries who "knew or should have known" that they were participating in a trafficking venture. As courts have explained, § 1595(a) "evidences Congress's intent to broaden the behavior that can form the basis of civil liability to participation in ventures where the defendant knew or should have known that the venture was involved in sex trafficking." *M.A. v. Choice Hotels Int'l, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019). This expanded civil cause of action allows survivors "to seek justice against those who have profited from their exploitation." *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020).

## II. The TVPRA And Agency Liability

Plaintiff does not dispute that a franchise relationship does not by itself create an agency relationship between the franchisor and franchisee. *See C.T. v. Red Roof Inns, Inc.*, 2023 U.S. Dist. LEXIS 87727 (M.D. Fla. March 11, 2023). While Choice dedicates little argument to the principle of agency liability in its Motion to Dismiss, plaintiff asserts an actual agency relationship exists between franchisor Choice and franchisee Tropical Paradise and that this factual question should be determined at the pleading stage. *West v. LQ Mgmt., LLC*, 156 F. Supp. 3d 1361 (S.D. Fla. 2015).(Holding that the Court could not grant a franchisor's motion for summary judgment where the details of the agreement between the franchisor and franchisee were a matter of fact). Though

this Court has once addressed the issue of agency liability in the TVPRA context, it has yet to do so in a factual context such with which this Court is now faced. *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346 (S.D. Fla. 2022). Specifically, where Plaintiff alleges the franchisor retained operational control over the subject premises whose sole or general manager himself participates in the trafficking of the plaintiff. However, it is clear that the TVPRA does not preclude agency liability. *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223,1232 (M.D. Fla. 2023)(Holding that the TVPRA does not preclude agency liability (citing *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064-65 (D. Colo. 2021), *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020), and Meyer v. Holley, 537 U.S. 280, 285-86, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003)).

This initial hurdle, whether agency liability may be pled in a TVPRA cause of action at all, being addressed the Plaintiff now turns to her claim that Choice and Co-Defendant Tropical Paradise engaged in more than just a franchisor-franchisee relationship. In *L.H. v. Marriott Int'l, Inc.*, the Plaintiff made allegations similar to S.W.'s only insofar as the matter involved TVPRA claims which did not include the involvement of a manager such as Fintz and which alleged a franchisor-franchisee relationship overcome by direct agency between Defendant Marriott and co-Defendant Tropical Paradise. *L.H. v. Marriott Int'l, Inc*., 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022). In *L.H.* this Court dismissed *L.H.*'s complaint finding, *inter alia*, Plaintiff had failed to plead an agency relationship sufficient to demonstrate that the relationship between Marriott and its franchisees was nothing more than that – a franchisor-franchisee relationship. However, the Court's ruling was based on the fact that *L.H.* made only "conclusory allegations" in her complaint that charged Defendant Marriott with performing branding functions (such as signage, stationery, and usage of Marriott's 1-800 number for reservations as well as customer data collection) and utilized disjunctive language such as "one or more". *Id. at 1354, 1362*. Notably, Plaintiff's First Amended Complaint alleges far more specific, operational details and utilizes no such disjunctive language.

Plaintiff's First Amended Complaint is replete with allegations that Choice continued to retain operational control over the Rodeway. *(Am. Compl. At 155-161, 167).* Aside from the allegations that Choice retained operational control as a matter of how it continued to carry out everything from reservations at the Rodeway, to its security, to hiring, training, and discipline of its managers on the property (and everything in between), S.W. also specifically alleges that

Choice's co-trafficker and manager Izzy Fintz operated with the apparent authority of Choice and "…acted on behalf of and within the scope of Choice's retained operational control." *Id. at 140.* As Choice's manager at the Rodeway, Izzy Fintz himself was a participant in the trafficking of S.W. and countless other women as stated in S.W.'s First Amended Complaint. *Id. at 58, 113).* Fintz is alleged to have been the hotel manager specifically. *Id.* Choice exercised operational control over the Rodeway as a general matter and through co-trafficker Izzy Fintz, Choice's manager at the Rodeway. The federal standard requiring only that the plaintiff's factual allegations only lay out a "plausible" cause of action, Plaintiff has clearly demonstrated that her Complaint does allege actual agency between Choice and Tropical Paradise. *J.G. v. Northbrook Indus.*, 619 F. Supp. 3d 1228, 1237 (N.D. Ga. 2022).

