# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:25–CV–60771–ALTMAN–AUGUSTIN-BIRCH

S.W.,

     Plaintiff,

     v.

TROPICAL PARADISE RESORTS,
LLC, *et al.,*

     Defendants.

## <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

Plaintiff alleges that between 2019 and 2020, she was trafficked at a hotel located in Fort Lauderdale, Florida (the "Hotel"), that was owned by co-Defendant Tropical Paradise Resorts, LLC ("Tropical Paradise") and managed by Co-Defendant EZ Hospitality, LLC ("EZ"). *See* Doc. No. 19 ("FAC"), ¶¶ 24–26. Choice Hotels International Inc.'s ("Choice") sole involvement with the property was as a franchisor.[1] *See id.* ¶ 27. Plaintiff nonetheless seeks damages against all three Defendants under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ("TVPRA") as both alleged perpetrators and beneficiaries / participants. *See id.* ¶¶ 207–34 (Counts I and II). Plaintiff also brings a common law premises liability claim against Tropical Paradise and EZ. *See id.* ¶¶ 235–53 (Count III).[2]

Plaintiff has chosen not to name her alleged trafficker, whom she identifies as "Steven Charles Joseph" ("Joseph"), a friend she met in 2004 when they were both twelve (12) years old. *See id.* ¶ 33. Plaintiff alleges that Joseph has since become an online creator, with whom she began working on "music, music videos and YouTube videos" from 2014, many years before her alleged trafficking in 2019-2020. *See id.* ¶ 33. The FAC also fails to allege that "Joseph" was ever criminally charged for Plaintiff's alleged trafficking, or any other crime pertaining to Plaintiff. *See* FAC. If there is a criminal case currently being investigated as to Plaintiff's alleged trafficking, the TVPRA includes a mandatory stay provision with respect to any civil claim. *See* 18 U.S.C. § 1595. The omission both of this key well-known individual as a party and factual details about any pending or resolved criminal case from the FAC makes the conclusory claims against these remote entities even more implausible.

---

[1] On August 7, 2025, the Court entered an order directing Defendants to "jointly file any motions." Doc. No. 38 ¶ 6. Choice takes the position that it is not similarly situated with Co-Defendants Tropical Paradise and EZ. While all Defendants may cite and rely on the same or similar case law relating to the TVPRA, Choice is a franchisor and, as such, Choice believes that the facts, analysis, and potential liability for Choice may differ from those applicable to the Co-Defendants and their alleged employees. Additionally, Choice believes that it may have an inherent potential conflict with any party to the extent they or their employees are alleged to have engaged in intentional or criminal conduct. As such, Choice submits its section of this Motion ***only on behalf of Choice*** and ***does not jointly adopt any sections or arguments*** provided by any other party. Choice nonetheless provides this combined brief in a good-faith effort to comply with this Court's Order (Doc No. 6).

[2] Plaintiff's original Complaint included a claim for premises liability against all Defendants. *See* Doc. No. 1, ¶¶ 182–201. Plaintiff has now narrowed that claim to only Tropical Paradise and EZ. *See* FAC ¶¶ 235–53.

In addition to its improper reliance on conclusory, shotgun-style allegations, the FAC suffers from a fatal legal defect: the Eleventh Circuit, this Court, and other Courts in this District have rejected similar and even stronger allegations against hotel franchisors and hotel owner / operators / managers. As a result, while the FAC adds bulk—principally in the form of irrelevant and unverified online hotel "reviews"—it fails to make Plaintiff's claims any more tenable. Plaintiff's remaining claims continue to suffer from the same fatal defects Defendants previously identified.

## LEGAL STANDARDS

### A.      Motion to Dismiss

Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy the pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation omitted).

### B.      The TVPRA

**Perpetrator Claims:** A "perpetrator" in a § 1595 civil claim is defined as "someone who has violated the criminal statute," which is 18 U.S.C. § 1591(a) in this case. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021).[3] Thus, to make out her perpetrator claim (Count I), Plaintiff must plausibly plead that Defendants violated the criminal prohibition on trafficking found in § 1591(a) in one of two distinct pathways, each requiring actual knowledge.[4]

First, § 1591(a)(1) requires that Plaintiff plausibly plead (1) "that the defendant knowingly . . . harbored . . . or maintained . . . a person by any means"; (2) "that the defendant knew or was in reckless disregard of the fact that . . . means of force, threats of force, fraud, or coercion would be used to cause the person to engage in a commercial sex act"; and (3) "that the defendant's acts were in or affected interstate or foreign commerce." *United States v. Rivera*, 558 F. App'x 971, 974 (11th Cir. 2014).

---

[3] Plaintiff makes reference to two other criminal statutes (18 U.S.C. §§ 1589, 1590), but apparently only for background purposes. *See* FAC ¶ 30.

[4] Section 1591(a) contains different requirements if the victim was a minor, but Plaintiff has indicated that she was an adult during her trafficking period. *See* FAC ¶¶ 33–34.

Second, § 1591(a)(2) involves three elements: (1) "the defendant must have participated in a commercial sex trafficking venture"; (2) "the defendant must have known (or recklessly disregarded) that force, fraud, or coercion would be used in the sex-trafficking venture"; and (3) "the defendant must have benefited from its participation in the venture." *Doe #1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 405 (S.D.N.Y. 2023); *see United States v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016).

**Beneficiary/Participant Claims:** Another type of TVPRA civil claim is against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). Such claims are referred to as "beneficiary" or "participant" claims, and require a plaintiff to plausibly plead: "that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff*." *Red Roof*, 21 F.4th at 726 (emphasis added).

## C.     Common Law Premises Liability

Premises liability in Florida is a negligence theory requiring duty, breach, causation, and damages, plus proof that the defendant had possession or control of the property. *Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). For invitees, the duty is limited to keeping the premises reasonably safe and warning of concealed dangers known or reasonably discoverable. *Norris v. Rodriguez*, 378 So. 3d 661, 664–65 (Fla. 2d DCA 2023).

Owners and operators are not insurers of safety and are not liable for unforeseeable criminal acts of third parties. *Hardy v. Pier 99 Motor Inn*, 664 So. 2d 1095, 1097 (Fla. 1st DCA 1995); *Doe v. U.S.*, 718 F.2d 1039, 1042 (11th Cir. 1983). Liability arises only where the crime was reasonably foreseeable through notice of prior similar incidents or the known propensities of the offender. *Banosmoreno v. Walgreen Co.*, 299 F. App'x 912, 913 (11th Cir. 2008).

Generalized allegations about crime in the community or industry are not enough; a plaintiff must show actual or constructive knowledge of the danger that caused the injury. *Ameijeiras v. Metro. Dade Cnty.*, 534 So. 2d 812, 814 (Fla. 3d DCA 1988). The same principles apply to management companies, whose liability depends on operational control and notice of the specific condition at issue—not routine oversight or general business functions.

3

## ARGUMENT

### A.  Plaintiff's Complaint is an Impermissible "Shotgun" Pleading

The Federal Rules "require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (citation and internal quotation marks omitted). A "shotgun" pleading breaches these rules by "fail[ing] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

The FAC is a straightforward example of such a pleading tactic. It acknowledges that Tropical Paradise owned the Hotel, EZ Hospitality managed and operated the Hotel, and Choice only acted as franchisor. *See* Compl. ¶¶ 25–27. This difference between an owner/operator, manager, and franchisor is one that that both the Court of Appeals and District Courts in this Circuit have recognized numerous times, including *specifically as to Choice*.[5]

The failure to make any distinction among the Defendants as to factual averments or legal assertions is inexcusable. The FAC repeatedly lumps Defendants together in allegations, even when the result is a sentence that makes no logical or grammatical sense. *See, e.g.*, Doc. No. 19 ¶¶ 174–175, 178–182, 185–189, 192–234. The FAC thus "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323.[6]

This is a "quintessential 'shotgun' pleading of the kind [the Eleventh Circuit] ha[s] condemned repeatedly." *Magluta*, 256 F.3d at 1284. And it is uniquely prejudicial in this context.

---

[5] *See Red Roof*, 21 F.4th at 719–20, 726–27; *A.D. v. Choice Hotels Int'l, Inc.*, No: 2:22-cv-647-JES-NPM, 2023 WL 2991041, at *5 (M.D. Fla. Apr. 18, 2023); *Doe 4 v. Red Roof Inns, Inc.*, No. 1:19-cv-03845-WMR, 2020 WL 1872336, at *3 (N.D. Ga. Apr. 13, 2020); *Employers Ins. Co. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 8:07-cv-1099-T-30EAJ, 2008 WL 1777807, at *2 (M.D. Fla. Apr. 18, 2008); *see also Allen v. Choice Hotels Int'l, Inc.*, 276 F. App'x 339, 342–43 (4th Cir. 2008).

[6] *See also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.").

Claims under the TVPRA turn on what a defendant did and knew. *See Red Roof*, 21 F.4th at 719. Yet, by treating the Defendants as an undifferentiated group, Plaintiff renders it impossible for Defendants or the Court to determine what knowledge and what acts Plaintiff actually ascribes to each individual Defendant. *See Kabbaj v. Obama,* 568 F. App'x 875, 880 (11th Cir. 2014) (finding improper shotgun pleading where "the complaint refers to the defendants collectively, making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct"). Preventing this gamesmanship is precisely what the bar on "shotgun" pleading aims to prevent. *See Weiland*, 792 F.3d at 1320.

