**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                 )
JANE DOE (J.R.L.), an individual,  )
                                                 )
                          Plaintiff,        )
                                                 )          Civil Action
v.                                               )          No. 24-cv-13227-PBS
                                                 )
HILTON DOMESTIC OPERATING COMPANY  )
INC. and CROSSTOWN CENTER HOTEL  )
LLC d/b/a HAMPTON INN & SUITES,  )
                                                 )
                          Defendants.     )
_____ )

**MEMORANDUM AND ORDER**

November 18, 2025

Saris, J.

**INTRODUCTION**

Plaintiff Jane Doe (J.R.L.) brings this lawsuit under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581 et seq., against Defendants Hilton Domestic Operating Company Inc. ("Hilton") and Crosstown Center Hotel LLC d/b/a Hampton Inn & Suites ("Crosstown" and, together with Hilton, "Defendants").[1] Plaintiff alleges that she was sex trafficked between 2010 and 2014 at a Hampton Inn & Suites ("Hampton Inn") in Boston, Massachusetts, that was owned and operated by Crosstown as a Hilton-branded franchise. Plaintiff seeks to hold Defendants

_____
[1] Plaintiff named Hilton Domestic Management LLC as an additional defendant in her complaint but has voluntarily dismissed that party from this suit.

1

Dockets.Justia.com

civilly liable under 18 U.S.C. § 1595(a) for financially benefiting from participation in a venture that they knew or should have known was engaged in a violation of the sex trafficking statute. Defendants now move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that her suit is time-barred and that she has failed to plausibly allege a claim under the TVPRA.

After hearing, the Court **DENIES** Hilton's and Crosstown's motions to dismiss (Dkts. 16, 21).

## BACKGROUND

The Court draws the following background from the well-pleaded facts in the complaint. See Burt v. Bd. of Trs. of the Univ. of R.I., 84 F.4th 42, 50 (1st Cir. 2023).

### I. Plaintiff's Sex Trafficking

Plaintiff met her trafficker in 2010. Starting that May, the trafficker forced Plaintiff to engage in commercial sex acts numerous times a day. The trafficker used physical and mental abuse and financial dependence to coerce Plaintiff into performing these acts. Some of these forced commercial sex acts occurred in hotel rooms at a Hampton Inn located in Boston, Massachusetts. That hotel was owned and operated by Crosstown as a Hilton franchise. Both Crosstown and Hilton received revenue from the rental of hotel rooms in which Plaintiff was trafficked. Plaintiff was trafficked

at the Hampton Inn from May 2010 through December 2014. Plaintiff's trafficker trafficked other victims at the Hampton Inn as well.

Plaintiff alleges that there were obvious signs she was being trafficked at the Hampton Inn and that these "red flags" were well known in the hotel industry, including by Crosstown and Hilton. The hotel rooms in which she was trafficked were often paid for with cash or prepaid cards. The "Do Not Disturb" door hanger stayed up for consecutive days, and housekeeping was prevented from entering the room for regular cleaning. Plaintiff's trafficker was frequently present with her at check-in and lingered in the hotel or parking lot when she was with a john. Plaintiff had at least five johns each day, and those men visited for brief periods of time at unusual hours. Hotel management and staff "knew [Plaintiff] as a regular and allowed her and/or her trafficker to have any room they wanted." Dkt. 1 ¶ 77(g). The staff also provided extra towels and housekeeping services once the trafficker vacated the rooms.

Other victims were trafficked at the Hampton Inn both before and at the same time as Plaintiff. Plaintiff alleges that some of these victims also exhibited obvious indications of trafficking, such as large numbers of men entering and leaving their rooms, frequent requests for clean towels and sheets, and signs of drug use. Online reviews of the Hampton Inn between 2010 and 2018

described homelessness and drug dealing in the area and prostitutes at the hotel bar.

## II.   Relationship Between Crosstown and Hilton

As franchisor, Hilton established standards, policies, and systems for Crosstown's operation of the Hampton Inn. Hilton enforced standards for employee hiring and training, staffing levels, guest verification and check-in, insurance coverage, reporting and recordkeeping, and building maintenance. Hilton participated in employment decisions for the Hampton Inn and set employee wages. Hilton established prices for room rentals; required Crosstown to use centralized platforms for room reservations, payments, property management, and guest complaints; and mandated that Crosstown purchase goods and supplies from approved vendors. Hilton signed off on any marketing undertaken by Crosstown and had the right to inspect the Hampton Inn. Hilton also had access to surveillance cameras and security systems at the Hampton Inn.