Interestingly, Choice does not reference *N.G. v. BW RRI III LLC, 2023 U.S. Dist. LEXIS 178891*(S.D. Fla. October 4, 2023). In that case this very court ruled that a franchisor could not be pled in a TVPRA action as a "removed and distant corporation with an attenuated connection to the events at issue…" but stated also that it is "…hornbook law that the Plaintiff's allegations are accepted as true at the motion to dismiss stage…". *Id.* As demonstrated above, Plaintiff has alleged Choice is as removed and distant from the Rodeway as its co-traffickers themselves were and that Choice had direct agency over Tropical Paradise and employed Fintz, the manager of the Rodeway.

### III. Plaintiff Has Sufficiently Stated a Perpetrator Claim Against Choice under § 1591

Plaintiff S.W. has alleged facts which lay out a plausible claim for perpetrator liability under 18 U.S.C. § 1591(a)(1). She alleges that Choice knowingly facilitated her sex trafficking, or at minimum acted in reckless disregard of it. Choice retained operational control over Rodeway at which S.W. alleges she was trafficked in the years 2019 and 2020. In this capacity, Choice permitted its co-traffickers to operate openly, and delegated operational authority to a manager who directly engaged with and profited from the trafficking of S.W. and countless others over the course of several years. These facts amount to "harboring" under § 1591(a)(1) and reflect affirmative facilitation of a sex trafficking venture consistent with criminal liability. See, e.g., *United States v. Bhimani*, No. 3:17-324, 2021 U.S. Dist. LEXIS 215789, at *25 (M.D. Pa. 2021); *J.M. v. Choice Hotels Int'l*, 2023 U.S. Dist. LEXIS 84861, at *6–7 (N.D. Cal. May 15, 2023).

### a. Plaintiff Pleads Choice Acted in Reckless Disregard of S.W.'s Sex Trafficking at the Rodeway and that of S.W.

Choice notably makes scant mention of the term "reckless disregard" and further mischaracterizes both the pleading standard and Plaintiff's allegations. Under Federal Rule of Civil Procedure 9(b), "[k]nowledge . . . may be alleged generally." See *Doe #1 v. MG Freesites, Ltd.*, 676 F. Supp. 3d 1136, 1155 (N.D. Ala. 2022); *Doe #1 v. Crowley Mar. Corp.*, No. 3:23-cv-383-MMH-JBT, 2024 WL 1346947, at *7 (M.D. Fla. Mar. 29, 2024) (quoting *United States v. Bixler*, No. 21-5194, 2022 WL 247740, at *7 (6th Cir. Jan. 27, 2022)). Somewhat curiously, Choice opens its argument that Plaintiff failed to plead Choice's actual knowledge by citing to case law which conspicuously does not make mention of "reckless disregard" other than the criminal matter of *United States v. Townsend*, 521 F. App'x 904, 907 (11th Cir. 2013). S.W.'s First Amended Complaint alleges with specificity numerous facts that, taken together, support a plausible inference that Defendant had actual knowledge or, at minimum, acted in reckless disregard of S.W.'s trafficking on its premises either through Tropical Paradise, its actual agent on the premises, or its sole manager at the Rodeway, Izzy Fintz, pursuant to *respondeat superior*.

Importantly, and contrary to Choice's assertion that the internet reviews in Plaintiff's First Amended Complaint are pled to demonstrate "reckless disregard", Plaintiff does not assert this alone but in conjunction with dozens of additional facts. These facts confirm the "Izzy F." responding to the online reviews is the same Izzy F. who Plaintiff alleges perpetrated her wielded the managerial authority bestowed upon him by Choice to traffic S.W. with Joseph for nearly two years' time. The signs of this trafficking was painstakingly obvious to Choice and its co-defendants and co-traffickers but these indicators were not a coincidental bug in the system, they were a feature as Choice's manager and staff openly benefited financially and sexually through their activities on the property and Choice recklessly disregarded these facts for years. *(Am. Compl. at ¶¶ 5, 8, 10, 13, 16-17, 27-28, 58, 114, 118, 140-142).* Adding insult to injury, Choice alleges that an online review (actually responded to by Fintz) largely mentioned typical hotel complaints such as "lumpy" mattresses, in defiance of the actual facts. *Supra at 6-7.* The facts alleged by S.W. more than demonstrate Choice's reckless disregard of Plaintiff's trafficking, in fact doing so well beyond what is generally considered sufficient. *Doe K.R. v. Choice Hotels*, 2024 U.S. Dist. LEXIS 104200 (Finding presence of reckless disregard where the indicators of trafficking were similar to the case at bar but did not include active involvement from staff and management). Choice's choice

not to address allegations of its reckless disregard of S.W.'s trafficking in its Motion to Dismiss with the same gusto as it does "actual knowledge" is indicative of Choice's knowledge of that reckless disregard.