**B.      Count I: Plaintiff Fails to Allege Defendants Acted as "Perpetrators"**

Plaintiff claims Defendants are "perpetrators" under the TVPRA (FAC ¶¶ 207–21), which requires allegations that each Defendant individually directly violated the criminal trafficking statute. *See* 18 U.S.C. § 1595(a). This is an onerous burden requiring each Defendants' independent and direct involvement in and actual knowledge of Plaintiff's alleged trafficking, including that the trafficking was carried out by means of force, fraud, or coercion of which that specific Defendant was aware. The FAC never clearly identifies which of the two pathways forms the basis for her claim, often referencing both at the same time, while improperly (and, at times, incoherently) mixing and matching words and phrases from across § 1591(a). *See, e.g.*, FAC ¶ 17. Her claim fails under the demanding standards of either pathway as to all three Defendants.

**1.      Choice**

**i.  Plaintiff Fails to Plead Choice's Actual Knowledge**

The (a)(1) and (a)(2) pathways carry the same exacting actual knowledge requirement. "[A] claim of 'perpetrator' liability . . . requires actual knowledge"—or at least reckless disregard—"of the sex trafficking activity," including the means of force, fraud, or coercion. *Doe (G.N.C.) v. Uniquest Hosp., LLC*, No. 23-cv-7980 (PKC), 2024 WL 4149251, at *3 (S.D.N.Y. Sept. 11, 2024) (citation omitted); *M.H. On behalf of C.H. v. Omegle.com LLC*, 122 F.4th 1266, 1273 (11th Cir. 2024); *United States v. Townsend*, 521 F. App'x 904, 907 (11th Cir. 2013); *Doe v. Fenix Int'l Ltd.*, No. 22-CV-62176, 2025 WL 336741, at *3 (S.D. Fla. Jan. 30, 2025). Plaintiff must allege both that Choice knew of her trafficking *and* that it was done by means of force, fraud, or coercion. *See United States v. Todd*, 627 F.3d 329, 333–34 (9th Cir. 2010). Plaintiff pleads nothing to show any such knowledge on Choice's part.

**a.**       New to the FAC are twenty-five pages of copied-and-pasted blurbs of unverified internet news stories and reviews of hotels, including the instant Hotel. *See* FAC ¶¶ 98, 99, 104. Many of these pre- or postdate Plaintiff's allegations by years, *see id.* ¶¶ 34–36 (2019–20), and, in the case of the reviews of the Hotel, virtually none of them say anything about prostitution, much less trafficking. But in the context of a perpetrator claim, the standard is actual knowledge of the trafficking, and absolutely none of these blurbs reflect any such knowledge on Choice's part, nor do any reference Plaintiff or her alleged trafficker(s).

The FAC also fails to meet a "reckless disregard" standard of knowledge as to Plaintiff's alleged trafficking. "Reckless disregard" "means deliberate indifference to facts which, if considered and weighed in a reasonable manner, indicate the highest probability" of the relevant fact or event, which was Plaintiff's alleged trafficking at the Hotel, in this case. *United States v. Zlatogur*, 217 F.3d 1025, 1029 (11th Cir. 2001) (citation omitted). Unverified online mentions of trafficking and prostitution occurring in other places at other times with other individuals in hotels owned and managed by non-parties do not create any awareness of Plaintiff's allegations.

**b.**       Plaintiff's other knowledge allegations are equally implausible. Plaintiff claims, in a conclusory and undifferentiated manner, that "Defendants, individually and/or by their actual or apparent agents, servants and/or employees" either "knew or had constructive knowledge" of Plaintiff's trafficking. *See, e.g.*, ¶¶ 123–24. This recommits Plaintiff's previous error of shotgun pleading. *See* Doc. No. 11 (Choice Motion to Dismiss) at 5–6. The allegation "refers to the defendants collectively, making it impossible to identify which particular defendant in engaged in what wrongful conduct." *Kabbaj*, 568 F. App'x at 880.

Moreover, these broadly worded allegations are particularly implausible because nowhere does Plaintiff describe any encounters at all with any Choice personnel specifically. Plaintiff briefly mentions encounters with "Hotel staff." *See, e.g.*, FAC ¶¶ 128–29, 138–53, 210. But admits, Choice did not own or manage the Hotel. *See id.* ¶¶ 25–27, 60. Choice's involvement was limited solely to the Franchise Agreement between it and the Franchisee, *see id.* ¶ 60, acknowledging that Choice did not employ, supervise, or control the Hotel's staff.

**c.**       The FAC does not allege vicarious or agency liability and the conclusory claim that Choice had control over co-Defendants (¶ 170) runs contrary to the law that franchise agreements alone do not create agency relationships. *See Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 91 (E.D.N.Y. 2000); *see also Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla.

1995) (describing standard under Florida law); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 156 (E.D.N.Y. 2020). For that reason, "[allegations] tending to show that the franchisors' involvement was limited to uniformity and standardization of the brand have been found to be insufficient to establish complete control over the day-to-day operations of the franchisee's business." *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 708–09 (E.D. Mich. 2020) (internal quotations omitted); *see, e.g.*, *Red Roof*, 21 F.4th at 729; *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624, 650 (E.D. Mich. 2024).

The allegations of "control" reflect nothing more than Choice's efforts to ensure the consistency and quality of its brand as envisioned by the terms of the Lanham Act itself. Indeed, Plaintiff's allegations state exactly this, again and again. *See* FAC ¶ 170(b); *id.* 170(c). Such limited, tailored controls do not create an agency relationship. *See, e.g.*, *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-CV-108-TWT, 2023 WL 5621913, at *5 (N.D. Ga. Aug. 30, 2023).[7]

Moreover, Plaintiff's allegation that Israel Fintz, the purported manager of the Hotel, was vested with "apparent authority" by Choice (FAC ¶ 140) fails because the allegations provided to support this conclusory claim are nothing more than the presence of "brand policies, branded uniforms, implementing reservation and property systems dictated by Choice, and responding to complaints or inspections within the Choice Hotels network." *Id.* These are exactly the kind of uniformity and standardization efforts that franchisors must promote without engendering an agency relationship. *See J.K.*, 2023 WL 5621913, at *5.

**d.**     Plaintiff's allegations of staff knowledge also fail on their own terms. A claim under § 1591, whether under (a)(1) or (a)(2), requires actual knowledge that the means of force, fraud, or coercion were employed. *See Todd*, 627 F.3d at 333–34; *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 469 (E.D.N.C. 2024). Plaintiff alleges that her trafficker used acts of violence and coercion against her (FAC ¶¶ 36–40, 44–46) but fails to allege that these acts were witnessed by Hotel staff (much less Choice, a remote franchisor located in Maryland, *see id.* ¶ 27). Still less availing are Plaintiff's allegations of purported "red flag" indicators that should have alerted staff. *See id.* ¶ 81. None of these allegations involved Hotel staff witnessing any signs of violence or

---

[7] In similar personal injury contexts, courts have ruled that Choice's franchise agreements and brand standards do not give sufficient control to Choice to establish an agency relationship. *See, e.g.*, *Allen*, 276 F. App'x at 343; *Allen v. Greenville Hotel Partners, Inc.*, 409 F. Supp. 2d 672, 679 (D.S.C. 2006).

7

coercion. *See A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 941 (D. Or. 2020). Plaintiff claims that she and other women cried out from the rooms (FAC ¶¶ 210(h), 229(f)) but does not allege that any Hotel staff (or anyone else) heard these noises. *See A.B. v. Shilo Inn, Salem, LLC*, No. 3:23-cv-00388-IM, 2023 WL 5237714, at *5 (D. Or. Aug. 15, 2023); *J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021). As such, her allegation does not show the "[d]irect and clear knowledge" necessary to support a perpetrator claim. *Actual Knowledge*, Black's Law Dictionary (12th ed. 2024).

e.        Finally, the FAC lacks any claim that these purported indicia were ever communicated to Choice itself, whether by Mr. Fintz or some other Hotel staff member. *See B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020). When it comes to § 1591, "speculation does not cut it." *Doe v. Fenix Int'l Ltd.*, No. 22-CV-62176, 2024 WL 5375136, at *12 (S.D. Fla. Jan. 30, 2025), *recommendation accepted in* 2025 WL 336741 (S.D. Fla. Jan. 30, 2025).

### ii.  Plaintiff Does Not Plausibly Plead Any *Actus Reus* By Choice

Plaintiff's claim also fails for a lack of plausible allegations regarding Choice's acts. As noted above, this requires allegations that (for a violation of § 1591(a)(1)) Choice "harbored" or "maintained" Plaintiff, or (for a violation of § 1591(a)(2)) that Choice benefitted from participating in a criminal trafficking venture—that is, "knowingly assisting, supporting, or facilitating a violation of [§ 1591(a)(1)]." 18 U.S.C. §§ 1591(a), (e)(4). Neither set of acts is plausibly pled.