Starting in 2010, Hilton publicly committed to efforts to stop sex trafficking at its hotels. Hilton instituted centralized policies regarding training, reporting, and monitoring in order to combat sex trafficking. Hilton monitored news stories and online reviews for indicia of criminal activity at its hotels, some of which described sex trafficking and prostitution between 2007 and 2014.

Hilton required Crosstown to report any suspected criminal activity at the Hampton Inn. Hilton received reports from Crosstown and others of crime at the Hampton Inn, including sex trafficking. Hilton regularly inspected the Hampton Inn and monitored guest surveys, online reviews, customer complaints, and data on the Hampton Inn's operations and its customers.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (cleaned up). This standard requires a court to "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The court must then determine whether the factual allegations permit it "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (quoting

5

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The court may grant a motion to dismiss premised on an affirmative defense if "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Burt, 84 F.4th at 50 (quoting Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)).

## **DISCUSSION**

### I.   **Statute of Limitations**

Defendants first argue that Plaintiff's TVPRA claims should be dismissed because they are barred by the statute of limitations. As relevant here, the TVPRA requires that any civil action be brought "not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1). Plaintiff filed this lawsuit on December 31, 2024, so her claims are timely if they arose no earlier than December 31, 2014. Defendants assert, and Plaintiff does not dispute, that Plaintiff's claims arose no later than the last day she was trafficked at the Hampton Inn. The complaint alleges that Plaintiff was trafficked at the Hampton Inn "between May 2010 to December 2014." Dkt. 1 ¶ 25.

Defendants stress that Plaintiff does not specifically allege that she was trafficked at the Hampton Inn on December 31, 2014. But because a statute of limitations is an affirmative defense, see Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 73 (1st Cir.

6

2016), it "is 'not something the plaintiff must anticipate and negate in her pleading,'" Cunningham v. Cornell Univ., 604 U.S. 693, 702 (2025) (quoting Perry v. Merit Sys. Prot. Bd., 582 U.S. 420, 435 n.9 (2017)). Rather, a dismissal based on a statute of limitations is proper only if the facts alleged in the complaint "establish . . . with certitude" that the claim is time-barred. Burt, 84 F.4th at 50 (quoting Nisselson, 469 F.3d at 150). Plaintiff alleges that she was trafficked at the Hampton Inn through December 2014, which may include the last day of the month. It is therefore not certain that Plaintiff's TVPRA claims are entirely time-barred.

The parties also dispute whether Plaintiff's TVPRA claims are subject to the continuing violation doctrine such that "redress may be available for injuries caused by actions that would otherwise have been barred by the statute of limitations" because they occurred more than ten years prior to the filing of the complaint. Dagi v. Delta Airlines, Inc., 961 F.3d 22, 30 n.9 (1st Cir. 2020). Most courts have held that TVPRA claims fall within this doctrine. See, e.g., Le v. New Eng. Swimming, __ F. Supp. 3d __, __ (D. Mass. 2025) [2025 WL 2323563, at *3]; Doe 1 v. Gov't of the U.S. V.I., 771 F. Supp. 3d 379, 399 (S.D.N.Y. 2025); Levin v. Sarah Lawrence Coll., 747 F. Supp. 3d 645, 670 (S.D.N.Y. 2024); Ali v. Khan, 336 F. Supp. 3d 901, 910 (N.D. Ill. 2018). But see Christina T. v. Bellagio LLC, __ F. Supp. 3d __, __ (D. Nev. 2025)

[2025 WL 2962780, at *3] (holding that TVPRA claims are not subject to the continuing violation doctrine). Given the weight of authority, the Court concludes that Plaintiff's claims are subject to the continuing violation doctrine. Dismissal of the complaint based on the statute of limitations is not warranted.[2]

## II.  <u>Plausibility of TVPRA Claims</u>

The Court now turns to Defendants' arguments regarding the plausibility of Plaintiff's TVPRA claims. 18 U.S.C. § 1591 criminalizes the sex trafficking of an individual via force, fraud, or coercion. See 18 U.S.C. § 1591(a). The TVPRA provides a civil cause of action to "[a]n individual who is a victim of a violation of [§ 1591]." <u>Id.</u> § 1595(a). Under this provision, the victim may sue "the perpetrator" or, as relevant here, "whoever knowingly benefits . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [§ 1591]." <u>Id.</u> A claim of beneficiary liability under the TVPRA has four elements: "(1) a venture has engaged in an act in violation of [§] 1591, (2) the defendant knew or should have known that the venture had violated [§] 1591, (3) the defendant participated in that venture, and (4) the defendant knowingly benefited from its participation."