    b. **Plaintiff Plausibly Pleads *Actus Reus* by Choice**

Again, Plaintiff more than plausibly pleads the *actus reus* component necessary under 18 U.S.C. § 1591(a) as S.W. alleges that Choice did harbor and/or maintain S.W. at the Rodeway either through its direct agent Tropical Paradise or vicariously through its manager and co-trafficker Izzy Fintz. . *(Am. Compl. at ¶¶ 10, 17, 137, 154, 159, 174-175, 202)*. Choice did so in reckless disregard of the fact that force or threats of force would be used to cause her to engage in a commercial sex act or, in this case, a countless number of commercial sex acts.

    1. **Plaintiff Has Pled that Choice Carried Out Acts Under 18 U.S.C. § 1591(a)**

        a. **"Harboring"**

Defendant Choice's assertion that Plaintiff did not plausibly plead that Choice harbored her fails in several regards. Firstly, Choice ignores the fact that Plaintiff asserts Tropical Paradise to be Choice's direct agent at the Rodeway and that Fintz was Choice's manager at the Rodeway at all relevant times, including years prior to S.W. being trafficked at the Rodeway. *See supra* 9-10; *Am. Compl. at ¶¶ 10, 17, 137, 154, 159, 174-175, 202*. In these capacities, Plaintiff has strenuously demonstrated she was harbored at the Rodeway by Choice. Furthermore, Choice again ignores the fact that Plaintiff may, and does, plead that Choice was in reckless disregard of countless indicators that Plaintiff would be forced to engage in a commercial sex act at the Rodeway by force or threats of force over a lengthy period of time and actively participated in the trafficking of S.W. through Tropical Paradise and Fintz as well as by its own continued retained operational control of the Rodeway.

Secondly, Choice relies on case law which is distinctly factually distinguishable from its stated position such as *A.D. v. Marriott Int'l, Inc.*, 2023 U.S. Dist. LEXIS 150386 (Ruling that the plaintiff did not plausibly plead a claim under the TVPRA where Plaintiff asserted that knowledge of trafficking was based on some e-mails and branding materials, reckless disregard was not an issue) and *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)(Finding that a *hypothetical* soccer player on a team funded by teammates who are sex traffickers should not be charged criminally where that *hypothetical* soccer player is neither otherwise involved in the

trafficking nor derives any further benefit from it) in positing that Choice may not be held liable only for failing to take effective steps to curtail its co-traffickers.

### b. "Maintaining"

Plaintiff's claims are, again, not what Choice depicts them to be, vulnerable to the same responsive arguments above which render Choice's requested relief improper. Choice cites to no legal authority that it Plaintiff was not maintained by Choice or Tropical Paradise or Fintz. The reality is that S.W. stayed at the Rodeway for days, nights, and even weeks at a time. At Fintz's direction, Choice's staff maintained the rooms in which S.W. was raped. *(Am. Compl. at ¶¶ 159, 160).* Fintz himself supplied S.W. with drinks at the Rodeway and its adjoining restaurant, the Marina 84 Sports Bar & Grill where Joseph would feed his victims. *(Am. Compl. at ¶¶ 50, 146)* Fintz assisted Joseph every step of the way and actively concealed his activities, though it could be argued that Fintz further maintained at least one room in the midst of S.W.'s trafficking – that which he demanded S.W. pay him due to the smell of marijuana. (*Id. at ¶¶ 58*).

### 2. Plaintiff Has Plausibly Pled Choice's "Overt Participation" in a Criminal Trafficking Venture Under § 1591(a)(2)

It is difficult to discern precisely the argument which Choice advances in reference to § 1591(a)(2) but it is with no difficulty that this Court should reject the authority on which it is relies. Choice here requests that this Court adopt the position that it did in relation to the Fight Online Sex Trafficking Act being applied to the TVPRA in the matter of *Doe v. Kik Interactive, Inc.,* 482 F. Supp. 2d (S.D. Fla. 2020) – wherein an underage minor alleged to have been manipulated through an online platform. It is as unclear why this authority would be applicable here as it is why Choice chooses to ignore its own agency with Tropical Paradise and Fintz, the intermediaries through whom Choice is alleged to have overtly participated in S.W.'s trafficking in conjunction with Joseph. It is not necessary that a member of Choice's executive team in Maryland have been on the ground and personally trafficked S.W. in order for liability to attach when, as here, S.W.'s counts against Choice are plausibly pled should this Court find Plaintiff has, or could, allege that Tropical Paradise was Choice's actual agent at the Rodeway or that Choice can be pled as vicariously liable for the acts of Fintz.