### 1.  Plaintiff Fails to Plead that Choice Carried Out Any of the § 1591(a)(1) Acts

Plaintiff simply repeats her claim that "[b]y failing to act, Defendants . . . allowed [Plaintiff] to be harbored." FAC ¶ 202. This is doubly wrong. First, it seeks to hold Choice liable for "taking ineffective steps to curtail the traffickers"—by purportedly failing to act—a theory of liability that has been widely rejected. *A.D. v. Marriott Int'l, Inc.*, No. 2:22-cv-645-JES-NPM, 2023 WL 2991042, at *4 (M.D. Fla. Apr. 18, 2023).[8] The criminal section of the TVPRA "target[s] those who *participate* in sex trafficking; it does not target [those] who turn a blind eye to the source of their financial sponsorship." *Afyare*, 632 F. App'x at 286 (emphasis added). Here, Plaintiff seeks to hold Choice liable for alleged *inaction*; that falls outside of the TVPRA.

---

[8] *See also C.C. v. H.K. Grp. of Co., Inc.*, No. 1:21-CV-1345, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 2022); *B.M.*, 2020 WL 4368214, at *7; *A.B.*, 455 F. Supp. 3d at 182.

Second, while Plaintiff does not explain what she means by "harbor," her focus is on the rental of rooms to her trafficker. *See* FAC ¶ 108. Numerous courts have indicated that "harbor[ing]" under the TVPRA requires more than the rental of rooms. *See, e.g.*, *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, 2024 WL 4204906, at *5 (E.D.N.C. Sept. 16, 2024).

In the similar context of immigration statutes,[9] the bulk of authority holds that "harboring" requires an affirmative act beyond the mere provision of housing, such as the active concealment of an individual and/or the act of preventing authorities from detecting the individual.[10] Thus, even assuming that Choice did rent rooms to Plaintiff's trafficker—something that is not clearly spelled out in the Complaint—Plaintiff has alleged no other acts that would constitute harboring.[11]

Plaintiff also claims that Choice "maintained" her. *See* FAC ¶¶ 154, 159, 160. Plaintiff's theory appears to be that because Choice collected certain kinds of data regarding guests and hotel operations, it also had some kind of unspecified "duty" toward Plaintiff. *See id.* ¶ 160. By supposedly failing in that duty, Choice "maintained Plaintiff," or so contends the FAC. *Id.*

Similar to Plaintiff's "harboring" theory, this allegation assumes "an affirmative duty to police and prevent sex trafficking," something "[t]he TVPRA does not impose." *A.D.*, 2023 WL 2991042, at *4 (collecting cases). It also misconstrues the term "maintain." Black's Law Dictionary defines "maintain" in relevant part as "[t]o support (someone) financially." *Maintain*, Black's Law Dictionary (12 ed. 2024). Merriam-Webster defines the term similarly. *See Maintain*, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/maintain

---

[9] Similar to § 1591(a)(1), the relevant statute contains both the term "harbor" and actual knowledge or reckless disregard *mens rea* requirements. *Compare* 8 U.S.C. § 1324(a)(1)(A)(iii), *with* 18 U.S.C. § 1591(a)(1).

[10] *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 278–79 (4th Cir. 2024); *United States v. Zheng*, 87 F.4th 336, 343 (6th Cir. 2023); *United States v. McClellan*, 794 F.3d 743, 750-51 (7th Cir. 2015); *United States v. Vargas-Cordon*, 733 F.3d 366, 382 (2d Cir. 2013); *DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 247 (3d Cir. 2012); *United States v. Tipton*, 518 F.3d 591, 595 (8th Cir. 2008); *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007); *United States v. You*, 382 F.3d 958, 965-66 (9th Cir. 2004); *cf. Edwards v. Prime, Inc.*, 602 F.3d 1276, 1299 (11th Cir. 2010); *United States v. Zheng*, 306 F.3d 1080, 1086 (11th Cir. 2002).

[11] To the degree that there are questions about whether the definition of "harbor" could reach Choice's conduct, the rule of lenity demands that those questions be resolved in favor of Choice. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004); *Romero v. Sec'y, Dep't of Homeland Sec.*, 20 F.4th 1374, 1383 (11th Cir. 2021).

("to support or provide for" or "sustain").[12] There are no allegations whatsoever that indicate that Hotel staff, co-Defendants, or Choice undertook any such acts.[13]

### 2. Plaintiff Fails to Plead Choice's "Overt Participation" in a Criminal Trafficking Venture Under § 1591(a)(2)

To the extent Plaintiff intends to plead the liability pathway of § 1591(a)(2) (FAC ¶ 228), she fails to plead Choice's "overt participation" in a criminal trafficking venture that trafficked her, as required for that pathway. *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 2d 1242, 1250–51 (S.D. Fla. 2020). She fails to define the "venture" at issue or its participants.[14] Indeed, the FAC implies both that there were multiple ventures and Plaintiff herself was a participant. *See, e.g.*, FAC ¶ 128. Plaintiff cannot ask the Court to make assumptions. Even if Plaintiff meant to plead a criminal venture between Choice—located in Maryland—and her trafficker—located in Florida— the absence of any allegations that Choice ever interacted with that individual means that this hypothesized venture fails the requirement that its members must be "associated in fact." 18 U.S.C. § 1591(e)(6). To the degree that the alleged venture is the contractual franchise relationship between Choice and co-Defendants, that also fails, as none of the Defendants engaged in either "harboring" or "maintaining." *See* 18 U.S.C. § 1591(a)(2).

Moreover, even if Plaintiff could somehow link Choice to her trafficker, she never alleges any instances of Choice "knowingly assisting, supporting, or facilitating" his acts of trafficking, as "participation in a venture" entails. 18 U.S.C. § 1591(e)(4). There are no allegations that Choice ever *knew* that Plaintiff was being trafficked, so Choice could not have *knowingly* participated in her trafficking. Moreover, as to the act component of that element, Plaintiff has alleged nothing to show that Choice "actively participated in [her trafficker's] alleged sex trafficking activities." *Fenix Int'l*, 2025 WL 336741, at *9. As the Ninth Circuit has put it, Choice "must have actually engaged in some aspect of the sex trafficking." *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th

---

[12] As with the definition of the term "harbor," any questions regarding the reach of the term "maintain" are subject to lenity considerations. *See Leocal*, 543 U.S. at 11 n.8.

[13] At some point, Plaintiff suggests that Choice violated § 1591(a)(1) "by . . . facilitating Plaintiff." FAC ¶ 220. Plaintiff never explains what "facilitating" means and, in any event, the term "facilitate" does not appear as a predicate act in § 1591(a)(1).

[14] For example, Plaintiff refers generically to the "sex trafficking venture" time and again, without any description of who the members were or whether and how they agreed to the venture's goals and/or means. *See, e.g.*, FAC ¶¶ 53, 56, 58, 112(f).

Cir. 2022) (citation and internal quotation marks omitted). But Plaintiff has largely couched her allegations in terms of Hotel staff "essentially ignor[ing] what was going on or look[ing] the other way." FAC ¶ 55. That is insufficient in two ways. First, it has no relation to Choice, which, as franchisor, did not operate the Hotel or employ any of the staff. Second, to reiterate, "a failure to affirmatively prevent or inhibit sex trafficking does not constitute participation." *A.D. v. Wyndham Hotel & Resorts, Inc.*, No. 4:19cv120, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020).

### iii. Plaintiff Fails to Plead a Causal Link Between Any Choice Acts and the Purported Financial Benefit

Section 1591(a)(2) requires that Choice "knowingly . . . benefit[ted]" from its alleged participation in a venture. 18 U.S.C. § 1591(a)(2). This requires "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). That is, any of the benefits provided must be "*because of* [the alleged] facilitation." *Id.* (emphasis in original). No such causal link is alleged here—Choice's sole involvement with respect to the Hotel was as the franchisor, *see* FAC ¶ 27, and the benefits it received—"franchise fees, royalty fees, and other payments," *id.* ¶ 173—were in that capacity. Those are aggregated, generic benefits that accrued from the contractual Franchise Agreement; they had no causal link to her alleged trafficking. *See, e.g.*, *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018).

### 2.    Tropical Paradise[15]

The TVPRA imposes liability only on entities that directly engaged in trafficking conduct under § 1591(a)(1) or knowingly benefitted from a trafficking venture under § 1591(a)(2). *See United States v. Todd*, 627 F.3d 329, 333–34 (9th Cir. 2010). Both paths require actual knowledge—or reckless disregard—of force, threats, fraud, or coercion. *See G.N.C. v. Uniquest Hosp.*, LLC, 2024 WL 4149251, at *3 (S.D.N.Y. Sept. 11, 2024). Speculation, red flags, or generalized inaction do not suffice. *See Doe v. Fenix Int'l Ltd.*, 2024 WL 5375136, at *12 (S.D. Fla. Jan. 30, 2025).

### i.  Plaintiff Fails to Plead Tropical Paradise's Actual Knowledge

Plaintiff alleges "red flags"—cash payments, extended stays, lack of luggage, and young women on site. *See* FAC ¶¶ 105-137. Courts consistently hold these facts inadequate to show

---

[15] To the extent applicable, Tropical Paradise adopts and incorporate by reference the arguments raised by each Defendant to avoid duplication and to preserve all available defenses.

knowledge of trafficking by force or coercion. *See Doe v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 469 (E.D.N.C. 2024). She also cites an employee entering her room and noting a marijuana odor. *See id.* ¶ 58. But there is no allegation of observed abuse or coercion.