---

[2] Because the complaint does not make clear that Plaintiff's claims are time-barred, the Court need not resolve the parties' dispute as to whether Plaintiff is entitled to equitable tolling of the limitations period.

G.G. v. Salesforce.com, Inc., 76 F.4th 544, 553 (7th Cir. 2023); see Ratha v. Phatthana Seafood Co., 35 F.4th 1159, 1175 (9th Cir. 2022) (listing similar elements); Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 723 (11th Cir. 2021) (same).

Plaintiff brings TVPRA beneficiary liability claims under two theories. First, she alleges that Defendants are each directly liable as beneficiaries of her sex trafficking (Count I). Second, she contends that Hilton is vicariously liable for Crosstown's beneficiary liability because Crosstown acted as Hilton's agent (Count II).

Defendants do not contest that Plaintiff has plausibly alleged that she was a victim of a criminal sex trafficking violation committed by her trafficker. See G.G., 76 F.4th at 552 (asking as a threshold question whether the plaintiff "plausibly alleged that [she] was a victim of violations of [§] 1591"). Nor do Defendants dispute that Plaintiff's allegation that they received revenue from renting rooms to her trafficker satisfies the requirement that they knowingly benefitted from participation in a venture. See Ricchio v. McLean, 853 F.3d 553, 556-57 (1st Cir. 2017) (Souter, J.) (holding that payment for motel rooms used to traffic the plaintiff was a knowing benefit). Instead, Defendants argue that Plaintiff has not adequately pled her direct liability claims because the complaint fails to plausibly allege that they 1) participated in a qualifying venture and 2) knew or

9

should have known that the venture engaged in a criminal sex trafficking violation. Hilton also contends that Plaintiff has not plausibly alleged the agency relationship necessary to support her claim of vicarious liability.

### A.   Crosstown

The Court begins by addressing Plaintiff's claim against Crosstown, the franchisee of the Hampton Inn. Plaintiff alleges two theories of the qualifying "venture" in which Crosstown participated: 1) a venture with her sex trafficker for the ongoing rental of hotel rooms at the Hampton Inn and 2) a venture with Hilton to operate the Hampton Inn. For the following reasons, Plaintiff has plausibly alleged a TVPRA beneficiary claim against Crosstown under the first venture theory. The Court therefore need not address the second theory.

Based on Plaintiff's trafficker's use of force and coercion to cause Plaintiff to engage in commercial sex acts in the Hampton Inn hotel rooms, Crosstown's alleged venture with the trafficker "engaged in an act in violation of [§ 1591]." 18 U.S.C. § 1595(a); see Doe (K.E.C.) v. G6 Hosp., LLC, 750 F. Supp. 3d 719, 736 (E.D. Tex. 2024); C.B. v. Naseeb Invs., Inc., 748 F. Supp. 3d 1338, 1352-53 (N.D. Ga. 2024). The dispositive questions are whether Crosstown's relationship with Plaintiff's trafficker amounted to "participation in a venture" and whether Crosstown knew or should have known about the criminal sex trafficking.

### 1.   *Participation in a Venture*

Crosstown raises two main challenges to Plaintiff's theory that it participated in a venture with her sex trafficker. Emphasizing that the focus of this venture was the rental of hotel rooms, Crosstown faults Plaintiff for failing to allege that it participated in a primarily sex trafficking venture or shared a common purpose with the trafficker of forcing Plaintiff to engage in commercial sex acts. Crosstown also argues that it merely engaged in ordinary buyer-seller transactions with Plaintiff's trafficker and that such conduct does not amount to "participation in a venture" under the TVPRA.