### c. Plaintiff Has Plausibly Pled a Causal Link Between Choice Acts and Choice's Financial Benefits

Choice begins its allegation of failure to plead a causal link between Choice acts and Choice financial benefits by incorrectly utilizing the case law to which it cites and again

erroneously fails to address the full scale of the relationship S.W. alleges exists between Choice and Tropical Paradise as well as Fintz. That aside, Choice openly disregards the case which it cites and chooses only to advise this Court of that portion of a single sentence which it purports to advance its arguments. Choice quotes as follows from *Geiss v. Weinstein Co. Holdings LLC,* 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019):

"…a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit…"

The above citation is a somewhat shocking attempt by Choice to misconstrue the holding in *Geiss* to its purposes. Consider that the full sentence reads:

"In other words, there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship." *Id.*

As with Choice's myriad cited case law and arguments throughout its Motion to Dismiss, Choice chooses not to argue the facts and merits of the instant case, but rather the facts and merits of a case which it wishes this was and therefore tacitly acknowledges that S.W. has plausibly pled her case in its entirety. Choice goes on to argue that *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) supports its position here as in *Geiss* above, failing to advise the Court that the only four mentions of the term "agency" in *Noble* are to modeling agencies. *Id.* This is instructive because *Noble* actually states that liability "cannot be established by association alone…" and with this proposition, S.W. firmly agrees. *Id. at 524*. Choice's liability attaches not due to mere association but due to its direct agency with Tropical Paradise and its employment of Fintz.

### IV. Plaintiff Has Plausibly Alleged That Choice Participated in a "Venture" With Its Co-Defendants

S.W. has plausibly pled a beneficiary liability claim under 18 U.S.C. § 1591(a)(2), as authorized by the civil remedy provision in § 1595(a). For S.W. to plausibly plead Choice's participation a plaintiff must plead that: (1) she was a victim of sex trafficking; (2) the defendant knowingly benefited, financially or by receiving something of value; (3) from participation in a venture; and (4) that the defendant knew or should have known the venture was engaged in sex trafficking. See 18 U.S.C. § 1595(a); *M.A. v. Choice Hotels Int'l, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020). Plaintiff meets this standard. She alleges that Defendants profited from repeated room rentals and on-site

sex trafficking activity while participating in a venture it knew or should have known involved trafficking. These allegations are sufficient to state a plausible claim under the TVPRA's civil beneficiary theory.

As it does throughout its Motion to Dismiss, Choice knowingly makes argument based on case law it knows to be inapplicable to the case at bar on the facts alone. The reality of the matter is that this Court has not ruled on similar facts as this case and Choice's case citations to open this portion of its Motion to Dismiss are factually inapposite as they either do not involve allegations of direct agency in the franchisor-franchisee relationship or a management level employee who himself is alleged to be a co-trafficker obtaining financial benefit through the trafficking of the Plaintiff – or both. *See. Doe v. Red Roof Inns, Inc., 21 F.4th 714* (11th Cir. 2021)(Applying Georgia law in finding that plaintiffs had not properly pled an agent relationship where only conclusory allegations were made and where there was no managerial co-trafficker); *K.H. v. Riti, Inc.*, 2024 U.S. App. LEXIS 3127 (11th Cir. February 9, 2024) (Affirming dismissal of complaint where agency was not alleged and no franchisor was pled (citing *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)(Reversing dismissal of plaintiff's complaint where the manager of a hotel and his wife themselves were alleged as co-traffickers); *N.G. v. G6 Hosp. Prop. LLC*, 2025 U.S. Dist. LEXIS 87359 (M.D. Fla. May 7, 2025)(Granting defendant's motion to dismiss without prejudice where plaintiff did not sufficiently allege a venture partially due to the presence only of employee involvement in plaintiff's trafficking and without mention of franchisor liability (citing *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327 (N.D. Ga. 2024) wherein the Court denied summary judgment due to managerial involvement in a TVPRA claimant's alleged trafficking)); *A.L. v. G6 Hosp. Prop. LLC*, 2025 U.S. Dist. LEXIS 76797 (S.D. Fla. April 18, 2025) (Granting defendant's motion to dismiss without prejudice where Plaintiff had not alleged managerial involvement or direct agency between franchisor and franchisee). As demonstrated below, Choice relies throughout its motion on case law which bears little resemblance either in fact or outcome to S.W.'s allegations or the outcome which this Court should reach.