Although Plaintiff claims she "cried out" from hotel rooms, she does not allege that Tropical employees heard these cries. See *id.* ¶ 175(h). Courts have rejected similar allegations. *See A.B.,* 2023 WL 5237714, at *5; *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021). Plaintiff cites no instance where she informed staff of her trafficking, nor any complaint or report received by Tropical. Statistical reports and generalized reviews (FAC ¶¶180-83) are likewise insufficient. *See Doe v. Rickey Patel, LLC*, 2022 WL 1641926, at *6 (S.D. Fla. May 24, 2022). At most, Plaintiff relies on post hoc speculation, which cannot satisfy § 1591. *See Fenix*, 2024 WL 5375136, at *12.

### ii. Plaintiff Does Not Plead Any Actus Reus or "Harboring" as to Tropical Paradise

Liability under § 1591(a)(1) requires both knowledge and affirmative conduct—such as recruiting, transporting, providing, obtaining, or harboring a victim—undertaken with actual knowledge or reckless disregard that force, fraud, or coercion would be used. *See* 18 U.S.C. § 1591(a)(1); *Afyare*, 632 F. App'x at 286. Mere inaction or negligent failure to intervene does not qualify. *See A.D.*, 2023 WL 2991042, at *4.

Plaintiff equates "harboring" with Tropical Paradise's alleged failure to remove Joseph or prevent room use for trafficking. *See* FAC ¶ 169. But "harboring" requires an affirmative act to conceal or protect—not merely renting rooms. *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 278–79 (4th Cir. 2024). Allegations that Joseph rented rooms, paid cash, hosted sex parties (FAC ¶118), or that staff collected payment (FAC ¶¶ 183) describe routine business activity, not harboring. Plaintiff does not allege Tropical shielded Joseph from law enforcement, concealed his activities, or collaborated with him. At most, the allegations sound in negligence, which is insufficient. *See Fenix Int'l Ltd.*, 2025 WL 336741, at *9.

### iii. Plaintiff Fails to Plead a Causal Link to Any Benefit by Tropical Paradise

To state a claim under § 1591(a)(2), Plaintiff must allege a causal connection between knowing participation in a trafficking venture and the benefit received. *See Red Roof*, 21 F.4th at 726–27. Generic revenue from room rentals is not enough. Plaintiff alleges Tropical earned money from Joseph's rentals and possibly from an adjacent restaurant. *See* FAC ¶¶ 25, 48-49. But she

does not allege Tropical owned or profited from the restaurant, or that its income was contingent upon her trafficking. Routine hotel revenue is indistinguishable from any other guest transaction and cannot establish the benefit element. *See id.*

### 3.   EZ[16]

Plaintiff's first claim is brought under the perpetrator provision of the TVPRA, which imposes liability on any entity that either directly engaged in sex trafficking conduct under 18 U.S.C. § 1591(a)(1), or knowingly benefited from participation in a trafficking venture under § 1591(a)(2). *See United States v. Todd*, 627 F.3d 329, 333–34 (9th Cir. 2010). To satisfy either path, Plaintiff must allege with particularity that EZ had actual knowledge—or at least reckless disregard—of the use of force, threats, fraud, or coercion. *See G.N.C. v. Uniquest Hospitality, LLC*, 2024 WL 4149251, at *3 (S.D.N.Y. Sept. 11, 2024). This high standard is not met through speculation, generalized indicators, or claims of inaction. *See Doe v. Fenix Int'l Ltd.*, 2024 WL 5375136, at *12 (S.D. Fla. Jan. 30, 2025).

#### i.   Plaintiff Fails to Plead EZ's Actual Knowledge

Plaintiff alleges hotel staff may have observed "red flags" such as cash payments, extended stays, foot traffic, and young women on the property. *See* FAC ¶¶ 105–137. But she does not identify these staff as EZ employees or claim EZ was ever informed of their observations. Courts hold such allegations insufficient to establish knowledge of sex trafficking. *See Doe v. 42,*, 717 F. Supp. 3d at 469*; Doe #9 v. Wyndham Hotels & Resorts*, 2021 WL 1186333, at *2.

Plaintiff further alleges a staff member entered her room to collect payment and noted a marijuana odor. *See* FAC¶ 58. But she does not allege that person was employed by EZ, reported to EZ, or observed signs of trafficking or coercion. Courts have rejected similar pleadings as speculative. *See B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *5–6 (N.D. Cal. May 19, 2023).

She also does not allege she sought help, attempted to flee, or disclosed her situation to EZ. Such omissions are routinely fatal. *See A.B.*, 2023 WL 5237714, at *5.

#### ii.   Plaintiff Does Not Plead Any Actus Reus or "Harboring" by EZ

Liability under § 1591(a)(1) requires affirmative conduct, such as recruiting, transporting, providing, obtaining, or harboring a victim—undertaken with actual knowledge or reckless

---

[16] To the extent applicable, EZ adopts and incorporate by reference the arguments raised by each Defendants to avoid duplication and to preserve all available defenses.

disregard that force, fraud, or coercion would be used. *See* 18 U.S.C. § 1591(a)(1); *Afyare*, 632 F. App'x at 286. Mere failure to supervise or intervene does not suffice. *See A.D. v. Marriott Int'l, Inc.*, 2023 WL 2991042, at *4 (M.D. Fla. Apr. 18, 2023).

Plaintiff equates EZ's "management role" with harboring or participation, but alleges no affirmative conduct by EZ employees. *See* FAC ¶ 169. Courts have made clear that "harboring" requires active concealment or protection of a trafficker, not routine operations. *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 278–79 (4th Cir. 2024). Allegations that Joseph rented rooms, paid cash (FAC ¶118), or that staff collected payment (FAC ¶¶ 183) are not tied to EZ. Plaintiff does not allege EZ supervised, directed, or collaborated with Joseph in any way.

### iii.   Plaintiff Fails to Plead a Causal Link to Any Benefit

To state a claim under § 1591(a)(2), Plaintiff must allege a causal link between knowing participation in a trafficking venture and receipt of a benefit. *See Red Roof*, 21 F.4th at 726–27. Generic revenue from hotel management is not enough.

Here, Plaintiff alleges only that EZ "benefitted" by managing the Hotel during Joseph's rentals. *See* FAC ¶¶ 26, 189. But she pleads no facts showing EZ's compensation was tied to her trafficking, or that EZ took affirmative steps to promote or protect trafficking for financial gain. Courts have rejected nearly identical claims. *See Doe v. Rickey Patel, LLC*, 2024 WL 197301, at *6 (S.D. Fla. Jan. 17, 2024) ("Simply earning money from managing a hotel is not enough—there must be knowing participation.").

Her allegations rest solely on EZ's role as a management company. That is insufficient under the TVPRA. *See Red Roof*, 21 F.4th at 726–27.

**C.      Count II: Plaintiff Fails to Allege Defendants "Participated" in a "Venture"**

### 1.   Choice

Any claim that Choice benefited from "participating" in a "venture" that trafficked Plaintiff under § 1595 is deficient because it rests on a theory that an innocent contractual franchise agreement regarding a hotel is a sanctionable venture, and that the rental of rooms equates to participation in trafficking. Both notions have been rejected by the Court of Appeals and District Courts of this

Circuit.[17] To make out this "beneficiary"/"participant" claim, Plaintiff must show that Choice: "(1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA as to [her]; and (4) [Choice] knew or should have known that the venture violated the TVPRA as to

---

[17] The vast majority of federal courts to address TVPRA claims against franchisors, similar to those found in the FAC, dismissed them. *See, e.g.*, *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) (affirming the dismissal of four separate lawsuits against franchisors); *K.H. v. Riti, Inc.*, 2024 WL 505063 (11th Cir. Feb. 9, 2024) (affirming the dismissal of claims against an operator of a hotel, a party far closer to alleged trafficking than a franchisor); *N.G. v. G6 Hosp. Prop. LLC*, No. 6:24-cv-2379-JA-DCI, 2025 WL 1332210 (M.D. Fla. May 7, 2025); *A.L. v. G6 Hosp. Prop. LLC*, No. 25-80056-CV, 2025 WL 1151750 (S.D. Fla. Apr. 18, 2025); *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624 (E.D. Mich. 2024); *Jane Doe (A.S.) v. Wyndham Hotels & Resorts, et al.*, No. 6:23-cv-033-C, 2024 WL 6069251 (N.D. Tex. June 10, 2024); *Doe v. Wyndham Hotels & Resorts*, No. 8:23-cv-01554-JVS (JDEX), 2024 WL 2104596 (C.D. Cal. Feb. 28, 2024); *B.J. v. G6 Hosp., LLC, et al.*, No. 22-cv-03765-MMC, 2023 WL 6120682 (N.D. Cal. Sept. 18, 2023); *A.B. v. Extended Stay Am. Inc.*, No. 3:22-CV-05939-DGE, 2023 WL 5951390 (W.D. Wash. Sept. 13, 2023); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-cv-108-TWT, 2023 WL 5621913 (N.D. Ga. Aug. 30, 2023); *K.M. v. CPA Hotels of Atlanta, LLC*, No. 1:23-cv-190-TWT, 2023 WL 5747490 (N.D. Ga. Aug. 30, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, No. 2:22-cv-646-JES-NPM, 2023 WL 5510090 (M.D. Fla. Aug. 25, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, No. 2:22-cv-647, 2023 WL 5510266 (M.D. Fla. Aug. 25, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, No. 2:22-cv-648-JES-NPM, 2023 WL 5510267 (M.D. Fla. Aug. 25, 2023); *A.D. v. Marriott Int'l, Inc.*, No. 2:22-cv-644, 2023 WL 5510270 (M.D. Fla. Aug. 25, 2023); *A.D. v. Marriott Int'l, Inc.*, No. 2:22-cv-645-JES-NPM, 2023 WL 5510268 (M.D. Fla. Aug. 25, 2023); *Lundstrom v. Holiday Hosp. Franchising, LLC*, No. 1:22-cv-056, 2023 WL 4424725 (D.N.D. May 22, 2023); *L.H. v. Marriott Int'l Inc.*, 604 F. Supp. 3d 1346 (S.D. Fla. 2022); *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018 (D. Or. 2021); *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021); *J.L. v. Best Western Int'l Inc.*, 521 F. Supp. 3d 1048 (D. Colo. 2021); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697 (E.D. Mich. 2020); *A.B*, 484 F. Supp. 3d at 921; *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020); *B.M.*, 2020 WL 4368214; *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020); *C.K. v. Wyndham Hotels & Resorts, Inc.*, No. 3:19-cv-1412-J-34MCR, 2020 WL 5523849 (M.D. Fla. July 7, 2020); *J.C. v. Choice Int'l*, No. 20-cv-00155-WHO, 2020 WL 3035794 (N.D. Cal. June 5, 2020); *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-CV-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020), *aff'd sub nom. Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021).