The Court rejects Crosstown's argument that the TVPRA requires that the venture be a primarily sex-trafficking venture and that the defendant act with a purpose of facilitating sex trafficking. A few courts have held that a plaintiff must establish the existence of a primarily sex trafficking venture to succeed on a TVPRA claim. See, e.g., Powell v. W. Express, Inc., __ F. Supp. 3d __, __ (M.D. Tenn. 2025) [2025 WL 2306949, at *4-6]; Geiss v. Weinstein Co. Holdings LLC, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019); cf. Doe #1, 21 F.4th at 726-27 (asking whether the plaintiffs plausibly alleged that hotel franchisors participated in sex trafficking ventures, but clarifying that the plaintiffs had framed the relevant ventures in that manner during the litigation). Most courts have rejected such a rule. See G.G., 76

11

F.4th at 554 & n.8 (collecting cases). As the Seventh Circuit has explained, the text of § 1595(a) does not limit the term "venture" to specifically a sex trafficking venture; it merely requires that the defendant participate "in a venture which . . . has engaged in an act in violation of [§ 1591]." 18 U.S.C. § 1595(a); see G.G., 76 F.4th at 553-54. Requiring the defendant to act with a purpose of facilitating sex trafficking would improperly negate § 1595's imposition of civil liability on a defendant that merely "should have known" that the venture in which it participated engaged in a criminal sex trafficking violation. 18 U.S.C. § 1595(a); see City of Providence v. Barr, 954 F.3d 23, 37 (1st Cir. 2020) ("Courts generally ought not to interpret statutes in a way that renders words or phrases either meaningless or superfluous."). Thus, the "venture" underlying a civil TVPRA claim may be a commercial venture "whose primary focus is not on sex trafficking." G.G., 76 F.4th at 554.

As for whether Crosstown's relationship with Plaintiff's trafficker amounted to "participation in a venture," the parties set forth different formulations of what this element requires. Crosstown highlights that the Eleventh Circuit has defined the phrase "participation in a venture" based on its plain and ordinary meaning to refer to "t[aking] part in a common undertaking or enterprise involving risk and potential profit." Doe #1, 21 F.4th at 725. The D.C. Circuit has defined the phrase similarly. See Doe

12

1 v. Apple Inc., 96 F.4th 403, 415 (D.C. Cir. 2024). For her part, Plaintiff cites the Seventh Circuit's formulation, which requires "'a continuous business relationship' between the participant and the trafficker." G.G., 76 F.4th at 559 (quoting G.G. v. Salesforce.com, Inc., 603 F. Supp. 3d 626, 644 (N.D. Ill. 2022)).[3]

Despite their varying glosses on the "participation in a venture" element, courts largely agree on certain guiding principles. This element "does not require direct participation in sex trafficking." G.G., 76 F.4th at 561; see Doe (K.E.C.), 750 F. Supp. 3d at 731; J.L. v. Best W. Int'l, Inc., 521 F. Supp. 3d 1048, 1062 (D. Colo. 2021); A.B. v. Hilton Worldwide Holdings Inc., 484 F. Supp. 3d 921, 937 (D. Or. 2020); S.J. v. Choice Hotels Int'l, Inc., 473 F. Supp. 3d 147, 153 (E.D.N.Y. 2020). But a defendant's mere failure to detect and prevent trafficking does not constitute "participation in a venture" with the trafficker. See F.C. v. Jacobs Sols. Inc., 790 F. Supp. 3d 1158, 1190 (D. Colo. 2025); Doe (K.E.C.), 750 F. Supp. 3d at 734; L.H. v. Marriott Int'l, Inc., 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022); A.B. v. Marriott

---

[3] A neighboring statutory section defines "venture" as "any group of two or more individuals associated in fact." 18 U.S.C. § 1591(e)(6). The First Circuit has used this definition to analyze a claim of civil liability under the TVPRA. See Ricchio, 853 F.3d at 556. Other circuits have declined to use § 1591(e)(6)'s definition of "venture" when analyzing a civil claim under § 1595(a) because § 1591(e) states that its definitions apply only "[i]n this section." 18 U.S.C. § 1591(e); see Doe 1, 96 F.4th at 415 n.5; G.G., 76 F.4th at 554 n.7.