   a. **Plaintiff Has Plausibly Pled Choice's Participation in a Venture**

Choice claims that S.W. has failed to allege Choice's participation in a venture as required by 18 U.S.C. § 1595(a) and in so doing advances arguments based on cases whose relevance to S.W.'s claims are tenuous at best as demonstrated above on this very page. Simply put, S.W. must allege that Choice, through Fintz and Tropical Paradise, maintained a continuous business

relationship with a trafficker which further facilitated trafficking activity. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 968–970 (S.D. Ohio 2019). That venture need not be criminal in nature, and participation need not involve overt acts in furtherance of trafficking. *Id.*; *Gilbert v. U.S. Olympic Comm.,* 2019 U.S. Dist. LEXIS 166957, at *46–51 (D. Colo. Sept. 27, 2019); *J.G. v. Northbrook Indus.*, 619 F. Supp. 3d 1228, 1237 (N.D. Ga. 2022). Plaintiff's argument that Choice was itself a co-trafficker of S.W. notwithstanding, S.W. has alleged that Choice's manager on the property, Izzy Fintz, was engaged in trafficking S.W. as well as countless other trafficking victims. Throughout Choice's motion to dismiss, Choice opts to not address this allegation, likely due to the fact that the authority which it cites would doom its own arguments on the matter or is altogether silent on this factual distinction.

To the extent that Choice is correct in its arguments, they would be harmful to S.W.'s allegations if S.W.'s allegations were what Choice claims them to be. However, here Tropical Paradise and Fintz knowingly rented rooms to Joseph over the course of nearly two years while S.W.'s trafficking was obvious to all from her demeanor and from the very fact that Fintz himself participated in S.W.'s trafficking, concealed her trafficking internally and externally, and Fintz's staff at the Rodeway did the same at his direction. See *L.H. v. Red Roof Inn, Inc.,* 2023 U.S. Dist. LEXIS 156293, at *31 (W.D. Ky. Sept. 5, 2023); *J.G. v. Northbrook Indus.*, 619 F. Supp. 3d 1228, 1237 (N.D. Ga. 2022); *K.O. v. G6 728 F. Supp. 3d 624* (E.D. Mich.2024). Choice cites case after case that either do not address direct agency between a franchisor and franchisee or does not address participation through the conduct of a managerial employee and attempts to shield itself from liability by pointing blame at S.W. herself or Choice's co-traffickers, yet Choice cannot hide from the case law it attempts to utilize as a shield which is actually better-suited as S.W.'s sword.[1]

---

[1] *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021)(affirming dismissal where plaintiffs neither alleged direct agency between franchisor and franchisee nor alleged the franchisor's manager was a co-trafficker of plaintiffs); *K.H. v. Riti, Inc.*, 2024 U.S. App. LEXIS 3127 (Affirming dismissal of complaint where agency was not alleged and no franchisor was pled (citing *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)(Reversing dismissal of plaintiff's complaint where the manager of a hotel and his wife themselves were alleged as co-traffickers); *N.G. v. G6 Hosp. Prop. LLC*, 2025 U.S. Dist. LEXIS 87359 (Granting defendant's motion to dismiss without prejudice where plaintiff did not sufficiently allege a venture partially due to the presence only of employee involvement in plaintiff's trafficking and without mention of franchisor liability (citing *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327 (N.D. Ga. 2024) wherein the Court denied summary judgment due to managerial involvement in a TVPRA claimant's alleged trafficking); *A.L. v. G6 Hosp. Prop. LLC*, No. 25-80056-CV, 2025 WL 1151750 (S.D. Fla. Apr. 18, 2025); *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624 (E.D. Mich. 2024)(Dismissing hotel chains where agency was not properly pled in Michigan law and where there was no managerial involvement in plaintiff's trafficking);; *Jane Doe (A.S.) v. Wyndham Hotels & Resorts, et al*., No. 6:23-cv-033-C, 2024 WL 6069251 (N.D. Tex. June 10, 2024)(Granting dismissal without mention of agency or managerial involvement); *Doe v. Wyndham Hotels & Resorts*, No. 8:23-cv-01554-JVS (JDEX), 2024 WL 2104596 (C.D. Cal. Feb. 28, 2024)(Finding agency between franchisor

Each should be examined by this Court for nearly all will be found to lack the critical factual components present in the instant case. Choice itself being a litigant in many of these actions, it is aware that this is true and opts not to give this Court further factual context while incorrectly asserting this very Court has ruled on identical facts as those alleged by S.W.