By contrast, most of the decisions that did not dismiss the plaintiffs' claims at the motion-to-dismiss stage were issued by a single federal judge. *See, e.g.*, *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022 WL 17363234 (S.D. Ohio Dec. 1, 2022) (Marbley, C.J.). That court's approach represents the extreme minority position and is not even followed by courts in the same state. *See S.C. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771 (N.D. Ohio 2024); *R.C. v. Choice Hotels Int'l, Inc.*, No. 5:23-cv-00872, 2024 WL 1443412 (N.D. Ohio Apr. 2, 2024); *see also S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-cv-00871, 2024 WL 2186173 (N.D. Ohio May 15, 2024).

[Plaintiff]." *Red Roof*, 21 F.4th at 723. The Eleventh Circuit, this Court, and the Middle District of Florida have both dismissed claims virtually identical to Plaintiff's and so too should this Court.[18]

### i.   Plaintiff Does Not Plead Choice's "Participation in a Venture"

The Eleventh Circuit construed "participation in a venture" to require allegations that a "franchisor[] took part [*i.e.*, participated] in a common undertaking or enterprise involving risk and potential profit [*i.e.*, a venture]." *Red Roof*, 21 F.4th at 725; *see Riti*, 2024 WL 505063, at *3. The Court of Appeals then applied this definition to allegations that the franchisor defendants had rented rooms to traffickers, investigated individual hotels, monitored online reviews, and controlled the training of hotel staff. *See Red Roof*, 21 F.4th at 726–27. The Court concluded that while "[t]hese allegations may suggest that the franchisors financially benefitted from renting hotel rooms to the . . . traffickers," "they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures." *Id.* The Eleventh Circuit concluded, the franchisors may have observed signs of trafficking, "[b]ut observing something is not the same as participating in it." *Id.* at 727; *see Riti*, 2024 WL 505063, at *4 (same).

The holdings in *Red Roof* and *Riti*, and their progeny, require dismissal here. By her own words, Plaintiff's basic theory is that employees of the Hotel—who, again, were not employed by Choice—"essentially ignored what was going on or looked the other way." FAC ¶ 55; *see also id.* at ¶ 210. This is precisely the kind of claim that both *Red Roof* and *Riti* rejected. Plaintiff's allegations regarding Mr. Fintz—the alleged Hotel manager—are unavailing because Plaintiff has not alleged that Mr. Fintz was aware Plaintiff was being trafficked. Rather, her allegations boil down to claims that Mr. Fintz was aware of Plaintiff's commercial sex and received "cuts" from room rentals related to this commercial sex. *See* FAC ¶ 226. Those do not suffice as to co-Defendants, and they are still less germane to Choice. Allegations that Mr. Fintz was involved in a way that would have been *adverse* to the terms and interests of the contractual franchise relationship makes it *less plausible* that Choice was a participant in Plaintiff's alleged trafficking.

In *A.L.* and *N.G.*, this Court and a district court in the Middle District of Florida recently addressed much stronger allegations of staff involvement than presented by Plaintiff here. The *A.L.*

---

[18] *See Red Roof*, 21 F.4th at 727; *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *3–*4 (11th Cir. Feb. 9, 2024); *N.G. v. G6 Hospitality Prop. LLC*, No. 6:24-cv-2379-JA-DCI, 2025 WL 1332210, at *2 (M.D. Fla. May 7, 2025); *A.L. v. G6 Hospitality Prop. LLC*, No. 25-80056-CV, 2025 WL 1151750, at *3–*4 (S.D. Fla. Apr. 18, 2025).

and *N.G.* courts made clear that Hotel staff's participation in a venture is not tantamount to the hotel operator's participation. *See A.L.*, 2025 WL 1151750, at *1 & 3; *See N.G.*, 2025 WL 1332210, at *2. It follows, *a fortiori*, that a franchisor like Choice, which neither employed nor controlled the Hotel's employees, is all the less liable. *See R.C. v. Choice Hotels Int'l, Inc.*, No. 23-cv-00872, 2024 WL 1443412, at *3 (N.D. Ohio Apr. 2, 2024) (observing the franchisors are "several steps removed from daily hotel operations").

Compounding this error is Plaintiff's failure to define the membership or details of the relevant "venture," instead just referencing "the sex trafficking venture" operated by her trafficker. In this Circuit, a "venture" "is an undertaking or enterprise involving risk and potential profit." *Red Roof*, 21 F.4th at 725–26. Yet plaintiff has identified no such "undertaking or enterprise" between Choice and her trafficker; in fact, she identifies only Hotel staff as having interacted with the trafficker and his associates. "Without direct contact, there can be no direct liability." *S.C. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771, 778 (N.D. Ohio 2024). And, here, it is unclear how Choice could have participated in a venture that has not even been meaningfully defined or described.[19]

### ii.   Plaintiff Fails to Plead Choice's Knowledge

A beneficiary claim requires allegations that "the defendant had constructive or actual knowledge that the [venture] violated the TVPRA *as to the plaintiff.*" *Red Roof*, 21 F.4th at 726 (emphasis added). Accordingly, Plaintiff's pages of unverified news snippets and online reviews are patently insufficient. *See, e.g.*, FAC ¶¶ 98–99, 104; *see S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. Jan. 4, 2021).[20] Rather, Plaintiff must show that Choice "'knew or should have known' about *her* trafficking." *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-CV-00871, 2024 WL 277117, at *1 (N.D. Ohio Jan. 25, 2024) (emphasis added).[21]

---

[19] To the degree that Plaintiff intends to argue that Choice's "participation" arose from a failure to prevent or stop her trafficking, that legal theory has been widely rejected, as is explained above. *See A.D.*, 2023 WL 2991042, at *4; *C.C.*, 2022 WL 467813, at *4; *B.M.*, 2020 WL 4368214, at *7; *A.B.*, 455 F. Supp. 3d at 182.

[20] *See also A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1026 (D. Or. 2021); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 706 (E.D. Mich. 2020).

[21] *See Doe #9 v. Wyndham Hotels & Resorts*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 20, 2021); *H.G.*, 489 F. Supp. 3d at 704.

Plaintiff fails to do this. Instead, she offers a list of "red flag" indicators of trafficking that she claims should have alerted Choice to her trafficking. *See* FAC ¶ 118. These indicators were not observed by Choice—an off-site franchisor located in Maryland—but allegedly by Hotel staff, and there is no allegation that Hotel staff ever communicated these observations to Choice. Nor, for the reasons given above, can Hotel staff's knowledge be imputed to Choice on an agency theory.

Numerous courts have rejected that still starker indicia are probative of knowledge, explaining that such indicators are equally consistent with prostitution, rather than trafficking.[22] The FAC also repeats a critical error from Plaintiff's first pleading: It disregards the "crucial distinction" between "prostitution and sex trafficking by force or fraud," as the two activities "are not coterminous" for purposes of the TVPRA. *L.M.*, 717 F. Supp. 3d at 469 (collecting cases). Plaintiff's allegations are entirely consistent with commercial sexual activity rather than trafficking, and the TVPRA "'does not address commercial sex generally.'" *A.B.*, 484 F. Supp. 3d at 940 (citation omitted).

### iii.  Plaintiff Fails to Plead that Choice "Knowingly Benefitted"

The TVPRA also requires Plaintiff to allege that Choice "knowingly benefitted" from its participation in the pleaded venture. *See Red Roof*, 21 F.4th at 726; 18 U.S.C. § 1595(a) ("whoever knowingly benefits . . . from participation in a venture"). As the Eleventh Circuit has explained, "allegations of financial benefit are not sufficient to establish that the defendant participated in a sex trafficking venture." *Riti*, 2024 WL 505063, at *4. Plaintiff's sole allegations of Choice's benefit relate to its receipt of "franchise fees, royalty fees, and other payments" under the Franchise Agreement. FAC ¶ 173. These benefits are aggregate in nature, reflecting revenues from co-Defendants' operation of the Hotel. As such, they lack the kind of individual connection to Plaintiff's allegations necessary to support the allegation. Indeed, it is unclear how Choice, upon receipt of monthly franchise or royalty payments, could have "known" that these sums had any connection to any individual guest, much less Plaintiff.