Int'l, Inc., 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020). Nor is this element satisfied if the defendant only "engag[es] in an ordinary buyer-seller transaction," Doe 1, 96 F.4th at 415, or makes "routine sales of off-the-shelf products or standard services," G.G., 76 F.4th at 563. A defendant's provision of "customized or personalized" products or services, however, may transform an arms-length consumer transaction into "participation in a venture" for purposes of a civil TVPRA claim. F.C., 790 F. Supp. 3d at 1188-89 (collecting cases). Compare G.G., 76 F.4th at 562 (finding this element met where a software company provided "targeted solutions addressed to the needs of [a website]'s business, repeatedly assessed [the website]'s operational needs, and provided active, ongoing support that was tailored to those needs" (internal quotation marks omitted)), with Doe 1, 96 F.4th at 416 (holding to the contrary where the defendant only "purchas[ed] a commodity").

The Court need not decide among the different formulations of the "participation in a venture" element in the caselaw because Plaintiff has stated a claim against Crosstown under any of them. The complaint alleges that Plaintiff's trafficker repeatedly trafficked her at the Hampton Inn over a period of four-and-a-half years. The complaint further alleges that in addition to providing Plaintiff and her trafficker with standard services such as wi-fi and housekeeping, the Hampton Inn management and staff "knew [Plaintiff] as a regular" and allowed her and her trafficker "to

14

have any room they wanted." Dkt. 1 ¶ 77(g). Plaintiff's claim thus rests on more than Crosstown's failure to detect and prevent sex trafficking or an ordinary buyer-seller relationship between Crosstown and Plaintiff's trafficker. Instead, Plaintiff plausibly alleges a continuous and recurring relationship between Crosstown and her trafficker involving some custom services that facilitated the sex trafficking. This type of continuous business relationship between a defendant and a trafficker is sufficient to establish the "participation in a venture" element under the TVPRA. See G.G., 76 F.4th at 560; Doe (K.R.D.) v. Hilton Worldwide Holdings Inc., __ F. Supp. 3d __, __ (N.D. Cal. 2025) [2025 WL 2539010, at *8-9]; Doe (K.E.C.), 750 F. Supp. 3d at 734; K.O. v. G6 Hosp., LLC, 728 F. Supp. 3d 624, 646 (E.D. Mich. 2024); cf. Doe 1, 96 F.4th at 416 (recognizing that a "direct and continuous relationship" beyond the mere purchasing of a commodity may amount to "participation in a venture").

### 2.   Actual or Constructive Knowledge

Crosstown also challenges Plaintiff's pleading of the knowledge element of her TVPRA claim. To satisfy the TVPRA's knowledge element at the motion-to-dismiss stage, a plaintiff must plausibly allege that the defendant "knew or should have known" that the venture engaged in a sex trafficking violation. 18 U.S.C. § 1595(a); see G.G., 76 F.4th at 555. While actual knowledge is not required, the defendant "must have had at least constructive

15

knowledge that the 'venture' in question has engaged in" criminal sex trafficking. G.G., 76 F.4th at 555 n.9; see Doe #1, 21 F.4th at 725. Knowledge of the prevalence of sex trafficking in hotels in general is not enough by itself to establish this element. See Doe (K.E.C.), 750 F. Supp. 3d at 731; Doe (L.M.) v. 42 Hotel Raleigh, LLC, 717 F. Supp. 3d 464, 473 (E.D.N.C. 2024); S.J., 473 F. Supp. 3d at 154, but such general awareness "'often informs' the knowledge analysis," F.C., 790 F. Supp. 3d at 1193 (quoting Doe (S.M.A.) v. Salesforce, Inc., No. 23-cv-0915, 2024 WL 1337370, at *16 (N.D. Tex. Mar. 28, 2024)); see Doe (K.R.D.), __ F. Supp. 3d at __ [2025 WL 2539010, at *10].

Moreover, the TVPRA requires the defendant to have actual or constructive knowledge that the venture was "engaged in trafficking, not just in any illegal activity." Mueller v. Deutsche Bank Aktiengesellschaft, 777 F. Supp. 3d 329, 339 (S.D.N.Y. 2025), appeal filed, No. 25-1162 (2d Cir. May 6, 2025). Thus, "it is not enough for a complaint to establish that a defendant hotel operator should have known of prostitution or general commercial sex activity taking place at its property"; the plaintiff must instead plausibly allege "that a defendant knew or should have known of a venture involving sex trafficking by force, threat of force, fraud, or coercion, or a combination thereof." A.B. v. Interstate Mgmt. Co., 746 F. Supp. 3d 997, 1007 (D. Or. 2024); see Doe (L.M.), 717 F. Supp. 3d at 472.