### b. Plaintiff Has Properly Pled Choice's *Mens Rea* Through Tropical Paradise and Fintz

S.W.'s beneficiary claim does require allegations that Choice "had constructive or actual knowledge that its venture with Tropical Paradise and Fintz violated the TVPRA in reference to S.W. herself, and there S.W.'s agreement with Choice ends. At no point in Choice's Motion to Dismiss is it argued that Tropical Paradise either did not have actual or constructive knowledge of S.W.'s trafficking. In fact, the obvious nature of the trafficking of S.W. was known to Tropical Paradise as a result of the continuous business relationship between Tropical Paradise, Fintz, and Joseph much less Choice itself. This relationship is evinced by the continued booking of, and payment for, rooms at the Rodeway. *Am. Compl. at ¶¶ 48, 56, 112, 117, 118, 176, 177, 183, 210, 213).* It was apparent in S.W.'s appearance and demeanor. *(Id. at ¶¶ 128, 129, 151, 176, 181, 184, 210, 213).* It was known due to the fact that Fintz's staff concealed the acts themselves from which he obtained financial remuneration. *(Id. at ¶¶ 115, 183, 210, 229).* As discussed repeatedly

---

and franchisee was properly pled but dismissing complaint due to failure to state a claim against franchisee without managerial involvement); B.J. v. G6 Hosp., LLC, 2023 U.S. Dist. LEXIS 165534 (N.D. Cal. Sept. 18, 2023)(Dismissing due to conclusory allegations of agency); *A.B. v. Extended Stay Am. Inc*., No. 3:22-CV-05939-DGE, 2023 WL 5951390 (W.D. Wash. Sept. 13, 2023)(Affirming dismissal where no agency allegation is made, signs of violence were alleged, and no trafficking relationship between hotel and trafficker existed); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-cv-108-TWT, 2023 WL 5621913 (N.D. Ga. Aug. 30, 2023)(Dismissing where the plaintiff's allegations regarding franchisor related primarily to branding and standardization with no managerial involvement in trafficking); *K.M. v. CPA Hotels of Atlanta, LLC*, No. 1:23-cv-190-TWT, 2023 WL 5747490 (N.D. Ga. Aug. 30, 2023)(Dismissing where plaintiff did not file a response); *A.D. v. Choice Hotels Int'l, Inc., 2023 U.S. Dist.* LEXIS 150380 (M.D. Fla. August 25, 2023)(Finding dismissal appropriate where Choice was not pled as more than a franchisor and there was no managerial involvement in the alleged trafficking)(The foregoing is one of five companion cases ruled on by the Middle District of Florida which Choice relies on here in its second footnote); A.B. v. Wyndham Hotels & Resorts, Inc., 532 F. Supp. 3d 1018 (D. Or. 2021)(Granting dismissal where the court found actual agency but did not find notice due to lack of visible physical abuse, lack of knowledge of employees, and where there was no managerial involvement*); Lundstrom v. Holiday Hosp. Franchising, LLC*, No. 1:22-cv-056, 2023 WL 4424725 (D.N.D. May 22, 2023)(Finding dismissal appropriate where the agency relationship was alleged only in conclusory fashion without demonstrating operational control or managerial involvement); *Doe #9 v. Wyndham Hotels & Resorts, Inc*., No. 4:19-cv-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021)(Granting dismissal where agency was not alleged and no staff were alleged to have been involved in trafficking); *J.L. v. Best Western Int'l Inc*., 521 F. Supp. 3d 1048 (D. Colo. 2021)(Dismissing plaintiff's complaint, while finding actual agency to be properly pled, where allegations of notice were conclusory in nature and managerial involvement was not pled); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697 (E.D. Mich. 2020)(Dismissing complaint where plaintiff pled in the disjunctive "one or more" allegations of operational control by franchisor and where staff and management were not co-traffickers); *A.B. v. Hilton Worldwide Holdings Inc*., 484 F. Supp. 3d 921 (D. Or. 2020)(Finding actual agency had been properly pled under Oregan state law but dismissing for lack of notice due to conclusory allegations).

throughout, the assertion that cases such as *Doe v. Red Roof Inns, Inc.* should be authoritative in the factual context of a direct agency relationship between franchisor and franchisee, much less where there is alleged a co-trafficking manager is misguided and here both exist. *Supra 8-9.* Where this Court itself has addressed direct agency of a franchisor with franchisee in the TVPRA context, it has made clear it would have ruled differently had plaintiff pled accordingly even without so much as mention of managerial co-trafficking. *L.H. v. Marriott Int'l, Inc, 604 F. Supp 3d. at 1362-1363*.