---

[22] *See, e.g., B.J.*, 2023 WL 3569979, at *5–*6; *E.S.*, 510 F. Supp. 3d at 428; *42 Hotel Raleigh*, 2024 WL 631482, at *466; *Doe #9*, 2021 WL 1186333, at *2; *S.J.*, 473 F. Supp. 3d at 150–51.

### 2. Tropical Paradise[23]

#### i. Plaintiff Does Not Plausibly Allege That Tropical Paradise Participated in a Trafficking Venture

To state a claim under § 1595(a), Plaintiff must do more than assert that a hotel failed to prevent her trafficking. She must plausibly allege that Tropical Paradise participated in a venture with her trafficker—meaning that it took part in a common enterprise involving shared risk and profit tied to the trafficking conduct. *See Red Roof*, 21 F.4th at *725. The Eleventh Circuit has clarified that mere allegations of renting rooms or failing to intervene are legally insufficient. *See K.H.*, 2024 WL 505063, at *4 ("Participation in a venture requires more than passive failure to act.").

Here, Plaintiff does not allege that Tropical Paradise collaborated with her trafficker, coordinated with him to carry out trafficking, or shared in any of his profits. Instead, she asserts that hotel employees may have observed indicators of suspicious conduct—such as Mr. Joseph renting rooms, cash payments, or the presence of multiple women. *See* FAC ¶¶ 105-137. These allegations, even if true, amount at most to passive observation or inaction—not active engagement in trafficking. But as the Eleventh Circuit emphasized, "observing something is not the same as participating in it." *Red Roof*, 21 F.4th at 727.

Moreover, courts interpreting § 1595 have stressed that "participation" requires more than incidental or routine business conduct; it must involve knowing engagement in an enterprise that furthers trafficking. *See Doe #1 v. Apple, Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) (rejecting "buyer-seller" relationships as insufficient for venture liability); *A.L.*, 2025 WL 1151750 at *3 (rejecting venture allegations despite forced intercourse by hotel staff, finding no shared purpose with the trafficker).

Crucially, Plaintiff never identifies who else allegedly participated in this venture with Tropical Paradise. She repeatedly refers to "the sex trafficking venture," but never defines its membership or articulates any facts supporting an association between Tropical Paradise and Mr. Joseph. Courts routinely reject claims that rest on such generalities.

---

[23] Tropical Paradise adopts the legal standards and argument for venture liability set forth by Choice's argument, including the Eleventh Circuit's three-part test under *Red Roof*, and incorporates those authorities by reference as applied to Tropical Paradise.

Indeed, courts have rejected TVPRA claims even where the facts were more compelling than those alleged here. In *B.J. v. G6 Hospitality, LLC*, the plaintiff claimed hotel staff observed beatings, provided supplies to the trafficker, and ignored visible signs of abuse. 2023 WL 3569979, at *9–10. Yet the court still found no participation, reasoning that such conduct—though disturbing—did not plausibly allege that the hotel entered into a common enterprise with the trafficker or knowingly furthered the trafficking. *Id.* Here, Plaintiff does not claim that Tropical Paradise staff witnessed abuse, engaged with her trafficker, or provided any assistance beyond renting rooms. Her allegations amount to far less than those found insufficient in *B.J.*, reinforcing that her claim of participation fails as a matter of law.

In short, Plaintiff pleads no facts suggesting that Tropical Paradise shared a common objective with her trafficker or knowingly took part in a venture that facilitated her abuse. Her claim fails at the threshold element of participation under *§ 1595(a)*.

### ii.   Plaintiff Fails to Allege Tropical Paradise's Knowledge

To satisfy the knowledge prong of § 1595(a), Plaintiff must plausibly allege that Tropical Paradise either knew or should have known that the alleged venture was engaged in sex trafficking with respect to her. General awareness that sex trafficking sometimes occurs in the hospitality industry is not enough. *See Red Roof*, 21 F.4th at 726 ("Allegations of generalized knowledge that sex trafficking occurs at hotels are insufficient."). Courts interpreting the TVPRA routinely require specific facts showing that the defendant had actual or constructive notice that the plaintiff was being trafficked—not just that suspicious activity might have occurred on the premises.

Plaintiff alleges that staff at Tropical Paradise may have observed certain "red flags," such as cash payments, extended stays, foot traffic, and young women on the property. *See* FAC ¶¶ 105-137. However, courts have repeatedly held that these types of allegations, even if taken as true, are insufficient to establish constructive or actual knowledge of sex trafficking. *See Doe v. 42*, 717 F. Supp. 3d at 469 (allegations of cash payments, foot traffic, and frequent visits insufficient to show constructive knowledge); *See Doe #9*, 2021 WL 1186333, at *2 (requiring trafficking-specific knowledge as to the plaintiff); *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *5–6 (N.D. Cal. May 19, 2023) (rejecting even evidence of visible injuries as insufficient to allege constructive knowledge without indication of trafficking-specific awareness).

Plaintiff does not allege that any Tropical Paradise employee observed physical abuse, signs of coercion, or directly interacted with her in a way suggesting awareness of trafficking. The

FAC states that a staff member entered her room to collect payment and mentioned a marijuana odor. *See* FAC ¶ 58. But nothing in that account suggests that the employee perceived signs of trafficking, violence, or coercion. Courts have deemed far more alarming allegations insufficient where staff did not directly observe trafficking or were not alerted to the victim's condition. *Doe #9*, 2021 WL 1186333, at *2 (no liability where hotel staff were unaware of any specific signs related to plaintiff's trafficking).

Moreover, Plaintiff does not allege she sought help, attempted to flee, or disclosed her situation to anyone on site. This absence of interaction or communication is routinely fatal under the TVPRA. *See A.B.*, 2023 WL 5237714, at *5 (no constructive knowledge where plaintiff failed to plead that hotel employees witnessed red flags or were aware of her trafficking despite video surveillance).

The court's ruling in *M.A. v. Wyndham Hotels & Resorts, Inc.*, further highlights this contrast. 425 F. Supp. 3d 959 (S.D. Ohio 2019). In *M.A.*, the plaintiff stayed at the same hotel over an extended period, was visibly bruised and distressed, and was seen frequently by staff in the presence of her trafficker. *Id.* Her appearance and behavior were noted repeatedly by hotel employees, some of whom allegedly reported concerns to supervisors. *Id.* The court found those facts sufficient to survive dismissal under a constructive knowledge theory. *Id.*

This case presents a materially different scenario. Plaintiff alleges no prolonged presence at Tropical Paradise, no visible signs of abuse, and no repeated interactions with staff. She fails to identify any employee who suspected trafficking, made a report, or engaged in conduct beyond routine housekeeping or front-desk duties. Nor does the FAC suggest that Tropical Paradise had any prior dealings with her trafficker, Mr. Joseph, or that it had received any warnings or complaints about similar activity.

In sum, while *M.A.* involved multiple, recurring indicators of abuse made apparent to hotel staff and managers, Plaintiff here offers only conclusory and generalized allegations of suspicious behavior, without any direct tie to Tropical Paradise's knowledge of her specific trafficking. That is not enough to plead constructive knowledge under § 1595(a).

### iii. Plaintiff Does Not Allege That Tropical Paradise "Knowingly Benefited" From the Alleged Venture

To meet the "knowingly benefitted" element under § 1595(a), Plaintiff must do more than allege that Tropical Paradise received payment for rooms. She must plausibly allege that Tropical Paradise received a financial benefit *because of* its knowing participation in a trafficking venture.

*See Red Roof*, 21 F.4th at 726; *Riti*, 2024 WL 505063, at *4. Generic commercial transactions—like room rentals or restaurant income—do not satisfy this standard unless tied to conduct that furthers trafficking in a knowing—whether direct or constructive—and affirmative way. *See Geiss*, 383 F. Supp. 3d at 169 ("The benefit must derive from participation in the sex-trafficking venture itself.").

Here, Plaintiff alleges that Tropical Paradise derived income from Mr. Joseph's use of the hotel and possibly its restaurant. *See* FAC ¶¶ 177-185. But she does not allege that the hotel's financial gain was dependent on, or driven by, trafficking activity. Nor does she allege that Tropical Paradise undertook any action to promote, facilitate, or encourage trafficking in order to realize financial gain. The FAC does not assert that any portion of this income was contingent on or tied to Plaintiff's trafficking, nor that Tropical Paradise performed any affirmative act to ensure or encourage that activity. Such generic economic benefit is common to all hotels and does not establish the requisite link. *See Red Roof*, 21 F.4th at 726–27 (rejecting claims where benefit was "indistinguishable from any other hotel guest transaction").

Lastly, Plaintiff does not allege that any benefit Tropical Paradise received was tied to its alleged participation in a sex trafficking venture. The same reasoning applies here. In *Geiss v. Weinstein Co. Holdings LLC*, the court dismissed claims where plaintiffs alleged that various entities and individuals received financial benefit through continued association with Harvey Weinstein while he engaged in sex trafficking. 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). The court held that such claims failed because they did not plausibly allege a "causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Id.* In short, a benefit received merely through ongoing business dealings, without an act furthering trafficking, is insufficient under § 1595(a).