The parties disagree as to whether the TVPRA requires that a defendant have actual or constructive knowledge that the venture engaged in trafficking of the plaintiff specifically or whether knowledge that the venture engaged in trafficking more generally is sufficient. Courts are split on this question. Compare Doe #1, 21 F.4th at 725 (holding that "the defendant must have either actual or constructive knowledge that the venture . . . violated the TVPRA as to the plaintiff"), with G.G., 76 F.4th at 558 (rejecting this proposition and holding that the plaintiff "needs to allege plausibly that the defendant had constructive knowledge that a venture generally has violated [§] 1591"). The Court finds the Seventh Circuit's analysis persuasive on this question of statutory construction. Regardless, the complaint meets the higher bar of plausibly alleging Crosstown's constructive knowledge of Plaintiff's trafficking in particular.

With regard to the knowledge element, Crosstown primarily argues that Plaintiff's factual allegations suggest that it should have known only that Plaintiff was engaged in voluntary commercial sex acts and not that she was being trafficked. While other courts have come out differently on similar allegations, see, e.g., Doe v. Hyatt Corp., No. 24-cv-01229, 2025 WL 1953857, at *5-6 (N.D. Tex. July 15, 2025), this Court concludes that Plaintiff has pleaded sufficient facts to nudge from possible to plausible the inference that Crosstown had constructive knowledge of her trafficking.

17

Plaintiff alleges that she was trafficked at the Hampton Inn repeatedly over the course of four-and-a-half years, that she and her trafficker often paid for the hotel rooms with cash or prepaid cards, that the "Do Not Disturb" door hanger stayed up for multiple days in a row, that her trafficker was frequently present with her at check-in and lingered in the hotel or parking lot when she was with a john, and that she had at least five johns per day who visited for brief periods of times. Viewed in the aggregate, these facts -- especially the lengthy timeframe in which Plaintiff was trafficked at the Hampton Inn, the trafficker's monitoring of her, and the number of johns who visited per day -- are sufficient to plausibly allege that Crosstown's employees should have known that she was being trafficked and was not merely engaged in voluntary commercial sex acts. See Doe (K.R.D.), __ F. Supp. 3d at __ [2025 WL 2539010, at *10] (holding that similar allegations were sufficient to plausibly allege a hotel franchisee's constructive knowledge of sex trafficking); see also C.B., 748 F. Supp. 3d at 1350, 1362 (emphasizing the "short timeframe" of around twenty-four hours that the plaintiff was at the hotel in granting summary judgment to the hotel operator on the issue of whether the operator should have known about the sex trafficking); T.D.P. v. Choice Hotels Int'l, Inc., 725 F. Supp. 3d 784, 798 (S.D. Ohio 2024) (listing "excessive condoms, cash payments from [the plaintiff's]

traffickers, and frequent male guests" as facts that "should have alerted [hotel] staff to her trafficking).

Crosstown faults Plaintiff for not alleging certain clear indicia of sex trafficking, such as physical assaults or other efforts to exert control in public areas, visible signs of abuse or physical deterioration, or screaming from her hotel room. See A.B., 746 F. Supp. 3d at 1008. But "[a] sex trafficking victim need not plead that she showed every possible [sign] of being trafficked in order to plausibly allege that sufficient signs of trafficking were present to make her trafficking obvious to defendants." Doe (K.R.D.), __ F. Supp. 3d at __ [2025 WL 2539010, at *10]. Additionally, Plaintiff alleges that Crosstown was aware that the circumstances of her stays at the Hampton Inn exhibited red flags of sex trafficking and that other victims exhibiting similar red flags were trafficked at the Hampton Inn before and at the same time as she was. Thus, it is plausible at this early stage that Crosstown should have known that Plaintiff was being trafficked.

Accordingly, Plaintiff has stated a direct beneficiary claim under the TVPRA against Crosstown.