Rather than confront this inconvenient truth, Choice again points to *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) which does not touch on the factual nuances of S.W.'s claims. In *Doe*, the trafficked plaintiffs made series of allegations regarding Choice itself in reference to the individual hotels themselves which amounted to widespread prostitution which were known to employees who even acted as lookouts for traffickers. *Id. at 720.* On appeal, the Court affirmed dismissal of Choice from the case by the lower court largely on the grounds that plaintiffs' allegations concerning Choice's operation of the properties on which they were trafficked were nothing more than "mere recitations of the requirements for franchisor liability" for with the plaintiffs did "not allege any facts" in support of them. *Id. at 729.* Importantly, the court did not reach the issue of agency as alleged by S.W. and the *Doe* Court was not presented with allegations that an employee or manager of Choice itself was a co-trafficker. Additionally, the plaintiffs in *Doe* were given the opportunity to cure their complaint in respect to Choice and failed to do so upon the trial court dismissing Choice without prejudice. *Id.* at 727. Here, S.W. has pled very specific allegations regarding agency through Tropical Paradise and Fintz, neither of whom can reasonably claim they did not know S.W. was being trafficked in 2019 and 2020. Choice also ignores S.W.'s allegations that Choice was advised of Joseph's room cleaning requests over the course of the two years of S.W.'s trafficking, that Choice was advised of the indicators of sex trafficking on the property. *Am. Complaint at ¶¶159, 160.*

As previously discussed, these facts are more than sufficient where there is implicit agreement to continue renting rooms to individuals such as Joseph despite these obvious signs of trafficking and Choice is liable vicariously for this by crossing over from a simple franchisor-franchisee relationship into that of actual agency. *Supra 8-9.*

    **c. Plaintiff Has Pled Choice Knowingly Benefitted from Its Participation in the Venture**

Lastly, Choice incorrectly claims that S.W. has failed to allege that Choice knowingly benefitted from its venture with Tropical Paradise, Joseph, and Fintz and offers no authority for its argument aside from, yet again, two cases which are not factually similar to the allegations made by S.W. Indeed, Choice appears to attempt to paint very broadly the picture of what it means to "knowingly benefit" from the pleaded venture. For starters, the Plaintiff need only plead the allegation that the venture was known to Choice and led to a benefit while itself violating the TVPRA. *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1223, 1232 (M.D. Fla. 2023)(citing the *Doe #1 Red Roof Inns, Inc.*, 21 F.4th 714, 724-25 (11th Cir. 2021); *id.* at 729-30. To "participate in a venture" under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit. Red Roof Inns, 21 F.4th at 725. Liability can attach under § 1595 when an individual participates in a venture that is not specifically a sex trafficking venture. Rather, as the Eleventh Circuit has acknowledged, the alleged venture can be a 'commercial venture[ ]' like running or expanding a business. While a 'venture' can certainly run the gamut from an isolated act of sex trafficking to an international sex-trafficking enterprise, it can also be a business whose primary focus is not on sex trafficking. *G.G. v. Salesforce.com*, Inc., 22-2621, 2023 WL 4944015, at *6 (7th Cir. Aug. 3, 2023) (citing *Doe #1 v. Red Roof Inns*, Inc., 21 F.4th 714, 727 (11th Cir. 2021)).

That is to say that S.W. must only have pled a commercial venture between Choice and one or more of Joseph, Fintz, and Tropical Paradise and that venture need not be primarily or solely engaged in sex trafficking. *Id.* It is not contested by any party that Choice did ultimately receive revenues from the Rodeway at which Plaintiff was trafficked for a substantial period of time and, irrespective of the potentially aggregate nature of the revenues which Choice obtained the knowing benefit of, it still did so through the conduct of agent Tropical Paradise and manager Fintz.