The same conclusion is warranted here. Plaintiff asserts that Tropical Paradise profited from room rentals and amenities provided during her alleged trafficking. But she does not allege that any of those profits were contingent upon or connected to Tropical Paradise affirmatively supporting, facilitating, or encouraging the trafficking activity. There are no facts to suggest the hotel undertook any conduct beyond passively accepting payment for lodging. Courts consistently require more. *See Riti*, 2024 WL 505063, at *4. Plaintiff's conclusory allegation falls far short of that standard, defeating the "knowingly benefitted" prong of § 1595(a).

In short, the FAC fails to allege that Tropical Paradise received any financial benefit because of a trafficking venture—and certainly not one it knowingly joined. This missing link is fatal to her claim under § 1595(a).

### 3.  EZ[24]

#### i.  Plaintiff Does Not Plausibly Allege That EZ Participated in a Trafficking Venture

To state a claim under § 1595(a), Plaintiff must do more than assert that a hotel failed to prevent her trafficking. She must plausibly allege that EZ participated in a venture with her trafficker—meaning that it took part in a common enterprise involving shared risk and profit tied to the trafficking conduct as emphasized in *Red Roof*, where the Eleventh Circuit dismissed claims against both franchisors and operators absent specific acts showing coordination or shared purpose with traffickers. *See Red Roof*, 21 F.4th at 725–27. The Eleventh Circuit has clarified that mere allegations of renting rooms or failing to intervene are legally insufficient. *See K.H. v. Riti, Inc.*, 2024 WL 505063, at *4 ("Participation in a venture requires more than passive failure to act.").

Here, Plaintiff does not allege that EZ collaborated with her trafficker, coordinated with him to carry out trafficking, or shared in any of his profits. Instead, she asserts that unidentified hotel staff—who are never alleged to be employees of EZ—may have observed things like cash payments, repeated room use, or women visiting the property. *See* FAC ¶¶ 50, 81, 105-137. These allegations, even if true, amount at most to passive observation or inaction—not active engagement in trafficking. But as the Eleventh Circuit emphasized, "observing something is not the same as participating in it." *Red Roof*, 21 F.4th at 727.

Moreover, courts interpreting § 1595 have stressed that "participation" requires more than incidental or routine business conduct; it must involve knowing engagement in an enterprise that furthers trafficking. *See Doe #1 v. Apple, Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) (rejecting "buyer-seller" relationships as insufficient for venture liability); *A.L.*, 2025 WL 1151750, at *3 (rejecting venture allegations despite forced intercourse by hotel staff, finding no shared purpose with the trafficker).

---

[24] EZ adopts the legal standards and argument for venture liability set forth by Choice's argument, including the Eleventh Circuit's three-part test under *Red Roof*, and incorporates those authorities by reference as applied to EZ.

Courts uniformly reject broad, undefined references as insufficient. *See S.C. v. Wyndham Hotels & Resorts, Inc.,* No. 1:23-cv-00871, 2024 WL 277117, at *1 (N.D. Ohio Jan. 25, 2024)("General knowledge about sex trafficking's prevalence is not enough on its own to show that the Red Roof Defendants should have known about S.C.'s trafficking."). Plaintiff never identifies who else allegedly participated in this venture with EZ. She repeatedly refers to "the sex trafficking venture," but never defines its membership or articulates any facts supporting an association between EZ and Mr. Joseph. *See* FAC ¶¶ 61–66, 110.

Courts have rejected TVPRA claims on stronger facts than those pled here. In *B.J. v. G6 Hospitality, LLC*, the court dismissed a complaint even though hotel staff allegedly witnessed abuse, provided materials to the trafficker, and ignored cries for help. 2023 WL 3569979, at *9–10 (N.D. Cal. May 19, 2023). Those allegations failed to demonstrate a joint enterprise with the trafficker. *Id.* Plaintiff here does not even go that far—she does not claim EZ staff saw abuse, provided assistance to her trafficker, or did anything more than operate a hotel during the time in question.

In sum, Plaintiff's allegations fall far short of showing that EZ took part in any coordinated activity to facilitate trafficking. Without facts suggesting a common goal, shared profits, or affirmative engagement, her venture theory fails under § 1595(a).

### ii.  Plaintiff Fails to Allege EZ's Knowledge

To satisfy the knowledge prong of § 1595(a), Plaintiff must plausibly allege that EZ either knew or should have known that the alleged venture was engaged in sex trafficking with respect to her. General awareness that sex trafficking sometimes occurs in the hospitality industry is not enough. *See Red Roof*, 21 F.4th at 726 ("Allegations of generalized knowledge that sex trafficking occurs at hotels are insufficient."). Courts interpreting the TVPRA routinely require specific facts showing that the defendant had actual or constructive notice that the plaintiff was being trafficked—not just that suspicious activity might have occurred on the premises.

Plaintiff alleges hotel staff may have observed "red flags" such as cash payments, extended stays, foot traffic, and young women on the property. *See* FAC ¶¶80-81, 105-137. She does not identify EZ employees as being specifically informed of or involved in their observations. Courts hold such allegations insufficient to establish constructive or actual knowledge of trafficking. *See Doe v. 42*, 717 F. Supp. 3d at 469; *Doe #9*, 2021 WL 1186333, at *2; *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *5–6 (N.D. Cal. May 19, 2023).

24

Federal courts consistently reject the notion that "red flags" alone impute knowledge without evidence they were tied to observed abuse or reported to decision-makers. Plaintiff does not allege any EZ employee saw or knew of injuries, coercion, or otherwise interacted with her in a way suggesting awareness. The FAC states a staff member entered her room to collect payment and noted a marijuana odor. *See* FAC ¶ 58. Nothing indicates that employee perceived trafficking, force, or abuse. Courts have found far more serious allegations insufficient where staff neither directly observed trafficking nor were alerted to the victim's condition. *See Doe #9*, 2021 WL 1186333, at *2. Nor does Plaintiff allege she sought help, attempted to flee, or disclosed her situation to anyone at the Hotel—an omission courts routinely find fatal under the TVPRA. *See A.B.*, 2023 WL 5237714, at *5.

The court's ruling in *M.A. v. Wyndham Hotels & Resorts, Inc.*, further highlights this contrast. 425 F. Supp. 3d 959 (S.D. Ohio 2019). In *M.A.*, the plaintiff stayed at the same hotel over an extended period, was visibly bruised and distressed, and was seen frequently by staff in the presence of her trafficker. *Id.* Her appearance and behavior were noted repeatedly by hotel employees, some of whom allegedly reported concerns to supervisors. *Id.* The court found those facts sufficient to survive dismissal under a constructive knowledge theory. *Id.*

This case presents a materially different scenario. Plaintiff alleges no prolonged presence at the hotel, no visible signs of abuse, and no repeated interactions with staff. She fails to identify any employee who suspected trafficking, made a report, or engaged in conduct beyond routine housekeeping or front-desk duties. Nor does the FAC suggest that EZ employees or under EZ's supervision had any prior dealings with her trafficker, Mr. Joseph, or that it had received any warnings or complaints about similar activity. *See* FAC ¶¶ 105–137.

In short, unlike in *M.A.*, where hotel managers allegedly overlooked direct signs of harm, the FAC here relies only on generalizations about trafficking indicators—none of which are specifically tied to EZ. That is not enough to plead knowledge under § 1595(a).).

### iii. Plaintiff Does Not Allege That EZ "Knowingly Benefited" From the Alleged Venture

To meet the "knowingly benefitted" element under § 1595(a), Plaintiff must do more than allege that EZ profited from general hotel operations. She must plausibly allege that EZ received financial benefit *because of* its knowing participation in a trafficking venture. *See Red Roof*, 21 F.4th at 726; *Riti*, 2024 WL 505063, at *4. Routine commercial income—such as management fees or operating revenue—does not satisfy this standard unless it stems from conduct that

affirmatively furthers trafficking. *See Geiss*, 383 F. Supp. 3d 156 at 169 ("The benefit must derive from participation in the sex-trafficking venture itself.").

Here, Plaintiff vaguely claims that EZ benefited financially from hotel operations during the time of the alleged trafficking. *See* FAC ¶¶ 13, 61–66. But she does not claim that EZ's financial interests were tied to, dependent upon, or incentivized by trafficking activity. Nor does she allege that EZ took any affirmative step to encourage, support, or protect sex trafficking on the premises.

Courts reject attempts to infer knowing benefit from generalized hotel income. In *Red Roof*, the Eleventh Circuit held that financial benefit must be specifically linked to knowing participation in trafficking—not just derived from normal business. *Red Roof*, 21 F.4th at 726–27. The same reasoning applies here. Plaintiff alleges that EZ managed hotel operations, but she does not claim that EZ profited from anything other than routine services.

Plaintiff also fails to identify any conduct by EZ that was undertaken in exchange for a financial benefit tied to trafficking. That is the critical element missing. As the court in *Geiss* emphasized, there must be a "causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Geiss*, 383 F. Supp. 3d at 169. Here, Plaintiff alleges no such conduct. She does not allege that EZ hosted traffickers intentionally, ignored trafficking in exchange for continued business, or took any action to protect traffickers' presence.