**B.    Hilton**

The Court now turns to Plaintiff's claim against Hilton, the franchisor. The complaint asserts two TVPRA counts against Hilton, one for direct liability and the other for vicarious liability

based on Crosstown's underlying TVPRA violation. "Vicarious liability is not an independent cause of action, but rather is a legal concept used to transfer liability from an agent to a principal." Gaston v. Ghosh, 920 F.3d 493, 497 (7th Cir. 2019) (quoting Crawford v. Signet Bank, 179 F.3d 926, 929 (D.C. Cir. 1999)); see Mercurio v. Town of Sherborn, 287 F. Supp. 3d 109, 125 (D. Mass. 2017) ("[V]icarious liability is a theory of liability; it is not in and of itself an independent cause of action."). The Court therefore construes the complaint's two counts as alternative theories for Hilton's liability under the TVPRA. And because, for the following reasons, Plaintiff has plausibly alleged a TVPRA violation by Hilton under a vicarious liability theory, the Court need not address Plaintiff's theory of direct liability against Hilton at this stage. See Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Elena v. Municipality of San Juan, 677 F.3d 1, 8 (1st Cir. 2012) (declining to assess the sufficiency of the plaintiffs' multiple theories of a property interest in support of their procedural due process claim where at least one theory was plausible).

The TVPRA permits vicarious liability under an agency theory. See, e.g., Doe (K.E.C.), 750 F. Supp. 3d at 731-32; G.M. v. Choice Hotels Int'l, Inc., 725 F. Supp. 3d 766, 781-82 (S.D. Ohio 2024); Treminio v. Crowley Mar. Corp., 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023); J.L., 521 F. Supp. 3d at 1064. As previously discussed, Plaintiff has stated an underlying claim for direct beneficiary liability against Crosstown. Hilton contends that Plaintiff has not plausibly pled a principal-agent relationship between it and Crosstown such that it can be held vicariously liable for Crosstown's violation.

Some district courts apply the federal common law of agency to assess if an agency relationship exists for purposes of a claim of vicarious liability under the TVPRA, see, e.g., Doe (K.R.D.), __ F. Supp. 3d at __ [2025 WL 2539010, at *4]; Doe (K.E.C.), 750 F. Supp. 3d at 738, while others apply state law, see, e.g., K.O., 728 F. Supp. 3d at 649; A.B., 455 F. Supp. 3d at 195. In this case, Plaintiff asserts that federal law governs this issue, and Hilton does not argue otherwise. The Court therefore assumes without deciding that federal law applies. The federal common law of agency incorporates principles from the Restatement of Agency. See Cruz v. Farmers Ins. Exch., 42 F.4th 1205, 1212 (10th Cir. 2022); In re Sterling, 933 F.3d 828, 835 (7th Cir. 2019); Salyers v. Metro. Life Ins. Co., 871 F.3d 934, 939 n.3 (9th Cir. 2017).

An agency relationship arises when a principal and an agent manifest assent "that the agent shall act on the principal's behalf and subject to the principal's control." Restatement (Third) of Agency § 1.01 (A.L.I. 2006). "[T]he mere existence of a franchise relationship does not necessarily trigger" an agency relationship even though "[s]ome degree of control by the franchisor over the franchisee" is "inherent in the franchise relationship." In re Volkswagen Grp. of Am., Inc., 28 F.4th 1203, 1210 (Fed. Cir. 2022) (per curiam) (second alteration in original) (quoting Drexel v. Union Prescription Ctrs., Inc., 582 F.2d 781, 786 (3d Cir. 1978)); see Restatement (Third) of Agency § 1.02 cmt. a (providing that franchise relationships "do not by themselves create relationships of agency"). To determine if a franchisor and a franchisee are in an agency relationship, courts focus on "the nature and extent" of the franchisor's right to control the franchisee. In re Volkswagen Grp., 28 F.4th at 1210 (quoting Drexel, 582 F.2d at 786). The franchisor's imposition of brand standards and measures to ensure service quality and uniformity is not sufficient to transform a franchise relationship into one of agency. See Restatement (Third) of Agency § 1.01 cmt. f(1); Doe (K.E.C.), 750 F. Supp. 3d at 738; H.G. v. Inter-Cont'l Hotels Corp., 489 F. Supp. 3d 697, 708-09 (E.D. Mich. 2020); S.J., 473 F. Supp. 3d at 155. Instead, courts examine "the degree of control that the franchisor maintains over the daily operations of the franchisee or more specifically, the

22

'manner of performing the very work in the course of which the [tort] occurred.'" In re Volkswagen Grp., 28 F.4th at 1210 (quoting Kerl v. Rasmussen, 672 N.W.2d 71, 77 (Wis. Ct. App. 2003)); see Doe (K.E.C.), 750 F. Supp. 3d at 739; H.G., 489 F. Supp. 3d at 708; S.J., 473 F. Supp. 3d at 155.