**V. Choice's Motion to Dismiss S.W.'s Complaint Should Be Denied in Full or S.W. Should Be Given a Final Opportunity to Amend Her Complaint**

Under *Twombly*, Plaintiff need only allege enough facts to "nudge" the claim from conceivable to plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 551 (5th Cir. 2023). This burden is quite low and was met by Plaintiff's original Complaint, let alone her First Amended Complaint. In opting to conclude her Response to Choice's Motion to Dismiss as Choice began its Motion to Dismiss, S.W. leaves the

Court with several recent orders across the country which prove that S.W.'s complaint is not supported only by the machinations of a rogue judge in a singular jurisdiction.[2] However, of these one in particular is instructive. In *Doe v. Wyndham Hotels & Resorts, Inc.*, 2025 U.S. Dist. LEXIS 76129 (D.N.J. April 21, 2025), the Plaintiff's allegations were neither as clear nor as appalling as those in S.W.'s First Amended Complaint and yet in applying *Twombly*, that court correctly ruled that "…at this stage, Plaintiff is not required to produce evidence or plead with specificity the internal structure or operational distinctions between Defendants. These are issues more appropriately addressed through discovery, which will clarify the roles, responsibilities, and relationship between Defendants at the time of the alleged trafficking. For now, the allegations, taken as true and viewed in the light most favorable to Plaintiff, are sufficient to proceed against both Defendants." *Id. at 13-14*.

## CONCLUSION

For the foregoing reasons, S.W. respectfully requests that the Court deny Choice's Motion to Dismiss S.W.'s First Amended Complaint or, in the alternative, permit Plaintiff a final opportunity to correct her Complaint either by addition of a standalone vicarious liability cause of action or clarification either of the facts already pled or addition of facts to provide necessary clarification.

| | |
|---|---|
| /s/ *Spencer T. Kuvin* | /s/ *Aaron A. Karger* |
| Spencer T. Kuvin, Esq. | Aaron A. Karger, Esq. |
| FL Bar Number: 89737 | FL Bar Number: 93226 |
| Law Offices of Craig Goldenfarb, PA | Law Office of Aaron A. Karger, P.A. |
| 1641 Worthington Road, Suite 300 | 16211 NE 18th Avenue |
| West Palm Beach, Florida 33409 | Suite 200 |
| Telephone: 561-697-4440 | North Miami Beach, FL 33162 |
| skuvin@800goldlaw.com | Telephone: (305) 577-7772 |
| | aaron@aak-law.com |
| | service@aak-law.com |

---

[2] See: *Doe K.R. v. Choice Hotels*, 2024 U.S. Dist. LEXIS 104200 (M.D. Fla. June 12, 2024); *Doe v. G6 Hosp., LLC*, 2025 U.S. Dist. LEXIS 76546 (W.D. Wash. April 22, 2025); *Doe A v. Seatac Hotels LLC*, 2025 U.S. Dist. LEXIS 25543 (W.D. Wash. February 12, 2025); *J.M. v. Choice Hotels Int'l, Inc*., 2023 U.S. Dist. LEXIS 84861 (E.D. Cal. May 12, 2023); *C.S. v. Choice Hotels Int'l, Inc*., 2021 U.S. Dist. LEXIS 92779 (M.D. Fla. May 17, 2021); *Timko v. NSPA Lounge LLC*, 2025 U.S. Dist. LEXIS 145680 (W.D. Pa. July 30, 2025); *Doe v. Wyndham Hotels & Resorts, Inc.*, 2025 U.S. Dist. LEXIS 76129 (D.N.J. April 21, 2025); *Doe M.J.J. v. Wyndham Hotels & Resorts, Inc.*, 2025 U.S. Dist. LEXIS 16608 (D.N.J. January 30, 2025); Doe v. Wyndham Hotels & Resorts, Inc., 2025 U.S. Dist. LEXIS 40993 (E.D. Va. March 6, 2025); *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 2024 U.S. Dist. LEXIS 165863 (E.D.N.C. September 16, 2024*); L.M.H. v. Red Roof Inns*, 2025 U.S. Dist. LEXIS 60573 (S.D. Ohio March 31, 2025); *Norambuena v. W. Iowa Tech. Cmty. Coll*., 773 F. Supp. 3d 628 (N.D. Iowa March 27, 2025); *Doe v. Esa P Portfolio LLC*, 2024 U.S. Dist. LEXIS 116897 (W.D. Wash. July 2, 2024).

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 4, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and sent by electronic mail to all parties of record.

                                              /s/ *Aaron A. Karger*
                                              Aaron A. Karger, Esq.