Finally, Plaintiff's conclusory assertion that EZ received compensation for hotel management does not convert a lawful business relationship into a trafficking venture. Courts require more than passive benefit—they demand knowing and affirmative participation. *See Riti*, 2024 WL 505063, at *4.

In sum, Plaintiff fails to plausibly allege that EZ knowingly benefited from any trafficking-related conduct. Her claim under § 1595(a) must therefore be dismissed.

**D.      Count III: Plaintiff Has Failed to Timely and Plausibly Plead Premises Liability as to either Tropical Paradise or EZ**

Plaintiff's third cause of action, styled as a claim for premises liability under Florida law, should be dismissed both as untimely and for failure to state a plausible claim. *See* FAC ¶¶ 235–253.

**1.      Plaintiff's Claim Is Time-Barred**

Florida Statutes § 95.11(3)(o) imposes a four-year statute of limitations on negligence actions not otherwise specified. Plaintiff alleges that the trafficking at the hotel—allegedly

managed by EZ—ended in December 2020. *See* FAC ¶ 236. Yet she did not file suit until April 21, 2025—more than four years later.

While Plaintiff claims that she "repressed her memory" of the abuse, *see* FAC ¶ 236, this assertion does not meet the legal standard for equitable tolling. Courts routinely reject generalized trauma claims absent specific facts showing extraordinary circumstances that prevented timely filing. *See Catelyn H. v. G6 Hospitality, LLC*, No. 2:24-CV-939, 2025 WL 929032, at *3 (D. Nev. Mar. 26, 2025) (vague trauma claims insufficient for tolling); *C.C. v. Rashid*, No. 2:23-CV-02056-GMN-BNW, 2024 WL 5200543, at *8 (D. Nev. Dec. 20, 2024) (rejecting tolling where no specific facts supported delay). Here, Plaintiff offers no medical diagnosis, documented impediment, or other factual basis to suspend the statute of limitations. Because her claim is untimely on its face and she fails to plausibly plead tolling, her premises liability count against Tropical Paradise and EZ must be dismissed.

### 2.      Plaintiff's Premises Liability Claim Fails on the Merits

Even if the claim were timely, it still fails on the merits. Florida law requires more than general negligence allegations to sustain a premises liability claim. A plaintiff must show that the defendant (1) exercised possession or control over the premises and (2) had actual or constructive notice of a dangerous condition that caused the injury. *Lisanti*, 787 So. 2d at 37. Courts also distinguish between generalized risks of crime and specific notice of a hazard; liability cannot rest on conclusory assertions that crimes occur in the community or in the hospitality industry. *Ameijeiras*, 534 So. 2d at 814.

Here, Plaintiff does not plead facts connecting either Tropical Paradise or EZ to actual or constructive knowledge of the alleged criminal conduct. She merely asserts that both Defendants "owned, operated, managed, and/or controlled" the hotel, without distinguishing their roles. *See* FAC ¶¶ 25–28. Her premises liability count is further supported only by a list of alleged "failures" to train staff, investigate, or implement policies. *See* FAC ¶¶ 201(a)–(k). These allegations describe generalized omissions and industry-level grievances, not specific notice of a dangerous condition. Moreover, Plaintiff's own pleading confirms that her trafficker, Steven Joseph, had been exploiting her long before she ever arrived at the hotel. *See* FAC ¶¶ 35–36. That admission underscores the absence of any allegation that Tropical Paradise or EZ had notice of a risk created by conditions at the hotel itself. Plaintiff seeks to impose liability on the theory that Defendants should have

guaranteed her safety—an obligation Florida law does not impose. *Hardy*, 664 So. 2d at 1097 (Fla. 1st DCA 1995).

### 3.    Plaintiff Fails to Allege Control or Possession

A premises liability claim requires plausible allegations that the defendant had possession or control of the property and the ability to correct the dangerous condition. *Lisanti*, 787 So. 2d at 37. Plaintiff alleges Tropical Paradise owned the hotel and EZ managed it. *See* FAC ¶¶ 25–26. But ownership alone does not create liability absent notice of the alleged danger and a reasonable opportunity to cure. Plaintiff identifies no facts showing Tropical Paradise was aware of, or had the ability to prevent, the alleged criminal acts.

As to EZ, Plaintiff's theory rests on the assertion that its "management role" equated to control. *See* FAC ¶ 169-170. Yet she pleads no facts showing that EZ actually exercised possession or operational authority over the premises in a way tied to the condition that caused her injuries. Instead, she offers only generalized claims about failure to train, monitor, or implement policies. *See* FAC ¶¶ 201(a)–(k). Such conclusory allegations are insufficient to establish possession or control for purposes of premises liability. Moreover, Plaintiff concedes that her trafficker's exploitation predated her presence at the hotel, *see* FAC ¶¶ 35–36, further undermining any claim that Tropical Paradise or EZ exercised control over the danger that caused her injuries.

### 4.    Plaintiff Does Not Establish Foreseeability or Breach of Duty

Florida law does not impose liability for criminal acts of third parties unless the risk of harm was reasonably foreseeable. *See Doe*, 718 F.2d at 1042 ("An owner is not the insurer of a guest's safety."); *Hardy*, 664 So. 2d at 1097 (Fla. 1st DCA 1995). Even assuming that Tropical Paradise or EZ exercised control over the property, Plaintiff fails to show that her injuries were the foreseeable result of any specific failure by Tropical Paradise or EZ.

Foreseeability may be established if the proprietor knew or should have known of (1) a dangerous condition on the premises or (2) the dangerous propensities of a particular individual. *See Banosmoreno*, 299 F. App'x at 913. Plaintiff does neither. She references "dangerous conditions," but fails to identify prior criminal incidents at the property that could have put Tropical Paradise or EZ on notice. *See* FAC ¶¶ 198, 200. Likewise, there are no allegations that Tropical Paradise or EZ knew or should have known about the violent tendencies of Steven Joseph—who, by Plaintiff's own admission, had been her trafficker long before arriving at the hotel. *See* FAC ¶¶ 35–36.

Even if Plaintiff was a lawful invitee on the property, the duty owed to her was limited: to keep the premises in a reasonably safe condition and to warn of concealed perils the occupier should have known about. *See Norris v. Rodriguez*, 378 So. 3d 661, 664–65 (Fla. 2d DCA 2023). Here, Plaintiff's injuries were not the result of a concealed hazard on the property, but of abuse inflicted by a third party over a period of time, much of which predates her stay at the Rodeway Inn. *See* FAC ¶ 36.

Plaintiff's sweeping list of negligent omissions—failure to train staff, refusal to report suspicious guests, and lack of protocols—amounts to a list of generalized grievances about industry practices, not actionable breaches of a specific duty owed to her. *See* FAC ¶¶ 201(a)–(k). These conclusory allegations are insufficient to state a viable negligence claim under Florida law.

## CONCLUSION

"A court may . . . dismiss a case with prejudice when amendment would be futile." *Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, 438 F. Supp. 3d 1346, 1356 (S.D. Fla. 2020) (Rosenberg, J.). That standard applies here. For all the reasons given above, Choice respectfully requests that the Court dismiss Plaintiff's FAC with prejudice.[25]

Plaintiff's claims against Tropical Paradise and EZ also fail as a matter of law for the reasons set forth herein. The FAC does not plausibly allege that Tropical Paradise had actual knowledge of Plaintiff's alleged trafficking, engaged in any affirmative conduct constituting "harboring," or received a financial benefit causally linked to knowing participation in a trafficking venture. Nor does it state a viable premises liability claim. Accordingly, Tropical Paradise respectfully requests that the Court dismiss the FAC with prejudice as to all claims asserted against it.

Finally, Plaintiff has not alleged facts sufficient to hold EZ liable under the TVPRA or under a premises liability theory. The FAC fails to identify any act or omission by EZ employees, any communication of "red flags" to EZ, or any causal connection between EZ's management role and Plaintiff's alleged trafficking. At most, the allegations describe routine business operations,

---

[25] Choice's role as a franchisor and purported control over the Hotel under the relevant franchise agreements are central to Plaintiff's claims against Choice. Choice therefore contemporaneously files an exemplar franchise agreement that this Court may reasonably consider at this stage without converting Choice's Motion into a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. (citation omitted)).

which do not amount to knowing participation in trafficking or support premises liability. Accordingly, EZ respectfully requests that the Court dismiss the FAC with prejudice as to all claims asserted against it.

Respectfully submitted this 18th day of August, 2025.

/s/ Marisa R. Dorough
Marisa R. Dorough (Florida Bar No. 73152)
Sara M. Turner (Appearing *Pro hac vice*)
mdorough@bakerdonelson.com
smturner@bakerdonelson.com
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
200 South Orange Avenue, Suite 2050
Orlando, Florida 32801
Phone: (407) 422-6600
420 20th Street North, Suite 1400
Birmingham, Alabama 35203
Phone: (205) 328-0480
*Attorneys for Defendant Choice Hotels International, Inc.*

**RESNICK & LOUIS, P.C.**
4040 NE 2nd Ave 6D
Miami, Florida 33137
Telephone: 305-676-6453
E-Mail: acina@rlattorneys.com
E-Mail: ahechtman@rlattorneys.com

By: Alyssa Cina, Esq.
Alyssa Cina, Esq.
Florida Bar No.: 121491
***Attorneys for Defendants***
***Tropical Paradise and EZ***

30