Plaintiff has plausibly alleged an agency relationship between Hilton and Crosstown. The complaint alleges that Hilton exercised control over Crosstown's operation of the Hampton Inn by, among other things, dictating room rental rates, setting staffing levels and wages, participating in employment decisions, enforcing standards for employee training, requiring use of centralized platforms for bookings and property management, and mandating that Crosstown purchase goods and services from approved vendors. Most courts have concluded that factual allegations of this sort are sufficient to plead the day-to-day control necessary to establish an agency relationship between a hotel franchisor and franchisee at the motion-to-dismiss stage in a TVPRA case. See, e.g., Doe (K.R.D.), __ F. Supp. 3d at __ [2025 WL 2539010, at *5]; Doe (K.E.C.), 750 F. Supp. 3d at 739-40; A.M. v. Wyndham Hotels & Resorts, Inc., 728 F. Supp. 3d 787, 803-04 (S.D. Ohio 2024); C.S. v. Wyndham Hotels & Resorts, Inc., 538 F. Supp. 3d 1284, 1299 (M.D. Fla. 2021); J.L., 521 F. Supp. 3d at 1067-68; S.Y. v. Wyndham Hotels & Resorts, Inc., 521 F. Supp. 3d 1173, 1187 (M.D. Fla.

23

2021); E.S. v. Best W. Int'l, Inc., 510 F. Supp. 3d 420, 429-30 (N.D. Tex. 2021); A.B., 484 F. Supp. 3d at 940. This Court agrees.[4]

Hilton further argues that, even if Plaintiff has plausibly pled an agency relationship, any TVPRA violation by Crosstown fell outside the scope of Crosstown's authority as an agent because "violating the TVPRA's prohibitions against sex trafficking" did not "further[] Hilton's interest." Dkt. 17 at 26. This contention is unpersuasive. A principal is liable for an agent's tortious conduct "when the agent's conduct is within the scope of the agent's actual authority." Restatement (Third) of Agency § 7.04. An agent's actual authority extends to any "action designated or implied in the principal's manifestations to the agent and acts necessary or incidental to achieving the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives when the agent determines how to act." Id. § 2.02(1). It is plausible that Crosstown's rental of rooms to

---

[4] In many of the cases cited by Hilton in which courts dismissed TVPRA vicarious liability claims against hotel franchisors, the complaint vaguely alleged that the franchisor engaged in "one or more" of a list of methods of control over the franchisee. See, e.g. Doe (K.B.) v. G6 Hosp., LLC, No. 23-cv-2597, 2023 WL 8650785, at *8 (N.D. Ga. Dec. 14, 2023); B.J. v. G6 Hosp., LLC, No. 22-cv-03765, 2023 WL 3569979, at *8-9 (N.D. Cal. May 19, 2023); L.H., 604 F. Supp. 3d at 1361-62; H.G., 489 F. Supp. 3d at 708. In others, the complaint included only conclusory allegations about the agency relationship and the franchisor's day-to-day control over the franchisee. See, e.g., Doe (G.N.C.) v. Uniquest Hosp., LLC, No. 23-cv-7980, 2024 WL 4149251, at *5-6 (S.D.N.Y. Sept. 11, 2024). Plaintiff's complaint suffers from neither defect.

Plaintiff's trafficker, which forms the basis of Crosstown's alleged liability under the TVPRA, was undertaken based on a reasonable understanding that doing so furthered Hilton's interest in a financially successful hotel franchise. That this conduct may have constituted a TVPRA violation does not remove it from the scope of Crosstown's actual authority. See id. § 7.04 cmt. b ("Tortious conduct by an agent . . . may be consistent with the agent's actual authority.").

Plaintiff has therefore stated a claim of TVPRA beneficiary liability against Hilton.

### ORDER

For the foregoing reasons, Hilton's and Crosstown's motions to dismiss (Dkts. 16, 21) are **DENIED**.


SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge

25